## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:

Petters Company, Inc., et al.,

Debtors.

(includes:
Petters Group Worldwide, LLC;
PC Funding, LLC;
Thousand Lakes, LLC;
SPF Funding, LLC;
PL Ltd., Inc.;
Edge One LLC;
MGC Finance, Inc.;
PAC Funding, LLC;
Palm Beach Finance Holdings, Inc.)

**Jointly Administered under
Case No. 08-45257**

Court File No. 08-45257

Court Files No.'s:
08-45258 (GFK)
08-45326 (GFK)
08-45327 (GFK)
08-45328 (GFK)
08-45329 (GFK)
08-45330 (GFK)
08-45331 (GFK)
08-45371 (GFK)
08-45392 (GFK)

Chapter 11 Cases
Judge Gregory F. Kishel

**NOTICE OF HEARING AND MOTION TO AUTHORIZE TRUSTEE TO (I) ENTER INTO AND PERFORM ACCORDING TO A COORDINATION AGREEMENT AMONG PLAINTIFF UNITED STATES OF AMERICA, THE RECEIVER, THE CHAPTER 11 TRUSTEE OF PETTERS COMPANY, INC., ET AL., AND THE CHAPTER 7 TRUSTEE OF POLAROID CORPORATION, ET AL. N/K/A PBE CORPORATION, ET AL., (II) RESOLVE PENDING CRIMINAL CHARGES AND (III) CONDUCT TRANSACTIONS OUTSIDE THE ORDINARY COURSE OF BUSINESS**

TO:    The entities specified in Local Rule 9013-3.

1.    Douglas A. Kelley, the duly-appointed Chapter 11 Trustee (the "Trustee") of the above-captioned debtors (the "Debtors"), by and through his counsel, hereby moves this Court for the relief requested and gives notice of hearing.

2.    The Court will hold a hearing on this Motion before Gregory F. Kishel, United States Bankruptcy Judge, at 9:30 p.m. on September 14, 2010, or as soon thereafter as the parties

may be heard, in Courtroom 2A, at the United States Courthouse, 316 N. Robert Street, St. Paul, Minnesota.

3.     Any response to this Motion must be filed and served by delivery or by mail not later than September 9, 2010, which is five (5) days before the time set for the hearing (including Saturdays, Sundays, and holidays). **UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.**

4.     This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, Bankruptcy Rule 5005 and Local Rule 1070-1. This is a core proceeding. Voluntary Petitions commencing the Chapter 11 cases of Petters Company, Inc. ("PCI") and Petters Group Worldwide, LLC ("PGW") were filed on October 11, 2008. Petitions commencing the Chapter 11 cases of PC Funding, LLC, Thousand Lakes, LLC, SPF Funding, LLC, PL Ltd., Inc., Edge One, LLC and MGC Finance, Inc. were filed on October 15, 2008. The petition commencing the Chapter 11 case of PAC Funding, LLC was filed on October 17, 2008. The petition commencing the Chapter 11 case of Palm Beach Finance Holdings, Inc. was filed on October 19, 2008 (collectively, the "Petitions," the "Petition Dates," the "Petters Cases" and the "Petters Estates"). Venue of the Petters Cases and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The Petters Cases are now pending before this Court.

5.     The Trustee continues to operate the Debtors' businesses as debtors-in-possession pursuant to § 1108 of the Bankruptcy Code. A committee of unsecured creditors (the "Creditors' Committee") was appointed on November 21, 2008 pursuant to § 1102 of the Bankruptcy Code. On December 24, 2008, the United States Trustee appointed Douglas A. Kelley as Trustee in these Cases. On February 26, 2009, this Court approved that appointment.

6.     This Motion arises under 11 U.S.C. §§ 105 and 363, Federal Rules of Bankruptcy Procedure 2002, 6004 and 9019. This Motion is filed under Fed. R. Bankr. P. 9014 and Local

2

Rules 2002-1, 6004-1, 9013-1 through 3 and 9019-1.  The Trustee seeks an order (i) authorizing the Trustee to enter the Coordination Agreement Among Plaintiff United States of America, the Receiver, Chapter 11 Trustee of Petters Company, Inc., et al., and Chapter 7 Trustee of Polaroid Corporation, et al. n/k/a PBE Corporation, et al. (the "Coordination Agreement"); (ii) authorizing the Trustee to resolve pending criminal charges against PCI and PGW and (iii) authorizing the Trustee to perform according to the terms of the Coordination Agreement, including using property of the estate and engaging in transactions outside the ordinary course of business pursuant to 11 U.S.C. §363(b)(1) as described therein for the benefit of the Petters Estates.

## BACKGROUND

### Events Leading Up to Bankruptcy Filing

7.      PCI is a Minnesota corporation, the shares of which are 100% owned and, prior to October 6, 2008, were 100% controlled by Thomas J. Petters ("Petters").  PCI, in turn, is the sole member or shareholder, as applicable, and owns 100% of the membership interests or shares, as applicable, of PC Funding, Thousand Lakes, SPF Funding, PL Ltd., Edge One, MGC Finance, and PAC Funding (the "PCI Estates").  Palm Beach Finance Holdings is wholly-owned by Petters.  The operational and managerial decisions of PCI and its affiliates were principally made by Petters and the Individual Defendants (as that term is defined below).  PCI obtained capital for the Petters enterprises, on its own account and also utilizing single purpose entities to obtain billions of dollars of funding, and purportedly to acquire merchandise for sale to wholesalers and retailers nationwide.  The purchase and sale business, however, did not exist.  PCI has filed a claim in the PGW case in an amount of $16,623,899.23 for funds advanced to or on behalf of PGW.

8.      PGW is a privately held Delaware limited liability company that was also 100% owned and, prior to October 6, 2008, was 100% controlled by Petters.  The operational and

managerial decisions of PGW and its subsidiary entities were also made by Petters and the Individual Defendants.  PGW was a holding company that provided certain accounting, legal and human resource services to Petters' business entities, but had no independent operations.  PGW obtained funds mostly from PCI that PCI obtained as part of a scheme to defraud investors, as well as from investors whose funds were used to further the fraudulent scheme.

9.      On or about September 24, 2008, the Federal Bureau of Investigation, together with the Internal Revenue Service – Criminal Investigation Division and the United States Postal Inspection Service executed search warrants on multiple locations and seized records of PCI, PGW and other subsidiary entities, including the Debtors, as well as sole owner Petters, the Individual Defendants and other employees and persons involved in a scheme to defraud and obtain billions of dollars of money and property by means of materially false and fabricated pretenses, representations and promises (the "Ponzi Scheme").  On October 3, 2008, Petters was arrested on charges of mail and wire fraud, money laundering, and conspiracy.  Other executives implicated in this scheme have also been arrested on various charges and have pleaded guilty to certain crimes as a result of their involvement in the Ponzi Scheme.  As noted in great detail below, PCI and PGW have also been indicted by a federal grand jury of various crimes in connection with their roles in the Ponzi Scheme.

10.     Petters and the Individual Defendants operated the Ponzi Scheme with the assistance of other individuals within the Petters organizations from approximately 1993 through the date of his arrest by federal agents on October 3, 2008.  Petters, through PCI, PGW and various other entities that he controlled, laundered what is estimated to be an amount in excess of $40 billion.

11.     Petters, through a multitude of entities and with the assistance of the Individual Defendants, induced investors into financing the purchase of non-existent electronic equipment

purportedly secured by fabricated purchase orders. Over many years, Petters and the Individual Defendants caused investors to believe that their investments to purchase consumer electronic goods from wholesalers to be resold to large, "big box" retailers such as Costco, Sam's Club and B.J.'s. Petters and the Individual Defendants, however, intentionally fabricated documents to recruit investors into the Ponzi Scheme and cause existing investors to continue to invest in the Ponzi Scheme. Petters and the Individual Defendants prepared and utilized fabricated documents that were represented to investors to be equipment purchase orders and related documents. The purchase orders and the related documents were entirely fictitious and no such inventory -- electronic goods or other inventory -- actually existed. The result was that investors were not repaid with the earnings from their investments, but with funds Petters and the Individual Defendants obtained from other investors.

12.    Integral to perpetuating the Ponzi Scheme was Petters' portrayal of himself to investors as a business person who owned and operated numerous legitimate businesses, which falsely led investors to believe they were investing with a successful business empire. In order to perpetuate this image as a successful business person and captain of industry running a legitimate business empire, Petters needed investors to believe the businesses within his empire were profitable and/or valuable in order to continue to attract additional investments to perpetuate the Ponzi Scheme. If one of his publicly touted holdings failed, Petters would have difficulty attracting new investments and the house of cards would fall.

13.    As a result of numerous defaults with investors, and to avoid discovery of the Ponzi Scheme, Petters was forced to enter numerous agreements with creditors,  including a series of pledges, guaranties, security agreements, forbearance and other agreements with various investors or other encumbrances of assets and entered into numerous other transactions and transfers in order to prop up failing businesses, obtain new funding, delay discovery of the fraud,

halt investigations, appease large investor groups who had the leverage to extract value, and perpetuate the Ponzi Scheme.

14.    On October 2, 2008, Plaintiff United States of America ("United States"), in support of a criminal investigation, sought an asset freeze and receivership under the Anti-Fraud Injunction Act, 18 U.S.C. §pl345, for the benefit of victims of the massive fraud that took place at PGW and PCI in the United States District Court for the District of Minnesota, captioned *United States v. Thomas Joseph Petters, et al.*, Civil Case No. 08-05348 ADM/JSM (the "Civil Fraud Case"). The Honorable Ann D. Montgomery was assigned the case. On October 6, 2008, Judge Montgomery issued an Order for Entry of Preliminary Injunction, Order Appointing Receiver and Other Equitable Relief, [Dkt. No. 12], as subsequently amended on October 14, 2008 [Dkt. No. 43], October 22, 2008 [Dkt. No. 70] and December 8, 2008 [Dkt. No. 127] (collectively, the "Receivership Order"). Judge Montgomery appointed Douglas A. Kelley as Receiver (the "Receiver") for Petters, PCI and PGW, as well as certain entities owned and controlled 100% by such entities. Pursuant to the Receivership Order, the Receiver is to "conserve, hold and manage all receivership assets … in order to prevent any irreparable loss, damage or injury to consumers or creditors of the Entities [under the receivership]." Receivership Order, p. 11, ¶ IV(B)(4). Judge Montgomery, through the Receivership Order, specifically granted the Receiver authority to file "any bankruptcy petitions for any of the [Debtors] to protect and preserve the assets of any of the [Debtors]." *See* Second Amended Order of Preliminary Injunction, Appointment of Receiver and Other Equitable Relief, Sect. IV, paragraph (B)(2)(c), Dkt. No. 127.

15.    As a result of the investigation, subsequent arrests and litigation by numerous creditors, the Receiver sought relief for the Debtors under Chapter 11 of the Bankruptcy Code in order to preserve assets and potential avoidance claims of these estates.

