## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:

Petters Company, Inc., et al.,

Debtors.

(includes:
Petters Group Worldwide, LLC;
PC Funding, LLC;
Thousand Lakes, LLC;
SPF Funding, LLC;
PL Ltd., Inc.;
Edge One LLC;
MGC Finance, Inc.;
PAC Funding, LLC;
Palm Beach Finance Holdings, Inc.)

**Jointly Administered under
Case No. 08-45257**

Court File No. 08-45257

Court Files Nos.:
08-45258 (GFK)
08-45326 (GFK)
08-45327 (GFK)
08-45328 (GFK)
08-45329 (GFK)
08-45330 (GFK)
08-45331 (GFK)
08-45371 (GFK)
08-45392 (GFK)

Chapter 11 Cases
Judge Gregory F. Kishel

---

**NOTICE OF HEARING, MOTION FOR EXPEDITED HEARING AND MOTION TO APPROVE SETTLEMENT AGREEMENT AND MUTUAL RELEASE BY AND AMONG CHAPTER 11 TRUSTEE, GREENWICH INSURANCE COMPANY, XL SPECIALTY INSURANCE COMPANY, FELHABER, LARSON, FENLON & VOGT, P.A., PAUL ENGH, THOMAS PETTERS AND THE COURT-APPOINTED RECEIVER FOR THOMAS J. PETTERS**

---

TO:    The entities specified in Local Rule 9013-3.

1.        Douglas A. Kelley, the duly-appointed Chapter 11 trustee (the "Trustee") of the above captioned debtors (each a "Debtor" and collectively, the "Debtors"), including Petters Company, Inc. ("PCI") and Petters Group Worldwide, LLC ("PGW," and together with PCI, the "Debtor-Insureds"), by and through his counsel, hereby move this Court, pursuant to Federal Rule of Bankruptcy Procedure 9019, for an order granting an expedited hearing and approving the Settlement Agreement and Mutual Release (the "Settlement Agreement") entered into by and

among the Trustee for PCI and PGW, Greenwich Insurance Company ("Greenwich"), XL Specialty Insurance Company ("XL Specialty"), Felhaber, Larson, Fenlon & Vogt, P.A. ("Felhaber"), Paul Engh ("Engh"), Thomas J. Petters ("Petters") and Douglas A. Kelley, as the court-appointed Receiver for Petters (the "Receiver," and collectively, the "Parties") resolving insurance coverage claims and disputes between and among the Parties (the "Disputes") and gives notice of hearing. A true and correct copy of the Settlement Agreement is attached hereto as <u>Exhibit A</u>. Capitalized terms not defined herein shall have the same meaning as in the Settlement Agreement, unless the context requires otherwise.

2.     The Court will hold a hearing on this Motion before Gregory F. Kishel, United States Bankruptcy Judge, at 9:30 a.m. on September 21, 2010, or as soon thereafter as the parties may be heard, in Courtroom 2A, at the United States Courthouse, 316 N. Robert Street, St. Paul, Minnesota.

3.     Any response to this Motion must be filed and served by delivery or by mail not later than Thursday, September 16, 2010, which is five (5) days before the time set for the hearing (including Saturdays, Sundays, and holidays). **UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.**

4.     This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, Bankruptcy Rule 5005 and Local Rule 1070-1. This is a core proceeding. Voluntary Petitions commencing the Chapter 11 cases of PCI and PGW were filed on October 11, 2008. Petitions commencing the Chapter 11 cases of PC Funding, Thousand Lakes, SPF Funding, PL Ltd., Edge One and MGC Finance were filed on October 15, 2008. The petition commencing the Chapter 11 case of PAC Funding was filed on October 17, 2008. The petition commencing the Chapter 11 case of Palm Beach Finance was filed on October 19, 2008 (collectively, the

"Petitions," the "Petition Dates" and the "Cases"). Venue of these Cases and this motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The Cases are now pending before this Court.

5.      This Motion arises under 11 U.S.C. §§ 362 and 363 and Federal Rules of Bankruptcy Procedure 2002, 9006 and 9019. This Motion is filed under Fed. R. Bankr. P. 9014 and Local Rules 9013-1 through 3. The Trustee seeks an order approving and authorizing the Trustee's entry into the Settlement Agreement as set forth below.

**FACTUAL BACKGROUND**

Events Leading Up to Bankruptcy Filing

6.      PCI is a Minnesota corporation, which is owned and, prior to October 6, 2008, was controlled by Petters. PCI, in turn, is the sole member or shareholder, as applicable, and owns 100% of the membership interests or shares, as applicable, of PC Funding, Thousand Lakes, SPF Funding, PL Ltd., Edge One and MGC Finance, and PAC Funding. The operational and managerial decisions of PCI and its subsidiary entities were made by Petters.

