## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:

Petters Company, Inc., et al.,

Debtors.

(includes:
Petters Group Worldwide, LLC;
PC Funding, LLC;
Thousand Lakes, LLC;
SPF Funding, LLC;
PL Ltd., Inc.;
Edge One LLC;
MGC Finance, Inc.;
PAC Funding, LLC;
Palm Beach Finance Holdings, Inc.)

**Jointly Administered under
Case No. 08-45257**

Court File No. 08-45257

Court Files Nos.:

08-45258 (GFK)
08-45326 (GFK)
08-45327 (GFK)
08-45328 (GFK)
08-45329 (GFK)
08-45330 (GFK)
08-45331 (GFK)
08-45371 (GFK)
08-45392 (GFK)

Chapter 11 Cases
Judge Gregory F. Kishel

## NOTICE OF HEARING AND AMENDED AND RESTATED MOTION TO SUBSTANTIVELY CONSOLIDATE CERTAIN OF THE DEBTORS' ESTATES

TO:     The entities specified in Local Rule 9013-3

1.      Douglas A. Kelley, the duly appointed Chapter 11 Trustee (the "Trustee") of the above-captioned debtors (the "Debtors"), by and through his counsel, hereby moves this Court for the relief requested and gives notice of hearing.

2.      The Court will hold a hearing on this Motion before Gregory F. Kishel, United States Bankruptcy Judge, at 1:30 p.m. on April 20, 2011, or as soon thereafter as the parties may be heard, in Courtroom 2A, at the United States Courthouse, 316 N. Robert Street, St. Paul, Minnesota.

3.      Any response to this Motion must be filed and served by delivery or by mail not later than April 15, 2011, which is five (5) days before the time set for the hearing (including Saturdays, Sundays, and holidays). **UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING. This Motion amends and restates the previously filed motion originally dated October 10, 2010 (Docket Entry No. 689).**

4.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, Fed. R. Bankr. P. ("Bankruptcy Rule") 5005 and Loc. R. Bankr. P. ("Local Rule") 1070-1. This is a core proceeding.  The petitions commencing the Chapter 11 cases of Petters Company, Inc. ("PCI") and Petters Group Worldwide, LLC ("PGW") were filed on October 11, 2008. Petitions commencing the Chapter 11 cases of PC Funding, LLC ("PC Funding"), Thousand Lakes, LLC, ("Thousand Lakes"), SPF Funding, LLC ("SPF Funding"), PL Ltd., Inc. ("PL Ltd."), Edge One, LLC ("Edge One") and MGC Finance, Inc. ("MGC Finance") were filed on October 15, 2008.  The petition commencing the Chapter 11 case of PAC Funding, LLC ("PAC Funding"), was filed on October 17, 2008.  The petition commencing the Chapter 11 case of Palm Beach Finance Holdings, Inc. ("Palm Beach") was filed on October 19, 2008 (collectively, the "Debtors" or the "Cases").  Venue of these cases and this motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The cases are now pending before this Court and are being jointly administered.

5.      This Motion arises under 11 U.S.C. §§ 105(a), 363(b), 541, and 542.  This Motion is filed under Bankruptcy Rule 9014 and Local Rule 9013.   Debtors request an order substantively consolidating the PCI, PC Funding, Thousand Lakes, SPF Funding, PL Ltd., Edge

One, MGC Finance, PAC Funding and Palm Beach bankruptcy estates effective as of October 11, 2008.[1]

## BACKGROUND

### I.   Events Leading Up to Bankruptcy Filing.

6.      PCI is a Minnesota corporation, the shares of which are 100% owned and, prior to October 6, 2008, were 100% controlled by Thomas J. Petters ("Petters").  PCI, in turn, is the sole member or shareholder, as applicable, and owns 100% of the membership interests or shares, as applicable, of special purpose entities PC Funding, Thousand Lakes, SPF Funding, PL Ltd., Edge One, MGC Finance, and PAC Funding (collectively, the "PCI Subsidiary SPEs").  Petters also owned and, prior to October 6, 2008, controlled 100% of the shares of Palm Beach.  PCI, the PCI Subsidiary SPEs and Palm Beach are collectively referred to herein as the "PCI Estates."  The PCI Subsidiary SPEs and Palm Beach are collectively referred to herein as the "SPEs".  The operational and managerial decisions of the PCI Estates and their affiliates were principally made by Petters and his Criminal Associates (as that term is defined below).  PCI obtained capital for the Petters enterprises, on its own account and also by utilizing the SPEs to obtain billions of dollars of funding, to purportedly acquire merchandise for sale to wholesalers and retailers nationwide.  The purchase and sale business did not exist and in its place was a fraudulent investment scheme.

7.      On September 24, 2008, the Federal Bureau of Investigation, together with the Internal Revenue Service – Criminal Investigation Division and the United States Postal

---

[1] This Motion does not seek the substantive consolidation of PGW with the above-mentioned entities, but the Trustee reserves the right to seek such relief at a later time.

Inspection Service executed search warrants on multiple locations and seized records of the

Debtors and subsidiary entities, Petters and affiliated entities, Petters' Criminal Associates and

other employees and persons involved in a scheme to defraud and obtain billions of dollars of

money and property by means of materially false and fabricated pretenses, representations and

promises.

8.      On October 3, 2008, Petters was arrested on charges of mail and wire fraud,

money laundering, and conspiracy. From approximately 1993 until the government raid on

September 24, 2008, Petters conducted the largest Ponzi scheme in Minnesota history,

laundering in excess of $40 billion and causing losses of approximately $3.8 billion.

9.      In December 2008, Petters and five other individuals—Deanna Coleman, Robert

White, Jim Wehmhoff, Larry Reynolds, and Michael Catain (collectively, "Criminal

Associates")—were each charged with various criminal offenses and pled guilty to the charges

against them.  Coleman, White, Reynolds, and Catain have admitted their involvement in the

fraud and have been sentenced for their roles in connection with the perpetration of the Ponzi

scheme.  In December 2009, Petters was convicted by a jury of 20 criminal charges relating to

the scheme and was sentenced to 50 years in prison for his crimes.  The government also indicted

PCI and PGW, charging these Petters-owned companies with, among other crimes, wire fraud,

conspiracy to commit mail and wire fraud, and conspiracy to commit money laundering as a

result of their involvement in the conduct of the Ponzi scheme.  PCI and PGW have pled guilty

to wire fraud, conspiracy to commit wire fraud and conspiracy to commit money laundering

relating to their roles in the perpetration of the Ponzi scheme.

10.      Petters, through a multitude of entities, including the PCI Estates, and with the

assistance of his Criminal Associates, induced investors into financing the purchase of non-

existent electronic equipment purportedly secured by fabricated purchase orders. Over many years, Petters and his Criminal Associates caused investors to believe that their funds would be used to purchase consumer electronic goods from wholesalers to be resold to large, "big box" retailers such as Costco, Sam's Club and B.J.'s Wholesale Club. Petters and certain of his Criminal Associates, however, intentionally fabricated documents to recruit investors into the Ponzi scheme and caused existing investors to continue to invest in the Ponzi scheme. Petters and his Criminal Associates prepared and utilized fabricated documents that were represented to investors to be equipment purchase orders and related documents. The purchase orders and the related documents were fabricated and the referenced electronic goods or other inventory did not exist. Accounts receivable were not therefore generated or owed by account debtors. The result was that investors were not repaid with the earnings or proceeds from their investments, but with funds Petters and his Criminal Associates obtained from other investors.

11.     Petters entered into numerous agreements with investors, including a series of pledges, guarantees, security agreements, forbearance and other agreements in order to avoid defaults, prop up failing businesses, obtain new funding, delay discovery of the fraud, halt investigations, appease large investor groups who had the leverage to extract value, and perpetuate the Ponzi scheme. This began in the 1990s and worked for many years, but in 2008 it all collapsed.

12.     On October 2, 2008, the United States of America ("United States"), in support of a criminal investigation, sought an asset freeze and receivership under the Anti-Fraud Injunction Act, 18 U.S.C. § 1345, for the benefit of victims of the massive fraud that took place at PGW and PCI in the United States District Court for the District of Minnesota, captioned *United States v. Thomas Joseph Petters, et al.*, Civil Case No. 08-05348 ADM/JSM (the "Civil Fraud Case").

The Honorable Ann D. Montgomery was assigned the case.  On October 6, 2008, Judge Montgomery issued an Order for Entry of Preliminary Injunction, Order Appointing Receiver and Other Equitable Relief, as subsequently amended on October 14, 2008, October 22, 2008 and December 8, 2008 (collectively, the "Receivership Order").  Judge Montgomery appointed Douglas A. Kelley as Receiver (the "Receiver") for Petters, PCI, as well as entities owned and controlled, directly or indirectly, by Petters, including the SPEs.  Judge Montgomery, through the Receivership Order, specifically granted the Receiver authority to file "any bankruptcy petitions for any of the [Debtors] to protect and preserve the assets of any of the [Debtors]."

13.    As a result of the investigation, subsequent arrests and litigation by numerous creditors, the Receiver sought relief for the Debtors under Chapter 11 of the Bankruptcy Code in order to preserve assets and potential avoidance claims of the estates.

14.    The Trustee engaged PricewaterhouseCoopers LLP ("PwC") to perform various forensic accounting and related services in connection with the massive fraud and Ponzi scheme that was designed and orchestrated principally by Petters and the business organizations that he controlled, including PCI and the SPEs.  PwC's investigative work included the tracing of substantial payments (i.e., proceeds of the fraud) to and from investors, consultants, employees and other parties.  On December 15, 2010, PwC filed the PwC Interim Report with the Court that, among other things, sets forth various findings and conclusions (the "PwC Report").  *See* Docket Entry No. 808.[2]  The PwC Report describes the Petters Ponzi scheme as "one of the largest investment schemes in the history of the United States."  *PwC Report* § 15, ¶ 399, at 119. The Trustee, PwC and other professionals have reviewed payments and other transfers made by

---

[2] The Trustee hereby incorporates the PwC Report herein by reference.

the Debtors to third parties prior to the commencement of the Cases and other transactions entered into and obligations incurred by the Debtors in connection with the fraud. Based upon this investigation, the Trustee has identified fraudulent transfers, preferential transfers and other claims against numerous persons and entities and commenced approximately 200 adversary proceedings seeking to recover sums fraudulently transferred prior to the bankruptcy filings so that the stolen funds can be recovered for the benefit of the PCI Estates.

15.    The Trustee now moves this Court to consolidate the PCI Estates into one common pool of assets and liabilities to be made available to the true victims of the fraud perpetrated by Petters through PCI and the SPEs.

**II.    Facts Supporting Substantive Consolidation of the PCI Estates.**

    A.    <u>PCI and Its SPEs Were Used as an Integrated and Indispensible Part of a Single Scheme to Perpetrate a Massive Fraud</u>.

16.    Petters organized the SPEs to hinder, delay and defraud investors by inducing investments into the SPEs and using those investments to make lulling payments to earlier defrauded investors to perpetuate a fraudulent investment scheme. Indeed, Petters, PCI and the SPEs operated as a unified and inseparable engine of the fraud. The SPEs were a legal fiction, a meaningless structure when the contemplated collateral did not exist and the repayment of money was accomplished entirely with funds obtained from other defrauded investors. In fact, the SPEs were little more than a name for a bank account.

17.    Petters caused PCI to form the SPEs in order to operate the Ponzi scheme by purportedly assisting PCI in its financing of what Petters and his Criminal Associates represented to be the acquisition of retail merchandise. Each SPE was formed and used to fraudulently obtain funds from, and disburse principal and false profits back to, hedge funds, individual investors, entity investors or related groups of investors, and for funding of business acquisitions

7

and business losses as virtually every affiliated entity within the Petters organization lost money. Neither PCI nor the SPEs actually purchased electronic goods with the funds investors provided to them, but rather used the funds to pay off earlier investors who had amounts due, to financially prop up Petters' other businesses and to fund Petters' and his Criminal Associates' lavish lifestyles.

18.    PCI, with respect to its direct investors, or the SPEs, with respect to their investors (there was usually one investor group per SPE), would execute promissory notes in favor of the investors in order to obtain funds to finance the purported acquisition of merchandise.  The promissory notes would often be personally guaranteed by Petters, or in the case of the SPEs, by PCI as well.  The fictitious merchandise was evidenced by fabricated equipment purchase orders in which the investors would be misled into believing that they would be acquiring a purported security interest in actual collateral.  Such collateral, however, did not exist.  Typically, the investor sent funds to a SPE bank account that was used for cash receipts and disbursements.  The parties executed restricted account agreements allowing an investor to control the account and to monitor and collect payments received from retailers on account of the purported proceeds of goods sold.  The payments, of course, did not come from retailers. Instead, the funds that were funneled into the investor-controlled SPE bank accounts came from PCI and represented proceeds obtained from defrauded investors.

19.    Investors were promised high—and often exorbitant—rates of return.  The high rates of return that were promised promoted two essential goals of the Ponzi scheme: (1) to entice investors to invest without employing reasonable due diligence in Petters, PCI and the SPEs; and (2) to extend the life of the fraud and to enable Petters, PCI and the SPEs to pay other earlier investors in the fraudulent scheme.

20.     Petters and his Criminal Associates knew that investor funds were ultimately going to be transferred to PCI to be used by Petters and PCI to conceal and disguise the nature, source, ownership and control of the funds and to further the Ponzi scheme by paying amounts due to earlier investors.

21.     With respect to PCI's use of the SPEs, when investors would wire funds to a SPE, such funds were wired first through purported middlemen whose role was to create the materially false and fraudulent appearance of acquiring the goods and then to forward such funds, less a "commission," to PCI.

22.     An illustration of how Petters systematically operated the Ponzi scheme through the SPEs of PCI is as follows: funds that were invested in the SPEs were usually transferred to either Nationwide International Resources, Inc. ("Nationwide") or Enchanted Family Buying Company ("Enchanted"). Nationwide was an entity owned and controlled by Reynolds and was used to conceal and disguise the nature, source, ownership and control of funds used by Petters to further the Ponzi scheme.  Enchanted was an entity owned and controlled by Catain and was used to conceal and disguise the nature, source, ownership and control of funds used by Petters to further the Ponzi scheme.  Again, both Reynolds and Catain pled guilty to conspiracy to commit money laundering for their roles in the Ponzi scheme.

23.     Petters and his Criminal Associates represented to investors that Nationwide and Enchanted served the role of the intermediary "suppliers" of the merchandise purportedly being acquired by PCI for resale.  In fact, they did no such thing.

24.     Petters engaged Catain, one of his Criminal Associates, to open a bank account in the name of Enchanted in order to receive funds in that account derived from investors who were investing money in PCI through its SPEs.  Catain, as directed, would receive wire transfers of

millions of dollars in a typical day from SPEs and would immediately redirect money to PCI after deducting a "commission" from the SPE wire transfer amount, which commissions amounted to millions of dollars.

25.     Petters similarly engaged Reynolds, another one of his Criminal Associates, to receive funds into a bank account opened in the name of Nationwide derived from investors who were investing money in PCI through either Palm Beach or other SPEs.  Reynolds, as instructed, would immediately redirect money after deducting commissions from the SPE wire transfer amount,  operating the same way as the Enchanted/Catain arrangement.

26.     After extracting the commission for their role in the Ponzi scheme, Reynolds (through Nationwide) and Catain (through Enchanted) would transfer the funds to PCI.  PCI would then transfer some or all of those funds back to the SPEs or other investors as repayment of principal and earnings in the form of false profits, to PGW to cover operational expenses and losses, or to other entities for other operational purposes.  The funds paid to a particular investor had no relationship to the original source of those funds, but were directed to whomever most needed them to keep the fraud scheme going.  In addition, hundreds of millions of dollars were used to purchase Polaroid and other businesses.

27.     While the financing schemes varied in the level of complexity among the SPEs, the scheme was generally the same.  PCI would show an unusually consistent paper "profit" on each transaction because PCI's fabricated purchase order from the big box retailer for the merchandise, which reflected a "selling price," was always for an amount greater than the amount of PCI's fabricated purchase order to Nationwide or Enchanted for the same nonexistent merchandise.  Petters and his Criminal Associates, through PCI and the SPEs, created fictitious

profits at will on each and every transaction by simply writing in the appropriate quantity and price information on the two sets of purchase orders to "produce" the necessary funds.

28.    Since PCI and the SPEs did not buy or sell any goods, in all instances it was PCI, rather than a retailer, that would deposit the required funds in the investor-controlled SPE accounts for subsequent transfer to the investors.  A number of investors had actual knowledge of the fact that the funds were from PCI.

29.    Because the transactions described in the fabricated purchase orders in fact did not exist, the only way PCI was able to transfer sufficient funds to the investors was by money obtained from other investors, in other words, through the operation, control and management of the Ponzi scheme by Petters and his Criminal Associates.  Repayment of the principal and interest in the form of false profits to these investors comprised a Ponzi scheme because it was for all practical purposes made from funds invested by other PCI and SPE investors.

B.    PCI and Its SPEs Are So Interrelated That They Are Alter Egos and Instrumentalities of Thomas Petters.

30.    Substantive consolidation is similar but not equivalent to the doctrine of alter ego. The Trustee seeks the approval of this Court to consolidate the PCI Estates into one common pool of assets and liabilities.  Courts, although not piercing the corporate veil, routinely look to alter ego-like factors when determining whether to substantively consolidate a number of entities.  The Trustee seeks a determination in many of the adversary actions previously filed in this matter to the effect that the SPEs are the alter ego of PCI.  But it is equally true that PCI and its SPEs also exhibit most, if not all, factors courts examine when ordering substantive consolidation.

11

        a)      <u>Commonality of Ownership</u>.

31.    Petters wholly owned the stock of PCI and Palm Beach.  PCI, in turn, wholly owned the stock of the remaining SPEs.  Petters is the sole shareholder, director, chairman and president of PCI.  Petters is the CEO, President and/or Manager of each SPE, and either the sole officer or an officer along with only Coleman, of each SPE.

        b)      <u>Petters' Execution of the Promissory Notes and Guarantees</u>.

32.    The multitude of transactions evidenced by more than 5,800 promissory notes given by the SPEs to the investors were all invariably signed and counter-signed by Petters acting in his various capacities as manager, director, officer, president, treasurer and secretary; whatever the situation required.  If PCI was dealing with any of the SPEs, Petters would be found on both sides of the transaction.  In addition, Petters, personally, as well as on behalf of PCI, would execute personal and corporate guarantees of obligations owed both by PCI and the SPEs to the investors.

        c)      <u>Lack of Independent Governance</u>.

33.    The directors of PCI and the SPEs did not act independently.[3]  Instead, and by virtue of Petters' viral presence in almost every oversight and decision making role of PCI and the SPEs, the SPEs were implemented and operated as instrumentalities to reach Petters' and PCI's fraudulent ends.  Petters and PCI caused the SPEs to enter into massive financial obligations and corresponding grants of purported security interests not to serve the independent

--------

[3] Certain of the SPEs had an independent director although such director does not appear to have been an active director.

interests of the SPEs, but to perpetrate a Ponzi scheme and infuse Petters and PCI with billions of dollars of fraudulently obtained investments.

     d)  <u>Commingling of Funds</u>.

   34.  Petters and his Criminal Associates expressly authorized and approved commingling of funds among and between numerous entities, such as among and between PCI and the SPEs.  The SPEs were used solely as a conduit of funds ultimately destined for PCI. Similarly, funds transferred from PCI to pay the relevant investor originated from funds sourced from other investors.  The only way to accomplish the repayment of an investor from funds obtained through other SPEs and from other investors, was to disregard the separateness of the SPEs and to commingle the funds at PCI prior to distribution.

   35.  PCI maintained a number of bank accounts, including a bank account at M&I Bank.  From approximately 2001 to 2008, PCI transferred funds from its M&I bank account to the SPEs in the amount of approximately $32 billion dollars. PCI also received approximately $7.3 billion dollars from its SPEs.  PCI's M&I bank account also received approximately $12.7 billion from Enchanted (owned by Catain, who pled guilty to conspiracy to commit money laundering) and approximately $12.4 billion from Nationwide (owned by Reynolds, who pled guilty to conspiracy to commit money laundering), co-conspirators in the money laundering scheme.  This flow of funds illustrates that funds were routed through and around the SPEs to give the investors the appearance of legitimate business activity and that the SPEs, among other entities, were used as an artifice to perpetrate a massive financial fraud.

     e)  <u>Lack of Adequate Capitalization</u>.

   36.  By definition, the SPEs were never independently and/or sufficiently capitalized because they conducted no legitimate business operations and had no business assets.  Indeed,

the SPEs served no functional purpose from their inception other than perpetrating the fraud. All funds provided to, or paid on behalf of, the SPEs served the sole purpose of furthering the Ponzi scheme and, in violation of established business practices and generally accepted principles of corporate law, were ultimately forwarded to PCI for distribution to various investors.

f)     No Functioning Directors or Officers.

37.     Petters and PCI did not respect or treat the SPEs as separate legal entities. For example, the SPEs had no functioning board of managers or directors. Petters held multiple management and oversight positions within the SPEs. The SPEs were, in fact and action, alter-egos of Petters that conducted no business activity other than perpetrating a massive fraud by giving the appearance of legitimacy.

g)     Common Domination and Control.

38.     Petters and his Criminal Associates dominated and controlled all aspects of the business operations of the SPEs, with the exception of certain SPE bank accounts that were controlled by investors, for the sole and exclusive purpose of furthering the Ponzi scheme that Petters orchestrated through PCI and the SPEs.

h)     Conflation of Multiple Entities.