6

**Events Since the Bankruptcy Filing**

16.    On December 1, 2008, and through the Superseding Indictment entered June 3, 2009, Petters, PCI and PGW were indicted by a federal grand jury on charges of (i) mail fraud, (ii) wire fraud, (iii) conspiracy to commit mail fraud and wire fraud, and (iv) conspiracy to commit money laundering, in violation of 18 U.S.C. §§ 371, 1343, 1956 and 1957.  *See* Indictment, Dkt. No. 75, and Superseding Indictment, Dkt. No. 196, *United States of America v. Petters et al.*, Case No. 08-cr-00364 (RHK-AJB) (D. Minn.) (the "Criminal Fraud Case"). Petters was also indicted on charges of money laundering.  *Id*.  The Honorable Richard H. Kyle was assigned the case.  The indictment alleges that Petters and the Individual Defendants used PCI and PGW, as well as their subsidiary entities, to orchestrate a massive Ponzi scheme to defraud investors out of more than $3 billion.

17.    At various times during the course of the Ponzi Scheme, Petters was assisted in the operation of the scheme by numerous individuals, including Deanna Coleman ("Coleman"), Robert White ("White"), Larry Reynolds ("Reynolds"), Michael Catain ("Catain") and James Wehmhoff ("Wehmhoff") (collectively, the "Individual Defendants").   Coleman has pleaded guilty to a single count of conspiracy to commit mail fraud.  White has pleaded guilty to a single count of mail fraud.   Reynolds and Catain have each pleaded guilty to a single count of conspiracy to commit money laundering.  Wehmhoff has pleaded guilty to conspiracy to defraud the United States, conspiracy to commit tax evasion and one count of aiding and assisting in the filing of a false tax return.  *See United States v. Petters et al.*, Case No. 08-cr-00364 (RHK-AJB). The Individual Defendants are currently awaiting sentencing and it is expected that orders for forfeiture and possibly orders for restitution will be entered against them at the time of

sentencing or shortly thereafter in addition to the consent to forfeiture contained in the plea agreement between Coleman, White, Reynolds and Catain and the United States.[1]

18.   On December 18, 2008, Polaroid Corporation and certain subsidiary entities filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. *See* In re Polaroid Corporation, et al. ( "PBE Corporation," the "PBE Bankruptcy Cases" and the "PBE Estates") jointly administered under Bankruptcy Case No. 08-46617 currently pending in the United States Bankruptcy Court for the District of Minnesota.  The PBE Cases were later converted to cases under Chapter 7 of the Bankruptcy Code on August 31, 2009, and John R. Stoebner was appointed as the Chapter 7 trustee for the PBE Estates ("Stoebner").

19.   On December 2, 2009, a jury in the United Stated District Court of the District of Minnesota found Petters guilty of all 20 counts charged in the Indictment and Superseding Indictment.   On April 8, 2010, Petters was sentenced to 50 years in prison for his crimes. Pursuant to the Court's *Preliminary Order of Forfeiture*, Case No. 08-cr-00364, Doc. No. 395, certain property, including real property, proceeds from the sale of real property and accounts were forfeited to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c). *Id*. at ¶¶1 & 2.  A general money judgment was also entered against Petters in the amount of $3,522,880,614.10 in favor of the United States. *Id*. at ¶3.  As a result of Petters' conviction, the United States asserts the right to forfeit all proceeds of the criminal acts conducted as part of this fraudulent scheme, including all assets of PCI and PGW and their subsidiary entities, including PBE Corporation and its subsidiaries.

20.   Pursuant to an order entered on June 3, 2010, Judge Kyle held that "determining complex issues of fact related to the amount of the victims' losses would both complicate and prolong the sentencing process to such a degree that the need to provide restitution is outweighed

---

[1] Wehmhoff's plea agreement does not provide for forfeiture.

by the burden it would impose" and declined to order restitution. *Order*, at p. 10-11, Doc. No.
459 in the Criminal Fraud Case.

21.    To maximize value for legitimate creditors and victims of the Ponzi Scheme, the
Trustee asks this Court for authority to enter the Coordination Agreement as more fully
described below.

### THE COORDINATION AGREEMENT

22.    For the reasons stated herein, the Trustee believes it is in the best interest of these
estates to compromise and resolve the respective claims to property subject to the Preliminary
Order of Forfeiture. This proposed resolution will preserve property of the receivership and
property of the Petters Cases and the PBE Cases in order to maximize recovery to legitimate
victims and creditors of the massive Ponzi Scheme. Through the coordination of the efforts of
the United States, the Receiver, the Trustee and Stoebner, the ongoing expenses of
administration of these various entities and estates will be materially reduced, thereby
maximizing any resulting recovery for victims and creditors. The Trustee now seeks
authorization from this Court to enter the Coordination Agreement and perform and use property
of the estate as described therein.

23.    On August 16, 2010 the United States, the Receiver, the Trustee and Stoebner,
after several months of intense negotiations, entered into and executed a Coordination
Agreement, a true and correct copy of which is attached hereto as Exhibit A.

24.    The Coordination Agreement accomplishes several goals. First, the Coordination
Agreement equitably and efficiently allocates assets and causes of action among the Trustee,
Stoebner, the Receiver and the United States, and removes the risk of forfeiture of substantially
all of the assets of the Petters Estates, the PBE Estates, the Petters Capital Estate, the Petters
Aviation Estate and each of their subsidiary entities as well as the Receivership assets. Second,

9

the Coordination Agreement accounts for and allocates among the several bankruptcy estates expenses incurred for their respective benefit and allocates such expenses relating to actual or potential third-party litigation commenced or to be commenced by the Trustee, Stoebner or the Receiver. Ex. A at Section III.  Third, the Coordination Agreement resolves the criminal liability of PCI and PGW and the important consequences of such corporate criminal liability and the potential divestiture of estate assets through forfeiture by the United States of corporate assets which are currently administered by the Trustee and Stoebner in their respective bankruptcy cases. Ex. A at Section II.  Lastly, it provides for a material wind-down of the receivership with respect to the Individual Defendants. Ex. A at Section I.

A.      **Receivership Wind-Down Plan**

        25.     In an effort to wind down and conclude a portion of the Receiver's duties, the Receiver and the United States Attorney's Office (the "USAO") have agreed to jointly identify all unliquidated assets personally owned by each Individual Defendant by a cooperative process. The Receiver and USAO will share information, documentation and analysis relating to the identified assets personally owned by the Individual Defendants.  The USAO will also provide the Receiver and the Trustee access to information to assist in the recovery of assets owned by the Individual Defendants ("Individual Defendant Assets") for victims and creditors, with limited exceptions to disclosure. Ex. A. at Section I.A.

        26.     The USAO and the Receiver also agree that the Individual Defendant Assets will be executed upon or forfeited by the United States.  The Individual Defendant Assets affected by forfeiture or execution include corporate ownership interests, assets subject to third-party claims and assets transferred to third parties, but not Petters' direct or indirect ownership interests in the Petters Estates, Petters Capital, LLC, Petters Aviation, LLC or their subsidiaries (and subsidiaries of subsidiaries).  Ex. A. at Section I.B.1 & 2.  Individual Defendant Assets

transferred to third parties will be forfeited or executed upon with the exception of charitable donations, contributions and gifts, which shall be transferred to the United States after deduction for the Receiver's fees and expenses. Ex. A. at Section I.B.3. The Receiver agrees to turn over forfeited Individual Defendant Assets in his possession or those that come into his possession after his transfer of assets to the United States for return to victims pursuant to the remission process under the provisions of Title 28, Code of Federal Regulations, Part 9 after satisfying the Receiver's fees and expenses. Ex. A. at Section I.B.4 & 5.

27.    Finally, the Receiver and the United States agree that the receivership expenses will diminish and substantially cease as a result of the Coordination Agreement and the Receiver agrees to minimize fees and costs incurred while discharging his remaining duties under the Receivership Order and the Coordination Agreement. Ex. A. at Section I.C.

28.    In exchange for the foregoing, and in an effort to maximize coordination and minimize unnecessary cost and delay, the Receiver agrees to relinquish claims to the Individual Defendant Assets. Upon entry of a court order directing that assets may be seized or restrained by the United States, the Receiver will turn over such Individual Defendant Assets currently held by the Receiver to the United States and execute releases necessary for the recovery and distribution of such assets. Ex. A. at Section I.D.

**B.     Corporate Criminal Liability and Forfeiture**

29.    On December 1, 2008, a United States Grand Jury returned an indictment against PCI and PGW for their respective criminal conduct in furthering a $3.7 billion fraud. Currently, those charges remain pending against PCI and PGW. In light of the evidence presented by the United States in its prosecution of Petters, the guilty pleas of the Individual Defendants, and facts the Trustee has uncovered with the assistance of professionals as part of his investigation, and to

DOCS-#3246999-v3

avoid undue and wasteful litigation expense of defending PCI and PGW from such charges, the Trustee agrees to seek approval of the Bankruptcy Court to enter guilty pleas.

30.    In exchange for such guilty pleas, and other consideration in the Coordination Agreement, the United States agrees to forego certain remedies that it otherwise, in the absence of the Coordination Agreement, may pursue.  First, the United States will not seek criminal or civil forfeiture of either tangible or intangible assets of the Petters Estates and their subsidiaries. Second, the United States agrees not to execute on the tangible or intangible assets of the Petters Estates and their respective subsidiaries, preventing the bankruptcy estates from being divested of substantially all of their assets and preserving such value for the benefit of creditors of the Petters Estates.  Ex. A at Section II.C.  Specifically, but not exclusively, the United States agrees that it will not forfeit or execute upon any action or the proceeds therefrom brought (i) for the return of corporate assets, (ii) on behalf of the Petters Estates against professionals and (iii) for the return of false profits or other clawback or avoidance claims, including principal from a purported loan to, or investment in, the Petters Estates or any corporate affiliate (the "Avoidance Claims").  Furthermore, the United States agrees not to seek forfeiture of assets of the PBE Estates, the Petters Capital, LLC bankruptcy estate, the Petters Aviation, LLC bankruptcy estate, or any of their subsidiaries, including actions or the proceeds therefrom brought (i) for the return of corporate assets, (ii) against professionals and (iii) for recoveries on Avoidance Claims, including principal paid on a purported loan or investment.  Ex. A. at Section II.C.

C.    **Bankruptcy Estates and Cost Allocations**

31.    The Coordination Agreement addresses the allocation of expenses incurred for the benefit of the Petters Estates and the PBE Estates, including expenses for subsidiary entities that have and will inure to the benefit of the respective Petters Estates and the PBE Estates ("Bankruptcy Related Expenses").  The Receiver, the Trustee and Stoebner agree that as of May

1, 2010 as to the Petters Entities and July 1, 2010 as to the PBE Estates, all Bankruptcy Related Expenses will be submitted in the respective bankruptcy cases for review, allowance and payment in accordance with applicable provisions of the Bankruptcy Code, Federal Bankruptcy Rules and Local Bankruptcy Rules.