7.      PGW is a privately held Delaware limited liability company that is also owned and, prior to October 6, 2008, was controlled by Petters. The operational and managerial decisions of PGW and its subsidiary entities were also made by Petters.

8.      Prior to the Petition Dates, the Debtors purchased several insurance policies as more fully described below:

a.   Greenwich issued Private Company Reimbursement Policy No. ELU105480 to PGW for the claims-made policy period June 25, 2008 to June 25, 2010 (the "PGW Policy"), which was subsequently extended to August 25, 2010. A true and correct copy of the PGW Policy and Optional Extension Period Endorsement is attached hereto as Exhibit B. The PGW Policy contains a $10 million aggregate limit of

liability for all Claims under the Management Liability and Company Reimbursement ("Management Liability") and Pension and Welfare Benefit Plan Fiduciary Liability ("Fiduciary Liability") Coverage Parts, subject to a $50,000 retention for each Claim under Insuring Agreement I(B) of the Management Liability Coverage Part and a $10,000 retention for each Claim under the Fiduciary Liability Coverage Part.

b.  Greenwich issued Private Company Reimbursement Policy No. ELU105481 to PGW for the claims-made policy period June 25, 2008 to June 25, 2009 (the "PGW Employment Policy"), a true and correct copy of which is attached hereto as Exhibit C.  The PGW Employment Policy contains a $10 million aggregate limit of liability for all Claims, subject to a $100,000 retention for each Claim.

c.  XL Specialty issued Private Company Insurance Policy No. ELU105060 to PCI for the claims-made policy period June 1, 2008 to June 1, 2009 (the "PCI Policy").  A true and correct copy of the PCI Policy is attached hereto as Exhibit D.  The PCI Policy contains a $5 million aggregate limit of liability for all Claims under the Management Liability Coverage Part, subject to a $100,000 retention for each Claim under Insuring Agreement I(B), a $1 million aggregate limit of liability for all Claims under the Employment Practices Liability Coverage Part (the "EPL Coverage Part"), subject to a $25,000 retention, and a $6 million aggregate Limit of Liability for all Claims under both coverage parts.

d.  XL Specialty issued Private Company Insurance Policy No. ELU105056 to Thomas Petters Inc. ("TPI") for the claims-made policy period June 1, 2008 to June 1, 2009, which was subsequently extended to August 25, 2010 (the "TPI Policy").  A true and correct copy of the TPI Policy is attached hereto as Exhibit E.  The TPI Policy contains a $5 million aggregate limit of liability for all Claims under the Management

4

Liability Coverage Part, subject to a $100,000 retention for each Claim under Insuring Agreement I(B), a $1 million aggregate limit of liability for all Claims under the EPL Coverage Part, subject to a $25,000 retention, and a $6 million aggregate Limit of Liability for all Claims under both coverage parts.

(collectively, the "D&O Policies").

9.      On or about September 24, 2008, the Federal Bureau of Investigation, together with the Internal Revenue Service – Criminal Investigation Division and the United States Postal Inspection Service, executed a search warrant on the Petters headquarters, among other locations, and seized records of PCI, PGW, Petters and other employees and persons allegedly involved in a fraudulent Ponzi scheme.  On October 3, 2008, Petters was arrested on charges of mail and wire fraud, money laundering, and conspiracy.  Other executives implicated in this scheme have also been arrested on various charges and have pleaded guilty to certain crimes.

10.      On October 2, 2008, Plaintiff United States of America ("United States"), in support of a criminal investigation, sought an asset freeze and receivership under the Anti-Fraud Injunction Act, 18 U.S.C. § 1345, for the benefit of victims of a massive fraud that took place at PGW and PCI in the United States District Court for the District of Minnesota (the "District Court"), captioned *United States v. Thomas Joseph Petters, et al.*, Civil Case No. 08-05348 ADM/JSM (D. Minn.).  The Honorable Ann D. Montgomery was assigned this case.  On October 6, 2008, Judge Montgomery issued an Order for Entry of Preliminary Injunction, Order Appointing Receiver and Other Equitable Relief, Docket No. 12, as subsequently amended on October 14, 2008 at Docket No. 43, October 22, 2008 at Docket No. 70 and December 8, 2008 at Docket No. 127 (collectively, the "Receivership Order").