39.     Petters conflated the multiple entities that he used to operate the Ponzi scheme by, among other things, transferring funds interchangeably and at will among the entities, ultimately for the benefit of PCI and to generate the payment of false profits pursuant to the promissory notes to perpetrate and further the Ponzi scheme.

i)     Common Source of Cost of Doing Business.

40.     PCI paid the expenses, rents, management, accounting, and other expenses of the SPEs. PCI paid all expenses regarding the formation of the SPEs. PCI also paid any legal

expenses that were related to the formation and documentation of the billions of dollars in transactions that are now known to be fraudulent. In order to conduct any legitimate business, the SPEs would likely have had to pay employees, rent office space and have letterhead upon which to correspond with business partners. They at least would have had to own or hold security interests in inventory or accounts receivable—neither of which existed. Instead, the SPEs were not legitimate businesses. They had no employees. While they purported to conduct business in the billions of dollars, their tangible existence was no more than a drawer in a file cabinet located at PCI's corporate headquarters, with a bank account through which funds would flow to keep the fraud alive.

       C.    <u>PCI and the SPEs Commingled Funds and Created a Tangled Web of Financial Transactions</u>.

41.    PCI's M&I bank account served as the primary account for the collection and disbursement of funds in the Ponzi Scheme, receiving and disbursing approximately $82 billion (approximately $41 billion in, $41 billion out). Of the $41 billion transferred out of PCI bank accounts attributable to Petters-related uses, the transfers included inter-company transfers among the Debtors, intra-entity transfers within the Debtors, transfers to private investors and SPE investors, and the transfer of funds to Petters for his personal use (the "<u>Petters Related Transfers</u>"). Petters used three principal bank accounts for PCI including: (1) an M&I Bank account; (2) a Crown Bank account; and (3) an Associated Bank account. The PCI M&I Account was used to transfer the bulk of the stolen funds to the SPEs.

42.    Attached as <u>Exhibits</u> <u>A-1, A-2 and A-3 through E-1, E-2 and E-3</u> are representative examples of daily activity in and out of PCI's M&I account, three per year, beginning in 2003. Also attached as <u>Exhibits</u> <u>F-1 through F-9</u> are examples of such activity for the first business day of each month in 2008, until the fraud was shut down. As is apparent, there

was no fear of money molding at PCI and the SPEs as it was sent out just as fast as it came in, day by day, month by month, and year by year.

43.    Petters and his Criminal Associates commenced 13,026 Petters Related Transfers amounting to $39,470,919,357.03 from the PCI M&I account.  These amounts represent 96% of all transfers made from this account.  The PCI M&I account also received deposits from Enchanted (which was run by Catain) and Nationwide (which was run by Reynolds).  Catain and Reynolds deposited approximately $12.5 billion dollars each in the PCI M&I account totaling approximately $25 billion dollars in laundered cash.  The $25 billion dollars Enchanted and Nationwide deposited in the PCI M&I account originated from investors and was forwarded on to PCI and PCI ultimately used those funds to pay earlier investors in the scheme.

44.    Large sums of cash and numerous financial transactions and transfers have taken place among and between PCI and the SPEs.  Because the Petters enterprise was conducted as a massive Ponzi scheme, none of the transactions between PCI and the SPEs are thought to be legitimate.  No bona fide or non-fraudulent business activity took place between and among PCI and the SPEs under which either inter-entity, intra-entity or third-party claims would be supported by legitimate transactions.  Many substantial claims have been asserted by investors and other creditors against each SPE—indeed, a large number of proofs of claim have been filed with the Court and are of record in the bankruptcy case of each SPE based on damages for civil conspiracy, fraud and other torts.  Multiple identical claims have been filed in the separate bankruptcy cases.  Accordingly, the claims allowance and disallowance process for these entities would entail large expense to unravel and liquidate.  Similarly, because of the fraudulent nature of these entities, parties in interest are likely to make wholesale objection to the allowance of any

Petters related inter-entity claim which they perceive is related to the fraud which would cause great expense to the estates in litigating third-party claim objection proceedings.

        D.      <u>Non-Separateness of PCI or the SPEs</u>.

        45.      It is impossible, as a matter of fact, for investors to have received any financial benefit by relying upon the separateness of PCI and its SPEs for purposes of securing their purported inventory and accounts receivable collateral when, in fact, no collateral existed.  The SPEs failed their purported purpose from day one.  They essentially allowed the loan documents and purported operations of the credit facilities to match with an entity—although little ongoing monitoring of flow of funds through the SPEs occurred.

        46.      Ultimately, creditors advanced funds in large part because of the guarantees and the perceived success of Petters and his empire, including PCI.  Indeed, investors necessarily relied on the financial strength of the Petters enterprise as a whole when extending credit or making investments rather than on that of any individual entity.

        E.      <u>Prejudice from Non-Consolidation</u>.

        47.      The SPEs have no assets, money or property.  All they have are claims.  The SPEs represent the last door through which *billions* of dollars left PCI, as the commingled funds were sent down stream and out the door, albeit at times through accounts nominally held in the names of the SPEs but controlled by the investor.  In many instances, the investor is the only contractual creditor of a fund and is the entity against whom avoidance claims for false profits alone in the hundreds of millions dollars exist.  If consolidation does not occur, the creditors and true victims of this massive fraud could be deprived of significant opportunities to recover on their losses.  Furthermore, it is equitable that the ultimate holders of allowed claims in the PCI Estates be allowed to share in the aggregate recovery of the PCI Estates.

48.      There is not a single creditor whose status as such will be harmed by substantive consolidation of these bankruptcy estates.   In fact, without consolidation, creditors may be harmed because viable fraudulent transfer claims may be impaired.

49.      Substantive consolidation of the PCI Estates is appropriate, and indeed required, under the facts and the governing law for the benefit of all creditors.   The claims against the investors in the SPEs need a trustee with standing to pursue the claims and funds to pursue the claims.  Substantive consolidation assures both.

50.      If testimony is needed at the hearing on this Motion, the Debtors hereby give notice that Theodore F. Martens of PwC, whose business address is 300 Madison Avenue, New York, NY 10017 and/or other advisors to or representatives of the Debtors may testify about the factual matters raised in the Motion.

WHEREFORE, the Debtors move the Court to (i) substantively consolidate the estates of PCI, PC Funding, Thousand Lakes, SPF Funding, PL Ltd., Edge One, MGC Finance, PAC Funding and Palm Beach Finance; and (ii) order that such substantive consolidation be enacted effective as of October 11, 2008.

DATED: April 6, 2011                    **LINDQUIST & VENNUM P.L.L.P.**

                                        By   /e/ James A. Lodoen
                                        _____
                                        Daryle L. Uphoff (0111831)
                                        James A. Lodoen (173605)
                                        Mark D. Larsen (318498)
                                        George H. Singer (0262043)
                                        Kirstin D. Kanski (0346676)
                                        Adam C. Ballinger (0389058)
                                        4200 IDS Center
                                        80 South Eighth Street
                                        Minneapolis, MN 55402-2274
                                        (612) 371-3211
                                        (612) 371-3207 (facsimile)
                                        www.lindquist.com

                                        **ATTORNEYS FOR
                                        DOUGLAS A. KELLEY,
                                        CHAPTER 11 TRUSTEE**

VERIFICATION

I, Theodore F. Martens, a Partner with the accounting firm PricewaterhouseCoopers LLP, declare under penalty of perjury that the facts set forth in the preceding Motion to Substantively Consolidate Certain of the Debtors' Estates are true and correct according to the best of my knowledge, information and belief.

Dated: April 6, 2011

Theodore F. Martens

# Exhibit A

**PCI - M&I**
**Account Number 1950016**
**Transactions on 2/20/2003**

| Clear Date | Transaction Type | Payor | Payee | Memo Line | In | Out | Investor Transactions |
|---|---|---|---|---|---|---|---|
| 2/20/2003 | WIRE OUT | PCI | METRO GEM, INC. | | | $ 4,037,500.00 | METRO GEM, INC. |
| 2/20/2003 | WIRE IN | PC FUNDING, LLC - COLLECTION ACCOUNT | PCI | | $ 244,884.58 | | PC FUNDING, LLC |
| 2/20/2003 | WIRE OUT | CORPORATE TRUST NORWEST | PCI | | 470,017.76 | | MGC FINANCE, LLC |
| 2/20/2003 | WIRE OUT | PCI | REDTAGBIZ, INC. (BLOCKED) | | | 163,669.30 | PAC FUNDING, LLC |
| 2/20/2003 | WIRE IN | METRO GEM, INC. | PCI | | 3,900,000.00 | | METRO GEM, INC. |
| 2/20/2003 | WIRE IN | REDTAGBIZ, INC. (OPERATING) | PCI | | 3,272,386.00 | | PAC FUNDING, LLC |
| 2/20/2003 | WIRE OUT | PCI | PC FUNDING, LLC - COLLECTION ACCOUNT | | | 3,143,099.85 | PC FUNDING, LLC |
| 2/20/2003 | WIRE OUT | PCI | REDTAGBIZ, INC. (LOCKBOX) | | | 3,093,861.35 | PAC FUNDING, LLC |
| 2/20/2003 | WIRE IN | PCI/REDTAGBIZ | PCI | | 3,650,977.50 | | LANCER FINANCIAL SERVICES, LLC - COMBINED DEALS |
| 2/20/2003 | WIRE OUT | PCI | THE ARON COMPANIES | | | 1,748,700.00 | DON ARON D/B/A THE ARON COMPANIES |
| 2/20/2003 | WIRE OUT | PCI | US BANK N.A. | | | 4,443,465.60 | PALM BEACH FINANCE HOLDINGS, INC. |
| 2/20/2003 | WIRE OUT | PCI | PETTERS LIMITED, INC. | | | 6,941,113.25 | PL LTD, INC. (EPSILON) |
| 2/20/2003 | WIRE IN | PC FUNDING, LLC - COLLECTION ACCOUNT | PCI | | 272,266.52 | | PC FUNDING, LLC |
| 2/20/2003 | WIRE IN | PALM BEACH CAPITAL CORP | PCI | | 784,715.60 | | PALM BEACH FINANCE HOLDINGS, INC. |
| 2/20/2003 | WIRE OUT | PCI | METRO GEM, INC. | | | 82,365.88 | METRO GEM, INC. |
| 2/20/2003 | WIRE OUT | PCI | METRO GEM, INC. | | | 19,019.00 | METRO GEM, INC. |
| 2/20/2003 | WIRE OUT | PCI | PETTERS LIMITED, INC. | | | 4,316,217.50 | PL LTD, INC. (EPSILON) |
| 2/20/2003 | WIRE OUT | PCI | PC FUNDING, LLC - COLLECTION ACCOUNT | | | 3,047,088.75 | PC FUNDING, LLC |
| 2/20/2003 | WIRE OUT | PCI | APEX DIGITAL INC | | | 5,000,000.00 | |
| 2/20/2003 | WIRE IN | NATIONWIDE GIG, INC. | PCI | | 2,840,000.00 | | FICTITIOUS VENDOR |
| 2/20/2003 | WIRE IN | NATIONWIDE INTERNATIONAL RESOURCES | PCI | | 5,037,400.00 | | FICTITIOUS VENDOR |
| 2/20/2003 | WIRE IN | AFTER THE SECOND MILLENNIUM, INC | PCI | | 6,944,435.00 | | FICTITIOUS VENDOR |
| 2/20/2003 | WIRE IN | ENCHANTED FAMILY BUYING COMPANY | PCI | | 2,612,927.75 | | FICTITIOUS VENDOR |
| 2/20/2003 | WIRE OUT | PCI | PETTERS GROUP WORLDWIDE, LLC | | | 320,000.00 | |
| 2/20/2003 | WIRE IN | NATIONWIDE GIG, INC. | PCI | | 4,296,800.00 | | FICTITIOUS VENDOR |
| 2/20/2003 | WIRE IN | BULLET DISTRIBUTION INC | PCI | | 650,014.51 | | |
| 2/20/2003 | SWEEP | SWEEP | PCI | | 5,802,770.35 | | |
| 2/20/2003 | SWEEP | SWEEP | PETTERS COMPANY | | | 4,480,692.09 | |
| 2/20/2003 | WIRE OUT | PCI | PETTERS COMPANY | | | 50,000.00 | |

**Total** $ 40,888,775.57  $ 40,888,775.57

**Net Inflow (Outflow)** $ -

PCI - M&I
Account Number 1959018
Transactions on 6/11/2003

| Clear Date | Transaction Type | Payer | Payee | Memo Line | In | Out | Investor Transactions |
|---|---|---|---|---|---|---|---|
| 6/11/2003 | WIRE OUT | PCI | PETTERS LIMITED, INC. | | | $ 3,489,817.50 | PL LTD, INC. (EPSILON) |
| 6/11/2003 | WIRE IN | PC FUNDING, LLC - COLLECTION ACCOUNT | PCI | | $ 360,528.33 | - | PC FUNDING, LLC |
| 6/11/2003 | WIRE IN | PC FUNDING, LLC - COLLECTION ACCOUNT | PCI | | 165,243.32 | - | PC FUNDING, LLC |
| 6/11/2003 | WIRE OUT | METRO GEM, INC. | METRO GEM, INC. | | 5,400,000.00 | - | METRO GEM, INC. |
| 6/11/2003 | WIRE OUT | PCI | METRO GEM, INC. | | - | 30,870.00 | METRO GEM, INC. |
| 6/11/2003 | WIRE OUT | PCI | METRO GEM, INC. | | - | 1,837.50 | METRO GEM, INC. |
| 6/11/2003 | WIRE IN | PCI | REDTAGBIZ, INC. (BLOCKED) | | - | 175,131.94 | PAC FUNDING LLC |
| 6/11/2003 | WIRE OUT | PCI | CORPORATE TRUST CLEARING ACCOUNT | | - | 4,521,552.00 | MGC FINANCE, LLC |
| 6/11/2003 | WIRE OUT | PCI | METRO GEM, INC. | | - | 2,784,166.66 | METRO GEM, INC. |
| 6/11/2003 | WIRE OUT | PCI | PCI/REDTAGBIZ | | - | 5,505,229.54 | LANCER FINANCIAL SERVICES, LLC - COMBINED DEALS |
| 6/11/2003 | WIRE IN | REDTAGBIZ, INC. (OPERATING) | REDTAGBIZ, INC. (OPERATING) | | 294,925.60 | - | PAC FUNDING, LLC |
| 6/11/2003 | WIRE IN | REDTAGBIZ, INC. (OPERATING) | PCI | | 3,502,638.75 | - | PAC FUNDING, LLC |
| 6/11/2003 | WIRE IN | CORPORATE TRUST WIRE CLEARING | PCI | | 609,418.67 | - | MGC FINANCE, LLC |
| 6/11/2003 | WIRE IN | PCI | PC FUNDING, LLC - COLLECTION ACCOUNT | | 5,492,260.90 | - | PC FUNDING, LLC |
| 6/11/2003 | WIRE IN | PETTERS LIMITED, INC. | PCI | | 2,026,008.95 | - | PL LTD, INC. (EPSILON) |
| 6/11/2003 | WIRE IN | PETTERS LIMITED, INC. | PCI | | 3,489,817.50 | - | PL LTD, INC. (EPSILON) |
| 6/11/2003 | WIRE OUT | PCI | RWB SERVICES, LLC | | - | 5,440,450.00 | THOUSAND LAKES, LLC |
| 6/11/2003 | WIRE OUT | PCI | RWB SERVICES, LLC | | - | 5,435,720.00 | THOUSAND LAKES, LLC |
| 6/11/2003 | WIRE IN | PC FUNDING, LLC - COLLECTION ACCOUNT | PCI | | 431,927.57 | - | PC FUNDING, LLC |
| 6/11/2003 | WIRE IN | RWB SERVICES, LLC | PCI | | 1,797,718.60 | - | THOUSAND LAKES, LLC |
| 6/11/2003 | WIRE IN | RWB SERVICES, LLC | PCI | | 1,797,624.00 | - | THOUSAND LAKES, LLC |
| 6/11/2003 | WIRE OUT | PCI | PETTERS LIMITED, INC. | | - | 2,028,008.95 | PL LTD, INC. (EPSILON) |
| 6/11/2003 | CHECK | | LYNN (ZAC) ISAAC | | - | 37,123.34 | LYNN (ZAC) ISAAC |
| 6/11/2003 | SWEEP IN | IMAGING SOLUTIONS, INC. | SWEEP | | 2,900,000.00 | | IMAGING SOLUTIONS, INC. |
| 6/11/2003 | DEPOSIT | UNKNOWN/ UNAVAILABLE | SWEEP | | 3,303,286.45 | | |
| 6/11/2003 | SWEEP OUT | | SWEEP | | 198.60 | | |
| 6/11/2003 | SUP SNOW | | SUP SNOW | | 799.11 | | |
| 6/11/2003 | WIRE IN | ENCHANTED FAMILY BUYING COMPANY | PCI | | 8,045,900.00 | | FICTITIOUS VENDOR |
| 6/11/2003 | FEE - SERVICE | REDTAGBIZ, INC. | M&I BANK | | | 2,769.80 | |
| 6/11/2003 | WIRE IN | REDTAGBIZ, INC. | M&I BANK | | 611.64 | | |
| 6/11/2003 | FEE - SERVICE | PCI | PCI | | | 20.00 | |
| 6/11/2003 | CHECK | SUP SNOW | SUP SNOW | | 1,000.00 | - | |
| 6/11/2003 | CHECK | STANTON GROUP | STANTON GROUP | | 3,462.00 | - | |
| 6/11/2003 | CHECK | 2J GROUP INC | PCI | | 61,074.76 | - | |
| 6/11/2003 | WIRE IN | NATIONWIDE INTERNATIONAL RESOURCES | PCI | | 6,022,000.00 | - | FICTITIOUS VENDOR |

Total   $ 40,214,193.85   $ 37,247,046.85

Net Inflow (Outflow)   $ 2,967,147.00

PCI - M&I
Account Number 1959018
Transactions on 12/5/2003

| Clear Date | Transaction Type | Payor | Payee | Memo Line | In | Out | Investor Transactions |
|---|---|---|---|---|---|---|---|
| 12/5/2003 | WIRE IN | HOME FEDERAL SAVINGS BANK | PCI | | $ 4,000,000.00 | - | METRO GEM, INC. |
| 12/5/2003 | WIRE IN | HOME FEDERAL SAVINGS BANK | PCI | | 4,800,000.00 | - | METRO GEM, INC. |
| 12/5/2003 | WIRE IN | PC FUNDING, LLC - COLLECTION ACCOUNT | PCI | | 307,416.67 | - | PC FUNDING, LLC |
| 12/5/2003 | WIRE OUT | PCI | PETTERS COMPANY, INC. (LOCKBOX) | | - | $ 3,042,296.50 | PAC FUNDING, LLC |
| 12/5/2003 | WIRE OUT | PCI | THOUSAND LAKES, LLC | | - | 6,838,630.50 | THOUSAND LAKES, LLC |
| 12/5/2003 | WIRE IN | PETTERS LIMITED, INC. | PCI | | 5,119,381.50 | - | PL LTD, INC. (EPSILON) |
| 12/5/2003 | WIRE IN | PETTERS COMPANY, INC. (OPERATING) | PCI | | 700,207.43 | - | PAC FUNDING, LLC |
| 12/5/2003 | WIRE OUT | PCI | PETTERS FINANCE LLC | | - | 2,989,256.50 | SPF FUNDING |
| 12/5/2003 | WIRE IN | THOUSAND LAKES, LLC | PCI | | 1,680,352.76 | - | THOUSAND LAKES, LLC |
| 12/5/2003 | CHECK | PCI | FREDRIKSON & BYRON, PA | | | 44,703.43 | |
| 12/5/2003 | CHECK | PCI | CH ROBINSON | | | 13,557.33 | |
| 12/5/2003 | SWEEP OUT | SWEEP | SWEEP | | | 3,468,470.69 | |
| 12/5/2003 | WIRE OUT | PCI | PETTERS VIEWBEAM LLC | | - | 283,125.00 | |

Total    $ 16,607,358.36    $ 16,680,039.95

Net Inflow (Outflow)    $    (72,681.59)

# Exhibit B

**PCI - M&I**
**Account Number 1959018**
**Transactions on 2/13/2004**

| Clear Date | Transaction Type | Payor | Payee | Memo Line | In | Out | Investor Transactions |
|---|---|---|---|---|---|---|---|
| 2/13/2004 | WIRE OUT | PCI | PC FUNDING, LLC - COLLECTION ACCOUNT | | $ - | $ 2,530,782.35 | PC FUNDING, LLC |
| 2/13/2004 | WIRE IN | PC FUNDING, LLC - COLLECTION ACCOUNT | PCI | | $ 221,699.02 | $ - | PC FUNDING, LLC |
| 2/13/2004 | WIRE OUT | PCI | METRO GEM, INC. | | | 5,255,250.00 | METRO GEM, INC. |
| 2/13/2004 | WIRE IN | HOME FEDERAL SAVINGS BANK | PCI | | 2,200,000.00 | - | METRO GEM, INC. |
| 2/13/2004 | WIRE OUT | PCI | PETTERS VIEWBEAM LLC | | - | 112,319.00 | |
| 2/13/2004 | CHECK | PCI | FREDRIKSON & BYRON, PA | | | 27,921.92 | |
| 2/13/2004 | SWEEP IN | SWEEP | SWEEP | | 9,682,284.39 | | |
| 2/13/2004 | CHECK | PCI | WILLIAM DUNLAP | | | 250,000.00 | |
| 2/13/2004 | SWEEP OUT | SWEEP | SWEEP | | | 3,933,110.14 | |

Total    $ 12,103,983.41    $ 12,109,383.41

Net Inflow (Outflow)    $    (5,400.00)