32.     As a result of the inter-relatedness of the entities involved in these cases certain expenses incurred have benefited more than one related entity.  Accordingly, the parties to the Coordination Agreement have reached an agreement on allocation of expenses as follows:

A.     The Receiver, the Trustee and the United States have agreed to allow the Receiver to pay certain expenses incurred prior to May 1, 2010 related to professionals who have benefited the PCI Estates and the PGW Estate.

B.     Stoebner, the Receiver, the Trustee and the United States have agreed that the PBE Estates have received the benefit of $852,620 of accounting and investigation services performed by PricewaterhouseCoopers ("PwC") for the period December 18, 2008 to June 30, 2010, for which the Receiver has paid or will pay PwC.  Stoebner has agreed to stipulate to the allowance of the following administrative expense claims of the Receiver in the PBE Corporation bankruptcy case:

i.     An allowed Chapter 11 administrative expense claim in the amount of $298,972.48; and

ii.     An allowed Chapter 7 administrative expense claim in the amount of $553,647.52, with such claim to be paid upon Bankruptcy Court approval of the Coordination Agreement and subject to the availability of funds pursuant to future cash collateral orders in the PBE Estates cases.

C.     The Receiver will retain $500,000 paid to it by PBE Corporation prior to the filing of the PBE Corporation, et al. bankruptcy cases for its share of Receiver

expenses, with the parties agreeing that $407,761.82 of such amount is a fair and reasonable approximation of certain costs and expenses incurred by the Receiver in administering Polaroid Corporation prior to its Chapter 11 filing, and the balance of the $500,000 is to be applied in payment towards the Chapter 11 administrative expense claim described in subparagraph 32(B)(i) above and the Chapter 7 administrative expense claim described in 32(B)(ii) above.

D.    Through July 31, 2010, the Receiver has advanced and will waive any claim to recover approximately $3,370,346.16 of funds provided to the Petters Estates since October 2008 to cover operational expenses of the Petters Estates.

Ex. A. at Section III.A.1-4.

33.    The Coordination Agreement also addresses the recovery of certain assets transferred from PBE Corporation to the Petters Entities or their subsidiaries in the months prior to commencement of the Civil Fraud Case.  Specifically, the Trustee agrees to return shares of PWB Health Ltd. and Wideblue Limited to the PBE Estates that Stoebner asserts were transferred to PGW in May 2008 for no consideration.  The PGW Estate will assign any interest it has in such shares to the PBE Estates.  Ex. A. at Section III.A.5.

34.    Additionally, pursuant to a Settlement Agreement made and entered into as of January 1, 2008, Polaroid Holding Company, n/k/a PBE Holding Company, and PGW resolved a claim against Lawrence Harmer in exchange for a promissory note in the amount of $5,080,099.80, payable from Harmer to PGW.  Stoebner has demanded that the Trustee assign PGW's interest in the promissory note to the PBE Estates, asserting that PGW provided no value for any interest in the note. The Trustee and Stoebner agree to resolve this demand by the Trustee's assigning to the PBE Estates, upon the request of Stoebner, any interest in the note or proceeds derived therefrom.  Ex. A. at Section III.A.6.

DOCS-#3246999-v3

35.     Finally, the Coordination Agreement addresses the fees and expenses of third-party litigation that may arise after May 1, 2010 from litigation and claims by the Petters Estates or their subsidiaries, including but not limited to actions brought for the return of corporate assets, actions brought on behalf of the Petters Estates against professionals, current or former employees and actions to recover avoidable transfers.  Expenses and fees arising from such third-party litigation arising after May 1, 2010 will be submitted to the relevant Bankruptcy Court for review, allowance and payment.  In the event there is a successful recovery of parallel claims pursued by the Receiver, either by settlement or following litigation, the proceeds of such recovery will be paid to the Petters Estates.  In the event a recovery is obtained based solely on independent causes of action of the Receiver that are not property of the Petters Estates, such proceeds will be paid over to the United States for the benefit of victims through remission of assets after reimbursement to the Receiver and/or the Petters Estates for all fees and expenses. The Trustee further agrees to consult and confer with the creditors committee regarding third-party litigation concerning the Petters Estates or their subsidiaries.  Ex. A. at Section III.B.1-3.

36.     In exchange for the consideration set forth in the Coordination Agreement, and in an effort to maximize coordination and minimize unnecessary cost and undue delay in distributions to victims and creditors, the USAO agrees it will not pursue its forfeiture claims against third parties for the return of corporate asset transfers, including but not limited to Avoidance Claims. The USAO agrees to execute releases as are necessary and appropriate for the recovery of the foregoing assets.  Ex. A. at Section III.B.4.

## RELIEF REQUESTED

37.     This case involves an intersection and collision of laws, involving cases flowing independently of each other consisting of a federal civil receivership, federal criminal proceedings and a multitude of bankruptcy cases.  Each body of law suggests a method of

resolving the different and competing claims a victim or creditor may have to the same property. Each body of law concurrently has as its intended purpose a different result or remedy each was enacted to promote.  The rights and duties of all of the constituent parties necessary to reach legally mandated ends can and do conflict while attempting to reach the same ultimate purpose, to efficiently maximize the recovery for the victims and creditors of this massive fraud.  In every possible instance, the absence of coordination among the various parties in these cases will diminish the recovery of the victims and creditors of this fraud.  As a result and to the credit of all of the parties involved, this Coordination Agreement is presented to the Court as the best possible way to proceed in these cases to maximize the recovery to victims and creditors.

38.    Fraudulent schemes, and particularly Ponzi schemes, pit victim against victim because, in most instances, the funds recovered are not sufficient to satisfy the claims of all of the numerous creditors and victims.  The same is true here.  Additionally, many of the victims and creditors of the Petters Ponzi Scheme are making claims before both the Bankruptcy Court and the District Court, with resolution of such claims requiring consideration of both bankruptcy and criminal law with each having a comprehensive means for collecting and distributing assets. These multi-faceted approaches to claims, however, would strain already limited resources and cause the Trustee, Stoebner, the Receiver and the United States to expend significant resources competing against each other for many of the same assets in order to distribute such assets to predominantly the same creditors or victims.

39.    The United States, the Receiver, the Trustee and Stoebner believe that by entering into this Coordination Agreement they will maximize the recovery of assets and distributions to creditors and victims while minimizing the risks, costs and expenses of administering the receivership and bankruptcy estates.  The Coordination Agreement is in the best interests of the Petters Estates and their creditors by not having to litigate the complex issues presented in these

16

DOCS-#3246999-v3

cases.   In addition to winding down the receivership estates of Petters and the Individual Defendants, the Coordination Agreement resolves the criminal liability of PCI and PGW and forfeiture of assets and the allocation of certain costs and intercompany transfers.

**Criminal Liability and Forfeiture**

40.   In addition to resolving issues and claims regarding assets of Petters and the Individual Defendants, the Coordination Agreement also resolves outstanding criminal charges against PCI and PGW, and the allocation of certain expenses incurred to date for the benefit of the Receivership, the Petters Estates and the PBE Estates.   While the Trustee believes that court approval to appear and defend any pending action or proceeding against the debtor is not required, out of an abundance of caution, he will seek the approval of this Court to negotiate and enter plea agreements for PCI and PGW as described in the Coordination Agreement.

41.   The Debtors, as corporations, are civilly and criminally liable for the acts of their officers, agents and employees.   The evidence presented at Petters' trial and the guilty pleas of the Individual Defendants demonstrate that PCI and PGW were the legal entities through which Petters and the Individual Defendants committed their crimes.   The additional investigation conducted by the trustee and his professionals bear this out as well.   The Individual Defendants utilized PCI and PGW to fraudulently obtain and launder billions of dollars from individuals, investment groups, institutional investors and hedge funds.   Through PCI and PGW, Petters and the Individual Defendants induced investments through the use of forged documents, false financial reports and data and meaningless security agreements and other pledges of assets. Petters and the Individual Defendants caused investors to invest funds in both PCI and PGW that were simply used to repay prior investors in the Ponzi Scheme and support their lavish lifestyles. The Trustee has utilized criminal counsel employed by the Petters Estates to provide advice on matters related to criminal law.

42.    Therefore, there is little doubt that the United States could seek to forfeit or execute on the tangible or intangible assets of both the PCI Estates and the PGW Estate and their respective subsidiaries.  The Trustee believes such actions by the United States would very likely divest the Petters Estates of substantially all estate assets, greatly diminishing the potential recovery to creditors and victims as pursuit of claims would be materially impaired or claims would not be pursued, and administration of the Petters Estates could be brought to a halt.  In exchange for guilty pleas, the Coordination Agreement preserves the property of the Petters Estates through the agreement of the United States not to seek forfeiture or otherwise execute on assets of the PCI Estates, the PGW Estate and their respective subsidiaries.  This agreement with the United States also precludes forfeiture of or execution upon the Trustee's avoidances causes of action, which may have significant value to the Petters Estates and their creditors.

**Allocation of Costs and Intercompany Issues**

43.    Since commencement of the Civil and Criminal Fraud Cases, the Receiver, Trustee and Stoebner have all incurred expenses that have provided benefit to the Receivership and each of the respective bankruptcy cases, particularly the costs and expense of the forensic accounting work necessary to examine and assess the hundreds of bank accounts, tens of thousands of transactions and tens of billions of dollars of transactions that comprise the Petters Ponzi Scheme.

44.    PwC was hired by the Receiver to perform the forensic accounting analysis involving the entire Petters organization including inter-company transfers throughout that organization and transfers to and from third parties.  It would be incredibly inefficient, if not impossible, in a case of this magnitude involving what may be the, or one of the, most complex Ponzi schemes in history, and thereby necessitating one of, if not the most complex forensic projects ever undertaken, to have each one of over 100 entities owned directly and indirectly by

18

Petters separately hire a forensic accountant for each entity to compile and analyze the underlying data and produce a report, when each transaction often involved multiple entities through which funds passed.  It is for that reason, as combined with the experience and resources of PwC, that PwC was retained by the Receiver to do the forensic work on behalf of all entities.

45.    The Receiver has also advanced certain funds to the Petters Estates since the Petition Dates to cover operational expenses and otherwise allow for the administration of these estates for the benefit of victims and creditors.

46.    To date PwC expenses and operational costs of the Petters Estates have been paid from one of two sources: (a) Funds derived from collection of a note obligation payable to Central America Holdings, LLC ("CAH") (PCI is owed in excess of $15 million from CAH, and holds over 92% of the claims against CAH, its wholly owned subsidiary), or (b) from the recovery of gifts made by the Thomas J. Petters Family Foundation, an alter ego of Thomas J. Petters, or to a lesser degree by Thomas J. Petters directly.   The Coordination Agreement obviates the need for costly litigation to resolve the allocation of such costs and expenses among the Receiver, the Trustee and Stoebner and will provide demonstrable benefit to each of these estates.

47.    The Trustee and Stoebner have also agreed to the avoidance of certain intercompany transfers and other claims between the PBE Estates and the Petters Estates that the Trustee has determined have little economic value and for which no consideration was given in return.   Such agreement between the trustees avoids the unnecessary expense of litigating such claims.