11.      As a result of the investigation, subsequent arrests and litigation by numerous creditors, the Debtors sought relief under Chapter 11 of the Bankruptcy Code.

Events Subsequent to Bankruptcy Filing

12.   On December 1, 2008, and through the Superseding Indictment entered June 3, 2009, Petters, PCI and PGW were indicted by a federal grand jury on various charges, including (i) mail fraud, (ii) wire fraud, (iii) conspiracy to commit mail fraud and wire fraud, (iv) money laundering, and (v) conspiracy to commit money laundering, in violation of 18 U.S.C. §§ 371, 1343, 1956, and 1957.  *See* Indictment, Docket No. 75 and Superseding Indictment, Docket No. 196, United States *v. Petters et al*., Case No. 08-cr-00364 (RHK-AJB) (D. Minn.).   The indictment alleges that Petters used PCI and PGW, as well as their subsidiary entities, to orchestrate a massive Ponzi scheme to defraud investors out of more than $3 billion.

13.   On December 2, 2009, a jury in the United Stated District Court of the District of Minnesota found Petters guilty of all 20 counts charged in this indictment.  Subsequently, Petters was sentenced to 50 years in prison for his crimes.  At various times during the course of the Ponzi Scheme, Petters was assisted in the operation and conduct of the Ponzi Scheme by numerous individuals and conspirators, each of which has pled guilty and is awaiting sentencing. Criminal charges remain pending against PCI and PGW.

The Insurance Dispute

14.   Petters is the former Chairman and Chief Executive Officer ("CEO") of PGW, the former President of PCI, and the former CEO, Chief Financial Officer and President of TPI and falls within the definition of "Insured Person" as defined in the D&O Policies.

15.   Petters and the Receiver provided notice of and requested coverage under the PGW Policy, the PCI Policy and the TPI Policy for the following lawsuits: *United States of America v. Thomas Joseph Petters, et al.*, Case No. 08-cv-5348 (D. Minn.) (the "Freeze of Assets Action"); *United States of America v. Thomas Petters, et al.*, Case Number 08-cr-364 (D.

Minn.) (the "Criminal Action"); *AI Plus, Inc., et al. v. Petters Group Worldwide*, *et al.*, Case No. 08-cv-5456 (D. Minn.); *Mars Hill Media v. Petters Group Worldwide, et al.*, Case No. 08-cv-5410 (D. Minn.); *Apriven Partners, LP, et al. v. Petters Group Worldwide, LLC, et al.*, Case No. 08-cv-5373 (D. Minn.); *Lancelot Investors Fund, LP, et al. v. Thomas Joseph Petters, et al.*, Case No. 08-cv-5399 (D. Minn.); *Interlachen Harriet Investments Limited v. Petters Group Worldwide, LLC, et al.*, Case No. 08-cv-5312 (D. Minn.); *Apriven Partners, LP v. Thomas J. Petters*, Case No. 08-cv-01760-M (N.D. TX); *Acorn Capital Group, LLC v. Thomas J. Petters*, Case No. 08 CIV. 7236 (S.D.N.Y.); *Ritchie Capital Management, LLC, et al. v. Thomas J. Petters, et al.*, Case No. 2008 L 51021 (Cir. Ct, Cook Cty, IL); *LG Electronics, Inc. v. Petters Group Worldwide, LLC, et al.*, Case No. 08-cv-163 (E.D. TX); and *United States Securities and Exchange Commission v. Thomas J. Petters, et al.*, Case No. 09-cv-1750 (D. Minn.) (collectively, the foregoing lawsuits are referred to as the "Litigation"), true and correct copies of such notices and requests for coverage are attached hereto as Exhibit F.

16.     The Receiver also provided notice under the PGW Policy, PCI Policy and TPI Policy of various current and former employees of PGW and PCI who had been served with subpoenas in connection with the United States' investigation of Petters and for whom the Receiver paid attorneys' fees and expenses incurred in connection with responding to such subpoenas and providing testimony (collectively, the "Subpoena Matters"). True and correct copies of letters giving notice of the Litigation and Subpoena Matters, respectively, are attached hereto as Exhibit G.

17.     Petters retained Felhaber and Engh to represent him in the Litigation (collectively, Felhaber and Engh are referred to as "Petters' Defense Counsel").