PCI - M&I
Account Number 1959018
Transactions on 5/5/2004

| Clear Date | Transaction Type | Payor | Payee | Memo Line | In | Out | Investor Transactions |
|---|---|---|---|---|---|---|---|
| 5/5/2004 | WIRE IN | HOME FEDERAL SAVINGS BANK | PCI | | $ 3,790,000.00 | | METRO GEM, INC. |
| 5/5/2004 | WIRE OUT | PCI | PETTERS LIMITED, INC. | | - | $ 4,754,023.95 | PL LTD, INC. (EPSILON) |
| 5/5/2004 | WIRE OUT | PCI | PETTERS LIMITED, INC. | | - | 5,751,447.25 | PL LTD, INC. (EPSILON) |
| 5/5/2004 | WIRE OUT | PCI | THOUSAND LAKES, LLC | | - | 6,440,565.00 | THOUSAND LAKES, LLC |
| 5/5/2004 | WIRE OUT | PCI | PETTERS LIMITED, INC. | | - | 3,813,809.45 | PL LTD, INC. (EPSILON) |
| 5/5/2004 | WIRE OUT | PCI | PETTERS LIMITED, INC. | | - | 5,583,118.50 | PL LTD, INC. (EPSILON) |
| 5/5/2004 | WIRE IN | PETTERS LIMITED, INC. | PCI | | 16,557.21 | | PL LTD, INC. (EPSILON) |
| 5/5/2004 | WIRE IN | PETTERS LIMITED, INC. | PCI | | 4,754,023.95 | - | PL LTD, INC. (EPSILON) |
| 5/5/2004 | WIRE IN | THOUSAND LAKES, LLC | PCI | | 1,826,901.37 | | THOUSAND LAKES, LLC |
| 5/5/2004 | WIRE OUT | PCI | PC FUNDING, LLC - COLLECTION ACCOUNT | | - | 3,906,407.40 | PC FUNDING, LLC |
| 5/5/2004 | WIRE OUT | PCI | CORPORATE TRUST CLEARING ACCOUNT | | - | 5,749,395.75 | MGC FINANCE, LLC |
| 5/5/2004 | WIRE OUT | PCI | PETTERS COMPANY, INC. (BLOCKED) | | - | 313,585.00 | PAC FUNDING, LLC |
| 5/5/2004 | WIRE IN | PC FUNDING, LLC - COLLECTION ACCOUNT | PCI | | 335,840.73 | - | PC FUNDING, LLC |
| 5/5/2004 | WIRE OUT | PCI | METRO GEM, INC. | | - | 53,865.00 | METRO GEM, INC. |
| 5/5/2004 | WIRE IN | WF CORPORATE TRUST OPERATIONS | PCI | | 452,670.75 | | MGC FINANCE, LLC |
| 5/5/2004 | WIRE IN | NATIONWIDE INTERNATIONAL RESOURCES | PCI | | 5,427,700.00 | - | FICTITIOUS VENDOR |
| 5/5/2004 | WIRE IN | NATIONWIDE INTERNATIONAL RESOURCES | PCI | | 5,047,500.00 | | FICTITIOUS VENDOR |
| 5/5/2004 | SWEEP OUT | SWEEP | SWEEP | | - | 892,593.54 | |
| 5/5/2004 | WIRE IN | ENCHANTED FAMILY BUYING COMPANY | PCI | | 10,862,541.00 | | FICTITIOUS VENDOR |
| 5/5/2004 | SWEEP IN | SWEEP | PCI | | 924,555.83 | | |
| 5/5/2004 | WIRE IN | NATIONWIDE INTERNATIONAL RESOURCES | PCI | | 3,820,500.00 | - | FICTITIOUS VENDOR |

Total   $ 37,258,790.84   $ 37,258,790.84

Net Inflow (Outflow)   $   -

PCI - M&I
Account Number 1959018
Transactions on 9/15/2004

| Clear Date | Transaction Type | Payor | Payee | Memo Line | In | Out | Investor Transactions |
|---|---|---|---|---|---|---|---|
| 9/15/2004 | WIRE OUT | PCI | STAR HOLDING COMPANY LLC | | $ - | $ 669,600.00 | PAUL TAUNTON |
| 9/15/2004 | WIRE OUT | PCI | UNKNOWN UNAVAILABLE | | - | 4,324,300.35 | PALM BEACH FINANCE HOLDINGS, INC. |
| 9/15/2004 | WIRE OUT | PCI | CORPORATE TRUST CLEARING ACCOUNT | | - | 5,665,843.50 | MGC FINANCE, LLC |
| 9/15/2004 | WIRE OUT | PCI | PO/REDTAGBIZ | | - | 4,085,041.60 | LANCER FINANCIAL SERVICES, LLC |
| 9/15/2004 | WIRE IN | PALM BEACH CAPITAL CORP | PCI | | $ 286,804.52 | - | PALM BEACH FINANCE HOLDINGS, INC. |
| 9/15/2004 | WIRE IN | WF CORPORATE TRUST OPERATIONS | PCI | | 542,616.28 | - | MGC FINANCE, LLC |
| 9/15/2004 | WIRE IN | WF CORPORATE TRUST OPERATIONS | PCI | | 398,410.17 | - | MGC FINANCE, LLC |
| 9/15/2004 | WIRE OUT | PCI | METRO GEM, INC. | | - | 143,487.17 | METRO GEM, INC. |
| 9/15/2004 | WIRE OUT | PCI | CORPORATE TRUST CLEARING ACCOUNT | | - | 6,246,004.95 | MGC FINANCE, LLC |
| 9/15/2004 | WIRE IN | NATIONWIDE INTERNATIONAL RESOURCES | PCI | | 4,897,500.00 | - | FICTITIOUS VENDOR |
| 9/15/2004 | WIRE IN | ENCHANTED FAMILY BUYING COMPANY | PCI | | 10,695,038.00 | - | FICTITIOUS VENDOR |
| 9/15/2004 | WIRE IN | UBID, INC. | PCI | | 539,315.00 | - | |
| 9/15/2004 | WIRE OUT | PCI | PETTERS WAREHOUSE DIRECT INC | | - | 96,000.00 | |
| 9/15/2004 | WIRE IN | NATIONWIDE INTERNATIONAL RESOURCES | PCI | | 4,197,500.00 | - | FICTITIOUS VENDOR |

Total                $ 21,555,185.97    $ 21,230,277.57

Net Inflow (Outflow)    $    324,908.40

# Exhibit C

**PCI - M&I**
**Account Number 1959018**
**Transactions on 3/1/2005**

| Clear Date | Transaction Type | Payer | Payee | Memo Line | In | Out | Investor Transactions |
|---|---|---|---|---|---|---|---|
| 3/1/2005 | WIRE IN | THOUSAND LAKES, LLC | PCI | BANCO POPULAR | $ 174,864.74 | | THOUSAND LAKES, LLC |
| 3/1/2005 | WIRE IN | PAC FUNDING, LLC (OPERATING) | PCI | CROWN 1107549 | 464,663.83 | | PAC FUNDING, LLC |
| 3/1/2005 | WIRE IN | PAC FUNDING, LLC (OPERATING) | PCI | CROWN 1107549 | 694,112.45 | | PAC FUNDING, LLC |
| 3/1/2005 | WIRE IN | PALM BEACH CAPITAL CORP | PCI | US BANK NA | 147,279.50 | | PALM BEACH FINANCE HOLDINGS, INC. |
| 3/1/2005 | WIRE IN | PALM BEACH CAPITAL CORP | PCI | US BANK NA | 356,915.35 | | PALM BEACH FINANCE HOLDINGS, INC. |
| 3/1/2005 | WIRE IN | PALM BEACH CAPITAL CORP | PCI | US BANK NA | 313,194.25 | | PALM BEACH FINANCE HOLDINGS, INC. |
| 3/1/2005 | WIRE IN | PALM BEACH CAPITAL CORP | PCI | US BANK NA | 333,695.83 | | PALM BEACH FINANCE HOLDINGS, INC. |
| 3/1/2005 | WIRE IN | PALM BEACH CAPITAL CORP | PCI | US BANK NA | 286,674.48 | | PALM BEACH FINANCE HOLDINGS, INC. |
| 3/1/2005 | WIRE IN | PALM BEACH CAPITAL CORP | PCI | US BANK NA | 361,350.83 | | PALM BEACH FINANCE HOLDINGS, INC. |
| 3/1/2005 | WIRE IN | PALM BEACH CAPITAL CORP | PCI | US BANK NA | 347,294.67 | | PALM BEACH FINANCE HOLDINGS, INC. |
| 3/1/2005 | WIRE OUT | PCI | THOUSAND LAKES, LLC | BANCO POPULAR | | $ 3,125,317.50 | THOUSAND LAKES, LLC |
| 3/1/2005 | WIRE OUT | PCI | THOUSAND LAKES, LLC | BANCO POPULAR | | 3,555,438.75 | THOUSAND LAKES, LLC |
| 3/1/2005 | WIRE OUT | PCI | THOUSAND LAKES, LLC | BANCO POPULAR | | 5,071,572.50 | THOUSAND LAKES, LLC |
| 3/1/2005 | WIRE OUT | PCI | THOUSAND LAKES, LLC | BANCO POPULAR | | 7,752,250.00 | THOUSAND LAKES, LLC |
| 3/1/2005 | WIRE OUT | PCI | PAC FUNDING, LLC (LOCKBOX) | CROWN 1107531 | | 3,062,290.00 | PAC FUNDING, LLC |
| 3/1/2005 | WIRE OUT | PCI | PAC FUNDING, LLC (LOCKBOX) | CROWN 1107531 | | 4,573,952.50 | PAC FUNDING, LLC |
| 3/1/2005 | WIRE OUT | PCI | METRO GEM, INC. | HFSB 1529000734 | | 164,957.81 | METRO GEM, INC. |
| 3/1/2005 | WIRE OUT | PCI | PETTERS LIMITED, INC. | HIGHLAND BANK 2005080 | | 6,065,027.45 | PL LTD, INC. (EPSILON) |
| 3/1/2005 | WIRE OUT | PCI | PETTERS LIMITED, INC. | HIGHLAND BANK 2005080 | | 6,392,669.55 | PL LTD, INC. (EPSILON) |
| 3/1/2005 | WIRE OUT | PCI | PETTERS CAPITAL | US BANK NA 4730017 | | 5,052,425.00 | PALM BEACH FINANCE HOLDINGS, INC. |
| 3/1/2005 | WIRE OUT | PCI | PETTERS CAPITAL | US BANK NA 4730017 | | 5,211,215.50 | PALM BEACH FINANCE HOLDINGS, INC. |
| 3/1/2005 | WIRE IN | NATIONWIDE INTERNATIONAL RESOURCES INC | PCI | 1ST REGIONAL BANK 771076939 | 4,222,800.00 | | FICTITIOUS VENDOR |
| 3/1/2005 | WIRE IN | FINGERHUT DIRECT MARKETING INC | PCI | US REGIONAL BANK 10475/79/017 | 7,000.00 | | |
| 3/1/2005 | RECALL FROM SWEEP | SWEEP | SWEEP | | 9,376,652.16 | | |
| 3/1/2005 | TRANSFER TO SWEEP | SWEEP | SWEEP | | | 2,635,166.80 | |
| 3/1/2005 | WIRE IN | ENCHANTED FAMILY BUYING COMPANY | PCI | ANCHOR BANK 3327170 | 24,190,879.63 | | |
| 3/1/2005 | TRANSFER IN | PCI | PCI | ACCT 00223-34037 | 8,805.74 | | |
| 3/1/2005 | WIRE OUT | PCI | PETTERS GROUP WORLDWIDE, LLC | CROWN BANK ACCT #1104074 | | 1,450,000.00 | FICTITIOUS VENDOR |
| 3/1/2005 | WIRE IN | NATIONWIDE INTERNATIONAL RESOURCES | PCI | 1ST REGIONAL BANK 771076939 | 9,512,800.00 | | FICTITIOUS VENDOR |
| 3/1/2005 | WIRE IN | NATIONWIDE INTERNATIONAL RESOURCES | PCI | 1ST REGIONAL BANK 771076939 | 3,333,300.00 | | FICTITIOUS VENDOR |

Total    $ 54,112,283.46   $ 54,112,283.46

Net Inflow (Outflow)    $    -

PCI - M&I
Account Number 1959018
Transactions on 8/12/2005

| Clear Date | Transaction Type | Payor | Payee | Memo Line | In | Out | Investor Transactions |
|---|---|---|---|---|---|---|---|
| 8/12/2005 | CHECK | PCI | BRAD DENNIS | | $ | $ 40,000.00 | BRAD DENNIS/RE ENTERPRISES |
| 8/12/2005 | WIRE IN | THOUSAND LAKES, LLC | PCI | BANCO POPULAR | $ 839,640.89 | | THOUSAND LAKES, LLC |
| 8/12/2005 | WIRE IN | METRO GEM, INC. | PCI | HFSB 1929000734 | 4,645,000.00 | | METRO GEM, INC. |
| 8/12/2005 | WIRE IN | PALM BEACH CAPITAL CORP | PCI | US BANK NA | 294,585.65 | | PALM BEACH FINANCE HOLDINGS, INC. |
| 8/12/2005 | WIRE IN | PALM BEACH CAPITAL CORP | PCI | US BANK NA | 271,664.30 | | PALM BEACH FINANCE HOLDINGS, INC. |
| 8/12/2005 | WIRE IN | PALM BEACH CAPITAL CORP | PCI | US BANK NA | 342,069.58 | | PALM BEACH FINANCE HOLDINGS, INC. |
| 8/12/2005 | WIRE IN | WELLS FARGO BANK, NA | PCI | WELLS FARGO | 368,031.53 | | MGC FINANCE, LLC |
| 8/12/2005 | WIRE OUT | | THOUSAND LAKES, LLC | BANCO POPULAR | | 3,179,545.00 | THOUSAND LAKES, LLC |
| 8/12/2005 | WIRE OUT | PCI | METRO GEM, INC. | HFSB 1929000734 | | 58,781.67 | METRO GEM, INC. |
| 8/12/2005 | WIRE OUT | PCI | METRO GEM, INC. | HFSB 1929000734 | | 4,927,316.67 | METRO GEM, INC. |
| 8/12/2005 | WIRE OUT | PCI | METRO GEM, INC. | HFSB 1929000734 | | 5,045,658.33 | METRO GEM, INC. |
| 8/12/2005 | WIRE OUT | PCI | PETTERS LIMITED, INC. | HIGHLAND BANK 2005080 | | 5,933,400.00 | PL LTD. INC. (EPSILON) |
| 8/12/2005 | WIRE OUT | PCI | PETTERS LIMITED, INC. | HIGHLAND BANK 2005080 | | 6,502,655.50 | PL LTD. INC. (EPSILON) |
| 8/12/2005 | WIRE OUT | PCI | PETTERS CAPITAL | US BANK, NA 4730017 | | 4,198,139.30 | PALM BEACH FINANCE HOLDINGS, INC. |
| 8/12/2005 | WIRE OUT | PCI | PETTERS CAPITAL | US BANK, NA 4730017 | | 4,430,865.65 | PALM BEACH FINANCE HOLDINGS, INC. |
| 8/12/2005 | WIRE OUT | PCI | PETTERS CAPITAL | US BANK, NA 4730017 | | 5,268,961.25 | PALM BEACH FINANCE HOLDINGS, INC. |
| 8/12/2005 | WIRE OUT | PCI | PETTERS CAPITAL | US BANK, NA 4730017 | | 5,627,610.00 | PALM BEACH FINANCE HOLDINGS, INC. |
| 8/12/2005 | WIRE OUT | PCI | METRO CAPITAL, LLC | WELLS FARGO BANK, NA | | 5,268,957.50 | MGC FINANCE, LLC |
| 8/12/2005 | WIRE OUT | PCI | PCI/REDTAGBIZ | WORTH NATIONAL BANK | | 4,525,740.00 | LANCER FINANCIAL SERVICES, LLC |
| 8/12/2005 | WIRE IN | NATIONWIDE INTERNATIONAL RESOURCES | PCI | 1ST REGIONAL BANK 771076939 | 5,262,300.00 | | FICTITIOUS VENDOR |
| 8/12/2005 | WIRE IN | NATIONWIDE INTERNATIONAL RESOURCES | PCI | 1ST REGIONAL BANK 771076939 | 7,836,200.00 | | FICTITIOUS VENDOR |
| 8/12/2005 | WIRE IN | ENCHANTED FAMILY BUYING COMPANY | PCI | ANCHOR BANK 3227170 | 24,482,928.75 | | FICTITIOUS VENDOR |
| 8/12/2005 | TRANSFER TO SWEEP | SWEEP | SWEEP | | | 3,474,773.07 | |
| 8/12/2005 | RECALL FROM SWEEP | SWEEP | SWEEP | | 499,403.24 | | |
| 8/12/2005 | WIRE IN | NATIONWIDE INTERNATIONAL RESOURCES | PCI | 1ST REGIONAL BANK 771076939 | 5,307,300.00 | | FICTITIOUS VENDOR |
| 8/12/2005 | WIRE IN | NATIONWIDE INTERNATIONAL RESOURCES | PCI | 1ST REGIONAL BANK 771076939 | 4,482,700.00 | | FICTITIOUS VENDOR |
| 8/12/2005 | WIRE IN | NATIONWIDE INTERNATIONAL RESOURCES | PCI | 1ST REGIONAL BANK 771076939 | 3,850,600.00 | | FICTITIOUS VENDOR |

Total $ 58,482,403.94  $ 58,482,403.94

Net Inflow (Outflow) $    -

PCI - M&I
Account Number 1959018
Transactions on 11/17/2005

| Clear Date | Transaction Type | Payer | Payee | Memo Line | In | Out | Investor Transactions |
|---|---|---|---|---|---|---|---|
| 11/17/2005 | CHECK | PCI | ELOISE ANDING | | | $ 3,000.00 | ELOISE M. ANDING OR TIM ANDING |
| 11/17/2005 | WIRE IN | THOUSAND LAKES, LLC | PCI | BANCO POPULAR | $ 149,671.77 | | THOUSAND LAKES, LLC |
| 11/17/2005 | WIRE IN | THOUSAND LAKES, LLC | PCI | BANCO POPULAR | 421,898.74 | | THOUSAND LAKES, LLC |
| 11/17/2005 | WIRE IN | STEWARDSHIP CREDIT ARBITRAGE FUND, LTD. | PCI | CITIBANK NA | 6,715,407.50 | | PAC FUNDING, LLC |
| 11/17/2005 | WIRE IN | PAC FUNDING, LLC (OPERATING) | PCI | CROWN 1107549 | 330,317.68 | | PAC FUNDING, LLC |
| 11/17/2005 | WIRE IN | PAC FUNDING, LLC (OPERATING) | PCI | CROWN 1107549 | 505,262.03 | | PAC FUNDING, LLC |
| 11/17/2005 | WIRE IN | PAC FUNDING, LLC (OPERATING) | PCI | CROWN 1107549 | 775,194.69 | | PAC FUNDING, LLC |
| 11/17/2005 | WIRE IN | METRO GEM, INC. | PCI | HFSB 1529000734 | 4,485,000.00 | | METRO GEM, INC. |
| 11/17/2005 | WIRE IN | METRO GEM, INC. | PCI | HFSB 1529000734 | 5,340,000.00 | | METRO GEM, INC. |
| 11/17/2005 | WIRE IN | PETTERS LIMITED, INC. | PCI | HIGHLAND 2005080 | 3,974,310.37 | | PL LTD, INC. (EPSILON) |
| 11/17/2005 | WIRE IN | PALM BEACH CAPITAL CORP | PCI | US BANK NA | 289,200.25 | | PALM BEACH FINANCE HOLDINGS, INC. |
| 11/17/2005 | WIRE IN | PALM BEACH CAPITAL CORP | PCI | US BANK NA | 194,475.70 | | PALM BEACH FINANCE HOLDINGS, INC. |
| 11/17/2005 | WIRE IN | PALM BEACH CAPITAL CORP | PCI | US BANK NA | 308,868.75 | | PALM BEACH FINANCE HOLDINGS, INC. |
| 11/17/2005 | WIRE IN | PALM BEACH CAPITAL CORP | PCI | US BANK NA | 356,564.90 | | PALM BEACH FINANCE HOLDINGS, INC. |
| 11/17/2005 | WIRE IN | PC FUNDING, LLC - COLLECTION ACCOUNT | PCI | US BANK NA 173103320631 | 254,006.50 | | PC FUNDING, LLC |
| 11/17/2005 | WIRE IN | WELLS FARGO BANK NA | PCI | WELLS FARGO | 397,287.94 | | MGC FINANCE, LLC |
| 11/17/2005 | WIRE OUT | PCI | THOUSAND LAKES, LLC | BANCO POPULAR | | 5,023,174.00 | THOUSAND LAKES, LLC |
| 11/17/2005 | WIRE OUT | PCI | THOUSAND LAKES, LLC | BANCO POPULAR | | 5,649,950.00 | THOUSAND LAKES, LLC |
| 11/17/2005 | WIRE OUT | PCI | THOUSAND LAKES, LLC | BANCO POPULAR | | 5,730,000.00 | THOUSAND LAKES, LLC |
| 11/17/2005 | WIRE OUT | PCI | PAC FUNDING, LLC (LOCKBOX) | CROWN 1107531 | | 2,455,543.15 | PAC FUNDING, LLC |
| 11/17/2005 | WIRE OUT | PCI | PAC FUNDING, LLC (LOCKBOX) | CROWN 1107531 | | 3,012,882.50 | PAC FUNDING, LLC |
| 11/17/2005 | WIRE OUT | PCI | PAC FUNDING, LLC (LOCKBOX) | CROWN 1107531 | | 5,193,979.40 | PAC FUNDING, LLC |
| 11/17/2005 | WIRE OUT | PCI | PAC FUNDING, LLC (BLOCKED) | CROWN 1107531 | | 671,540.75 | PAC FUNDING, LLC |
| 11/17/2005 | WIRE OUT | PCI | METRO GEM, INC. | HFSB 1529000734 | | 64,945.00 | METRO GEM, INC. |
| 11/17/2005 | WIRE OUT | PCI | PETTERS LIMITED, INC. | HIGHLAND BANK 2005080 | | 2,687,523.25 | PL LTD, INC. (EPSILON) |
| 11/17/2005 | WIRE OUT | PCI | PETTERS LIMITED, INC. | HIGHLAND BANK 2005080 | | 4,160,180.50 | PL LTD, INC. (EPSILON) |
| 11/17/2005 | WIRE OUT | PCI | PETTERS LIMITED, INC. | HIGHLAND BANK 2005080 | | 5,892,467.00 | PL LTD, INC. (EPSILON) |
| 11/17/2005 | WIRE OUT | PCI | PETTERS LIMITED, INC. | HIGHLAND BANK 2005080 | | 5,969,172.00 | PL LTD, INC. (EPSILON) |
| 11/17/2005 | WIRE OUT | PCI | PC FUNDING, LLC | US BANK NA | | 3,031,245.00 | PC FUNDING, LLC |
| 11/17/2005 | WIRE OUT | PCI | PETTERS CAPITAL | US BANK, NA 4730017 | | 2,912,725.70 | PALM BEACH FINANCE HOLDINGS, INC. |
| 11/17/2005 | WIRE OUT | PCI | PETTERS CAPITAL | US BANK, NA 4730017 | | 5,164,712.00 | PALM BEACH FINANCE HOLDINGS, INC. |
| 11/17/2005 | WIRE OUT | PCI | PETTERS CAPITAL | US BANK, NA 4730017 | | 5,503,571.15 | PALM BEACH FINANCE HOLDINGS, INC. |
| 11/17/2005 | WIRE OUT | PCI | METRO CAPITAL, LLC | WELLS FARGO BANK, NA | | 5,723,548.50 | METRO GEM, INC. |
| 11/17/2005 | WIRE IN | NATIONWIDE INTERNATIONAL RESOURCES | PCI | 1ST REGIONAL BANK 771076939 | 12,761,400.00 | | FICTITIOUS VENDOR |
| 11/17/2005 | WIRE IN | NATIONWIDE INTERNATIONAL RESOURCES | PCI | 1ST REGIONAL BANK 771076939 | 5,122,400.00 | | FICTITIOUS VENDOR |
| 11/17/2005 | WIRE IN | UBID, INC. | PCI | BANCO POPULAR | 262,315.00 | | |
| 11/17/2005 | CHECK | PCI | FREDRIKSON & BYRON, PA | | | 18,869.16 | |
| 11/17/2005 | TRANSFER TO SWEEP | SWEEP | PCI | | | 2,246,364.46 | |
| 11/17/2005 | WIRE IN | ENCHANTED FAMILY BUYING COMPANY | PCI | 1ST REGIONAL BANK 771076939 | 4,837,500.00 | | FICTITIOUS VENDOR |
| 11/17/2005 | WIRE IN | | PCI | ANCHOR BANK 3327170 | 23,716,316.75 | | FICTITIOUS VENDOR |