48.    The Parties have extensively negotiated the terms of the Coordination Agreement for several months and have resolved the significant issues described herein in light of the risks associated with litigating such matters, and in order to avoid fact-intensive, protracted and costly

DOCS-#3246999-v3

litigation. The Trustee has evaluated the cost and expense of such litigation, as well as the extraordinary cost that would be incurred preparing for and defending PCI and PGW in the pending criminal matter and has determined, independently and upon the advise of criminal counsel retained by the Petters Estates, that such costs and expenses would be a gross waste of Petters Estates' assets and resources in light of the evidence presented by the United States in its prosecution of Petters and the guilty pleas of the Individual Defendants that PCI and PGW would be found guilty. The Coordination Agreement will avoid actual and imminent uncertainties regarding the intersection of these conflicting bodies of bankruptcy and criminal law and will allow all parties involved to move forward in a unified and coordinated manner to maximize the recovery of assets for the benefit of victims and creditors. Absent such agreement, the United States, through its power of criminal and civil forfeiture, likely would seek to forfeit all assets of the Petters Estates attributable to criminal activity.

WHEREFORE, the Trustee respectfully requests that this Court (i) authorize and approve the Trustee's entry into the Coordination Agreement; (ii) authorize the Trustee to perform according to the terms of the Coordination Agreement, including entering guilty pleas of PCI and PGW to pending criminal charges, (iii) authorize the Trustee to use property of the estate and engaging in transactions outside the ordinary course of business pursuant to 11 U.S.C. § 363(b)(1) according to the terms of the Coordination Agreement, and (iv) grant such other or further relief the Court deems just and equitable.

DOCS-#3246999-v3

DATED: August 18, 2009            **LINDQUIST & VENNUM P.L.L.P.**

By:      /e/ Daryle L. Uphoff       
Daryle L. Uphoff (#111831)
James A. Lodoen (#173605)
George H. Singer (#262043)

4200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402-2274
(612) 371-3211
(612) 371-3207 (facsimile)

**ATTORNEYS FOR
DOUGLAS A. KELLEY,
CHAPTER 11 TRUSTEE OF
PETTERS COMPANY, INC., ET AL.**

# VERIFICATION

I, Douglas A. Kelley, the duly appointed Chapter 11 Trustee in In re Petters Company, Inc., et al., declare under penalty of perjury that the facts set forth in the preceding Motion to Authorize the Trustee to (I) Enter Into and Perform According to a Coordination Agreement Among Plaintiff United States of America, the Receiver, the Chapter 11 Trustee of Petters Company, Inc., et al., and the Chapter 7 Trustee of Polaroid Corporation, et al., n/k/a/ PBE Corporation, et al., (II) Resolve Pending Criminal Charges and (III) Conduct Transactions Outside the Ordinary Course of Business are true and correct according to the best of my knowledge, information and belief.

Executed on:  __August 18, 2010__

_Douglas A. Kelley_

Douglas A. Kelley,

Chapter 11 Trustee

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | **Jointly Administered under**<br>**Case No. 08-45257** |
| Petters Company, Inc., et al., | Court File No. 08-45257 |
| Debtors. | |
| (includes: | Court Files No.'s: |
| Petters Group Worldwide, LLC; | 08-45258 (GFK) |
| PC Funding, LLC; | 08-45326 (GFK) |
| Thousand Lakes, LLC; | 08-45327 (GFK) |
| SPF Funding, LLC; | 08-45328 (GFK) |
| PL Ltd., Inc.; | 08-45329 (GFK) |
| Edge One LLC; | 08-45330 (GFK) |
| MGC Finance, Inc.; | 08-45331 (GFK) |
| PAC Funding, LLC; | 08-45371 (GFK) |
| Palm Beach Finance Holdings, Inc.) | 08-45392 (GFK) |
| | Chapter 11 Cases<br>Judge Gregory F. Kishel |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO AUTHORIZE TRUSTEE TO (I) ENTER INTO AND PERFORM ACCORDING TO A COORDINATION AGREEMENT AMONG PLAINTIFF UNITED STATES OF AMERICA, THE RECEIVER, THE CHAPTER 11 TRUSTEE OF PETTERS COMPANY, INC., ET AL., AND THE CHAPTER 7 TRUSTEE OF POLAROID CORPORATION, ET AL., N/K/A PBE CORPORATION, ET AL., (II) RESOLVE PENDING CRIMINAL CHARGES AND (III) CONDUCT TRANSACTIONS OUTSIDE THE ORDINARY COURSE OF BUSINESS**

TO:    The entities specified in Local Rule 9013-3

Douglas A. Kelley, Chapter 11 trustee ("Trustee") of the above-captioned debtors (the "Debtors"), by and through his legal counsel, respectfully submits this Memorandum in Support of his verified Motion to Authorize the Trustee to (I) Enter Into and Perform According to a Coordination Agreement Among Plaintiff United States of America, the Receiver, the Chapter 11 Trustee of Petters Company, Inc., et al., and the Chapter 7 Trustee of Polaroid Corporation, et

al., n/k/a/ PBE Corporation, et al., (II) Resolve Pending Criminal Charges and (III) Conduct Transactions Outside the Ordinary Course of Business.  Capitalized terms not otherwise defined herein shall have the meanings given to such terms in the motion filed in connection herewith (the "Motion"), unless the context requires otherwise.

## FACTS

The factual basis for this Memorandum is set forth in the verified Motion and is incorporated as though fully set forth herein.

## LEGAL ARGUMENT

As Judge Rakoff keenly observed in *United States v. Dreier*, 682 F. Supp. 2d 417 (S.D.N.Y. 2010), "[a]n under-appreciated evil of substantial frauds … is how they pit their victims against one another." *Id.* at 418.  "Where, as here, the funds remaining after the fraud is uncovered are insufficient to make whole … numerous victims and creditors…" *Id.*  "In this case, moreover, resolution of these competing claims involves consideration of three bodies of law-criminal law, securities law, and bankruptcy law-that cannot always be reconciled without some friction." *Id.*  "For some time now, it has been evident to this Court in presiding over the criminal action against Dreier, and to the judges presiding over the civil enforcement action brought against Dreier by the Securities and Exchange Commission and the bankruptcy proceedings involving the estates of Dreier and his law firm, Dreier LLP, that these inherent tensions are best addressed through coordination and cooperation by all concerned." *Id.*  Judge Rakoff's words ring as true in these instant cases arising out of the fraud and Ponzi Scheme perpetrated by Petters and the Individual Defendants as they did in the Dreier Ponzi scheme case.

The Bankruptcy Code is a finely-tuned mechanism for the "comprehensive means of collecting and distributing assets." *United States v. Frykholm*, 362 F.3d 413, 417 (7th Cir. 2004) (Easterbrook, J.).  While forfeiture is an effective means to recover assets, the Bankruptcy Code

2

"provide[s] a superior way to marshal … assets and distribute them to creditors." *Id*.  Indeed, the

Trustee, in the absence of this Coordination Agreement, must "resist[] any effort by the United

States to seize the assets of [the Petters Estates] through remedies ancillary to the criminal

process, at least until there is a residuum-surplus remaining after satisfaction of all claims

through the vehicle of these cases, in accordance with bankruptcy law." *In re Petters Company,

Inc.*, 401 B.R. 391, 409 (Bankr. D. Minn. 2009).  The efforts of the United States, the Receiver,

the Trustee and Stoebner have ensured this result with an eye toward minimizing cost and

expense to the receivership and bankruptcy estates by entering into this Coordination Agreement.

## A.     APPROVAL OF COMPROMISE AGREEMENTS

Settlements and compromises are "a normal part of the process of reorganization."

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414,

424 (1968) (quoting *Case v. Los Angeles Lumber Prods. Co.,* 308 U.S. 106, 130 (1939)).  Rule

9019(a) provides that "[o]n motion by the trustee and after notice and a hearing, the court may

approve a compromise or settlement."  Fed. R. Bankr. P. 9019.  Settlement agreements are

generally encouraged and favored by the courts and "[i]n the absence of mistake or fraud, a

settlement agreement will not be lightly set aside." *Justine Realty Co. v. American Nat'l Can

Co.*, 976 F.2d 385, 391 (8th Cir. 1992).

The standard by which courts evaluate a proposed compromise and settlement is well-

established.  In granting a motion pursuant to Rule 9019(a), a court must find that the proposed

settlement is fair and equitable and is in the best interests of the estate.  *See Anderson,* 390 U.S.

at 424 (1968).  The decision to approve a particular settlement lies within the sound discretion of

the Bankruptcy Court.  *ReGen Capital III, Inc. v. Official Committee of Unsecured Creditors (In

re Trism, Inc.),* 282 B.R. 662, 667 (8th Cir. B.A.P. 2002).  Under the well-established standard

for consideration of the merits of a settlement, a settlement should be approved unless it "falls

below the lowest point in the range of reasonableness." *In re Apex Oil Co.*, 92 B.R. 847, 867 (Bankr. E.D. Mo. 1988) (citing *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983), *cert. denied*, 464 U.S. 822 (1983)); *Nellis v. Shugrue*, 165 B.R. 115, 122 (S.D.N.Y. 1994) (citing same).

In determining whether a settlement is within the "range of reasonableness," the Court should consider several factors, including:  (a) the probability of success in litigation; (b) the difficulties in collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors, and (e) whether conclusion of the litigation promotes the integrity of the judicial system.  *In re Hancock-Nelson Mercantile Co., Inc.*, 95 B.R. 982, 990 (Bankr. D. Minn. 1989) (citing *Drexel v. Loomis,* 35 F.2d 800, 806 (8th Cir. 1929)); *Anderson*, 390 U.S. at 424; *In re Trism, Inc.,*  282 B.R. at 667; *In re Farmland Industries, Inc.*, 289 B.R. 122, 127 (8th Cir. B.A.P. 2003).  A court does not substitute its judgment for that of the trustee or require that the proposed settlement be the best possible settlement obtainable; instead, a court must determine whether the proposed settlement "falls below the lowest point in the realm of reasonableness."  *In re Hanson Indus., Inc.*, 88 B.R. 942, 945 (Bankr. D. Minn. 1988) (quoting *In re Bell & Beckwith*, 77 B.R. 606, 612 (Bankr. N.D. Ill. 1987)).   These factors seek to balance the probable benefit and potential cost of pursuing a claim or defense against the costs of the proposed settlement.  Finally, in making the determination of whether the proposed settlement is fair and equitable, the bankruptcy court may consider the opinions of the trustee or debtor-in-possession.  *Nellis*, 165 B.R. at 122; *In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993).

Here, all of the factors lie in favor of authorizing the Trustee to enter the Coordination Agreement.  The Trustee believes the Coordination Agreement entered by and among the United States, the Receiver, the Trustee and Stoebner is in the best interests of the Petters Estates and

4

their creditors.  The Coordination Agreement resolves significant claims against, and preserves assets of, the Petters Estates, including the potential for such assets to be divested from the bankruptcy estates through the power of the United States to forfeit or otherwise execute on the assets of these bankruptcy estates, and appropriately accounts for the risks associated with litigating such matters that will maximize the recovery of funds for the benefit of creditors and victims.