18.     Various disputes (collectively, the "Disputes") have arisen between and among the Parties as to coverage rights under the D&O Policies as summarized below:

a.  By letter dated December 19, 2008, XL Specialty, through its counsel, informed the Receiver that the TPI Policy was not implicated by the Litigation or the Subpoena Matters and declared that coverage for PCI under the PCI Policy was void. By the same letter, Greenwich and XL Specialty informed the Receiver that coverage was not available under the PGW Policy and the PCI Policy for certain of the Litigation or the Subpoena Matters and reserved their rights with respect to the remaining Litigation, including the right to recoup any amounts paid on behalf of Petters and PGW if they were convicted of a crime in the Criminal Action.   A true and correct copy of XL Specialty's December 19, 2008 letter is attached hereto as Exhibit H;

b.  On or about March 16, 2009, PGW and PCI filed a coverage action against Greenwich and XL Specialty in the District Court captioned as *Petters Group Worldwide, LLC, et al. v. Greenwich Insurance Co., et al.*, Case No. 09-CV-603 (D. Minn.) (the "Coverage Action").   PGW, PCI, Greenwich and XL Specialty subsequently entered into a stipulation pursuant to which the Coverage Action was stayed pending resolution of the Criminal Action. *See Coverage Action* at Docket Nos. 16 &18.  And on June 7, 2010, the District Court issued an order continuing the stay of the Coverage Action pending a settlement among the Parties. *See Coverage Action* at Docket No. 24.  A true and correct copy of the Coverage Action and related stipulation and District Court Order is attached hereto as Exhibit I;

c.  The Receiver paid, after obtaining the necessary court approval, certain legal fees and expenses incurred in the Litigation by Petters and other officers, directors and employees of PGW and PCI.  On or about August 4, 2009, this Court granted a motion by Greenwich seeking relief from the automatic stay to pay reasonable and necessary legal fees and expenses incurred by Petters and PGW in the Litigation,

8

subject to a court-imposed cap of $7.5 million.[1] *See In re Petters Company, Inc., et al.*, Case No. 08-45257 at Docket No. 263.  Greenwich has reimbursed the Receiver a total of $2,285,651.78 for defense costs and expenses incurred by Petters on and before September 30, 2009; and

d.  Shortly after Petters' conviction in the Criminal Action, by letter dated February 1, 2010, Greenwich and XL Specialty reaffirmed their position that coverage for PCI is void under the PCI Policy, asserting that Petters' conviction implicates the fraud exclusions contained in the PGW Policy and PCI Policy, declaring that coverage under the PGW Policy for PGW and Petters is void and asking that Kelley return the $2,285,651.78 Greenwich previously paid under the PGW Policy.  A true and correct copy of the February 1, 2010 letter from Greenwich and XL Specialty is attached hereto as Exhibit J.   After receiving this letter, the Receiver informed Greenwich and XL Specialty that he, Petters and Petters' Defense Counsel disagreed with Greenwich's and XL Specialty's coverage position.  Petters maintains that he is innocent and has subsequently appealed his conviction.

19.     In an effort to resolve these Disputes, the Trustee has reviewed in detail the relationships, claims and contents therein and the Parties have negotiated over the course of several months and have agreed to fully and finally resolve the Disputes on the terms and subject to the conditions set forth in the Settlement Agreement.

---

[1] Pursuant to the Court's August 4, 2009 order, Greenwich and XL Specialty may distribute no more than $7,500,000.00 in aggregate coverage proceeds for claims made on the Policies.  This amount has been reduced by $2,285,651.78 in reimbursements already paid by Greenwich and will be further reduced by amounts paid under the Settlement Agreement.  What remains of the $7.5 million after the settlement proceeds are distributed may be used to satisfy individual claims of officers and directors of PGW and its affiliates (excluding Petters) to the extent coverage is available under the D&O Policies.

## THE AGREEMENT

20.    After extensive discussion and negotiation, the Parties have executed the Settlement Agreement, the performance of which is expressly subject to the Court's approval. The Parties believe that the terms of the Settlement Agreement fairly and reasonably resolve the Disputes.  As more fully set forth in the Settlement Agreement, the Parties have agreed, subject to the Court's approval, as follows:

a.  Greenwich will make a first payment to the Receiver in the amount of $863,744.60 for attorneys' fees and expenses incurred by Petters' Defense Counsel on behalf of Petters, and approved by the District Court, between September 30, 2009 and December 2, 2009 (the "First Greenwich Payment");

b.  Greenwich will make a second payment to the Receiver in the amount of $108,919.02 for attorneys' fees and expenses incurred by Petters' Defense Counsel on behalf of Petters, and approved by the District Court, between December 3, 2009 and January 31, 2010, which amount will be adjusted to reflect certain costs incurred by the Receiver for Petters Defense Counsel's use of the Stratify system and approved by the District Court in its Memorandum Opinion and Order entered August 26, 2010 at Dkt. No. 1393 (the "Second Greenwich Payment," and together with the First Greenwich Payment, the "Greenwich Payments");