Total $ 71,096,398.57 $ 71,135,403.52

Net Inflow (Outflow) $ (39,004.95)

# Exhibit D

**PCI - M&I**
**Account Number 1959018**
**Transactions on 4/11/2006**

| Clear Date | Transaction Type | Payor | Payee | Memo Line | In | Out | Investor Transactions |
|---|---|---|---|---|---|---|---|
| 4/11/2006 | WIRE IN | STEWARDSHIP CREDIT ARBITRAGE FUND, LTD. | PCI | CITIBANK ACCT #1050447649 | $ 3,612,500.00 | | PAC FUNDING, LLC |
| 4/11/2006 | WIRE IN | STEWARDSHIP CREDIT ARBITRAGE FUND, LTD. | PCI | CITIBANK ACCT #1050447649 | 3,696,396.25 | | PAC FUNDING, LLC |
| 4/11/2006 | WIRE IN | THOUSAND LAKES, LLC | PCI | CITIZENS BANK OF RHODE ISLAND | 4,000.00 | | THOUSAND LAKES, LLC |
| 4/11/2006 | WIRE IN | THOUSAND LAKES, LLC | PCI | CITIZENS BANK OF RHODE ISLAND | 438,079.49 | | THOUSAND LAKES, LLC |
| 4/11/2006 | WIRE IN | THOUSAND LAKES, LLC | PCI | CITIZENS BANK OF RHODE ISLAND | 814,443.00 | | THOUSAND LAKES, LLC |
| 4/11/2006 | WIRE IN | THOUSAND LAKES, LLC | PCI | CITIZENS BANK OF RHODE ISLAND | 866,258.06 | | THOUSAND LAKES, LLC |
| 4/11/2006 | WIRE IN | PAC FUNDING, LLC (OPERATING) | PCI | CROWN BANK 1107549 | 288,766.63 | | PAC FUNDING, LLC |
| 4/11/2006 | WIRE IN | PAC FUNDING, LLC (OPERATING) | PCI | CROWN BANK 1107549 | 485,774.57 | | PAC FUNDING, LLC |
| 4/11/2006 | WIRE IN | PAC FUNDING, LLC (OPERATING) | PCI | CROWN BANK 1107549 | 550,695.63 | | PAC FUNDING, LLC |
| 4/11/2006 | WIRE IN | PETTERS LIMITED, INC. | PCI | HIGHLAND BANK | 3,998,835.42 | | PL LTD, INC. (EPSILON) |
| 4/11/2006 | WIRE IN | PETTERS FINANCE LLC | PCI | US BANK NA | 2,166,498.25 | | SPF FUNDING |
| 4/11/2006 | WIRE OUT | PCI | THOUSAND LAKES, LLC | CHARTER ONE BANK NA ACCT #4503527001 | | $ 2,599,441.00 | THOUSAND LAKES, LLC |
| 4/11/2006 | WIRE OUT | PCI | THOUSAND LAKES, LLC | CHARTER ONE BANK NA ACCT #4503527001 | | 4,857,882.50 | THOUSAND LAKES, LLC |
| 4/11/2006 | WIRE OUT | PCI | THOUSAND LAKES, LLC | CHARTER ONE BANK NA ACCT #4503527001 | | 5,722,425.00 | THOUSAND LAKES, LLC |
| 4/11/2006 | WIRE OUT | PCI | PAC FUNDING, LLC (LOCKBOX) | CROWN BANK #1107531 | | 2,193,086.10 | PAC FUNDING, LLC |
| 4/11/2006 | WIRE OUT | PCI | PAC FUNDING, LLC (LOCKBOX) | CROWN BANK #1107531 | | 3,589,669.90 | PAC FUNDING, LLC |
| 4/11/2006 | WIRE OUT | PCI | PAC FUNDING, LLC (LOCKBOX) | CROWN BANK #1107531 | | 3,666,092.50 | PAC FUNDING, LLC |
| 4/11/2006 | WIRE OUT | PCI | PAC FUNDING, LLC (BLOCKED) | CROWN BANK #2102820 | | 730,889.63 | PAC FUNDING, LLC |
| 4/11/2006 | WIRE OUT | PCI | PETTERS LIMITED, INC. | HIGHLAND BANK ACCT #2005080 | | 5,711,752.78 | PL LTD, INC. (EPSILON) |
| 4/11/2006 | WIRE OUT | PCI | METRO GEM, INC. | METRO FEDERAL ACCT #1930000734 | | 5,013,725.00 | METRO GEM, INC. |
| 4/11/2006 | WIRE OUT | PCI | PETTERS FINANCE LLC | US BANK ACCT #10479805776 | | 5,790,713.25 | SPF FUNDING |
| 4/11/2006 | CHECK | PCI | MINNESOTA UI FUND | | | 101.00 | |
| 4/11/2006 | CHECK | PCI | CINGULAR WIRELESS | | | 319.97 | |
| 4/11/2006 | CHECK | PCI | QUICKSILVER EXPRESS COURIER | | | 103.61 | |
| 4/11/2006 | CHECK | NATIONWIDE INTERNATIONAL RESOURCES | PCI | 1ST REGIONAL BANK 771076939 | 6,760,100.00 | | FICTITIOUS VENDOR |
| 4/11/2006 | CHECK | PCI | FREEMAN WEHMHOFF GATLIN, PLLC | | | 1,986.75 | FICTITIOUS VENDOR |
| 4/11/2006 | WIRE IN | NATIONWIDE INTERNATIONAL RESOURCES | PCI | 1ST REGIONAL BANK 771076939 | 5,117,400.00 | | FICTITIOUS VENDOR |
| 4/11/2006 | WIRE IN | ENCHANTED FAMILY BUYING COMPANY | PCI | ANCHOR BANK 3227170 | 21,965,990.50 | | FICTITIOUS VENDOR |
| 4/11/2006 | TRANSFER TO SWEEP | SWEEP | SWEEP | | | 10,217,936.05 | |

Total     $ 50,893,709.00    $ 50,099,095.01

Net Inflow (Outflow)    $ 794,613.99

PCI - M&I
Account Number 1959018
Transactions on 8/1/2006

| Clear Date | Transaction Type | Payer | Payee | Memo Line | In $ | Out $ | Investor Transactions |
|---|---|---|---|---|---|---|---|
| 8/1/2006 | WIRE OUT | PCI | PETTERS CAPITAL | US BANK ACCT #47300017 | | 4,669,985.25 | PALM BEACH FINANCE HOLDINGS, INC. |
| 8/1/2006 | WIRE IN | STEWARDSHIP CREDIT ARBITRAGE FUND, LTD. | PCI | CITIBANK ACCT #105047649 | 2,934,615.50 | | PAC FUNDING, LLC |
| 8/1/2006 | WIRE IN | STEWARDSHIP CREDIT ARBITRAGE FUND, LTD. | PCI | CITIBANK ACCT #105047649 | 3,684,750.00 | | PAC FUNDING, LLC |
| 8/1/2006 | WIRE IN | STEWARDSHIP CREDIT ARBITRAGE FUND, LTD. | PCI | CITIBANK ACCT #105404764 | 4,119,250.00 | | PAC FUNDING, LLC |
| 8/1/2006 | WIRE IN | THOUSAND LAKES, LLC | PCI | CITIZENS BANK OF RHODE ISLAND | 631,401.70 | | THOUSAND LAKES, LLC |
| 8/1/2006 | WIRE IN | THOUSAND LAKES, LLC | PCI | CITIZENS BANK OF RHODE ISLAND | 719,246.03 | | THOUSAND LAKES, LLC |
| 8/1/2006 | WIRE IN | THOUSAND LAKES, LLC | PCI | CITIZENS BANK OF RHODE ISLAND | 878,722.04 | | THOUSAND LAKES, LLC |
| 8/1/2006 | WIRE IN | PAC FUNDING, LLC (OPERATING) | PCI | CROWN BANK 1107549 | 524,818.00 | | PAC FUNDING, LLC |
| 8/1/2006 | WIRE IN | PAC FUNDING, LLC (OPERATING) | PCI | CROWN BANK 1107549 | 542,219.47 | | PAC FUNDING, LLC |
| 8/1/2006 | WIRE IN | PAC FUNDING, LLC (OPERATING) | PCI | CROWN BANK 1107549 | 682,973.87 | | PAC FUNDING, LLC |
| 8/1/2006 | WIRE IN | PC FUNDING, LLC - COLLECTION ACCOUNT | PCI | US BANK NA | 603,770.60 | | PC FUNDING, LLC |
| 8/1/2006 | WIRE IN | PCIREDTAGBIZ | PCI | WORTH NATIONAL BANK | 3,000,000.00 | | APRIVEN PARTNERS, LP |
| 8/1/2006 | WIRE IN | WELLS FARGO BANK, NA | PCI | | 128,294.14 | | MGC FINANCE, LLC |
| 8/1/2006 | WIRE IN | WELLS FARGO BANK, NA | PCI | | 294,193.36 | | MGC FINANCE, LLC |
| 8/1/2006 | WIRE OUT | PCI | THOUSAND LAKES, LLC | CHARTER ONE BANK NA ACCT #4503527001 | | 4,320,400.00 | MGC FINANCE, LLC |
| 8/1/2006 | WIRE OUT | PCI | THOUSAND LAKES, LLC | CHARTER ONE BANK NA ACCT #4503527001 | | 4,935,060.00 | THOUSAND LAKES, LLC |
| 8/1/2006 | WIRE OUT | PCI | THOUSAND LAKES, LLC | CHARTER ONE BANK NA ACCT #4503527001 | | 6,015,535.00 | THOUSAND LAKES, LLC |
| 8/1/2006 | WIRE OUT | PCI | PAC FUNDING, LLC (LOCKBOX) | CROWN BANK #1107531 | | 3,446,760.00 | PAC FUNDING, LLC |
| 8/1/2006 | WIRE OUT | PCI | PAC FUNDING, LLC (LOCKBOX) | CROWN BANK #1107531 | | 3,619,386.00 | PAC FUNDING, LLC |
| 8/1/2006 | WIRE OUT | PCI | PAC FUNDING, LLC (LOCKBOX) | CROWN BANK #1107531 | | 4,425,545.75 | PAC FUNDING, LLC |
| 8/1/2006 | WIRE OUT | PCI | PAC FUNDING, LLC (BLOCKED) | CROWN BANK #2102820 | | 1,073,761.55 | PAC FUNDING, LLC |
| 8/1/2006 | WIRE OUT | PC FUNDING, LLC | PCI | US BANK ACCT #173103322058 | | 4,363,309.10 | PC FUNDING, LLC |
| 8/1/2006 | WIRE OUT | PCI | PETTERS CAPITAL | US BANK ACCT #47300017 | | 3,664,988.30 | PALM BEACH FINANCE HOLDINGS, INC. |
| 8/1/2006 | WIRE OUT | PCI | PETTERS CAPITAL | US BANK ACCT #47300017 | | 3,709,219.45 | PALM BEACH FINANCE HOLDINGS, INC. |
| 8/1/2006 | WIRE OUT | PCI | PETTERS CAPITAL | US BANK ACCT #47300017 | | 4,637,347.90 | PALM BEACH FINANCE HOLDINGS, INC. |
| 8/1/2006 | WIRE OUT | PCI | METRO CAPITAL, LLC | WF ACCT # 000103387 | | 5,713,323.00 | PALM BEACH FINANCE HOLDINGS, INC. |
| 8/1/2006 | RECALL FROM SWEEP | SWEEP | | | | 5,954,657.50 | MGC FINANCE, LLC |
| 8/1/2006 | WIRE IN | ENCHANTED FAMILY BUYING COMPANY | PCI | ANCHOR BANK 3227170 | 1,368,543.80 | | |
| 8/1/2006 | WIRE IN | NATIONWIDE INTERNATIONAL RESOURCES | PCI | 1ST REGIONAL BANK 771076939 | 18,328,008.00 | | FICTITIOUS VENDOR |
| 8/1/2006 | WIRE IN | NATIONWIDE INTERNATIONAL RESOURCES | PCI | 1ST REGIONAL BANK 771076939 | 4,648,600.00 | | FICTITIOUS VENDOR |
| 8/1/2006 | INTEREST EARNED | M&I BANK | | | 3,573,200.00 | | |
| 8/1/2006 | CHECK | PCI | MARY LYNN JEFFRIES | | 7,628.29 | 4,326.00 | |
| 8/1/2006 | WIRE IN | NATIONWIDE INTERNATIONAL RESOURCES | PCI | 1ST REGIONAL BANK 771076939 | 9,475,600.00 | | FICTITIOUS VENDOR |
| 8/1/2006 | WIRE IN | NATIONWIDE INTERNATIONAL RESOURCES | PCI | 1ST REGIONAL BANK 771076939 | 3,704,100.00 | | FICTITIOUS VENDOR |

Total                          $ 59,825,104.80   $ 60,814,302.80

Net Inflow (Outflow)           $ (989,198.00)

PCI - M&I
Account Number 1999018
Transactions on 11/30/2006

| Clear Date | Transaction Type | Payor | Payee | Memo Line | $ In | Out | Investor Transactions |
|---|---|---|---|---|---|---|---|
| 11/30/2006 | WIRE IN | ACORN CAPITAL GROUP LLC | PCI | CITIBANK ACCT #105047649 | $ 3,848,312.50 | - | PAC FUNDING, LLC |
| 11/30/2006 | WIRE IN | THOUSAND LAKES, LLC | PCI | CITIZENS BANK OF RHODE ISLAND | 657,213.99 | - | THOUSAND LAKES, LLC |
| 11/30/2006 | WIRE IN | THOUSAND LAKES, LLC | PCI | CITIZENS BANK OF RHODE ISLAND | 767,000.74 | - | THOUSAND LAKES, LLC |
| 11/30/2006 | WIRE IN | THOUSAND LAKES, LLC | PCI | CITIZENS BANK OF RHODE ISLAND | 780,997.73 | - | THOUSAND LAKES, LLC |
| 11/30/2006 | WIRE IN | THOUSAND LAKES, LLC | PCI | CITIZENS BANK OF RHODE ISLAND | 788,603.18 | - | THOUSAND LAKES, LLC |
| 11/30/2006 | WIRE IN | THOUSAND LAKES, LLC | PCI | CITIZENS BANK OF RHODE ISLAND | 820,159.89 | - | THOUSAND LAKES, LLC |
| 11/30/2006 | WIRE IN | THOUSAND LAKES, LLC | PCI | CITIZENS BANK OF RHODE ISLAND | 831,297.60 | - | THOUSAND LAKES, LLC |
| 11/30/2006 | WIRE IN | PALM BEACH CAPITAL CORP | PCI | US BANK NA | 218,882.76 | - | PALM BEACH FINANCE HOLDINGS, INC. |
| 11/30/2006 | WIRE IN | PALM BEACH CAPITAL CORP | PCI | US BANK NA | 278,077.50 | - | PALM BEACH FINANCE HOLDINGS, INC. |
| 11/30/2006 | WIRE IN | PALM BEACH CAPITAL CORP | PCI | US BANK NA | 301,401.67 | - | PALM BEACH FINANCE HOLDINGS, INC. |
| 11/30/2006 | WIRE IN | PALM BEACH CAPITAL CORP | PCI | US BANK NA | 358,053.67 | - | PALM BEACH FINANCE HOLDINGS, INC. |
| 11/30/2006 | WIRE IN | PALM BEACH CAPITAL CORP | PCI | US BANK NA | 358,653.25 | - | PALM BEACH FINANCE HOLDINGS, INC. |
| 11/30/2006 | WIRE IN | WELLS FARGO BANK, NA | PCI | US BANK NA | 388,466.56 | - | PALM BEACH FINANCE HOLDINGS, INC. |
| 11/30/2006 | WIRE IN | WELLS FARGO BANK, NA | PCI | | 239,331.84 | - | MGC FINANCE, LLC |
| 11/30/2006 | WIRE IN | | PCI | | 375,435.08 | - | MGC FINANCE, LLC |
| 11/30/2006 | WIRE OUT | PCI | THOUSAND LAKES, LLC | CHARTER ONE BANK NA ACCT #4503527001 | - | 4,792,238.50 | THOUSAND LAKES, LLC |
| 11/30/2006 | WIRE OUT | PCI | THOUSAND LAKES, LLC | CHARTER ONE BANK NA ACCT #4503527001 | - | 5,749,055.50 | THOUSAND LAKES, LLC |
| 11/30/2006 | WIRE OUT | PCI | THOUSAND LAKES, LLC | CHARTER ONE BANK NA ACCT #4503527001 | - | 5,809,440.00 | THOUSAND LAKES, LLC |
| 11/30/2006 | WIRE OUT | PCI | THOUSAND LAKES, LLC | CHARTER ONE BANK NA ACCT #4503527001 | - | 5,815,830.00 | THOUSAND LAKES, LLC |
| 11/30/2006 | WIRE OUT | PCI | THOUSAND LAKES, LLC | CHARTER ONE BANK NA ACCT #4503527001 | - | 6,031,960.00 | THOUSAND LAKES, LLC |
| 11/30/2006 | WIRE OUT | PCI | THOUSAND LAKES, LLC | CHARTER ONE BANK NA ACCT #4503527001 | - | 6,166,406.26 | THOUSAND LAKES, LLC |
| 11/30/2006 | WIRE IN | METRO GEM, INC. | PCI | HOME FEDERAL ACCT #102900734 | - | 125,432.75 | METRO GEM, INC. |
| 11/30/2006 | WIRE OUT | PCI | PETTERS CAPITAL | US BANK ACCT #47300017 | - | 4,717,950.00 | PALM BEACH FINANCE HOLDINGS, INC. |
| 11/30/2006 | WIRE OUT | PCI | PETTERS CAPITAL | US BANK ACCT #47300017 | - | 5,667,158.25 | PALM BEACH FINANCE HOLDINGS, INC. |
| 11/30/2006 | WIRE OUT | PCI | PETTERS CAPITAL | US BANK ACCT #47300017 | - | 5,739,162.00 | PALM BEACH FINANCE HOLDINGS, INC. |
| 11/30/2006 | WIRE OUT | PCI | PETTERS CAPITAL | US BANK ACCT #47300017 | - | 5,780,442.00 | PALM BEACH FINANCE HOLDINGS, INC. |
| 11/30/2006 | WIRE OUT | PCI | METRO CAPITAL, LLC | WF ACCT #000103837 | - | 3,452,882.76 | MGC FINANCE, LLC |
| 11/30/2006 | WIRE OUT | PCI | METRO CAPITAL, LLC | WF ACCT #000103837 | - | 5,453,430.00 | MGC FINANCE, LLC |
| 11/30/2006 | WIRE IN | ENCHANTED FAMILY BUYING COMPANY | PCI | ANCHOR BANK 33221170 | 31,544,017.13 | | |
| 11/30/2006 | WIRE IN | NATIONWIDE INTERNATIONAL RESOURCES | PCI | 1ST REGIONAL BANK 771076939 | 5,057,300.00 | | |
| 11/30/2006 | TRANSFER TO SWEEP | SWEEP | SWEEP | | | 2,392,300.65 | FICTITIOUS VENDOR |
| 11/30/2006 | WIRE IN | NATIONWIDE INTERNATIONAL RESOURCES | PCI | 1ST REGIONAL BANK 771076939 | 4,186,800.00 | | FICTITIOUS VENDOR |
| 11/30/2006 | WIRE IN | NATIONWIDE INTERNATIONAL RESOURCES | PCI | 1ST REGIONAL BANK 771076939 | 4,650,500.00 | | FICTITIOUS VENDOR |
| 11/30/2006 | WIRE IN | NATIONWIDE INTERNATIONAL RESOURCES | PCI | 1ST REGIONAL BANK 771076939 | 5,206,400.00 | | FICTITIOUS VENDOR |
| 11/30/2006 | WIRE IN | NATIONWIDE INTERNATIONAL RESOURCES | PCI | 1ST REGIONAL BANK 771076939 | 4,223,800.00 | | FICTITIOUS VENDOR |
| 11/30/2006 | WIRE OUT | PCI | PETTERS GROUP WORLDWIDE, LLC | CROWN BANK ACCT #1104074 | | 700,000.00 | |
| 11/30/2006 | ELECTRONIC PAYMENT | AMERICAN EXPRESS | | | | 13,348.50 | |
| 11/30/2006 | WIRE IN | NATIONWIDE INTERNATIONAL RESOURCES | PCI | 1ST REGIONAL BANK 771076939 | 4,086,800.00 | | FICTITIOUS VENDOR |