The Coordination Agreement also will minimize the costs and expenses necessary to administer these estates by avoiding unnecessary fact-intensive, protracted and costly litigation, not only civilly, but also including the extraordinary cost that would be incurred preparing for and defending PCI and PGW, which should not be incurred in light of the compelling evidence presented against them.

### 1.    Trustee Is Authorized to Enter Pleas for Debtors

"As an inanimate entity, a corporation must act through its agents," and such actions "must necessarily be undertaken by individuals empowered to act on behalf of the corporation." *Commodity Futures Trading Commission v. Weintraub*, 471 U.S. 343, 348 (1985).  For a solvent corporation, the power to act for a corporation "rests with the corporation's management and normally exercised by its officers and directors."  *Id.*  For an insolvent corporation, however, it is the trustee who is vested with the power to act for the corporation.  *Id.*, See also 11 U.S.C. § 323 (the Trustee "is the representative of the estate").  The Bankruptcy Rules, in implementing § 323, provide that:

> [w]ith or without court approval, the trustee or debtor in possession may prosecute or may enter an appearance and defend any pending action or proceeding by or against the debtor, or commence and prosecute any action or proceeding on behalf of the estate before any tribunal.

Fed. R. Bankr. P. 6009.  As a result, it is the Trustee who is the agent to represent PCI and PGW in these bankruptcy cases, as well as the pending criminal case.

5

As the *Weintraub* Court noted, the Bankruptcy Code gives the trustee wide-ranging management authority over the debtor, and it noted that "Congress contemplated that when a trustee is appointed, he assumes control of the business, and the debtor's directors are "completely ousted." 471 U.S. at 352-53. Courts have held that a bankruptcy trustee may waive or invoke the constitutional rights of a debtor.  *Id.* at 358 (attorney-client privilege); *United States v. Patrick*, 916 F. Supp. 567, 571 (N.D. West Va. 1996) (a bankruptcy trustee may consent to a search of corporate debtor's property); *Krystal Jeep Eagle, Inc. v. Bureau of Prof'l and Occupational Affairs*, 725 A.2d 846, 849 (approving trustee entering a plea of nolo contendere for the express purpose of avoiding time and expense it would have taken to defend the charges at trial).

When a trustee is appointed in bankruptcy and where there is no other person to act on behalf of the Debtors, as in *Weintraub*, the Trustee may act on behalf of the Debtor, including waiving or invoking the constitutional rights of the debtor, including pleading a debtor corporation guilty, subject to approval of the Court.  The Trustee soon will be seeking approval of this Court to enter guilty pleas for PCI and PGW pursuant to plea agreements with the United States.

**2.    Coordination Agreement Preserves Assets of Debtors from Civil and Criminal Forfeiture**

A corporation is criminally responsible for the "acts of its officers, agents, and employees committed within the scope of their employment and for the benefit of the corporation." *U.S. v. Jorgensen*, 144 F.3d 550, 560 (8th Cir. 1998) (quoting *United States v. Richmond,* 700 F.2d 1183, 1195 n. 7 (8th Cir. 1983), *abrogated on other grounds*, *United States v. Raether*, 82 F.3d 192 (8th Cir. 1996)).

The evidence presented at Petters' trial demonstrates that prior to the appointment of the Receiver, Petters and the Individual Defendants, as officers, agents or employees of the

corporation, caused PCI's and PGW's crimes to be committed.  Here, PCI and PGW are not separate participants in the Ponzi Scheme, but were the legal entities and instrumentalities through which Petters, as sole owner and chairman, and the Individual Defendants committed crimes to which they have either pled guilty or been found guilty at trial.  *See United States v. Stolee*, 172 F.3d 630, 631 (8th Cir. 1999).  Arguments that Petters and the Individual Defendants did not use PCI and PGW to conduct the Ponzi Scheme are not based in fact and are without merit.

Under the relation-back doctrine set forth in 21 U.S.C. § 853(c), "title to the forfeited property vests in the United States at the time of the defendant's criminal act." *United States v. Timley*, 507 F.3d 1125, 1130 (8th Cir. 2007); *United States v. Lavin,* 942 F.2d 177, 185 (3d Cir. 1991); *United States v. Harris,* 246 F.3d 566, 575 (6th Cir. 2001); *United States v. Emerson*, 128 F.3d 557, 567, n. 5 (7th Cir. 1997) ("Once the Government wins a judgment of forfeiture, the relation-back doctrine provides that the right, title and interest in the forfeited property vests in the United States at the time the Defendant committed the offense that gives rise to the forfeiture.").

Specifically, "[a]ny person, other than the defendant, asserting a *legal interest* in property which has been ordered forfeited to the United States pursuant to this section may ... petition the court for a hearing to adjudicate the validity of his alleged interest in the property." *U.S. v. Timley*, 507 F.3d at 1129 (emphasis added).  Thus, under both § 853 and Fed. R. Crim. P. 32.2, "a party seeking to challenge the government's forfeiture of money or property used in violation of federal law must first demonstrate [a legal] interest in the seized item sufficient to satisfy the court of its standing to contest the forfeiture." *Id.*  (quoting *United States v. Three Hundred Sixty Four Thousand Nine Hundred Sixty Dollars ($364,960.00) in U.S. Currency,* 661 F.2d 319, 326 (5th Cir. 1981)).

7

The legal interest required to create standing to bring a claim in a Rule 32.2 ancillary proceeding is not defined in 21 U.S.C. § 853(n)(2). The Eighth Circuit, however, has defined a "legal interest" as an interest that has its origin in the principles, standards, and rules developed by courts of law as opposed to courts of chancery and "encompasses only legally protected rights, not equitable rights." *Timley*, 507 F.3d at 1129. Subject to certain exceptions, the bankruptcy estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The trustee also has the rights and powers of a lien creditor and a bona fide purchaser of real property from the debtor. 11 U.S.C. § 544(a).

As a consequence of the preliminary order of forfeiture, title in the seized assets vested in the government as of the date of the predicate criminal acts. 21 U.S.C. § 853(c); *United States v. Zaccagnino,* 2006 WL 1005042, at *3-4 (C.D. Ill. Apr. 18, 2006) ("where the Government has asserted an interest in the money and the relation-back doctrine requires the Court to find that Government's interest vested prior to the creation of the estate, the result is that the bankruptcy estate never properly had title to the money."). Because the predicate criminal acts of Petters, PCI and PGW predated the commencement of the bankruptcy cases, absent the Coordination Agreement, the debtors and the Trustee ceased to have a legal interest in the seized assets prior to the commencement of the bankruptcy cases.

"By stating that '[t]he court, in imposing sentence on a person convicted" of a money laundering offense, shall forfeit property involved in the offense, Congress indicates that forfeiture under the money laundering provision is also a sentencing sanction, not an offense or element of an offense. Therefore, the preponderance standard of proof applies to forfeiture under 18 U.S.C. § 982(a)(1) as well as under section 853(a)(2)." *United States v. Myers*, 21 F.3d 826, 829 (8th Cir. 1994). Given the conviction of Petters and the Individual Defendants' guilty pleas,

the District Court is likely to conclude the assets of PCI and PGW are forfeitable proceeds of

Petters and the Individual Defendants' criminal activities, vesting title in the United States, and,

absent the Coordination Agreement, causing PCI, PGW to have such assets be removed from

being property of the respective bankruptcy estates.

Here, however, the Coordination Agreement provides that the assets of the Petters Estates

will remain property of the bankruptcy estates, and these estates will not be divested of their

assets due to civil or criminal forfeiture proceedings.

## B.    USE OF PROPERTY OUTSIDE THE ORDINARY COURSE

In pertinent part, § 363(b) provides that "[t]he trustee, after notice and a hearing, may

use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C.

§ 363(b)(1).  In determining whether to authorize the use, sale or lease of property of the estate

under this section, courts require the debtor to show that a sound business purpose justifies such

actions. *See, e.g., In re Schipper,* 933 F.2d 513, 515 (7th Cir. 1991); *In re Channel One

Communications*, 117 B.R. 493, 496 (Bankr. E.D. Mo. 1990) (applying the sound business

purpose test of *In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983)).

In evaluating whether a sound business purpose justifies the use, sale or lease of property

under § 363(b), courts consider a variety of factors, which essentially represent a "business

judgment test."  *See* Collier on Bankruptcy ¶ 363.02 (15th rev. ed. 2008). In *In re Lionel Corp.,*

the Court of Appeals for the Second Circuit listed several factors which a bankruptcy court may

consider in its § 363(b) analysis.  Specifically confronted with the sale of assets under § 363(b),

the Second Circuit stated:

> In fashioning its findings, a bankruptcy judge must not blindly follow the hue and
> cry of the most vocal special interest groups; rather, he should consider all salient
> factors pertaining to the proceeding and, accordingly, act to further the diverse
> interests of the debtor, creditors and equity holders, alike. He might, for example,
> look to such relevant factors as the proportionate value of the asset to the estate
> as a whole, the amount of elapsed time since the filing, the likelihood that a plan

9

of reorganization will be proposed and confirmed in the near future, the effect of the proposed disposition on future plans of reorganization, the proceeds to be obtained from the disposition vis-a-vis any appraisals of the property, which of the alternatives of use, sale or lease the proposal envisions, and most importantly perhaps, whether the asset is increasing or decreasing in value.

722 F.2d at 1071. In delineating these factors, the Second Circuit cautioned that "this list is not intended to be exclusive, but merely to provide guidance to the bankruptcy judge." *Id.*

Here, the Trustee believes sound business justification exists to enter the Coordination Agreement under terms and for the reasons described in the Motion.

## CONCLUSION

Here, the Coordination Agreement is in the best interests of these estates and their creditors because it resolves significant claims, preserves assets and claims from potential forfeiture and minimizes the expense of administering these estates. The Trustee believes the Coordination Agreement properly balances the retention of estate assets with the potential for forfeiture by the United States of those same estate assets and in light of the risks associated with litigation of these claims. Therefore, the costs and expenses associated with further litigation to decide these issues would be wasteful and unnecessary. *See Smith v. Mark Twain National Bank*, 805 F.2d 278, 288 (8th Cir. 1986). Additionally, the Coordination Agreement was the product of a multi-party negotiation in which all parties actively participated and resulted in an agreement where all parties made concessions and compromises in order to reach a consensual resolution of these disputed claims.

WHEREFORE, the Trustee respectfully requests that the Court enter an order (i) authorize and approve the Trustee's entry into the Coordination Agreement; (ii) authorize the Trustee to perform according to the terms of the Coordination Agreement, including entering guilty pleas of PCI and PGW to pending criminal charges, (iii) authorize the Trustee to use property of the estate and engaging in transactions outside the ordinary course of business

10

pursuant to 11 U.S.C. § 363(b)(1) according to the terms of the Coordination Agreement, and

(iv) grant such other or further relief the Court deems just and equitable.