c.  In consideration of the Greenwich Payments, the Parties have further agreed that the Trustee and Receiver on behalf of Petters, PGW, PCI and their subsidiary entities (collectively, the "Insureds") will release and forever discharge Greenwich and XL Specialty (the "Insurers") from any and all liability whatsoever arising out of or relating to: (i) claims for coverage by such entities under the D&O Policies in connection with the Litigation and the Subpoena Matters and any other past and

future claims under the D&O Policies; (ii) claims relating to the manner in which the Insurers handled the Insureds' claims for coverage in connection with the Litigation and the Subpoena Matters; and (iii) the Coverage Action;

d.   In consideration of the Insureds' release, the Parties have further agreed that the Insurers will release and forever discharge the Insureds from any and all liability whatsoever arising out of or relating to: (i) coverage under the D&O Policies in connection with the Litigation and the Subpoena Matters and coverage for any other past and future claims under the D&O Policies; and (ii) the Coverage Action; and

e.   In consideration of the Greenwich Payments, Petters' Defense Counsel has agreed to release and forever discharge the Insurers from any and all liability whatsoever arising out of or relating to: (i) attorneys' fees and expenses incurred by Petters' Defense Counsel on behalf of Petters; and (ii) claims relating to the Insurers' handling of any claims for payment or reimbursement of attorneys' fees and expenses incurred on behalf of Petters.

21.   Notwithstanding PGW's and PCI's release of their claims under the PGW Policy and the PCI Policy and against the Insurers, the Settlement Agreement does not proscribe directors and officers (excluding Petters) that have individualized coverage rights under the PGW Policy and PCI Policy from seeking or obtaining coverage under such policies, nor does the Settlement Agreement prohibit the Insurers from providing proceeds to such officers and directors for covered losses from amounts that remain under the court-imposed $7.5 million cap for such policies.  Accordingly, the individual coverage rights of officers and directors of PGW, PCI and their related entities (excluding Petters) that may sustain losses that are covered under the PGW Policy and PCI Policy are unaffected by the terms of the Settlement Agreement.

22.    Furthermore, notwithstanding the mutual waivers and releases set forth in the Settlement Agreement or anything else in this Motion to the contrary, should Petters' criminal conviction be reversed on all counts on appeal, the Settlement Agreement requires the Insurers, if requested, to evaluate whether coverage for Petters is available under the Policies for any subsequent criminal action pursued by the United States against Petters, provided such action is based on the facts and occurrences alleged in the Criminal Action.

23.    The Settlement Agreement is in the best interests of the PCI and PGW Estates, the Debtors and their creditors because it resolves significant claims and minimizes the expense of administering the Debtors' estates by litigating the complex issues presented by the Disputes and does not impair the individual rights of officers and directors to make claims and receive proceeds under such D&O Policies, subject to the $7.5 million cap previously set by this Court. The Settlement Agreement also provides for payment of pending claims under the D&O Policies and that the Insurers will not seek recovery from the PCI and/or PGW Estates for the amounts previously paid by such Insurers under the D&O Policies in the amount of $2,285,651.78.

24.    The Parties have negotiated this Settlement Agreement to resolve the significant claims and avoids fact-intensive and protracted litigation with multiple parties regarding coverage under the D&O Policies and potential claims against the PGW and PCI Estates. The Parties have liquidated several disputed claims in amounts that fairly reflect the obligations of the parties under relevant agreements and in light of the substantial risks associated with litigation of these claims. Therefore, the Trustee believes the costs and expenses associated with further litigation to decide these issues would be wasteful and unnecessary and seek court authorization to enter into the Settlement Agreement.

25.    The Trustee seeks expedited relief. The Trustee scheduled the hearing for this and several other motions for the convenience of the Court and regrets that the press of other

business prevented the filing of this motion on or before September 1, 2010.  Although the Trustee seeks 'expedited' relief, all parties have been given opportunity to object.  This Motion is being served 19 days prior to the hearing, rather than the 21 days as required.  This is more than the 14-day service requirement for most types of motions.  The Trustee believes parties will have sufficient time to review this Motion prior to the hearing on the Motion.

WHEREFORE, the Trustee respectfully requests the Court enter an order (i) granting expedited relief, (ii) authorizing and approving the Trustee's entry into the Settlement Agreement; (iii) authorizing the Trustee to perform according to the terms of the Settlement Agreement,; and (iv) grant such other or further relief the Court deems just and equitable.