Total

$ 69,925,405.10  $ 68,507,237.15

Net Inflow (Outflow)

$ 1,418,167.95

# Exhibit E

PCI - M&I
Account Number 1959018
Transactions on 1/9/2007

| Clear Date | Transaction Type | Payor | Payee | Memo Line | In | Out | Investor Transactions |
|---|---|---|---|---|---|---|---|
| 1/9/2007 | WIRE IN | PAC FUNDING, LLC (OPERATING) | PCI | CROWN 1107549 | $ 651,680.00 | | PAC FUNDING, LLC |
| 1/9/2007 | WIRE IN | THOUSAND LAKES, LLC | PCI | RBS CITIZENS NA 4503527001 | 458,072.79 | | THOUSAND LAKES, LLC |
| 1/9/2007 | WIRE IN | THOUSAND LAKES, LLC | PCI | RBS CITIZENS NA 4503527001 | 674,946.81 | | THOUSAND LAKES, LLC |
| 1/9/2007 | WIRE IN | THOUSAND LAKES, LLC | PCI | RBS CITIZENS NA 4503527001 | 732,523.54 | | THOUSAND LAKES, LLC |
| 1/9/2007 | WIRE IN | THOUSAND LAKES, LLC | PCI | RBS CITIZENS NA 4503527001 | 795,946.69 | | THOUSAND LAKES, LLC |
| 1/9/2007 | WIRE IN | THOUSAND LAKES, LLC | PCI | RBS CITIZENS NA 4503527001 | 938,364.72 | | THOUSAND LAKES, LLC |
| 1/9/2007 | WIRE IN | PCI FUNDING, LLC - COLLECTION ACCOUNT | PCI | US BANK NA | 443,630.75 | | PC FUNDING, LLC |
| 1/9/2007 | WIRE IN | PALM BEACH CAPITAL CORP | PCI | US BANK NA | 265,846.17 | | PALM BEACH FINANCE HOLDINGS, INC. |
| 1/9/2007 | WIRE IN | PALM BEACH CAPITAL CORP | PCI | US BANK NA | 343,810.00 | | PALM BEACH FINANCE HOLDINGS, INC. |
| 1/9/2007 | WIRE IN | PALM BEACH CAPITAL CORP | PCI | US BANK NA | 381,725.00 | | PALM BEACH FINANCE HOLDINGS, INC. |
| 1/9/2007 | WIRE IN | PALM BEACH CAPITAL CORP | PCI | US BANK NA | 377,125.00 | | PALM BEACH FINANCE HOLDINGS, INC. |
| 1/9/2007 | WIRE IN | PETTERS FINANCE LLC | PCI | US BANK NA | 556,879.75 | | SPF FUNDING |
| 1/9/2007 | WIRE OUT | PCI | PAC FUNDING, LLC (LOCKBOX) | CROWN BANK 1107531 | | $ 4,772,820.00 | PAC FUNDING, LLC |
| 1/9/2007 | WIRE OUT | PCI | METRO GEM, INC. | HFSB 1629000734 | | 48,889.50 | METRO GEM, INC. |
| 1/9/2007 | WIRE OUT | PCI | THOUSAND LAKES, LLC | RBS CITIZENS NA 4503527001 | | 3,076,991.25 | THOUSAND LAKES, LLC |
| 1/8/2007 | WIRE OUT | PCI | THOUSAND LAKES, LLC | RBS CITIZENS NA 4503527001 | | 4,361,580.00 | THOUSAND LAKES, LLC |
| 1/9/2007 | WIRE OUT | PCI | THOUSAND LAKES, LLC | RBS CITIZENS NA 4503527001 | | 4,943,750.00 | THOUSAND LAKES, LLC |
| 1/9/2007 | WIRE OUT | PCI | THOUSAND LAKES, LLC | RBS CITIZENS NA 4503527001 | | 5,387,310.00 | THOUSAND LAKES, LLC |
| 1/9/2007 | WIRE OUT | PCI | THOUSAND LAKES, LLC | RBS CITIZENS NA 4503527001 | | 6,094,284.75 | THOUSAND LAKES, LLC |
| 1/9/2007 | WIRE OUT | PCI | PC FUNDING, LLC | REF: F/C #788574001 | | 5,073,958.00 | PC FUNDING, LLC |
| 1/9/2007 | WIRE OUT | PCI | PETTERS FINANCE LLC | US BANK 104756805776 | | 389,150.00 | SPF FUNDING |
| 1/9/2007 | WIRE OUT | PCI | PETTERS CAPITAL | | | 3,945,717.00 | PALM BEACH FINANCE HOLDINGS, INC. |
| 1/9/2007 | WIRE OUT | PCI | PETTERS CAPITAL | | | 5,222,250.00 | PALM BEACH FINANCE HOLDINGS, INC. |
| 1/9/2007 | WIRE OUT | PCI | PETTERS CAPITAL | | | 5,551,687.50 | PALM BEACH FINANCE HOLDINGS, INC. |
| 1/9/2007 | WIRE OUT | PCI | PETTERS CAPITAL | | | 5,774,200.00 | PALM BEACH FINANCE HOLDINGS, INC. |
| 1/9/2007 | WIRE IN | ENCHANTED FAMILY BUYING COMPANY | PCI | ANCHOR BANK 3227170 | 30,092,496.13 | | FICTITIOUS VENDOR |
| 1/9/2007 | WIRE IN | NATIONWIDE INTERNATIONAL RESOURCES | PCI | 1ST REGIONAL BANK 771076939 | 14,404,600.00 | | FICTITIOUS VENDOR |
| 1/9/2007 | WIRE IN | NATIONWIDE INTERNATIONAL RESOURCES | PCI | 1ST REGIONAL BANK 771076939 | 5,183,400.00 | | FICTITIOUS VENDOR |
| 1/9/2007 | TRANSFER TO SWEEP | SWEEP | SWEEP | | | 4,123,901.41 | |
| 1/9/2007 | RECALL FROM SWEEP | SWEEP | SWEEP | | 2,455,442.06 | | |

Total   $ 58,736,489.41   $ 58,736,489.41

Net Inflow (Outflow)   $   -

PCI - M&I
Account Number 19559018
Transactions on 5/22/2007

| Clear Date | Transaction Type | Payer | Payee | Memo Line | In | Out | Investor Transactions |
|---|---|---|---|---|---|---|---|
| 5/22/2007 | CHECK | PCI | DEAN VLAHOS | | | $ 399,000.00 | VLAHOS (DEAN, DEAN & MICHELLE) |
| 5/22/2007 | CHECK | PCI | EDGE BROOK INC. | | | 40,500.00 | EDGE BROOK, LLC |
| 5/22/2007 | CHECK | PCI | MICHELLE VLAHOS | | | 69,000.00 | VLAHOS (MICHELLE) |
| 5/22/2007 | WIRE IN | ACORN CAPITAL GROUP LLC | PCI | CITIBANK NA 001050447649 | $ 3,098,323.75 | | PAC FUNDING, LLC |
| 5/22/2007 | WIRE IN | ACORN CAPITAL GROUP LLC | PCI | CITIBANK NA 001050447649 | 3,540,250.00 | | PAC FUNDING, LLC |
| 5/22/2007 | WIRE IN | ACORN CAPITAL GROUP LLC | PCI | CITIBANK NA 001050447649 | 4,118,250.00 | | PAC FUNDING, LLC |
| 5/22/2007 | WIRE IN | PAC FUNDING, LLC (OPERATING) | PCI | CROWN 1107549 | 303,008.59 | | PAC FUNDING, LLC |
| 5/22/2007 | WIRE IN | PAC FUNDING, LLC (OPERATING) | PCI | CROWN 1107549 | 611,088.84 | | PAC FUNDING, LLC |
| 5/22/2007 | WIRE IN | PAC FUNDING, LLC (OPERATING) | PCI | CROWN 1107549 | 713,270.00 | | PAC FUNDING, LLC |
| 5/22/2007 | WIRE IN | METRO GEM, INC. | PCI | HFSB 1529000794 | 2,591,000.00 | | METRO GEM, INC. |
| 5/22/2007 | WIRE IN | THOUSAND LAKES, LLC | PCI | RBS CITIZENS NA 4503527001 | 761,211.89 | | THOUSAND LAKES, LLC |
| 5/22/2007 | WIRE IN | THOUSAND LAKES, LLC | PCI | RBS CITIZENS NA 4503527001 | 2,352,212.13 | | THOUSAND LAKES, LLC |
| 5/22/2007 | WIRE IN | PC FUNDING, LLC - COLLECTION ACCOUNT | PCI | US BANK NA | 452,940.45 | | PAC FUNDING, LLC |
| 5/22/2007 | WIRE IN | PALM BEACH CAPITAL CORP | PCI | US BANK NA | 229,380.27 | | PALM BEACH FINANCE HOLDINGS, INC. |
| 5/22/2007 | WIRE IN | PALM BEACH CAPITAL CORP | PCI | US BANK NA | 326,353.33 | | PALM BEACH FINANCE HOLDINGS, INC. |
| 5/22/2007 | WIRE IN | PALM BEACH CAPITAL CORP | PCI | US BANK NA | 334,579.08 | | PALM BEACH FINANCE HOLDINGS, INC. |
| 5/22/2007 | WIRE IN | PALM BEACH CAPITAL CORP | PCI | US BANK NA | 338,060.72 | | PALM BEACH FINANCE HOLDINGS, INC. |
| 5/22/2007 | WIRE IN | PALM BEACH CAPITAL CORP | PCI | US BANK NA | 340,882.08 | | PALM BEACH FINANCE HOLDINGS, INC. |
| 5/22/2007 | WIRE IN | PALM BEACH CAPITAL CORP | PCI | US BANK NA | 362,443.33 | | PALM BEACH FINANCE HOLDINGS, INC. |
| 5/22/2007 | WIRE IN | PALM BEACH CAPITAL CORP | PCI | US BANK NA | 363,942.50 | | PALM BEACH FINANCE HOLDINGS, INC. |
| 5/22/2007 | WIRE IN | PALM BEACH CAPITAL CORP | PCI | US BANK NA | 312,086.58 | | PALM BEACH FINANCE HOLDINGS, INC. |
| 5/22/2007 | WIRE IN | WELLS FARGO BANK NA | PCI | | 388,543.92 | | MGC FINANCE, LLC |
| 5/22/2007 | WIRE OUT | PCI | PAC FUNDING, LLC (LOCKBOX) | CROWN BANK 1107531 | | 2,030,583.50 | PAC FUNDING, LLC |
| 5/22/2007 | WIRE OUT | PCI | PAC FUNDING, LLC (LOCKBOX) | CROWN BANK 1107531 | | 4,134,453.75 | PAC FUNDING, LLC |
| 5/22/2007 | WIRE OUT | PCI | PAC FUNDING, LLC (LOCKBOX) | CROWN BANK 1107531 | | 4,772,820.00 | PAC FUNDING, LLC |
| 5/22/2007 | WIRE OUT | PCI | PAC FUNDING, LLC (BLOCKED) | CROWN BANK 210220 | | 1,074,882.38 | PAC FUNDING, LLC |
| 5/22/2007 | WIRE OUT | METRO GEM, INC. | METRO GEM, INC. | FFC #10939900 PETTERS ACCEPTANCE | | 6,629,845.00 | METRO GEM, INC. |
| 5/22/2007 | WIRE OUT | PCI | METRO GEM, INC. | HFSB 1529000734 | | 70,076.33 | METRO GEM, INC. |
| 5/22/2007 | WIRE OUT | PCI | THOUSAND LAKES, LLC | HFSB 1529000734 | | 5,591,786.67 | THOUSAND LAKES, LLC |
| 5/22/2007 | WIRE OUT | PCI | THOUSAND LAKES, LLC | RBS CITIZENS NA 4503527001 | | 5,172,365.00 | THOUSAND LAKES, LLC |
| 5/22/2007 | WIRE OUT | PCI | PETTERS CAPITAL | RBS CITIZENS NA 4503527001 | | 5,293,305.00 | PALM BEACH FINANCE HOLDINGS, INC. |
| 5/22/2007 | WIRE OUT | PCI | PETTERS CAPITAL | REF- FIC 878857A001 | | 5,186,744.70 | PALM BEACH FINANCE HOLDINGS, INC. |
| 5/22/2007 | WIRE OUT | PCI | PETTERS CAPITAL | | | 3,553,128.93 | PALM BEACH FINANCE HOLDINGS, INC. |
| 5/22/2007 | WIRE OUT | PCI | PETTERS CAPITAL | | | 5,138,845.30 | PALM BEACH FINANCE HOLDINGS, INC. |
| 5/22/2007 | WIRE OUT | PCI | PETTERS CAPITAL | | | 5,180,750.00 | PALM BEACH FINANCE HOLDINGS, INC. |
| 5/22/2007 | WIRE OUT | PCI | PETTERS CAPITAL | | | 5,283,020.00 | PALM BEACH FINANCE HOLDINGS, INC. |
| 5/22/2007 | WIRE OUT | PCI | PETTERS CAPITAL | | | 5,413,525.00 | PALM BEACH FINANCE HOLDINGS, INC. |
| 5/22/2007 | WIRE OUT | PCI | PETTERS CAPITAL | | | 4,429,370.70 | PALM BEACH FINANCE HOLDINGS, INC. |
| 5/22/2007 | WIRE OUT | PCI | PETTERS CAPITAL | | | 5,557,667.50 | PALM BEACH FINANCE HOLDINGS, INC. |
| 5/22/2007 | CHECK | PCI | NATIONWIDE INTERNATIONAL RESOURCES | 1ST REGIONAL BANK 771076939 | 11,784,200.00 | | FICTITIOUS VENDOR |
| 5/22/2007 | WIRE IN | PCI | STREET FLEET | | | 39.63 | FICTITIOUS VENDOR |
| 5/22/2007 | WIRE IN | NATIONWIDE INTERNATIONAL RESOURCES | NATIONWIDE INTERNATIONAL RESOURCES | 1ST REGIONAL BANK 771076939 | 3,847,600.00 | | FICTITIOUS VENDOR |
| 5/22/2007 | WIRE IN | NATIONWIDE INTERNATIONAL RESOURCES | NATIONWIDE INTERNATIONAL RESOURCES | 1ST REGIONAL BANK 771076939 | 4,757,600.00 | | FICTITIOUS VENDOR |
| 5/22/2007 | WIRE IN | NATIONWIDE INTERNATIONAL RESOURCES | NATIONWIDE INTERNATIONAL RESOURCES | 1ST REGIONAL BANK 771076939 | 3,376,300.00 | | FICTITIOUS VENDOR |
| 5/22/2007 | WIRE OUT | PCI | ZINK IMAGING LLC | BANK OF AMERICA | | 600,000.00 | |
| 5/22/2007 | WIRE IN | PCI | PCI | 1ST REGIONAL BANK 3227170 | 5,168,400.00 | | |
| 5/22/2007 | WIRE IN | ENCHANTED FAMILY BUYING COMPANY | PCI | ANCHOR BANK 3227170 | 24,751,929.97 | | |
| 5/22/2007 | WIRE IN | PCI | PETTERS GROUP WORLDWIDE,LLC | CROWN BANK ACCT #1104074 | | 500,000.00 | |
| 5/22/2007 | WIRE IN | NATIONWIDE INTERNATIONAL RESOURCES | NATIONWIDE INTERNATIONAL RESOURCES | 1ST REGIONAL BANK 771076939 | 3,601,200.00 | | FICTITIOUS VENDOR |
| 5/22/2007 | TRANSFER TO SWEEP | SWEEP | SWEEP | | | 1,559,427.13 | |

Total: $ 78,810,869.53   $ 77,490,516.24

Net Inflow (Outflow)   $ 1,320,353.29

PCI - M&I
Account Number 1959018
Transactions on 10/15/2007

| Clear Date | Transaction Type | Payor | Payee | Memo Line | In | Out | Investor Transactions |
|---|---|---|---|---|---|---|---|
| 10/15/2007 | WIRE IN | METRO GEM, INC. | PCI | HFSB 152900734 | $ 5,015,000.00 | | METRO GEM, INC. |
| 10/15/2007 | WIRE IN | FIDELIS FOUNDATION | PCI | PRIVATE BANK MN | 5,055,000.00 | | FIDELIS FOUNDATION (F/K/A HARVEST FOUNDATION) |
| 10/15/2007 | WIRE IN | THOUSAND LAKES, LLC | PCI | RBS CITIZENS NA 4503527001 | 459,501.58 | | THOUSAND LAKES, LLC |
| 10/15/2007 | WIRE IN | THOUSAND LAKES, LLC | PCI | RBS CITIZENS NA 4503527001 | 503,634.18 | | THOUSAND LAKES, LLC |
| 10/15/2007 | WIRE IN | PC FUNDING, LLC - COLLECTION ACCOUNT | PCI | US BANK NA | 272,206.00 | | PC FUNDING, LLC |
| 10/15/2007 | WIRE IN | PALM BEACH CAPITAL CORP | PCI | US BANK NA | 191,371.25 | | PALM BEACH FINANCE HOLDINGS, INC. |
| 10/15/2007 | WIRE IN | PALM BEACH CAPITAL CORP | PCI | US BANK NA | 237,593.33 | | PALM BEACH FINANCE HOLDINGS, INC. |
| 10/15/2007 | WIRE IN | PALM BEACH CAPITAL CORP | PCI | US BANK NA | 981,483.77 | | PALM BEACH FINANCE HOLDINGS, INC. |
| 10/15/2007 | WIRE IN | PALM BEACH CAPITAL CORP | PCI | US BANK NA | 287,599.25 | | PALM BEACH FINANCE HOLDINGS, INC. |
| 10/15/2007 | WIRE OUT | PCI | METRO GEM, INC. | HFSB 152900734 | | $ 249,497.67 | METRO GEM, INC. |
| 10/15/2007 | WIRE OUT | PCI | METRO GEM, INC. | HFSB 152900734 | | 3,576,995.00 | METRO GEM, INC. |
| 10/15/2007 | WIRE OUT | PCI | THOUSAND LAKES, LLC | RBS CITIZENS NA 4503527001 | | 3,680,926.50 | THOUSAND LAKES, LLC |
| 10/15/2007 | WIRE OUT | PCI | THOUSAND LAKES, LLC | RBS CITIZENS NA 4503527001 | | 4,787,368.75 | THOUSAND LAKES, LLC |
| 10/15/2007 | WIRE OUT | PCI | PC FUNDING, LLC | REF. F/C #788574001 | | 3,047,360.00 | PC FUNDING, LLC |
| 10/15/2007 | WIRE OUT | PCI | PETTERS CAPITAL | US BANK | | 3,464,520.00 | PALM BEACH FINANCE HOLDINGS, INC. |
| 10/15/2007 | WIRE OUT | PCI | PETTERS CAPITAL | US BANK | | 4,154,220.00 | PALM BEACH FINANCE HOLDINGS, INC. |
| 10/15/2007 | WIRE OUT | PCI | PETTERS CAPITAL | US BANK | | 4,696,982.10 | PALM BEACH FINANCE HOLDINGS, INC. |
| 10/15/2007 | WIRE OUT | PCI | PETTERS CAPITAL | US BANK | | 5,196,798.00 | PALM BEACH FINANCE HOLDINGS, INC. |
| 10/15/2007 | WIRE IN | NATIONWIDE INTERNATIONAL RESOURCES | PCI | 1ST REGIONAL BANK | 2,762,000.00 | - | FICTITIOUS VENDOR |
| 10/15/2007 | WIRE IN | NATIONWIDE INTERNATIONAL RESOURCES | PCI | 1ST REGIONAL BANK | 2,298,800.00 | - | FICTITIOUS VENDOR |
| 10/15/2007 | WIRE IN | ENCHANTED FAMILY BUYING COMPANY | PCI | ANCHOR BANK 3227170 | 10,614,860.00 | - | FICTITIOUS VENDOR |
| 10/15/2007 | WIRE IN | NATIONWIDE INTERNATIONAL RESOURCES | PCI | 1ST REGIONAL BANK | 4,939,500.00 | - | FICTITIOUS VENDOR |