DATED: August 18, 2009              **LINDQUIST & VENNUM P.L.L.P.**


                                    By:  ____/e/ Daryle L. Uphoff_____
                                    Daryle L. Uphoff (#111831)
                                    James A. Lodoen (#173605)
                                    George H. Singer (#262043)


                                    4200 IDS Center
                                    80 South Eighth Street
                                    Minneapolis, MN 55402-2274
                                    (612) 371-3211
                                    (612) 371-3207 (facsimile)

                                    **ATTORNEYS FOR
                                    DOUGLAS A. KELLEY,
                                    CHAPTER 11 TRUSTEE OF
                                    PETTERS COMPANY, INC., ET AL.**

11

# Exhibit A

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 08-CV-5348 (ADM/JSM) |
| | ) | |
| THOMAS JOSEPH PETTERS, et al.; | ) | |
| | ) | |
| Defendants. | ) | |

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | **Jointly Administered under**<br>**Case No. 08-45257** |
| | |
| Petters Company, Inc., et al., | Court File No. 08-45257 |
| | |
| Debtors. | |
| | Court Files No.'s: |
| (includes: | |
| Petters Group Worldwide, LLC; | 08-45258 (GFK) |
| PC Funding, LLC; | 08-45326 (GFK) |
| Thousand Lakes, LLC; | 08-45327 (GFK) |
| SPF Funding, LLC; | 08-45328 (GFK) |
| PL Ltd., Inc.; | 08-45329 (GFK) |
| Edge One LLC; | 08-45330 (GFK) |
| MGC Finance, Inc.; | 08-45331 (GFK) |
| PAC Funding, LLC; | 08-45371 (GFK) |
| Palm Beach Finance Holdings, Inc.) | 08-45392 (GFK) |
| | |
| | Chapter 11 Cases |
| | Judge Gregory F. Kishel |

| | |
|---|---|
| In re: | **Jointly Administered Under**<br>**Case No. 08-46617** |
| | |
| Polaroid Corporation, et al., | 08-46617 (GFK) |
| | |
| Debtors. | |
| | Court Files No.'s: |
| (includes: | |
| Polaroid Holding Company; | 08-46621 (GFK) |
| Polaroid Consumer Electronics, LLC; | 08-46620 (GFK) |

Polaroid Capital, LLC;                                      08-46623 (GFK)
Polaroid Latin America I Corporation;                       08-46624 (GFK)
Polaroid Asia Pacific LLC;                                  08-46625 (GFK)
Polaroid International Holding LLC;                          08-46626 (GFK)
Polaroid New Bedford Real Estate, LLC;                      08-46627 (GFK)
Polaroid Norwood Real Estate, LLC;                          08-46628 (GFK)
Polaroid Waltham Real Estate, LLC)                          08-46629 (GFK)

Chapter 7 Cases
Judge Gregory F. Kishel

## COORDINATION AGREEMENT
## AMONG
## PLAINTIFF UNITED STATES OF AMERICA,
## THE RECEIVER, CHAPTER 11 TRUSTEE OF PETTERS GROUP WORLDWIDE,
## LLC, CHAPTER 11 TRUSTEE OF PETTERS COMPANY, INC., ET AL., AND
## CHAPTER 7 TRUSTEE OF POLAROID CORPORATION, ET AL. N/K/A PBE
## CORPORATION, ET AL.

WHEREAS, on October 6, 2008, Plaintiff United States of America, in support of a criminal investigation, sought an asset freeze and receivership under the Anti-Fraud Injunction Act, 18 U.S.C. § 1345, for the benefit of the victims of a massive fraud that took place at Petters Group Worldwide, LLC ("PGW") and Petters Company, Inc. ("PCI"), two of the defendants in the receivership civil action;

WHEREAS, for purposes of this agreement, the term "Individual Defendant" or collectively, "Individual Defendants," shall include Thomas Joseph Petters, Deanna Coleman, Robert White, James Wehmhoff, Larry Reynolds dba Nationwide International Resources, Michael Catain dba Enchanted Family Buying Company, and business entities owned or controlled by Thomas Joseph Petters except those entities in pending bankruptcy proceedings jointly administered in Bankruptcy Case Nos. 08-45257 and 08-46617 and all direct and indirect subsidiaries of such entities;

WHEREAS, based upon the conviction of Thomas J. Petters, and the guilty pleas of Individual Defendants, the United States holds the statutory authority to forfeit proceeds of fraud, and assets involved in or traceable to money laundering, including assets held by third parties, in accordance with 18 U.S.C. §§ 981 and 982, and contends that said authority vests in the United States the power to forfeit and seize all or substantially all of the assets of PGW and PCI upon conviction for the crimes now alleged against them, including assets of their subsidiaries, including but not limited to the bankruptcy estates of Polaroid Corporation, et al., n/k/a PBE Corporation, et al., jointly administered under Case No. 08-46617 ("PBE Estates");

2

WHEREAS, for purposes of the civil action commenced by the United States, the Court appointed Douglas A. Kelley as receiver (the "Receiver") on October 6, 2008 over companies directly or indirectly 100% owned or controlled by Thomas Joseph Petters, including PCI and PGW, as well as their respective subsidiaries, and as receiver on October 14, 2008 over the Individual Defendants who have all now either been convicted or have pleaded guilty in federal court of criminal offenses;

WHEREAS, in accordance with his power as the Receiver, on and after October 11, 2008, Kelley caused PCI and subsidiary and affiliated entities, including but not limited to PC Funding, LLC, Thousand Lakes, LLC, SPF Funding, LLC, PL Ltd., Inc., Edge One LLC, MGC Finance, Inc., PAC Funding, LLC, Palm Beach Finance Holdings, Inc. (collectively "PCI Estates") and PGW to file for bankruptcy protection under Chapter 11 ("PGW Estate"), and caused the entities comprising the PBE Estates to file for bankruptcy protection under Chapter 11;

WHEREAS, the Office of the United States Trustee appointed, and thereafter, the United States Bankruptcy Court approved, Kelley to act as Chapter 11 Trustee for the PCI Estates and for the PGW Estate (in such capacity "Trustee"), and upon conversion to Chapter 7, John R. Stoebner to act as Chapter 7 Trustee for the PBE Estates (in such capacity "Stoebner");

WHEREAS, Thomas J. Petters ("Petters") has been convicted and sentenced, and the United States and the Receiver expect Individual Defendants to be sentenced within the next months;

WHEREAS, the United States, Kelley, as the Receiver and Trustee, and Stoebner seek to maximize recovery to victims and creditors and minimize receivership and bankruptcy expenses through the coordination of their respective efforts for the victims and creditors;

WHEREAS, to date, the United States Attorney's Office has sought to forfeit certain assets owned by Individual Defendants, and will seek to return the proceeds of forfeited assets to victims pursuant to Part 9 of Title 28, Code of Federal Regulations;

WHEREAS, there is a significant overlap of identity between victims of the fraud and creditors of the PCI Estates and the PGW Estate, and competing litigation would result in the overall diminishment of the recovery for victims and creditors alike and undue delay in the distribution of assets;

WHEREAS, the United States and Kelley, acting in his capacities as the Receiver and as Trustee, and Stoebner desire to compromise and resolve their respective claims to property subject to the Court's Preliminary Order of Forfeiture and property of the receivership and bankruptcy estates;

WHEREAS, Kelley, as Receiver, requires that this Coordination Agreement be contingent upon judicial approval of the Agreement in the receivership action;

3

WHEREAS, Kelley, as the Chapter 11 Trustee of the PCI Estates and the PGW Estate, and Stoebner, as the Chapter 7 Trustee of the PBE Estates, require that this Coordination Agreement be contingent upon judicial approval of the Agreement in their respective bankruptcy cases;

THEREFORE, Plaintiff United States, Douglas A. Kelley, as the Receiver and Trustee, and John R. Stoebner, Trustee for the PBE Estates, agree as follows:

I.   RECEIVERSHIP WIND DOWN PLAN FOR INDIVIDUAL DEFENDANTS

    A.   The Receiver and the United States Attorney's Office will jointly identify all unliquidated assets personally owned by each Individual Defendant.

        1.   The Receiver will provide the United States Attorney's Office with a schedule for each defendant of all identified assets personally owned by each Individual Defendant.

        2.   The Receiver will provide the United States Attorney's Office with access to all information, documentation and analysis, including the work performed by PricewaterhouseCoopers ("PWC"), addressing the assets personally owned by the Individual Defendants.

        3.   The government will provide the Receiver/Trustee access to information consistent with its discovery obligations to the extent possible to assist in the recovery of assets for victims and creditors, subject to the interests of ongoing government investigations and the constraints set forth in Federal Rule of Criminal Procedure 6(e) and otherwise.

    B.   Unless the United States Attorney's Office and the Receiver agree otherwise, the parties agree that the assets owned by the Individual Defendants shall be addressed in the following manner:

        1.   Assets Owned Wholly by an Individual Defendant. The parties agree that the United States Attorney's Office will execute on or will forfeit the individual assets personally owned by such defendant and will seek to liquidate those assets for the benefit of the victims through remission of assets.

            a.   Corporate Ownership Interests. The parties agree that the United States Attorney's Office will execute on or will forfeit the corporate ownership interests of such Individual Defendant, other than as provided in Section I.B.1.b., and the United States will seek to liquidate those assets for the benefit of the victims through remission of assets.

            b.   Petters' Ownership Interest in Bankruptcy Entities. As part of this agreement, and in exchange for the consideration set forth herein, the United States agrees not to forfeit or to execute on defendant

4

Petters' direct or indirect ownership interests in the PCI Estates, the PGW Estate, Petters Capital, LLC, Petters Aviation, LLC, or their subsidiaries (including subsidiaries of subsidiaries), to the extent agreed upon in Section II.C.

2.   Assets Subject to Third-Party Claims. The parties agree that the United States Attorney's Office will forfeit assets owned by the Individual Defendants jointly with third parties or those Individual Defendant assets that are subject to third-party claims (such as security interests), or will otherwise execute on the Individual Defendant's interest, and will seek to liquidate those assets for the benefit of the victims.

3.   Assets Transferred to Third Parties.

   a.   Individual Defendant Transfers.  Subject to the following paragraph, unless the United States Attorney's Office and the Receiver agree otherwise, the parties agree that the United States Attorney's Office will use its forfeiture or other authority to recover assets transferred by the Individual Defendants to third parties, and will seek to return the proceeds of the forfeited or recovered assets for the benefit of the victims through remission of assets.

   b.   Charitable Donations. The United States and the Receiver acknowledge that demands previously have been made by the Receiver, and that additional demands will be made, on behalf of Individual Defendants, Thomas J. Petters Family Foundation or other Receiver entities against entities or individuals including certain religious, charitable, educational and/or political institutions for the return of donations and gifts. The parties agree that the return of such funds may be used for the satisfaction of professional fees and expenses incurred by the receivership and for the benefit of the victims, as approved by the Court in which the receivership is pending.

   c.   All funds recovered by the Receiver or Trustee from charitable donations made by the Individual Defendants pursuant to the preceding paragraph shall be transferred to the United States pursuant to paragraph I.B.4. below, after the Receiver's fees and expenses are covered.  All funds recovered by the Receiver from charitable donations made by any other person or entity except the Individual Defendants shall be administered by Kelley as Receiver and/or Trustee, as applicable under paragraph III.B.2., after the Receiver's fees and expenses are covered.