DATED: September 3, 2010

**LINDQUIST & VENNUM P.L.L.P.**

By:   /e/ James A. Lodoen
James A. Lodoen (#173605)
George H. Singer (#262043)

4200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402-2274
(612) 371-3211
(612) 371-3207 (facsimile)

**ATTORNEYS FOR
DOUGLAS A. KELLEY,
CHAPTER 11 TRUSTEE FOR
PETTERS GROUP WORLDWIDE, LLC
AND PETTERS COMPANY, INC.**

VERIFICATION

I, Douglas A. Kelley, Chapter 11 Trustee, declare under penalty of perjury that the facts set forth in the preceding Motion for Expedited Relief and Motion to Approve Settlement Agreement and Mutual Release by and among the Chapter 11 Trustee, Greenwich Insurance Company, XL Specialty Insurance Company, Felhaber, Larson, Fenlon & Vogt, P.A., Paul Engh, Thomas Petters and the court-appointed Receiver for Thomas J. Petters are true and correct according to the best of my knowledge, information and belief.

Dated: September **3**, 2010

Douglas A. Kelley
Chapter 11 Trustee

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | **Jointly Administered under**<br>**Case No. 08-45257** |
| Petters Company, Inc., et al., | Court File No. 08-45257 |
| Debtors. | |
| (includes: | Court Files Nos: |
| Petters Group Worldwide, LLC; | 08-45258 (GFK) |
| PC Funding, LLC; | 08-45326 (GFK) |
| Thousand Lakes, LLC; | 08-45327 (GFK) |
| SPF Funding, LLC; | 08-45328 (GFK) |
| PL Ltd., Inc.; | 08-45329 (GFK) |
| Edge One LLC; | 08-45330 (GFK) |
| MGC Finance, Inc.; | 08-45331 (GFK) |
| PAC Funding, LLC; | 08-45371 (GFK) |
| Palm Beach Finance Holdings, Inc.) | 08-45392 (GFK) |
| | Chapter 11 Cases<br>Judge Gregory F. Kishel |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR EXPEDITED HEARING AND MOTION TO APPROVE SETTLEMENT AGREEMENT AND MUTUAL RELEASE BY AND AMONG CHAPTER 11 TRUSTEE, GREENWICH INSURANCE COMPANY, XL SPECIALTY INSURANCE COMPANY, FELHABER, LARSON, FENLON & VOGT, P.A., PAUL ENGH, THOMAS PETTERS AND THE COURT-APPOINTED RECEIVER FOR THOMAS J. PETTERS**

TO:    The entities specified in Local Rule 9013-3

Douglas A. Kelley, Chapter 11 trustee ("Trustee") of the above-captioned debtors (the "Debtors"), by and through his legal counsel, respectfully submits this Memorandum in Support of his Motion for Expedited Relief and Motion to Approve Settlement Agreement and Mutual Release by and among the Chapter 11 Trustee, Greenwich Insurance Company, XL Specialty Insurance Company, Felhaber, Larson, Fenlon & Vogt, P.A., Paul Engh, Thomas Petters and the court-appointed Receiver for Thomas J. Petters.  Capitalized terms not otherwise defined herein

shall have the meanings given to such terms in the motion filed in connection herewith (the "Motion"), unless the context requires otherwise.

## FACTS

The factual basis for this Memorandum is set forth in the verified Motion and is incorporated as though fully set forth herein.

## LEGAL ARGUMENT

Settlements and compromises are "a normal part of the process of reorganization." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968) (quoting *Case v. Los Angeles Lumber Prods. Co.,* 308 U.S. 106, 130 (1939)). Rule 9019(a) provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019. Settlement agreements are generally encouraged and favored by the courts and "[i]n the absence of mistake or fraud, a settlement agreement will not be lightly set aside." *Justine Realty Co. v. American Nat'l Can Co.*, 976 F.2d 385, 391 (8th Cir. 1992); *Liddell by Liddell v. Bd. of Educ. of City of St. Louis, 126 F.3d* 1049, 1056 (8th Cir. 1997) ("The law strongly favors settlements. Courts should hospitably receive them … [a]s a practical matter, a remedy that everyone agrees to is a lot more likely to succeed than one to which the defendants must be dragged kicking and screaming.").