Total   $ 32,897,551.36   $ 32,854,668.02

Net Inflow (Outflow)   $   42,883.34

# Exhibit F

PCI - M&I
Account Number 1959018
Transactions on 1/3/2008

| Clear Date | Transaction Type | Payor | Payee | Memo Line | In | Out | Investor Transactions |
|---|---|---|---|---|---|---|---|
| 1/3/2008 | CHECK | PCI | DEAN VLAHOS | 810 E LAKE ST, WAYZATA, MN | | $ 399,000.00 | VLAHOS (DEAN, DEAN & MICHELLE) |
| 1/3/2008 | CHECK | PCI | MICHELLE VLAHOS | 810 E LAKE ST, WAYZATA, MN | | 69,000.00 | VLAHOS (MICHELLE) |
| 1/3/2008 | CHECK | PCI | EDGE BROOK, INC. | CRAIG OBERLANDER | | 40,500.00 | EDGE BROOK, INC. |
| 1/3/2008 | ELECTRONIC PAYMENT | PCI | AMERICAN EXPRESS | | | 17,033.14 | |
| 1/3/2008 | CHECK | PCI | DEBBIE LINDSTROM | | | 5,000.00 | |
| 1/3/2008 | CHECK | PCI | INDIANAPOLIS LIFE INSURANCE | 10005131 | | 48,504.95 | |
| 1/3/2008 | CHECK | PCI | T-MOBILE | | | 69.81 | |
| 1/3/2008 | DEPOSIT - CHECK | CENTRAL AMERICA HOLDINGS LLC | PCI | 4400 BAKER RD, MINNETONKA, MN (INTEREST) | $ 290,000.00 | - | |

Total                $ 290,000.00   $ 579,107.90

Net Inflow (Outflow)         $ (289,107.90)

**PCI - M&I**
**Account Number 1959018**
**Transactions on 2/1/2008**

| Clear Date | Transaction Type | Payor | Payee | Memo Line | In | Out | Investor Transactions |
|---|---|---|---|---|---|---|---|
| 2/1/2008 | WIRE IN | RITCHIE SPECIAL CREDIT INVESTMENTS | PCI | JPMORGAN CHASE 707689627 | $ 31,000,000.00 | - | RITCHIE |
| 2/1/2008 | WIRE OUT | PCI | THOUSAND LAKES, LLC | RBS CITIZENS NA 4503527001 | | $ 5,485,729.50 | THOUSAND LAKES, LLC |
| 2/1/2008 | WIRE OUT | PCI | THOUSAND LAKES, LLC | RBS CITIZENS NA 4503527001 | | 5,559,562.50 | THOUSAND LAKES, LLC |
| 2/1/2008 | WIRE OUT | PCI | PC FUNDING, LLC | US BANK 17310322058 | | 3,859,394.00 | PC FUNDING, LLC |
| 2/1/2008 | WIRE OUT | PCI | PETTERS CAPITAL | US BANK 180121167365 | | 5,052,270.00 | PALM BEACH FINANCE HOLDINGS, INC. |
| 2/1/2008 | WIRE OUT | PCI | PETTERS CAPITAL | US BANK 180121167365 | | 5,449,401.25 | PALM BEACH FINANCE HOLDINGS, INC. |
| 2/1/2008 | WIRE OUT | PCI | PETTERS CAPITAL | US BANK 180121167365 | | 5,838,378.00 | PALM BEACH FINANCE HOLDINGS, INC. |
| 2/1/2008 | INTEREST EARNED | M&I BANK | PCI | | 251.53 | - | |

Total    $ 31,000,251.53    $ 31,244,735.25

Net Inflow (Outflow)    $    (244,483.72)

**PCI - M&I**
**Account Number 1959018**
**Transactions on 3/3/2008**

| Clear Date | Transaction Type | Payor | Payee | Memo Line | In | Out | Investor Transactions |
|---|---|---|---|---|---|---|---|
| 3/3/2008 | WIRE IN | METRO GEM, INC. | PCI | HFSB 1529101131 | $  5,000,000.00 | - | METRO GEM, INC. |
| 3/3/2008 | WIRE IN | THOUSAND LAKES, LLC | PCI | RBS CITIZENS NA 4503527001 | 9,175,027.50 | - | THOUSAND LAKES, LLC |
| 3/3/2008 | WIRE IN | THOUSAND LAKES, LLC | PCI | RBS CITIZENS NA 4503527001 | 12,924,972.50 | - | THOUSAND LAKES, LLC |
| 3/3/2008 | WIRE IN | PALM BEACH CAPITAL CORP | PCI | US BANK | 131,432.92 | - | PALM BEACH FINANCE HOLDINGS, INC. |
| 3/3/2008 | WIRE IN | PALM BEACH CAPITAL CORP | PCI | US BANK | 191,743.33 | - | PALM BEACH FINANCE HOLDINGS, INC. |
| 3/3/2008 | WIRE OUT | PCI | METRO GEM, INC. | HFSB 1529101131 | | $      103,334.68 | METRO GEM, INC. |
| 3/3/2008 | WIRE OUT | PCI | METRO GEM, INC. | HFSB 1529101131 | | 2,944,843.33 | METRO GEM, INC. |
| 3/3/2008 | WIRE OUT | PCI | THOUSAND LAKES, LLC | RBS CITIZENS NA 4503527001 | | 3,598,980.00 | THOUSAND LAKES, LLC |
| 3/3/2008 | WIRE OUT | PCI | THOUSAND LAKES, LLC | RBS CITIZENS NA 4503527001 | | 4,324,125.00 | THOUSAND LAKES, LLC |
| 3/3/2008 | WIRE OUT | PCI | THOUSAND LAKES, LLC | RBS CITIZENS NA 4503527001 | | 4,620,660.00 | THOUSAND LAKES, LLC |
| 3/3/2008 | WIRE OUT | PCI | THOUSAND LAKES, LLC | RBS CITIZENS NA 4503527001 | | 4,788,517.50 | THOUSAND LAKES, LLC |
| 3/3/2008 | WIRE OUT | PCI | THOUSAND LAKES, LLC | RBS CITIZENS NA 4503527001 | | 5,168,862.50 | THOUSAND LAKES, LLC |
| 3/3/2008 | WIRE OUT | PCI | PETTERS CAPITAL | US BANK 180121167365 | | 3,915,610.00 | PALM BEACH FINANCE HOLDINGS, INC. |
| 3/3/2008 | CHECK | PCI | AT&T WIRELESS | | | 847.47 | |
| 3/3/2008 | RECALL FROM SWEEP | SWEEP | | | 739,718.24 | - | |

|  |  | Total | $ 28,162,894.49 | $ 29,465,780.48 |
|---|---|---|---|---|

Net Inflow (Outflow)          $ (1,302,885.99)

PCI - M&I
Account Number 1959018
Transactions on 4/2/2008

| Clear Date | Transaction Type | Payor | Payee | Memo Line | In | Out | Investor Transactions |
|---|---|---|---|---|---|---|---|
| 4/2/2008 | CHECK | PCI | DEAN VLAHOS | 294 GROVE LANE E, SUITE 113, WAYZATA, MN | | $ 399,000.00 | VLAHOS (DEAN, DEAN & MICHELLE) |
| 4/2/2008 | CHECK | PCI | MICHELLE VLAHOS | 294 GROVE LANE E, SUITE 113, WAYZATA, MN | | 69,000.00 | VLAHOS (MICHELLE) |
| 4/2/2008 | CHECK | PCI | EDGE BROOK, INC. | CRAIG OBERLANDER | | 40,500.00 | EDGE BROOK, INC. |
| 4/2/2008 | WIRE IN | WELLS FARGO BANK, NA | PCI | NOTE # 2276 | $ 398,541.33 | | MGC FINANCE, LLC |
| 4/2/2008 | WIRE IN | THOUSAND LAKES, LLC | PCI | RBS CITIZENS NA 4503527001 | 3,415,869.37 | - | THOUSAND LAKES, LLC |
| 4/2/2008 | WIRE IN | THOUSAND LAKES, LLC | PCI | RBS CITIZENS NA 4503527001 | 8,884,040.63 | - | THOUSAND LAKES, LLC |
| 4/2/2008 | WIRE IN | PC FUNDING, LLC | PCI | US BANK 0001731093320631 | 306,996.67 | | PC FUNDING, LLC |
| 4/2/2008 | WIRE OUT | PCI | WELLS FARGO BANK, NA | FFC #10939900 PETTERS ACCEPTANCE | | 3,367,216.00 | MGC FINANCE, LLC |
| 4/2/2008 | WIRE OUT | PCI | THOUSAND LAKES, LLC | RBS CITIZENS NA 4503527001 | , | 3,012,240.00 | THOUSAND LAKES, LLC |
| 4/2/2008 | WIRE OUT | PCI | THOUSAND LAKES, LLC | RBS CITIZENS NA 4503527001 | | 4,632,875.00 | THOUSAND LAKES, LLC |
| 4/2/2008 | WIRE OUT | PCI | THOUSAND LAKES, LLC | RBS CITIZENS NA 4503527001 | | 4,725,675.00 | THOUSAND LAKES, LLC |
| 4/2/2008 | WIRE OUT | PCI | PC FUNDING, LLC | US BANK 17310332058 | | 4,691,565.00 | PC FUNDING, LLC |
| 4/2/2008 | WIRE IN | NATIONWIDE INTERNATIONAL RESOURCES | PCI | 1ST REGIONAL BANK | 4,497,500.00 | - | FICTITIOUS VENDOR |
| 4/2/2008 | WIRE OUT | PCI | PCI | CROWN BANK 1102227 | | 750,000.00 | |
| 4/2/2008 | RECALL FROM SWEEP | SWEEP | PCI | | 492,336.40 | - | |
| 4/2/2008 | WIRE IN | NATIONWIDE INTERNATIONAL RESOURCES | PCI | 1ST REGIONAL BANK | 3,398,300.00 | - | FICTITIOUS VENDOR |

Total        $ 21,393,674.40    $ 21,688,013.00

Net Inflow (Outflow)        $ (294,338.60)

PCI - M&I
Account Number 1959018
Transactions on 5/1/2008

| Clear Date | Transaction Type | Payor | Payee | Memo Line | In | Out | Investor Transactions |
|---|---|---|---|---|---|---|---|
| 5/1/2008 | WIRE IN | THOUSAND LAKES, LLC | PCI | RBS CITIZENS NA 4503527001 | $ 10,030,994.25 | - | THOUSAND LAKES, LLC |
| 5/1/2008 | WIRE IN | THOUSAND LAKES, LLC | PCI | RBS CITIZENS NA 4503527001 | 10,389,005.75 | | THOUSAND LAKES, LLC |
| 5/1/2008 | WIRE OUT | PCI | METRO GEM, INC. | HFSB 1623101131 | | $ 4,896,178.75 | METRO GEM, INC. |
| 5/1/2008 | WIRE OUT | PCI | THOUSAND LAKES, LLC | RBS CITIZENS NA 4503527001 | | 5,139,420.00 | THOUSAND LAKES, LLC |
| 5/1/2008 | WIRE OUT | PCI | THOUSAND LAKES, LLC | RBS CITIZENS NA 4503527001 | | 5,485,435.00 | THOUSAND LAKES, LLC |
| 5/1/2008 | WIRE OUT | PCI | THOUSAND LAKES, LLC | RBS CITIZENS NA 4503527001 | | 5,805,779.00 | THOUSAND LAKES, LLC |
| 5/1/2008 | DEPOSIT - CHECK | TRIO MARKETING INC. | PCI | ANCHOR BANK 3227170 | 327.44 | - | |
| 5/1/2008 | WIRE IN | ENCHANTED FAMILY BUYING COMPANY | PCI | ALLIANCE BANK 000560S201 | 2,500,000.00 | | FICTITIOUS VENDOR |
| 5/1/2008 | WIRE OUT | PCI | MN AIRLINES DISBURSEMENT ACCOUNT | | | 1,500,000.00 | |
| 5/1/2008 | DEPOSIT - CHECK | 2J GROUP INC | PCI | FINAL BANKRUPTCY DISTRIBUTION | 20,538.43 | - | |
| 5/1/2008 | DEPOSIT - CHECK | UBID, INC. | PCI | 8725 W HIGGINS, 9TH FL, CHICAGO, IL | 2,216.69 | - | |
| 5/1/2008 | INTEREST EARNED | M&I BANK | PCI | | 854.67 | | |

Total   $ 22,923,937.23   $ 22,826,812.75

Net Inflow (Outflow)   $   97,124.48

**PCI - M&I**
**Account Number 1959018**
**Transactions on 6/2/2008**

| Clear Date | Transaction Type | Payor | Payee | Memo Line | In | Out | Investor Transactions |
|---|---|---|---|---|---|---|---|
| 6/2/2008 | WIRE IN | METRO GEM, INC. | PCI | HFSB 152910131 | $ 4,800,000.00 | - | METRO GEM, INC. |
| 6/2/2008 | WIRE IN | THOUSAND LAKES, LLC | PCI | RBS CITIZENS NA 4503527001 | 5,849,207.62 | - | THOUSAND LAKES, LLC |
| 6/2/2008 | WIRE IN | THOUSAND LAKES, LLC | PCI | RBS CITIZENS NA 4503527001 | 16,950,792.38 | - | THOUSAND LAKES, LLC |
| 6/2/2008 | WIRE OUT | PCI | WELLS FARGO BANK, NA | FC/ACCT 2279130O | | $ 3,003,280.00 | PL LTD, INC. (ELISTONE FUNDS) |
| 6/2/2008 | WIRE OUT | PCI | THOUSAND LAKES, LLC | RBS CITIZENS NA 4503527001 | | 3,201,310.00 | THOUSAND LAKES, LLC |
| 6/2/2008 | WIRE OUT | PCI | THOUSAND LAKES, LLC | RBS CITIZENS NA 4503527001 | | 4,737,950.00 | THOUSAND LAKES, LLC |
| 6/2/2008 | WIRE OUT | PCI | THOUSAND LAKES, LLC | RBS CITIZENS NA 4503527001 | | 4,941,840.00 | THOUSAND LAKES, LLC |
| 6/2/2008 | WIRE OUT | PCI | THOUSAND LAKES, LLC | RBS CITIZENS NA 4503527001 | | 5,003,662.50 | THOUSAND LAKES, LLC |
| 6/2/2008 | WIRE OUT | PCI | THOUSAND LAKES, LLC | RBS CITIZENS NA 4503527001 | | 5,683,200.00 | THOUSAND LAKES, LLC |
| 6/2/2008 | CHECK | PCI | DELAWARE SECRETARY OF STATE | DELAWARE DIV. OF CORP. | | 200.00 | |
| 6/2/2008 | CHECK | PCI | DELAWARE SECRETARY OF STATE | DELAWARE DIV. OF CORP. | | 200.00 | |
| 6/2/2008 | CHECK | PCI | DELAWARE SECRETARY OF STATE | DELAWARE DIV. OF CORP. | | 200.00 | |
| 6/2/2008 | CHECK | PCI | DELAWARE SECRETARY OF STATE | DELAWARE DIV. OF CORP. | | 200.00 | |
| 6/2/2008 | CHECK | PCI | ROBERT D WHITE | 538 GRACE ST, EXCELSIOR, MN | | 32,000.00 | |
| 6/2/2008 | CHECK | PCI | DELAWARE SECRETARY OF STATE | DELAWARE DIV. OF CORP. | | 200.00 | |

Total $ 27,600,000.00 $ 26,604,242.50

Net Inflow (Outflow) $ 995,757.50

PCI - M&I
Account Number 1959018
Transactions on 7/1/2008

| Clear Date | Transaction Type | Payer | Payee | Memo Line | In | Out | Investor Transactions |
|---|---|---|---|---|---|---|---|
| 7/1/2008 | WIRE IN | PALM BEACH CAPITAL CORP | PCI | US BANK | $ 213,724.25 | - | PALM BEACH FINANCE HOLDINGS, INC. |
| 7/1/2008 | WIRE IN | METRO GEM, INC. | PCI | HFSB 1529101131 | 1,400,000.00 | - | METRO GEM, INC. |
| 7/1/2008 | WIRE IN | METRO GEM, INC. | PCI | HFSB 1529101131 | 2,400,000.00 | - | METRO GEM, INC. |
| 7/1/2008 | WIRE IN | METRO GEM, INC. | PCI | HFSB 1529101131 | 2,800,000.00 | - | METRO GEM, INC. |
| 7/1/2008 | WIRE IN | METRO GEM, INC. | PCI | HFSB 1529101131 | 4,000,000.00 | - | METRO GEM, INC. |
| 7/1/2008 | WIRE IN | FIDELIS FOUNDATION | PCI | PRIVATE BANK MN | 4,200,000.00 | | FIDELIS FOUNDATION (F/K/A HARVEST FOUNDATION) |
| 7/1/2008 | WIRE OUT | PCI | PAC FUNDING, LLC (LOCKBOX) | CROWN BANK 210820 | | $ 6,018,807.50 | PAC FUNDING LLC |
| 7/1/2008 | WIRE OUT | PCI | METRO GEM, INC. | HFSB 1529101131 | | 25,333.34 | METRO GEM, INC. |
| 7/1/2008 | WIRE OUT | PCI | METRO GEM, INC. | HFSB 1529101131 | | 5,200,125.00 | METRO GEM, INC. |
| 7/1/2008 | WIRE OUT | PCI | METRO GEM, INC. | HFSB 1529101131 | | 5,341,637.50 | METRO GEM, INC. |
| 7/1/2008 | WIRE OUT | PCI | RITCHIE SPECIAL CREDIT INVESTMENTS | JPMORGAN CHASE 707669527 | | 1,650,000.00 | RITCHIE |
| 7/1/2008 | WIRE OUT | PCI | PBPF HOLDINGS, LLC | | | 4,268,488.00 | PALM BEACH FINANCE HOLDINGS, INC. |
| 7/1/2008 | WIRE OUT | PCI | CHUCK AND HAROLD LLC | CROWN BANK 1112846 | | 400,000.00 | |
| 7/1/2008 | DEPOSIT | ENCHANTED FAMILY BUYING COMPANY | PCI | ANCHOR BANK 3227170 | 5,336,685.00 | | FICTITIOUS VENDOR |
| 7/1/2008 | WIRE IN | PCI | PCI | | 15,936.00 | | |
| 7/1/2008 | DEPOSIT | NATIONWIDE INTERNATIONAL RESOURCES | PCI | 1ST REGIONAL BANK | 3,936,000.00 | | FICTITIOUS VENDOR |
| 7/1/2008 | TRANSFER TO SWEEP | SWEEP | SWEEP | | | 290,368.34 | |
| 7/1/2008 | INTEREST EARNED | M&I BANK | PCI | | 838.58 | - | |

Total            $ 24,103,164.83    $ 23,192,859.68

Net Inflow (Outflow)    $    910,305.15

PCI - M&I
Account Number 1959018
Transactions on 8/1/2008

| Clear Date | Transaction Type | Payor | Payee | Memo Line | In | Out | Investor Transactions |
|---|---|---|---|---|---|---|---|
| 8/1/2008 | WIRE IN | PALM BEACH CAPITAL CORP | PCI | US BANK | $ 172,100.33 | | PALM BEACH FINANCE HOLDINGS, INC. |
| 8/1/2008 | WIRE OUT | PCI | PC FUNDING, LLC | US BANK 173103322058 | | $ 4,238,419.00 | PC FUNDING, LLC |
| 8/1/2008 | WIRE OUT | PCI | PBFP HOLDINGS, LLC | | | 1,000,000.00 | PALM BEACH FINANCE HOLDINGS, INC. |
| 8/1/2008 | WIRE OUT | PCI | PBFP HOLDINGS, LLC | | | 4,154,212.00 | PALM BEACH FINANCE HOLDINGS, INC. |
| 8/1/2008 | DEPOSIT - CHECK | PETTERS WAREHOUSE DIRECT INC | PCI | | 748.09 | - | |
| 8/1/2008 | DEPOSIT - CHECK | CAMPUSHOUSING | PCI | | 290.01 | - | |
| 8/1/2008 | WIRE IN | PETTERS AVIATION, LLC | PCI | MINNWEST BANK 1080002850 | 500,000.00 | - | |
| 8/1/2008 | DEPOSIT - CHECK | JOHN T. PETTERS FOUNDATION | PCI | | 719.06 | - | |
| 8/1/2008 | RECALL FROM SWEEP | SWEEP | SWEEP | | 328,786.67 | - | |
| 8/1/2008 | WIRE IN | MN AIRLINES LLC | PCI | ALLIANCE BANK 5605201 | 1,000,000.00 | - | |
| 8/1/2008 | WIRE IN | POLAROID CONSUMER ELECTRONICS LLC | PCI | JPMORGAN CHASE 684535883 | 5,000,000.00 | - | |
| 8/1/2008 | CHECK | PCI | MARY LYNN JEFFRIES | 5600 AVENIDA EUCINAS SUITE 130 | | 6,023.75 | |
| 8/1/2008 | DEPOSIT - CHECK | AARON CHANG INTERNATIONAL, LLC | PCI | | 1,765.00 | - | |
| 8/1/2008 | WIRE IN | MN AIRLINES LLC | PCI | ALLIANCE BANK 5605201 | 1,000,000.00 | - | |
| 8/1/2008 | INTEREST EARNED | M&I BANK | PCI | | 357.45 | - | |