4.    Assets Subject to Forfeiture. Upon the entry of a court order directing that assets may be seized or restrained by the United States, directing the forfeiture of assets, or otherwise directing the Receiver to turn over assets, the Receiver shall turn over the assets to the United States as directed in the order. Any unresolved claims to the assets will be addressed in the criminal case pursuant to Fed. R. Crim. P. 32.2, or in the civil forfeiture proceedings. The government will seek to return the proceeds of forfeited assets to victims pursuant to the remission process under the provisions of Title 28, Code of Federal Regulations, Part 9.

5.    Subsequently Obtained Assets. If, following the transfer of an Individual Defendant's assets by the Receiver, the Receiver comes into possession of additional assets owned by an Individual Defendant, the Receiver shall transfer funds or transfer property to the United States for liquidation for the benefit of the victims through remission of assets.

C.    Based on the pending criminal sentencings and the wind down plan set forth herein, the United States and the Receiver expect that receivership expenses will diminish and will substantially cease following the sentencing of the last Individual Defendant. The United States does not expect to recommend significant receivership fees following the sentencing of the last Individual Defendant; provided that the United States and the Receiver recognize that under this Agreement, the parties may agree the Receiver should take on additional responsibilities if such efforts are in the best interest of the victims in which case additional receivership fees will be incurred and recommended by the United States. The Receiver agrees to use his best efforts to minimize fees and costs incurred by the receivership estate subject to the performance of his duties and the discharge of his responsibilities pursuant to court order, and to use his best efforts to utilize the United States Bankruptcy Court and his position as Trustee to maximize recovery to creditors.

D.    In exchange for the consideration set forth herein, and in an effort to maximize coordination and minimize unnecessary cost and undue delay, Kelley, as Trustee of the PCI Estates and of the PGW Estate, and other than as expressly provided in this Agreement, agrees to relinquish claims to the assets covered in Section I of this Agreement and agrees to execute releases as are necessary and appropriate for the recovery and distribution of the foregoing assets pursuant to Section I.

II.    CORPORATE CRIMINAL LIABILITY AND FORFEITURE

A.    On December 1, 2008, a United States Grand Jury returned an indictment against PCI and PGW for their respective criminal conduct in furthering a $3.7 billion fraud. Those charges remain pending against PCI and PGW.

B.    As part of this agreement, and in an effort to avoid undue and wasteful litigation expenses, and in light of the overwhelming evidence already adduced by the government in the trial of Thomas Joseph Petters, Kelley, as Trustee, agrees that

6

PCI and PGW will seek Bankruptcy Court approval to enter guilty pleas pursuant to the plea agreements.

C.      In exchange for the guilty pleas and the other consideration set forth herein, the United States agrees, unless otherwise agreed by Kelley, as the Receiver or as Trustee, and the United States, (i) not to seek forfeiture of assets (tangible or intangible) and (ii) not to otherwise execute on assets (tangible or intangible), owned by the PCI Estates and the PGW Estate, and their respective subsidiaries (including subsidiaries of subsidiaries) including but not limited to actions (and proceeds therefrom) brought (i) for the return of corporate assets, (ii) on behalf of the PCI Estates and the PGW Estate against professionals, and (iii) for the return of false profits or other clawback or avoidance claims, including principal from a purported loan to, or investment in any entity comprising the PCI Estates or the PGW Estate, or any corporate affiliates, provided that such assets are distributed as part of a bankruptcy proceeding overseen by the Office of the United States Trustee and subject to the approval and adjudication of the United States Bankruptcy Court. Except as provided in Section I of this Agreement and unless the trustee of the following respective bankruptcy estates agrees otherwise, the United States further agrees not to seek forfeiture of assets (tangible or intangible) of the PBE Estates, Petters Capital, LLC bankruptcy estate, Petters Aviation, LLC bankruptcy estate, or any of their subsidiaries (including subsidiaries of subsidiaries), including but not limited to actions (and proceeds therefrom) brought (i) for the return of corporate assets, (ii) against professionals, and (iii) for the return of false profits or other clawback or avoidance claims, including principal paid on a purported loan or investment.

III.    BANKRUPTCY ESTATES

A.      Allocation of cost and Intercompany Issues. Kelley, as the Receiver and Trustee, and Stoebner agree that as of July 1, 2010, all expenses incurred for the benefit of the bankruptcy estates, whether such expenses are incurred for the benefit the PCI Estates, PGW Estate or PBE Estates, directly, or for the benefit of any subsidiary (whether or not such subsidiary is itself in bankruptcy), the value of which will inure to the benefit of the bankruptcy estates, will be submitted in the bankruptcy proceedings in accordance with the applicable provisions of the Bankruptcy Code, Federal Bankruptcy Rules and Local Rules, for review, approval and payment.

1.      Kelley, as the Receiver and Trustee, and the United States, acknowledge and agree that while some of the receivership expenses incurred prior to May 1, 2010, particularly those related to professionals, will inure in part to the benefit of the PCI Estates and the PGW Estate, such expenses may be paid from the receivership.

2.      PricewaterhouseCoopers Expenses. The Receiver retained PWC to provide certain services for the benefit of a number of entities including the PBE Estates. Receiver has requested that he be allowed a Chapter 7 and Chapter 11 administrative expense claim in the PBE Estates

7

Bankruptcy proceeding with respect to the fees and expenses of PWC that relate to the PBE Estates. Kelley, as the Receiver, and Lindquist & Vennum as Chapter 11 counsel to the PBE Estates and special counsel to the Chapter 7 Trustee of the PBE Estates, have represented that they believe that the PBE Estates have received the benefit of at least $852,620.00 of accounting services and investigation performed by PWC for which the receivership has or will pay PWC for the period December 18, 2008 to June 30, 2010. Stoebner and Receiver stipulate to the allowance of the following administrative expense claims:

a.    For Kelley as the Receiver, in the amount of $298,972.48 as an allowed Chapter 11 Administrative expense claim.

b.    For Kelley as the Receiver, in the amount of $553,647.52 as a Chapter 7 Administrative expense claim. Subject to subparagraph 3(c) below, this claim will be paid by Stoebner upon Bankruptcy Court approval of this Agreement and subject to the availability of funds pursuant to future cash collateral orders in the PBE Estates cases.

The payments and provisions as outlined in this paragraph, are subject to Court approval of this Agreement by both the Bankruptcy Court in the Polaroid Corporation bankruptcy proceeding, BKY No. 08-46617 and the U.S. District Court in Civ. No. 09-CV-5348.

3.    $500,000 Held in Trust Account. The PBE Estates advanced the sum of $500,000 to Kelley as the Receiver on December 18, 2008. The response to Question 10 of the Statement of Financial Affairs in the PBE Corporation Bankruptcy Proceeding 08-46617 states, "Prior to petition, $500,000 payment was made with the approval of the Honorable Ann D. Montgomery, U.S. District Court Judge for the District of Minnesota, as Polaroid Corporation's equitable share of receivership expenses in Civ. No. 09-CV-5348 (ADM/JSM). These funds are presently held in trust by Kelley, Wolter & Scott pending further direction from Judge Montgomery." Stoebner and Kelley as Receiver stipulate that the $500,000 is property of the PBE Estates. Kelley, as the Receiver and Lindquist & Vennum as Chapter 11 and Chapter 7 counsel for the PBE Estates, represent that $407,761.82 of the $500,000 payment was a fair and equitable approximation of the costs and fees incurred by the receivership on behalf of Polaroid Corporation prior to the Polaroid Corporation's Chapter 11 petition having been filed. Upon Court approval Kelley shall be authorized to:

a.    Reimburse the receivership in the amount of $407,761.82 as and for the expenses and fees incurred prior to December 18, 2008 described below:

8

          i.     PricewaterhouseCoopers in the amount of $5,953.29

          ii.    Lindquist & Vennum in the amount of $258,048.25

          iii.   FTI in the amount of $7,953.00

          iv.   Kelley, Wolter & Scott in the amount of $135,807.28

b.     Apply $32,343.32 in payment towards the Chapter 11 Administrative expense claim described in subparagraph 2a. above.

c.     Apply $59,894.86 in payment towards the Chapter 7 Administrative expense claim described in subparagraph 2b above.

The payments and provisions as outlined in this paragraph, are subject to Court approval of this Agreement by both the Bankruptcy Court in the Polaroid Corporation bankruptcy proceeding, BKY No. 08-46617 and the U.S. District Court in Civ. No. 09-CV-5348.

4.     The receivership has advanced funds to the PCI Estates and the PGW Estate since October 2008, to cover operational expenses of the PCI Estates and the PGW Estate to maximize the estates for the benefit of the victims and creditors. The receivership will waive any claim to the return of such funds as ordinary course loans, or upon any other theory.

5.     Stoebner has demanded that the PGW Estate return shares of PWB Health Limited and Wideblue Limited to the PBE Estate which Stoebner asserts were transferred to PGW in May 2008 for no consideration. Stoebner and the PGW Estate agree to resolve this demand by the PGW Estate assigning any interest in the shares and any other obligations of PWB Health Limited or Wideblue Limited to the PBE Estates.

6.     Pursuant to a Settlement Agreement made and entered into as of January 1, 2008, Polaroid Holding Company and PGW resolved a claim against Lawrence Harmer in exchange for a promissory note in the amount of $5,080,099.80, payable from Harmer to PGW. Stoebner has demanded that the PGW Estate assign its interest in the promissory note to Stoebner, asserting that PGW provided no value for any interest in the note. Stoebner and the PGW Estate agree to resolve this demand by the PGW Estate assigning, to Stoebner upon the request of Stoebner, any interest in the note or proceeds derived therefrom.

B.     Third-Party Litigation.

1.     Kelley, as the Receiver and Trustee, agrees that all fees and expenses arising on and after May 1, 2010, from litigation and claims by the PCI Estates or the PGW Estate, or their subsidiaries (including subsidiaries of subsidiaries), including but not limited to actions brought for the return of corporate assets, actions brought on behalf of the PCI Estates or the PGW

Estate against professionals, current or former employees, and actions for the return of false profits or other clawback or avoidance claims, including principal from a purported loan to, or investment in any entity comprising the PCI Estates or the PGW Estate (or any corporate affiliates), including cases in which parallel claims are brought by Kelley, as the Receiver and Trustee, will be submitted in the bankruptcy proceedings in accordance with the applicable provisions of the Bankruptcy Code, Federal Bankruptcy Rules and Local Rules for review, approval and payment. The United States acknowledges that the receivership expenses incurred prior to May 1, 2010 for the efforts of professionals will inure, in part, to the benefit of the bankruptcy estates and third-party litigation.