The standard by which courts evaluate a proposed compromise and settlement is well-established. In granting a motion pursuant to Rule 9019(a), a court must find that the proposed settlement is fair and equitable and is in the best interests of the estate. *See Anderson,* 390 U.S. at 424 (1968). The decision to approve a particular settlement lies within the sound discretion of the Bankruptcy Court. *In re Trism, Inc., 282 B.R. at 665 (citing Lambert v. Flight Transp. Corp., 730 F.2d 1128, 1135-36 (8th Cir. 1984)); In re Tri-State Financial, LLC, 525 F.3d 649, 654 (8th Cir. 2008); ReGen Capital III, Inc. v. Official Committee of Unsecured Creditors (In re*

2

*Trism, Inc.),* 282 B.R. 662, 667 (8th Cir. B.A.P. 2002).   Under the well-established standard for consideration of the merits of a settlement, a settlement should be approved unless it "falls below the lowest point in the range of reasonableness." *In re Apex Oil Co.*, 92 B.R. 847, 867 (Bankr. E.D. Mo. 1988) (citing *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983), *cert. denied*, 464 U.S. 822 (1983)); *Nellis v. Shugrue*, 165 B.R. 115, 122 (S.D.N.Y. 1994) (citing same).

In determining whether a settlement is within the "range of reasonableness," the Court should consider several factors, including:  (a) the probability of success in litigation; (b) the difficulties in collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors, and (e) whether conclusion of the litigation promotes the integrity of the judicial system.  *In re Hancock-Nelson Mercantile Co., Inc.*, 95 B.R. 982, 990 (Bankr. D. Minn. 1989) (citing *Drexel v. Loomis,* 35 F.2d 800, 806 (8th Cir. 1929)); *Anderson*, 390 U.S. at 424; *In re Trism, Inc.,*  282 B.R. at 667; *In re Farmland Industries, Inc.*, 289 B.R. 122, 127 (8th Cir. B.A.P. 2003).  A court does not substitute its judgment for that of the trustee or require that the proposed settlement be the best possible settlement obtainable; instead, a court must determine whether the proposed settlement "falls below the lowest point in the realm of reasonableness."  *In re Hanson Indus., Inc.*, 88 B.R. 942, 945 (Bankr. D. Minn. 1988) (quoting *In re Bell & Beckwith*, 77 B.R. 606, 612 (Bankr. N.D. Ill. 1987)).   These factors seek to balance the probable benefit and potential cost of pursuing a claim or defense against the costs of the proposed settlement.  Finally, in making the determination of whether the proposed settlement is fair and equitable, the bankruptcy court may consider the opinions of the trustee or debtor-in-possession.  *Nellis*, 165 B.R. at 122; *In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993).

3

Here, all of the factors lie in favor of authorizing the Trustee to enter the Settlement Agreement. The Settlement Agreement is in the best interests of the PCI and PGW Estates, the Debtors and their creditors because it resolves significant claims and minimizes the expense of administering the Debtors' estates by litigating the complex issues presented by the Disputes. The Settlement Agreement also does not impair the individual rights of officers and directors to make claims and receive proceeds under such D&O Policies, subject to the $7.5 million cap previously set by this Court. The Settlement Agreement also provides for payment of pending claims under the D&O Policies and that the Insurers will not seek recovery from the PCI and/or PGW Estates for the amounts previously paid by such Insurers under the D&O Policies in the amount of $2,285,651.78.

The Parties have negotiated this Settlement Agreement to resolve the significant claims and avoids fact-intensive and protracted litigation with multiple parties regarding coverage under the D&O Policies and potential claims against the PGW and PCI Estates. The Parties have liquidated several disputed claims in amounts that fairly reflect the obligations of the parties under relevant agreements and in light of the substantial risks associated with litigation of these claims. Therefore, the Trustee believes the costs and expenses associated with further litigation to decide these issues would be wasteful and unnecessary and seek court authorization to enter into the Settlement Agreement.

**Expedited Relief is Necessary**

Fed. R. Bankr. P. 9006(c) provides that the Court, on request of a party and for cause shown, may order a notice period reduced. Local Rule 9006-1(d) provides that if expedited relief is necessary, the party seeking such relief must request an expedited hearing and take all reasonable steps to provide the most expeditious service and notice possible.

4

Expedited relief is appropriate   The Trustee scheduled the hearing for this and several other motions for the convenience of the Court and regrets that the press of other business prevented the filing of this motion on or before September 1, 2010.  Although the Trustee seeks 'expedited' relief, all parties have been given opportunity to object.  This Motion is being served 19 days prior to the hearing, rather than the 21 days as required.  This is more than the 14-day service requirement for most types of motions and the Trustee believes parties will have sufficient time to review this Motion prior to the hearing on the Motion

WHEREFORE, the Trustee respectfully requests the Court enter an order (i) granting expedited relief, (ii) authorizing and approving the Trustee's entry into the Settlement Agreement; (iii) authorizing the Trustee to perform according to the terms of the Settlement Agreement,; and (iv) grant such other or further relief the Court deems just and equitable.