Total $ 8,002,766.61 $ 9,398,654.75

Net Inflow (Outflow) $ (1,395,888.14)

PCI - M&I
Account Number 1950018
Transactions on 9/2/2008

| Clear Date | Transaction Type | Payor | Payee | Memo Line | In | Out | Investor Transactions |
|---|---|---|---|---|---|---|---|
| 9/2/2008 | WIRE IN | RWB SERVICES, LLC | PCI | | $ 6,135,985.00 | | THOUSAND LAKES, LLC |
| 9/2/2008 | WIRE OUT | PCI | THOUSAND LAKES, LLC | | | $ 4,274,482.00 | THOUSAND LAKES, LLC |
| 9/2/2008 | WIRE OUT | PCI | THOUSAND LAKES, LLC | | - | 5,212,970.00 | THOUSAND LAKES, LLC |
| 9/2/2008 | WIRE OUT | PCI | THOUSAND LAKES, LLC | | | 5,307,187.50 | THOUSAND LAKES, LLC |
| 9/2/2008 | WIRE OUT | PCI | THOUSAND LAKES, LLC | | | 5,293,020.00 | THOUSAND LAKES, LLC |
| 9/2/2008 | WIRE IN | PALM BEACH CAPITAL MANAGEMENT | PCI | | 569.58 | | PALM BEACH FINANCE HOLDINGS, INC. |
| 9/2/2008 | WIRE OUT | PCI | METRO GEM, INC. | | | 327,686.08 | METRO GEM, INC. |
| 9/2/2008 | WIRE IN | RWB SERVICES, LLC | PCI | | 13,864,115.00 | - | THOUSAND LAKES, LLC |
| 9/2/2008 | CHECK | PCI | DEAN VLAHOS | | | 399,000.00 | VLAHOS (DEAN, DEAN & MICHELLE) |
| 9/2/2008 | CHECK | PCI | EDGE BROOK, INC. | | | 40,000.00 | EDGE BROOK, INC. |
| 9/2/2008 | CHECK | PCI | MICHELLE VLAHOS | | | 69,000.00 | VLAHOS (MICHELLE) |
| 9/2/2008 | CHECK | PCI | SIGNATURE BANK | | | 24,791.67 | VLAHOS (DEAN, DEAN & MICHELLE) |
| 9/2/2008 | CHECK | PCI | HOME FEDERAL SAVINGS BANK | | | 38,750.00 | VLAHOS (DEAN, DEAN & MICHELLE) |
| 9/2/2008 | WIRE IN | ENCHANTED FAMILY BUYING COMPANY | PCI | | 2,649,300.00 | | FICTITIOUS VENDOR |
| 9/2/2008 | AUTOMATIC TRANSFER | PCI | SWEEP | AUTOMATIC TRANSFER TO EURO SWEEP ACCOUNT 0022334037 | | 939,605.83 | |
| 9/2/2008 | AUTOMATIC RECALL | PCI | PCI | AUTOMATIC RECALL FROM EURO SWEEP ACCOUNT 0022334037 | 939,605.83 | | |
| 9/2/2008 | WIRE IN | POLAROID CONSUMER ELECTRONICS LLC | PCI | | 7,035.31 | - | |

Total    $ 23,596,510.72    $ 21,926,863.08

Net Inflow (Outflow)    $ 1,669,647.64

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

---

In re:                                                    **Jointly Administered under**
                                                          **Case No. 08-45257**

Petters Company, Inc., et al.,                            Court File No. 08-45257

          Debtors.
                                                          Court Files Nos.:
(includes:
Petters Group Worldwide, LLC;                             08-45258 (GFK)
PC Funding, LLC;                                          08-45326 (GFK)
Thousand Lakes, LLC;                                      08-45327 (GFK)
SPF Funding, LLC;                                         08-45328 (GFK)
PL Ltd., Inc.;                                            08-45329 (GFK)
Edge One LLC;                                             08-45330 (GFK)
MGC Finance, Inc.;                                        08-45331 (GFK)
PAC Funding, LLC;                                         08-45371 (GFK)
Palm Beach Finance Holdings, Inc.)                        08-45392 (GFK)


                                                          Chapter 11 Cases
                                                          Judge Gregory F. Kishel

---

**MEMORANDUM OF LAW IN SUPPORT OF AMENDED AND RESTATED MOTION
TO SUBSTANTIVELY CONSOLIDATE CERTAIN OF THE DEBTORS' ESTATES**

---

TO:     The entities specified in Local Rule 9013-3

     Douglas A. Kelley, Chapter 11 trustee ("Trustee") of the above-captioned debtors (the

"Debtors"), by and through his legal counsel, respectfully submits this Memorandum in support

of his Amended and Restated Motion to Substantively Consolidate Certain of the Debtors'

Estates.  Capitalized terms not otherwise defined herein shall have the meanings given to such

terms in the verified motion filed in connection herewith (the "Motion").

## FACTS

     The factual basis for this memorandum of law is set forth in the Motion and is hereby

incorporated as if fully set forth herein.

## **LEGAL ARGUMENT**

I.    **Substantive Consolidation and the Court's Authority to Substantively Consolidate PCI and the SPEs.**

A bankruptcy court "applies the principles and rules of equity jurisprudence" in exercising the jurisdiction conferred upon it. *Pepper v. Litton*, 308 U.S. 295, 304 (1939). Substantive consolidation is an equitable measure that allows this Court to pool "two or more debtors' assets and liabilities so that each of the debtor's liabilities are satisfied from the common pool of assets created by the consolidation." *In re Huntco Inc.*, 302 B.R. 35, 38 (Bankr. E.D. Mo. 2003). "Substantive consolidation has long been part of the fabric of bankruptcy law." *In re Bonham*, 226 B.R. 56, 75 (Bankr. D. Alaska 1998), *aff'd*, 229 F.3d 750 (9th Cir. 2000) (*citing* 2 Collier on Bankruptcy ¶ 105.04[2], at n.18 (1998) and *Sampsell v. Imperial Paper & Color Corp.*, 313 U.S. 215, 219 (1941) (upholding substantive consolidation)). The sole purpose of substantive consolidation is "to promote the fair and equitable distribution of the debtors' collective assets." *Huntco,* 302 B.R. at 38 (quoting *In re Southern Motel Assoc.*, 935 F.2d 245, 247 (11th Cir. 1991)).

This Court's authority to order substantive consolidation is derived from its discretionary equitable powers. As stated by the Second Circuit,

> The power to consolidate is one arising out of equity, enabling a bankruptcy court to disregard separate corporate entities, to pierce their corporate veils in the usual metaphor, in order to reach assets for the satisfaction of debts of a related corporation.

*James Talcott, Inc. v. Wharton (In re Continental Vending Mach. Corp.)*, 517 F.2d 997, 1000 (2d Cir.1975); *see* Collier on Bankruptcy ¶ 105.09[1][b], at 105-91 (quoting same). In turn, the Court's discretionary equitable powers emanate from those powers granted by Congress pursuant to 11 U.S.C. § 105(a), which authorizes the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." *See FDIC v. Colonial Realty*

2

*Co.,* 966 F.2d 57, 59 (2d Cir. 1992); *In re Leslie Fay Cos.*, 207 B.R. 764, 779 (Bankr. S.D.N.Y. 1997).[1]

The Court's authority and power to substantively consolidate estates is long and well established. As the United States Supreme Court unequivocally held in *Sampsell* in 1941, the "power of the bankruptcy court to subordinate claims or to adjudicate equities arising out of the relationship between several creditors is complete." *See* 313 U.S. at 219. In light of the Supreme Court's *Sampsell* decision, which indeed addressed the substantive consolidation of debtor and non-debtor estates, the circuit courts have since confirmed that what "the Court has given as an equitable remedy remains until it alone removes it or Congress declares it removed." *In re Owens Corning*, 419 F.3d 195, 209 (3d Cir. 2005). Accordingly, this Court has the equitable power, and the authority, to substantively consolidate the estates of PCI and the SPEs.

## II.   Substantive Consolidation Standard and Its Practical and Equitable Effect.

The Court has broad discretion, under the equitable powers identified above, to order substantive consolidation, and its decision on such equitable determinations will be reviewed for abuse of discretion. *First Nat'l Bank v. Giller (In re Giller)*, 962 F.2d 796, 798 (8th Cir. 1992). In addition, the underlying findings of fact supporting the Court's determination that substantive consolidation is warranted will only be set aside if clearly erroneous. *Id.* As the Third Circuit has explained, the rationale for substantive consolidation has been characterized as follows:

> At bottom one of practicality when the entities' assets and liabilities have been "hopelessly commingled." Without substantive consolidation all creditors will be worse off (as

---

[1] The court in *In re Cyberco Holdings, Inc.* 431 B.R. 404 (Bankr. W.D. Mich. 2010) recently held that the authority for substantive consolidation is also found in 11 U.S.C. §§ 542(a) and 502(j). *See id.* at 424.

> Humpty Dumpty cannot be reassembled or, even if so, the effort
> will threaten to reprise *Jarndyce and Jarndyce*, the fictional suit in
> Dickens' *Bleak House* where only the professionals profited).
> With substantive consolidation the lot of all creditors will be
> improved, as consolidation advances one of the primary goals of
> bankruptcy enhancing the value of the assets available to
> creditors—often in a very material respect.

*In re Owens Corning*, 419 F.3d 195, 211 n.20 (3d Cir. 2005).   In other words, substantive

consolidation is appropriate when the debtors' "assets and liabilities are so scrambled that

separating them is prohibitive and hurts all creditors." *Id.* at 211.

Substantive consolidation has the practical affect of consolidating the assets and

liabilities of multiple debtors and treating them as if the liabilities were owed by, and the assets

held by, a single legal entity. *See Colonial Realty*, 966 F.2d at 58-59.   Substantive consolidation

has the additional effect, beyond creating a common pool of assets and liabilities, of eliminating

inter-entity claims and guarantees of co-debtors, as well as combining creditors for purposes of

voting on a future reorganization plan.   *See Colonial Realty*, 966 F.2d at 58-59; *Union Savs.

Bank v. Augie/Restivio Baking Co., Ltd. (In re Augie/Restivo Baking Co., Ltd.)*, 860 F.2d 515,

518 (2d Cir. 1988).   Consolidation of the debtors' estates makes possible that which is not

feasible in its absence: the "determination, allowance and classification by the trustee of claims

of creditors prior to the preparation and submission of a plan."   *Colonial Realty*, 966 F.2d at 59.

Substantive consolidation is therefore more extensive and comprehensive than the commonly

known doctrine of "piercing the corporate veil" because the result is a "complete merger of legal

entities, while piercing the corporate veil is essentially a limited merger for the benefit of only

one creditor or group of creditors."   *In re Cooper*, 147 B.R. 678, 684 (Bankr. D.N.J. 1992).

Moreover, and significantly, upon substantive consolidation ordered effective as of the

date the cases were commenced (discussed further below), the creditors of the separate entities

become "joint creditors of the consolidated entity as of the petition date," thereby permitting avoidance actions on fraudulent transfers by conveying the necessary creditor standing to pursue such claims upon the trustee.  *In re Dehon, Inc.*, 2004 WL 2181669, at *4 and *6 (Bankr. D. Mass. 2004) ("Using substantive consolidation *nunc pro tunc* for the purpose of bringing a fraudulent transfer action is not new or novel.").   Accordingly, this Court has not only the authority, but also the discretion, based upon the facts identified in the Motion and set forth in more detail below, to order substantive consolidation of the estates of PCI and the SPEs to effectuate the practical and equitable purposes that consolidation is designed to accomplish:  a common pool of assets for distribution to all creditors, the elimination of inter-company claims, combining the creditors of multiple debtor entities for purposes of voting on a plan and assuring the Trustee of standing to pursue legitimate claims against SPE investors in the event that such standing would not otherwise be available.

### III.    Substantive Consolidation Is Warranted and Necessary Due to the Interrelationship Among the Debtors, the Benefits of Consolidation and the Resultant Prejudice if the Debtors' Bankruptcy Estates Are Not Consolidated.

The primary case regarding substantive consolidation in the Eighth Circuit is *First Nat'l Bank v. Giller (In re Giller)*, 962 F.2d 796 (8th Cir. 1992).  The Eighth Circuit Court of Appeals, in affirming the bankruptcy court's substantive consolidation ruling and holding that consolidation was appropriate, focused upon the following three non-exclusive factors:

1.    The necessity of consolidation due to the interrelationship among the debtors;

2.    Whether the benefits of consolidation outweigh the harm to creditors; and

3.    Prejudice resulting from not consolidating the debtors.

*Giller*, 962 F.2d at 799.  However, because substantive consolidation is an equitable remedy, the "propriety of consolidation must . . . be determined solely in light of the principles and rules of

equity." *Colonial Realty*, 966 F.2d at 60. In this case, the *Giller* factors, and equity, readily support and indeed require substantive consolidation of PCI and the SPEs. Indeed, one cannot imagine a more appropriate case.

The facts warranting substantive consolidation in *Giller* are analogous to those in the instant case. Giller was the sole or majority shareholder of six corporations. He filed an individual Chapter 11 bankruptcy petition, and the Chapter 11 trustee for Giller's estate thereafter filed voluntary Chapter 11 bankruptcy petitions for the six corporations and moved to substantively consolidate the corporations' estates with Giller's personal estate. *Giller*, 962 F.2d at 798-99. The court granted the motion for substantive consolidation, finding that Giller had abused the debtors' corporate forms and had caused transfers among the debtors that might give rise to fraudulent conveyance and preference causes of action. *Id.* at 798. Giller testified that one of the debtors financed all other debtors, no formal repayment plan was required, all debtors maintained the same headquarters in a building owned by one of the debtors, but none paid rent. Moreover, since only one of the debtors was solvent, the remaining debtors could not pay for the accountants and lawyers that would be necessary to pursue the respective causes of action. The bankruptcy court therefore determined that the only hope of obtaining monies to pay the unsecured creditors was to consolidate the debtors, and thereby extinguish inter-debtor claims and create a single pool of assets. *Id.* at 799.

Although the Court in *Giller* identified three primary considerations,[2] this Court has previously recognized that ultimately substantive consolidation is a fact-intensive inquiry and is

---

[2] The Court in *Giller* adopted a test similar to the test adopted by the Eleventh Circuit and other courts, with the primary focus being the unity of the parties coupled with a balancing of the

indeed a "court-granted remedy that requires a substantial record going to multiple factors," of which the "abiding consideration is fairness to all creditors." *In re Petters Co., Inc.,* 401 B.R. 391, 414 (Bankr. D. Minn. 2009) (citations omitted), *aff'd*, 620 F.3d 847 (8th Cir. 2010). Indeed, "there is no one set of elements which, if established, will mandate consolidation in every instance." *In re Steury*, 94 B.R. 553, 554 (Bankr. N.D. Ind. 1988) (citations omitted). As a result, "questions concerning substantive consolidation are to a great degree *sui generis*," precedent has "limited value" and instead this Court is required to focus its inquiry on "what equity requires." *Id.* In this case, equity and fairness to creditors require substantive consolidation.

There is not a single creditor whose status as such will be harmed by substantive consolidation of these bankruptcy estates. The Ninth Circuit has said:

> The investors contend that the bankruptcy court failed to properly weigh the benefits of substantive consolidation against the harm to the investors. The "harm" usually measured is the harm to the entity which is being substantively consolidated. Here, the only "harm" is that third parties may have greater exposure to risk because they may lose a legal defense to what would otherwise be viable claims of fraudulent transfer. In short, the alleged "harm" is that fraudulent transfers of money will be recovered, the estates will be equitably administered and the assets equitably distributed. The bankruptcy court did not err in this aspect of its analysis.

---

benefits of consolidation with any harm to creditors. *See, e.g., Drabkin v. Midland-Ross Corp. (In re Auto-Train Corp.)*, 810 F.2d 270 (D.C. Cir. 1987); *Reider v. FDIC (In re Reider)*, 31 F.3d 1102 (11th Cir. 1994). The *Giller* Court's use of the word "include" to describe the substantive consolidation factors, however, indicates that the Eighth Circuit contemplated that other factors may also be considered, an approach taken by numerous other courts. *See, e.g., In re Affiliated Foods, Inc.*, 249 B.R. 770, 777 (Bankr. W.D. Mo. 2000). Other factors considered in the substantive consolidation analysis by other courts, all of which weigh in favor of substantive consolidation in this case, are discussed in more detail below.

*In re Bonham*, 229 F.3d 750, 767 (9th Cir. 2000).  As the court in *Bonham* recognized, without consolidation, creditors may be harmed because viable fraudulent transfer claims may be impaired.  In short, substantive consolidation will allow a truly equitable distribution of assets by treating PCI and the SPEs as a single economic unit and solidifying fraudulent transfer claims against the SPE investors..

### A.    The *Giller* Factors All Weigh in Favor of Substantive Consolidation.

As in *Giller*, the three primary factors all weigh in favor of substantive consolidation in the instant case.  First, with respect to the interrelationship among the debtors, it is extensive.  As set forth in the verified Motion, the unity of interests and ownership between various corporate entities is singular and leads directly to Thomas J. Petters in each instance.  Petters at all times owned 100% of, and controlled, PCI.  PCI, or Petters individually, in turn wholly owned the SPEs for the sole purpose of perpetrating Petters' fraudulent business conduct.

Second, the benefits of consolidation in this case significantly outweigh any harm to creditors (which the Trustee asserts is none) following consolidation.  To require the Trustee to unwind the pervasive and massive commingling of assets and liabilities among the Debtors would so financially burden the estates that it would effectively prevent recovery by the estates' respective creditors.  And even if unwound—to what end?  Money flowed freely—up to $50 million/day and more—among the PCI Estates for absolutely no purpose other than to perpetuate the Ponzi scheme.

Third, the prejudice that would result in not consolidating the estates could be extreme.  The Trustee, in addition to seeking to avoid many avoidable transfers under Sections 547 and 548 of the Bankruptcy Code, is also seeking to avoid many avoidable transfers under Section 544 of the Bankruptcy Code and state fraudulent transfer law.  In order to ensure the best chance for

recovery by the PCI Estates, and confirm the Trustee's standing to pursue the avoidance claims, the Trustee, in numerous adversary actions, seeks to reverse pierce the corporate veil of certain of the SPEs.  While all the SPEs have numerous tort claimants who have filed claims, some of the SPEs have only one or no creditor listed in the bankruptcy schedules of such SPE.  Because of the fraudulent scheme, the scheduled creditor, or a former creditor who has been fully paid, has received avoidable transfers from the SPEs and is a defendant in a pending adversary proceedings.  Absent a successful reverse piercing of the corporate veil, the granting of this Motion, or the ultimate allowance of the tort claimant's claims, the Trustee's standing to bring avoidance actions under Sections 544, 547 and 548 may be challenged.  A single substantive consolidation decision will preclude the necessity of having to separately litigate the standing issue in numerous adversary proceedings.

As was clear in *Giller*, and as is evidenced in this case, an additional benefit of consolidation results from the ability of one estate to fund avoidance litigation of other estates with no assets.  The absence of avoidance litigation, and funds to pursue such litigation, can harm all creditors where the best hope for any recovery is the successful prosecution of avoidance litigation.  The same is true in this case.  The single best hope for any significant recovery for the many creditors and victims in these cases lies with the successful prosecution of avoidance litigation.  The alleged existence of a potential hindrance to the Trustee's standing to bring avoidance litigation against some of the largest "winners" in Petters' Ponzi scheme could prevent any substantial recovery for the benefit of all creditors in these cases, and particularly impact those victims who invested with Petters as his scheme was unraveling and whose money was literally handed to the other winning investors, some of whom had been completely-or almost completely-paid out.

Finally, there is no legal or equitable reason for creditors of the PCI Estates not to share and share alike in the proceeds of avoidance litigation and other assets on an aggregate basis. Such a result furthers one of the prime policies of the Bankruptcy Code—namely, to ensure equality of distribution among similarly situated creditors.  This is especially true when the funds were invested into a massive Ponzi scheme.

Accordingly, substantively consolidating PCI and the SPEs will benefit all the creditors in the PCI Estates.  The only potential prejudice is the prejudice that would result from *not* consolidating PCI and the SPEs because the recovery on avoidance litigation may then be potentially hindered against those who were among the biggest "winners" from Petters' Ponzi scheme.

###### B.      Additional Factors That Favor Substantive Consolidation.

In addition to all three *Giller* factors weighing strongly in favor of substantive consolidation, the additional factors that courts have previously considered further confirm that equity requires substantive consolidation in this case.  These factors, all of which are set forth in detail in the verified motion herewith, include:

i       The fact that PCI and the SPEs were used for the sole purpose of perpetrating a massive fraud;

i       The fact that PCI and the SPEs are so interrelated that the SPEs are, and at all times were, mere alter egos and instrumentalities of PCI;

i       The commonality of ownership among PCI and the SPEs was complete, with Petters wholly owning all companies, either personally or through an entity wholly owned by Petters;

i       Petters' execution of promissory notes and guarantees on behalf of PCI and the SPEs, on both sides of the transactions;

i       The existence of guarantees by PCI and Petters of SPE obligations;

i       The lack of any independent governance of PCI and the SPEs;

i       The extensive commingling of funds that occurred among the entities;

i       The constant use of the SPEs by Petters and PCI for the purpose of giving a false appearance of legitimacy to PCI;

i       The fact that none of the SPEs were independently or sufficiently capitalized;

i       The absence of any functioning directors or officers of the SPEs other than Petters;

i       The fact that Petters and his Criminal Associates dominated and controlled all aspects of the business and operations of the SPEs;

i       The conflation of the entities by Petters through his transferring of funds interchangeably among the entities for the ultimate benefit of PCI and to further perpetrate the fraud;

i       The fact that PCI commingled business functions with the SPEs, including the fact that PCI paid the expenses, salaries, rents, management, accounting, and all other costs of doing business incurred by the SPEs, which were never independently capitalized or in control of their own accounts;

i       The extensive commingling of funds by PCI and the SPEs that created a tangled web of financial transactions (*see, e.g.* Motion Exs. A-1 through F-9);

i       The fact that PCI and the SPEs were formed and run as a unified enterprise under common control;

i       The overall lack of separateness of PCI and the SPEs; and

i       The prejudice to be incurred absent substantive consolidation as a result of the inability to otherwise pursue avoidance claims.