2.      If there is a recovery (by settlement or following litigation) based on parallel claims pursued by Kelley, as the Receiver and Trustee, the proceeds of the recovery will inure to the benefit of the bankruptcy estates; unless there is a judgment or recovery based solely on a claim made by the Receiver, in which case, the proceeds will be turned over to the United States for the benefit of victims through remission of assets after the bankruptcy estates have been reimbursed for all fees and expenses paid or incurred in conjunction with the action that resulted in the recovery.

3.      Kelley, as Trustee, agrees to consult and confer with the creditors committee regarding the litigation and claims against third parties for the return of false profits or other clawback or recoverable claims, including principal from their purported loan to or investment in the PCI Estates or the PGW Estate, or their subsidiaries (including subsidiaries of subsidiaries).

4.      In exchange for the consideration set forth herein, and in an effort to maximize coordination and minimize unnecessary cost and undue delay in distributions, unless otherwise agreed by Kelley, as the Receiver or as Trustee, and the United States, the United States Attorney's Office agrees it will not pursue its forfeiture claims against third parties for the return of corporate asset transfers, including but not limited to the false profits or other clawback or avoidance claims, including principal from purported loans or investment in entities comprising the PCI Estates or the PGW Estate. The United States Attorney's Office agrees to execute releases as are necessary and appropriate for the recovery of the foregoing assets.

IV.   MISCELLANEOUS PROVISIONS

A.    This agreement will not become effective, and no party shall have any obligations under this agreement, until such time as the courts overseeing the receivership, the PCI Estates, the PGW Estate and the PBE Estates approve this Coordination Agreement.

B.    This Agreement and all of its provisions and conditions are for the sole and exclusive benefit of the parties to this Agreement. No person or entity which is not a party to this Agreement will have or acquire any rights or remedies under or by reason of this Agreement.

Dated: _Aug. 16_, 2010

B. TODD JONES
United States Attorney

BY: GREGORY G. BROOKER
Assistant U.S. Attorney

Dated: _Aug 16_, 2010

DOUGLAS A. KELLEY
Court-Appointed Receiver

Dated: _Aug 16_, 2010

PETTERS COMPANY, INC., ET AL.

BY: DOUGLAS A. KELLEY
Bankruptcy Trustee

Dated: _Aug 16_, 2010

PETTERS GROUP WORLDWIDE, LLC

BY: DOUGLAS A. KELLEY
Bankruptcy Trustee

Dated: _Aug 16_, 2010

PBE CORPORATION, ET AL.

BY: JOHN R. STOEBNER
Bankruptcy Trustee

REVIEWED AND APPROVED:

_____
ANN D. MONTGOMERY
UNITED STATES DISTRICT JUDGE

REVIEWED AND APPROVED:

_____
GREGORY F. KISHEL
UNITED STATES BANKRUPTCY JUDGE

12

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| In re: | **Jointly Administered under**<br>**Case No. 08-45257** |
| Petters Company, Inc., et al., | Court File No. 08-45257 |
| Debtors. | |
| | Court Files No.'s: |
| (includes: | |
| Petters Group Worldwide, LLC; | 08-45258 (GFK) |
| PC Funding, LLC; | 08-45326 (GFK) |
| Thousand Lakes, LLC; | 08-45327 (GFK) |
| SPF Funding, LLC; | 08-45328 (GFK) |
| PL Ltd., Inc.; | 08-45329 (GFK) |
| Edge One LLC; | 08-45330 (GFK) |
| MGC Finance, Inc.; | 08-45331 (GFK) |
| PAC Funding, LLC; | 08-45371 (GFK) |
| Palm Beach Finance Holdings, Inc.) | 08-45392 (GFK) |
| | Chapter 11 Cases<br>Judge Gregory F. Kishel |

## <u>CERTIFICATE OF SERVICE</u>

Gretchen Luessenheide of the City of New Hope, County of Hennepin, State of Minnesota, states that on August 18, 2010 she served the following document:

1. Notice of Hearing and Motion to Authorize Trustee to (I) Enter into and Perform According to a Coordination Agreement Among Plaintiff United States of America, the Receiver, the Chapter 11 Trustee of Petters Company, Inc., et al., and the Chapter 7 Trustee of Polaroid Corporation, et al. n/k/a PBE Corporation, et al., (II) Resolve Pending Criminal Charges and (III) Conduct Transactions Outside the Ordinary Course of Business;
2. Verification of Douglas A. Kelley;
3. Memorandum of Law in Support of Motion to Authorize Trustee to (I) Enter into and Perform According to a Coordination Agreement among Plaintiff United States of America, the Receiver, the Chapter 11 Trustee of Petters Company, Inc., et al., and the Chapter 7 Trustee of Polaroid Corporation, et al., n/k/a PBE Corporation, et al., (II) Resolve Pending Criminal Charges and (III) Conduct Transactions Outside the Ordinary Course of Business; and
4. Proposed Order Authorizing Trustee to (I) Enter into and Perform According to a Coordination Agreement among Plaintiff United States of America, the Receiver, the Chapter 11 Trustee of Petters Company, Inc., et al., and the Chapter 7 Trustee of Polaroid Corporation, et al., n/k/a PBE Corporation, et al., (II) Resolve Pending Criminal Charges and (III) Conduct Transactions Outside the Ordinary Course of Business

upon

| | |
|---|---|
| Arrowhead Capital Management LLC<br>c/o James N. Fry<br>601 Carlson Parkway, Suite 1250<br>Minnetonka, MN 55305 | Rhone Holdings II, Ltd.<br>c/o Thomas K. Cauley, Bryan Krakauer,<br>Brian McAleenan<br>Sidley Austin LLP<br>1 South Dearborn<br>Chicago, IL 60603 |
| Elite Landings, LLC<br>2005 Cargo Road<br>Minneapolis, MN 55450 | Northwater Entities<br>c/o Matthew A. Feldman<br>Wilkie Farr & Gallagher, LLP<br>787 7th Avenue<br>New York, NY 10019 |
| Connie Lahn<br>David Runck<br>Fafinski Mark & Johnson, P.A.<br>Flagship Corporate Center<br>775 Prairie Center Drive, Suite 400<br>Eden Prairie, MN  55344 | Greenwich Insurance Company<br>c/o David M. Gische and Marcus B. Holladay<br>Troutman Sanders LLP<br>401 9th Street NW<br>Washington, DC 20004-1234 |
| Huron Consulting Group, Inc.<br>4795 Paysphere Circle<br>Chicago, IL 60674-4795 | Freestone Low Volatility Partners LP<br>c/o Mark R. Jacobs<br>Pryor Cashman LLP<br>410 Park Avenue<br>New York, NY 10022 |
| Douglas A. Kelley<br>Kelley & Wolter PA<br>Centre Village Offices<br>431 South 7th Street, Suite 2530<br>Minneapolis, MN 55415 | Issa Moe<br>Moss and Barnett<br>4800 Wells Fargo Center<br>90 South 7th Street<br>Minneapolis, MN 55402 |
| Neal Gerber & Eisenberg LLP<br>C/O Thomas C. Wolford<br>Two North LaSalle Street Suite 1700<br>Chicago, IL 60602 | Petters Aviation LLC<br>2005 Cargo Road<br>Minneapolis, MN 55450 |
| Ronald R. Peterson<br>Jenner & Block, LLP<br>330 North Wabash Avenue<br>Chicago, IL 60611-7603 | Kevin J Short<br>150 S. 5th St. Ste 3260<br>Minneapolis, MN 55402 |
| Steven W. Thomas<br>Thomas Alexander & Forrester LLP<br>14 27th Avenue<br>Venice, CA 90291 | Taunton Ventures LP<br>c/o Paul Taunton<br>990 Deerbrook Drive<br>Chanhassen, MN 55317 |

| | |
|---|---|
| James Rubenstein<br>Moss & Barnett<br>4800 Wells Fargo Center<br>90 South Seventh Street<br>Minneapolis, MN 55402-4129 | Randall L. Seaver<br>On behalf of Petters Capital, LLC<br>12400 Portland Avenue South<br>Suite 132<br>Burnsville, MN  55337 |

via U.S. Mail to the addresses listed above and electronically by Notice of Electronic Filing upon all parties who have requested service in these cases by filing the same via ECF with the Bankruptcy Court in the District of Minnesota.

_____/e/ Gretchen Luessenheide_____
Gretchen Luessenheide

DOCS-#3318932-V1

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | **Jointly Administered under**<br>**Case No. 08-45257** |
| Petters Company, Inc., et al., | Court File No. 08-45257 |
| Debtors. | |
| | Court Files No.'s: |
| (includes: | |
| Petters Group Worldwide, LLC; | 08-45258 (GFK) |
| PC Funding, LLC; | 08-45326 (GFK) |
| Thousand Lakes, LLC; | 08-45327 (GFK) |
| SPF Funding, LLC; | 08-45328 (GFK) |
| PL Ltd., Inc.; | 08-45329 (GFK) |
| Edge One LLC; | 08-45330 (GFK) |
| MGC Finance, Inc.; | 08-45331 (GFK) |
| PAC Funding, LLC; | 08-45371 (GFK) |
| Palm Beach Finance Holdings, Inc.) | 08-45392 (GFK) |
| | Chapter 11 Cases<br>Judge Gregory F. Kishel |

**ORDER AUTHORIZING TRUSTEE TO (I) ENTER AND PERFORM ACCORDING TO A COORDINATION AGREEMENT AMONG PLAINTIFF UNITED STATES OF AMERICA, THE RECEIVER, CHAPTER 11 TRUSTEE OF PETTERS COMPANY, INC., ET AL., AND THE CHAPTER 7 TRUSTEE OF POLAROID CORPORATION, ET AL., N/K/A PBE CORPORATION, ET AL., (II) RESOLVE PENDING CRIMINAL CHARGES,  AND (III)CONDUCTING TRANSACTIONS OUTSIDE THE ORDINARY COURSE OF BUSINESS**

This matter came before the Court on September 14, 2010 on the motion of Douglas A. Kelley, Chapter 11 Trustee of Petters Company, Inc. and the above-captioned jointly administered debtors for an order Authorizing the Trustee to (I) Enter Into and Perform According to a Coordination Agreement Among Plaintiff United States of America, the Receiver, the Chapter 11 Trustee of Petters Company, Inc., et al., and the Chapter 7 Trustee of Polaroid Corporation, et al., n/k/a/ PBE Corporation, et al., (II) Resolve Pending Criminal Charges and (III) Conduct Transactions Outside the Ordinary Course of Business.  Appearances

12

were as noted on the record.  Based on the arguments of counsel, moving documents and the record made at the hearing, and the Court's findings of fact and conclusions of law, if any, having been recorded in open court following the close of evidence,

IT IS HEREBY ORDERED:

1.      The Coordination Agreement is hereby approved and the Trustee is authorized to abide by and perform according to the terms of the Coordination Agreement;

2.      The Trustee, on behalf of PCI, PGW and the affiliated debtors, is authorized to execute any agreements or documents and take any action to carry out the terms of the Coordination Agreement.

3.      Notwithstanding Fed. R. Bankr. P. 6004(h), this Order shall take effect immediately upon entry.

Dated: _____

_____
Gregory F. Kishel
United States Bankruptcy Judge

13