DATED: September 3, 2010                    **LINDQUIST & VENNUM P.L.L.P.**


By:  _/e/   James A. Lodoen_____
James A. Lodoen (#173605)
George H. Singer (#262043)

4200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402-2274
(612) 371-3211
(612) 371-3207 (facsimile)

**ATTORNEYS FOR
DOUGLAS A. KELLEY,
CHAPTER 11 TRUSTEE OF
PETTERS COMPANY, INC., ET AL.**

5

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:                                                     **Jointly Administered under**
                                                           **Case No. 08-45257**

Petters Company, Inc., et al.,                             Court File No. 08-45257

            Debtors.

                                                           Court Files Nos:

(includes:
Petters Group Worldwide, LLC;                              08-45258 (GFK)
PC Funding, LLC;                                           08-45326 (GFK)
Thousand Lakes, LLC;                                       08-45327 (GFK)
SPF Funding, LLC;                                          08-45328 (GFK)
PL Ltd., Inc.;                                             08-45329 (GFK)
Edge One LLC;                                              08-45330 (GFK)
MGC Finance, Inc.;                                         08-45331 (GFK)
PAC Funding, LLC;                                          08-45371 (GFK)
Palm Beach Finance Holdings, Inc.)                         08-45392 (GFK)

                                                           Chapter 11 Cases
                                                           Judge Gregory F. Kishel

## ORDER GRANTING EXPEDITED RELIEF AND APPROVING SETTLEMENT AGREEMENT AND MUTUAL RELEASE BY AND AMONG CHAPTER 11 TRUSTEE, GREENWICH INSURANCE COMPANY, XL SPECIALTY INSURANCE COMPANY, FELHABER, LARSON, FENLON & VOGT, P.A., PAUL ENGH, THOMAS PETTERS AND THE COURT-APPOINTED RECEIVER FOR THOMAS J. PETTERS

This matter came before the Court on September __, 2010 on the motion of Douglas A. Kelley, Chapter 11 Trustee of Petters Company, Inc. and the above-captioned jointly administered debtors for expedited hearing and an order approving a Settlement Agreement and Mutual Release ("Settlement Agreement") by and among the Chapter 11 Trustee, Greenwich Insurance Company, XL Specialty Insurance Company, Felhaber, Larson, Fenlon & Vogt, P.A., Paul Engh, Thomas Petters and the court-appointed Receiver for Thomas J. Petters. Appearances were as noted on the record. Based on the arguments of counsel, moving

documents and the record made at the hearing, and the Court's findings of fact and conclusions of law, if any, having been recorded in open court following the close of evidence,

IT IS HEREBY ORDERED:

1.      The motion for expedited hearing is granted.

2.      The Settlement Agreement is hereby approved and the Trustee is authorized to abide by and perform according to the terms of the Settlement Agreement;

3.      Pursuant to this Court's prior order of August 4, 2009, the maximum aggregate amount Greenwich Insurance Company and XL Specialty Insurance Company are authorized to remit on account of claims made by or on account of Petters Company, Inc., Petters Group Worldwide, LLC and Thomas J. Petters as insured persons or policy holders under the insurance policies issued by Greenwich Insurance Company to Debtor Petters Group Worldwide, LLC under policy no. ELU105480 for the claims-made policy period June 25, 2008 to June 25, 2009 and subsequently extended to August 25, 2010, and by XL Specialty Insurance Company to Debtor Petters Company, Inc. under policy no. ELU105060 for the claims-made policy period June 1, 2008 to June 1, 2009, is limited to $7,500.000.00 without further motion or application to this Court, and such amount shall be reduced by the payments previously made and to be made by such insurers pursuant such policies for Thomas Petters' defense costs and attorneys' fees as well as expenses incurred and to be incurred by other officers and directors and employees of Petters Company, Inc., Petters Group Worldwide, LLC and their subsidiary entities as covered insureds under such policies pursuant to the Settlement Agreement approved herein;

4.      The Trustee, on behalf of PCI, PGW and the affiliated debtors, is authorized to execute any agreements or documents and take any action to carry out the terms of the Settlement Agreement; and

5.    Notwithstanding Fed. R. Bankr. P. 6004(h), this Order shall take effect immediately upon entry.

Dated: _____

_____
Gregory F. Kishel
United States Bankruptcy Judge