*See, e.g., In re Bonham*, 229 F.3d at 766 (identifying nonexhaustive list of additional substantive consolidation considerations); *In re Affiliated Foods, Inc.*, 249 B.R. 770, 777 (Bankr. W.D. Mo. 2000) (same).   All of the above factors are additional considerations that this Court may consider, in addition to the *Giller* factors, and that weigh in favor of a holding that equity dictates that PCI and the SPEs be substantively consolidated.

**IV.     Substantive Consolidation Is Particularly Appropriate When Multiple Entities in a Corporate Family Are Used as a Single Instrument of Fraud.**

These bankruptcy cases are much different from those contemplated by the courts

11

addressing substantive consolidation where there is no suggestion that the debtor had adopted or used its corporate family form in bad faith, such as the Third Circuit's decision in *Owens Corning*. *See In re Owens Corning*, 419 F.3d 195, 212-13 (3d Cir. 2007). Unlike the Fortune 500 company in *Owens Corning*, the situation in these cases is starkly different. This was a fraud. PCI and the SPE entities were used as an integral part of a Ponzi scheme perpetrated by Petters and his Criminal Associates, all of whom have been convicted and sentenced for the commission of various federal crimes relating to the fraud. All of the entities for which consolidation is sought were used to further a single fraudulent scheme. None of them were functioning companies in any legitimate sense. The actions of the Debtors in the corporate family were controlled by insiders who directed the movement of funds at will, with no regard for separate entity status. The money was funneled by PCI to the SPE investors without regard for the true economic reality of the transactions or the separate identity of the entities. Of course, all of the funds transferred to or by PCI and the interrelated SPEs were proceeds of the fraud utilized in the service of a single fraudulent enterprise.

Courts have found that the existence of a Ponzi scheme perpetrated by affiliated debtors weighs in favor of substantive consolidation. *See, e.g., In re Bonham*, 229 F.3d 750, 769 (9th Cir. 2000) (citing *Giller* and finding substantive consolidation to be appropriate since the relief granted furthered the recovery of funds transferred as part of the Ponzi scheme and preserved the trustee's avoidance powers).[3] *See also Campbell v. Cathcart (In re Derivium Capital, LLC)*, 380

_____

[3] The Ninth Circuit, while acknowledgings that "[t]he primary motivation for ordering substantive consolidation in the instant appeal is to allow the trustee to pursue avoidance actions against "Target" creditors who have recouped, in part or in full, their investments with Bonham," concluded that "[s]uch a motivation is not without precedent and is proper in light of the

12

B.R. 429, 442 (Bankr. D.S.C. 2006) ("The Trustee has also sufficiently made allegations of alter ego behavior, fraud, and intermingling of assets to show that substantive consolidation would be fair and just."). Indeed, remedying harm from a debtor's fraud is the historic basis for substantive consolidation. *See Sampsell v. Imperial Paper & Color Corp.*, 313 U.S. 215, 219 (1941) (embracing the use of substantive consolidation in the context of a fraudulent transfer of assets to a non-debtor corporation due to the "fraudulent character" of the corporation); *In re Stone & Weber, Inc.*, 286 B.R. 532, 538 (Bankr. D. Del. 2002) ("Substantive consolidation was fashioned as a device to combat the commission of fraud upon creditors."). *See, also, In re Giller*, 962 F.2d 796, 798-99 (8th Cir. 1992) (finding the remedy of substantive consolidation to be appropriate when the court finds abuses of the corporate form, "including the potentially fraudulent or preferential transfer of assets").

Petters operated PCI and the SPEs as a unified enterprise under common ownership and control with the assistance of a group of insiders that perpetrated a massive fraud by using that control to raise substantial cash from investors, commingle it and distribute the funds as needed without regard for source or restrictions on use. The SPEs were merely instruments by which Petters was able to extract money from investors. This Court should look through the forms of these nominally separate corporate entities involved in the scheme and order the substantive consolidation of these affiliated bankruptcy estates—a result dictated by the circumstances to ensure the fair and equitable treatment of all creditors.

---

equitable nature of substantive consolidation." *In re Bonham*, 229 F.3d at 768 (citing *In re Giller*, 962 F.2d at 799; *In re Kroh, 117 B.R. 499, 502 (W.D. Mo. 1989).*

**V.      Substantive Consolidation Should be Granted Effective as of October 11, 2008.**

In finding that substantive consolidation is warranted under *Giller*, and in equity, the Court should order substantive consolidation effective as of October 11, 2008.  This is because "one of the most important issues in the substantive consolidation motion is the effective date." *In re Bonham*, 226 B.R at 98; *see In re Bonham*, 229 F.3d 750 (9th Cir. 2000) (affirming substantive consolidation of debtor and non-debtor estates effective as of the petition date).  The earliest petition date for these Debtors is October 11, 2008, which is the date the order should be effective.  Given the fraudulent transactions that have taken place in this case, and in fairness to all of the creditors that have a great interest in the recovery of such transactions, the earliest date possible should be used to fix the effective date of the substantive consolidation order.

In *Evans Temple Church of God in Christ & Community Ctr., Inc. v. Carnegie Body Co.*, two related debtors filed bankruptcy petitions approximately four months apart.  *See* 55 B.R. 976 (Bankr. N.D. Ohio 1986)  A month after the second debtor filed its petition, the two estates were substantively consolidated.  When the second debtor sought to recover an allegedly preferential transfer, the defendant responded that the transfer occurred more than 90 days prior to the filing of that debtor's petition.  The *Evans Temple* court, turning to the policies behind Section 547 of the Bankruptcy Code, noted that the section had two purposes: to discourage a race to the courthouse to acquire a debtor's assets and to promote equality of distribution among all of the debtor's creditors.  *Id*. at 982.  Therefore the court concluded that ensuring equality of distribution among creditors of debtors whose assets and liabilities are so intertwined that they are in reality only one estate requires that creditors of consolidated debtors be treated "in substantially the same manner," including sharing the earlier filing date for the calculation of the

14

preference period.  *Id.*; *see Nickless v. Avnet, Inc. (In re Century Electronics Mfg., Inc.)*, 310
B.R. 485 (Bankr. D. Mass. 2004).

The *Evans Temple* Court reasoned that "in any consolidated case, there is implicit in the
Court's decision to consolidate the conclusion that the practical necessity of consolidation to
protect the possible realization of any recovery for the majority of the unsecured creditors far
outweighs the prospective harm to any particular creditor." *Id.* at 981.  As a result, "[e]nsuring
equality of distribution among creditors of debtors whose assets and liabilities are so intertwined
that they are in reality only one estate requires that creditors of consolidated debtors be treated in
substantially the same manner, <u>including sharing the earlier filing date for the calculation of the
preference period</u>." *Century Electronics*, 310 B.R. at 490 (emphasis added).  As the Court of
Appeals for the Ninth Circuit similarly recognized, "*nunc pro tunc* consolidation will make it
possible for the Trustee to pursue avoidance actions under §§ 544(b) and 548, benefiting the
creditors of the Ponzi debtor." *Bonham*, 229 F.3d at 768.  "In short, substantive consolidation
will allow a truly equitable distribution of assets by treating the corporate shells as a single
economic unit." *Id.*; *see In re Kroh*, 117 B.R. at 502 (finding *nunc pro tunc* consolidation proper
to allow trustee standing to pursue transfers as a preference and avoidable transfer).  PCI and the
corporate shells—the SPEs—should also be treated as one economic unit for the benefit of all
creditors in this case.[4]

---

[4] The Court of Appeals for the District of Columbia has held that to afford a substantive
consolidation *nunc pro tunc* treatment, a second balancing of the equities must occur to
determine whether the benefits of the *nunc pro tunc* treatment outweigh the harm, an inquiry
which closely parallels the consolidation analysis in the first instance.  *In re Auto Train Corp.,
Inc.*, 810 F.2d at 277.  However, subsequent courts have rejected requiring a second balancing of
the equities in order to afford substantive consolidation *nunc pro tunc* treatment, on the basis that

A substantial benefit to the consolidated estate would accrue from ordering substantive consolidation effective as of October 11, 2008.  A primary goal of this substantive consolidation motion is to enable the Chapter 11 Trustee to pursue actions against the recipients of fraudulent transfer and preferential payments on behalf of the substantively consolidated entities.  The ability to go forward with these actions with the earliest petition date possible in these cases may be a benefit to all creditors of the consolidated estate because it results in a slightly enlarged window to recover fraudulent transfers and preferential payments in these cases.  Under *Evans Temple*, when an estate is substantively consolidated the earliest filing date is used for calculating the preference period.  Accordingly, the Debtors believe that this Court should therefore order substantive consolidation effective October 11, 2008.

## **CONCLUSION**

The Trustee respectfully requests that the Court enter an order granting substantive consolidation, effective October 11, 2008, of the estates of PCI and the SPEs, and such other relief as may be just and equitable.

---

the analysis identified by the D.C. Court of Appeals in *Auto Train* so closely parallels "the inquiry already conducted in ordering consolidation . . . therefore the earliest filing date is the controlling date, and all transfers are to be analyzed as of that date." *In re Baker & Getty Fin. Servs*, 974 F.2d 712, 720-21 (6th Cir. 1992); *see In re Bonham*, 229 F.3d at 771 (rejecting second "layered analysis" to afford *nunc pro tunc* treatment to substantive consolidation).

DATED: April 6, 2011                    **LINDQUIST & VENNUM** P.L.L.P.


                                        By   /e/ James A. Lodoen
                                        Daryle L. Uphoff (0111831)
                                        James A. Lodoen (173605)
                                        Mark D. Larsen (318498)
                                        George H. Singer (0262043)
                                        Kirstin D. Kanski (0346676)
                                        Adam C. Ballinger (0389058)
                                        4200 IDS Center
                                        80 South Eighth Street
                                        Minneapolis, MN 55402-2274
                                        (612) 371-3211
                                        (612) 371-3207 (facsimile)
                                        www.lindquist.com

                                        **ATTORNEYS FOR
                                        DOUGLAS A. KELLEY,
                                        CHAPTER 11 TRUSTEE**

17

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

In re:                                                    **Jointly Administered under**
                                                          **Case No. 08-45257**

Petters Company, Inc., et al.,                            Court File No. 08-45257

             Debtors.

                                                          Court Files No.'s:

(includes:
Petters Group Worldwide, LLC;                             08-45258 (GFK)
PC Funding, LLC;                                          08-45326 (GFK)
Thousand Lakes, LLC;                                      08-45327 (GFK)
SPF Funding, LLC;                                         08-45328 (GFK)
PL Ltd., Inc.;                                            08-45329 (GFK)
Edge One LLC;                                             08-45330 (GFK)
MGC Finance, Inc.;                                        08-45331 (GFK)
PAC Funding, LLC;                                         08-45371 (GFK)
Palm Beach Finance Holdings, Inc.)                        08-45392 (GFK)

                                                          Chapter 11 Cases
                                                          Judge Gregory F. Kishel

---

**CERTIFICATE OF SERVICE**

      Gretchen Luessenheide, of the City of New Hope, County of Hennepin, State of Minnesota, states that on April 6, 2011 she served the following documents:

1. Notice of Hearing and Amended and Restated Motion to Substantively Consolidate Certain of the Debtors' Estates;
2. Memorandum of Law in Support of Amended and Restated Motion to Substantively Consolidate Certain of the Debtors' Estates;
3. Verification of Theodore Martens; and
4. Proposed Order Authorizing Substantive Consolidation of Certain of the Debtors' Estates Effective as of October 11, 2008;

upon

| | |
|---|---|
| Arrowhead Capital Management LLC<br>c/o James N. Fry<br>601 Carlson Parkway, Suite 1250<br>Minnetonka, MN 55305 | West LB AG, New York Branch<br>c/o Timothy F. Brown<br>Arent Fox LP<br>1050 Connecticut Ave NW<br>Washington, DC 20036-5339 |

| | |
|---|---|
| Barry Mukamal<br>c/o Michael S. Budwick, Jonathan Feldman,<br>Solomon Genet, Eric Ostroff<br>Meland Russin & Budwick PA<br>200 S. Biscayne Blvd, Ste. 300<br>Miami, FL 33131 | Rhone Holdings II, Ltd.<br>c/o Thomas K. Cauley, Bryan Krakauer,<br>Brian McAleenan<br>Sidley Austin LLP<br>1 South Dearborn<br>Chicago, IL 60603 |
| Geoff Varga<br>c/o Edward J. Estrada<br>Reed Smith LLP<br>599 Lexington Ave., 22nd Floor<br>New York, NY 10022 | East River Offshore Ltd.<br>c/o Jessica S. Etra, Matthew A. Feldman<br>Willkie Farr & Gallagher LLP<br>787 7th Avenue<br>New York, NY 10019-6099 |
| Elite Landings, LLC<br>PO Box 16352<br>St. Paul, MN 55116-0352 | Estate of Kenneth R. Cunningham III<br>c/o Mr. Kenneth R. Cunningham, Jr.<br>11 Pinon Woods Drive<br>Sedona, AZ 86351-7918 |
| Vicis Capital Master Fund, Ltd.<br>Matthew J. Flynn, Jonathan Hackbarth<br>Quarles & Brady<br>411 E. Wisconsin Ave.<br>Milwaukee, WI 53202 | EFO Holdings, L.P. & Cypress Financial<br>c/o Lawrence J. Friedman, Michael Gaubert,<br>James Krause, R. Brian Shields<br>Friedman & Feiger LLP<br>5301 Spring Valley Rd, Suite 200<br>Dallas, TX 75254 |
| Greenwich Insurance Company<br>c/o David M. Gische and Marcus B. Holladay<br>Troutman Sanders LLP<br>401 9th Street NW<br>Washington, DC 20004-1234 | Kenneth Johnson<br>c/o Jeffry Henderson, Harris Kay<br>Henderson & Lyman<br>175 West Jackson Blvd, Suite 240<br>Chicago, IL 60604 |
| MIO Partners Inc.<br>c/o Hugh Hill, Robin Keller<br>Hogan Lovellus US LLP<br>875 Third Avenue<br>New York, NY 10022 | Freestone Low Volatility Partners LP<br>c/o Mark R. Jacobs<br>Pryor Cashman LLP<br>410 Park Avenue<br>New York, NY 10022 |
| Douglas A. Kelley<br>Kelley & Wolter PA<br>Centre Village Offices<br>431 South 7th Street, Suite 2530<br>Minneapolis, MN 55415 | Kelly Collins-Cunningham<br>Trustee of Kenneth R. Cunningham III Trust<br>5325 N 132nd Ave<br>Litchfield Park AZ 85340-8341 |
| The Breast Cancer Research Foundation<br>c/o Robert Lemons, Sherri Toub<br>Weil Gotshal & Manges LLP<br>767 5th Avenue<br>New York, NY 10153 | Chase Bank, Trustee<br>c/o Michael McElwee<br>Varnum LLP<br>Bridgewater Place<br>PO Box 352<br>Grand Rapids MI 49501 |
| Issa Moe<br>Moss and Barnett<br>4800 Wells Fargo Center<br>90 South 7th Street<br>Minneapolis, MN 55402 | Michael Smith<br>c/o Martin Mullen<br>Rowe Allen Mullen LLP<br>4274 Executive Square 11th Floor<br>La Jolla CA 92037 |

2

| | |
|---|---|
| Neal Gerber & Eisenberg LLP<br>C/O Thomas C. Wolford<br>Two North LaSalle Street Suite 1700<br>Chicago, IL 60602 | Ark Royal Capital LLC<br>c/o Deborah Perry<br>3800 Lincoln Plaza<br>500 North Akard<br>Dallas TX 75201-6659 |
| Northwestern Foundation<br>c/o Grover C. Sayre<br>Leonard O'Brien et al<br>100 S. Fifth Street<br>Suite 2500<br>Minneapolis, MN  55402 | Edward Randolph Shaw<br>722 South Sixth Street<br>Brainerd MN 56401 |
| Kevin J Short<br>150 S. 5th St. Ste 3260<br>Minneapolis, MN 55402 | Epsilon/Westford<br>c/o Peter J. Schwingler, Bryant D. Tchida<br>Leonard Street & Deinard<br>150 S. Fifth Street, Ste 2300<br>Mpls, MN 55402 |
| Palm Beach Finance Partners<br>c/o Steven W. Thomas<br>Thomas Alexander & Forrester LLP<br>14 27th Avenue<br>Venice, CA 90291 | Taunton Ventures LP<br>c/o Paul Taunton<br>9980 Deerbrook Drive<br>Chanhassen, MN 55317 |
| Trent Tucker Non-Profit Organization<br>4350 Baker Road<br>Suite 400<br>Minneapolis MN 55343 | Gary Underdahl<br>ASK Financial<br>2600 Eagan Woods Drive, Suite 400<br>St. Paul, MN  55121 |
| Northwater Entities<br>c/o Matthew A. Feldman<br>Wilkie Farr & Gallagher, LLP<br>787 7th Avenue<br>New York, NY 10019 | Huron Consulting Group, Inc.<br>4795 Paysphere Circle<br>Chicago, IL 60674-4795 |
| Petters Aviation LLC<br>PO Box 16352<br>St. Paul, MN 55116-0352 | Randall L. Seaver<br>On behalf of Petters Capital, LLC<br>12400 Portland Avenue South<br>Suite 132<br>Burnsville, MN  55337 |
| Tobias S. Keller, David C. Kiernan<br>Daniel Reidy<br>Jones Day<br>555 California Street, 26th Floor<br>San Francisco, CA 94101 | Daniel E. Reidy<br>Theodore T. Chung<br>Tara A. Fumerton<br>Jones Day<br>77 W Wagner<br>Chicago, IL 60601 |
| Daniel J. Frisk, Don R. Grande<br>Steven M. Light<br>Grande Frisk & Carter<br>2700 12th Ave. South, Suite 1<br>Fargo, ND  58103 | Jonathan S. Feldman<br>Meland Russin & Budwick PA<br>200 S. Biscayne Blvd, Ste 3000<br>Miami, FL  33131 |

3

| Robin E. Keller<br>Hogan Lovellus US LLP<br>875 3rd Avenue<br>New York, NY  10022 | |

via U.S. Mail to the addresses listed above and electronically by Notice of Electronic Filing upon all parties who have requested service in these cases by filing the same via ECF with the Bankruptcy Court in the District of Minnesota.

_____/e/ Gretchen Luessenheide_____
Gretchen Luessenheide

4

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:

Petters Company, Inc., et al.,

Debtors.

(includes:
Petters Group Worldwide, LLC;
PC Funding, LLC;
Thousand Lakes, LLC;
SPF Funding, LLC;
PL Ltd., Inc.;
Edge One LLC;
MGC Finance, Inc.;
PAC Funding, LLC;
Palm Beach Finance Holdings, Inc.)

**Jointly Administered under
Case No. 08-45257**

Court File No. 08-45257

Court Files No.'s:

08-45258 (GFK)
08-45326 (GFK)
08-45327 (GFK)
08-45328 (GFK)
08-45329 (GFK)
08-45330 (GFK)
08-45331 (GFK)
08-45371 (GFK)
08-45392 (GFK)

Chapter 11 Cases
Judge Gregory F. Kishel

## ORDER AUTHORIZING SUBSTANTIVE CONSOLIDATION OF
## CERTAIN OF THE DEBTORS' ESTATES EFFECTIVE AS OF OCTOBER 11, 2008

This matter came on for hearing before the Court on April 20, 2011, on the amended and restated motion of Douglas A. Kelley, Chapter 11 Trustee (the "Trustee") for authorization to substantively consolidate the estates of Petters Company, Inc. ("PCI"), PC Funding, LLC ("PC Funding"), Thousand Lakes, LLC, ("Thousand Lakes"), SPF Funding, LLC ("SPF Funding"), PL Ltd., Inc. ("PL Ltd."), Edge One, LLC ("Edge One"), MGC Finance, Inc. ("MGC Finance"), PAC Funding, LLC ("PAC Funding"), and Palm Beach Finance Holdings, Inc. ("Palm Beach"), effective as of October 11, 2008. James A. Lodoen appeared for the Trustee. Other appearances were noted on the record. Based on the arguments of counsel, moving documents and the record made at the hearing,

IT IS HEREBY ORDERED:

1.      The Trustee's motion is GRANTED; and

2.      The estates of Petters Company, Inc., PC Funding, LLC, Thousand Lakes, LLC,

SPF Funding, LLC, PL Ltd., Inc., Edge One, LLC, MGC Finance, Inc., PAC Funding LLC, and

Palm Beach Finance Holdings, Inc. are hereby substantively consolidated effective as of October

11, 2008.


Dated: _____          BY THE COURT:


                                        _____
                                        HONORABLE GREGORY F. KISHEL
                                        UNITED STATES BANKRUPTCY JUDGE

2