## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | **Jointly Administered under Case No. 08-45257** |
| Petters Company, Inc., et al., | |
| Debtors. | Court File No. 08-45257 |
| (includes: | Court Files Nos.: |
| Petters Group Worldwide, LLC; | 08-45258 (GFK) |
| PC Funding, LLC; | 08-45326 (GFK) |
| Thousand Lakes, LLC; | 08-45327 (GFK) |
| SPF Funding, LLC; | 08-45328 (GFK) |
| PL Ltd., Inc.; | 08-45329 (GFK) |
| Edge One LLC; | 08-45330 (GFK) |
| MGC Finance, Inc.; | 08-45331 (GFK) |
| PAC Funding, LLC; | 08-45371 (GFK) |
| Palm Beach Finance Holdings, Inc.) | 08-45392 (GFK) |
| | Chapter 11 Cases |
| | Judge Gregory F. Kishel |

## TRUSTEE'S SECOND OMNIBUS MOTION TO
## APPROVE SETTLEMENT AGREEMENTS

TO:    The Parties in Interest identified in Local Rule 9013-3(a)(2).

1.    Douglas A. Kelley ("Kelley" or the "Trustee"), the duly-appointed Chapter 11 Trustee of the above-captioned debtors (the "Debtors"), by and through his counsel, hereby moves this Court for the relief requested and gives notice of hearing.

2.    The Court will hold a hearing on this Motion at 1:30 p.m. on June 21, 2011, or as soon thereafter as the parties may be heard, before the Honorable Gregory F. Kishel, Chief United States Bankruptcy Judge, in Courtroom 2A of the United States Courthouse, 316 N. Robert Street, St. Paul, Minnesota.

3.      Pursuant to Local Rule 9006-1(c), any response to the Motion must be filed with the Court and served by mail or delivery not later than June 16, 2011, which is five (5) days before the time set for the hearing (including Saturdays, Sundays, and holidays).  **UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.**

4.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, Bankruptcy Rule 5005 and Local Rule 1070-1.  This is a core proceeding.  Voluntary petitions commencing the Chapter 11 cases of Petters Company, Inc. ("PCI") and Petters Group Worldwide, LLC ("PGW") were filed on October 11, 2008.  Petitions commencing the Chapter 11 cases of PC Funding, LLC, Thousand Lakes, LLC, SPF Funding, LLC, PL Ltd., Inc., Edge One, LLC, and MGC Finance, Inc. were filed on October 15, 2008.  The petition commencing the Chapter 11 case of PAC Funding, LLC was filed on October 17, 2008.  The petition commencing the Chapter 11 case of Palm Beach Finance Holdings, Inc. was filed on October 19, 2008 (collectively, the "Petitions," the "Petition Dates," the "Bankruptcy Cases" and the "Bankruptcy Estates").  Venue of the Bankruptcy Cases and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  The Bankruptcy Cases are now pending before this Court.

5.      On December 24, 2008, the United States Trustee appointed Douglas A. Kelley as Trustee in the Bankruptcy Cases.  On February 26, 2009, this Court approved that appointment.  A committee of unsecured creditors (the "Creditors' Committee") was appointed on November 21, 2008 pursuant to § 1102 of the Bankruptcy Code.

6.      This Motion arises under 11 U.S.C. §§ 105, 544, 548, 550 and 551 and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Federal Rules").  This Motion is filed under

2

Federal Rules 2002 and 9014 and Local Rules 2002-1, 9013-1 through 3 and 9019-1.   The

Trustee respectfully seeks this Court's approval of settlements with the following parties: John

Kubinski and United Performing Association, Inc.; Larry Hopfenspirger; Richard Rock; Lac

Courte Oreilles Band of Lake Superior Chippewa Indians of Wisconsin, Rudman Partnership;

Minnesota Public Radio; and Urban Ventures Leadership Foundation ("Urban Ventures") (each

a "Transferee," and collectively, the "Transferees").   The Transferees and the Trustee are

referred to as the "Parties."

## FACTUAL BACKGROUND

### I.   Events Leading Up to Bankruptcy Filing

7.      PCI is a Minnesota corporation, the shares of which are 100% owned and, prior to

October 6, 2008, were 100% controlled by Thomas J. Petters ("Petters").  PCI, in turn, is the sole

member or shareholder, as applicable, and owns 100% of the membership interests or shares, as

applicable, of PC Funding, Thousand Lakes, SPF Funding, PL Ltd., Edge One, MGC Finance,

and PAC Funding (the "PCI Estates").  Palm Beach Finance Holdings is also wholly-owned by

Petters.  The operational and managerial decisions of PCI and its affiliates were principally made

by Petters and his Co-conspirators (as that term is defined below).  PCI obtained capital for the

Petters enterprises, on its own account and also utilizing special purpose entities to obtain

billions of dollars of funding, purportedly to acquire merchandise for sale to wholesalers and

retailers nationwide.  In almost all instances, however, the purchase and sale business did not

exist.

8.      PGW is a privately held Delaware limited liability company that was also 100%

owned and, prior to October 6, 2008, was 100% controlled by Petters.  The operational and

managerial decisions of PGW and its subsidiary entities were also made by Petters and his Co-

3

conspirators.  PGW was a holding company that provided certain accounting, legal and human resource services to Petters' business entities, but had no independent operations.  PGW obtained funds mostly from PCI that PCI obtained as part of a scheme to defraud investors, as well as from investors whose funds were used to further the fraudulent scheme.

9.      On or about September 24, 2008, the Federal Bureau of Investigation, together with the Internal Revenue Service – Criminal Investigation Division and the United States Postal Inspection Service, executed search warrants on multiple locations and seized records of PCI, PGW and other subsidiary entities, including the Debtors, their sole owner Petters, his Co-conspirators and other employees and persons involved in a scheme to defraud and obtain billions of dollars of money and property by means of materially false and fabricated pretenses, representations and promises (the "Ponzi Scheme").

10.     On October 3, 2008, Petters was arrested on charges of mail and wire fraud, money laundering, and conspiracy.  Other executives implicated in this scheme were also arrested on various charges and have pleaded guilty to certain crimes as a result of their admitted roles in the perpetration of the Ponzi Scheme.

11.     On December 1, 2008, a United States Grand Jury returned an indictment against Petters, PCI and PGW for their respective criminal conduct in furthering a $3.5 billion fraud.

12.     Petters and his Co-conspirators operated the Ponzi Scheme with the assistance of other individuals within the Petters organizations from approximately 1993 through the date of his arrest by federal agents on October 3, 2008. Petters, through PCI, PGW and various other entities that he controlled, laundered what is estimated to be an amount in excess of $40 billion.

13.     Petters, through a multitude of entities and with the assistance of his Co-conspirators, induced investors into financing the purchase of non-existent electronic equipment

purportedly secured by fabricated purchase orders. Over many years, Petters and his Co-conspirators caused investors to believe that their investments to purchase consumer electronic goods from wholesalers were to be resold to large, big-box retailers such as Costco, Sam's Club and B.J.'s Wholesale Club. Petters and his Co-conspirators, however, intentionally forged documents to recruit investors into the Ponzi Scheme and cause existing investors to continue to invest in the Ponzi Scheme. Petters and his Co-conspirators prepared and utilized forged documents that were represented to investors to be equipment purchase orders and related documents. The forged purchase orders and the related documents represented electronic goods or other items that never actually existed. The result was that investors were not repaid with the earnings from their investments, but with funds Petters and his Co-conspirators obtained from other investors. Indeed, Petters, through PCI and PGW and a multitude of shell companies, intended that the payments to early investors would induce ongoing, repeated, greater and more widespread investment in the Ponzi Scheme and thereby further perpetrate and extend the life of the fraud.

14.     Petters and the businesses he controlled had increasing difficulties in raising sufficient capital to cover outstanding investments and provide working capital for operating needs. As a result of numerous defaults with investors, Petters, operating through PCI, PGW and other entities, was forced to enter into numerous agreements, including a series of pledges, guaranties, security agreements, forbearance and other agreements with various investors and entered into numerous other transactions in order to prop up failing businesses, obtain new funding, avoid the discovery of the fraud, halt investigations, appease large investor groups who had the leverage to extract value, and perpetuate the Ponzi Scheme.

DOCS-#3448520-v2

15.     On October 2, 2008, the United States, in support of a criminal investigation, sought an asset freeze and receivership under the Anti-Fraud Injunction Act, 18 U.S.C. § 1345, in the United States District Court for the District of Minnesota, captioned *United States v. Thomas Joseph Petters, et al.*, Civil Case No. 08-05348 ADM/JSM (the "Civil Fraud Case"). This receivership proceeding was for the benefit of victims of the massive fraud that took place at PGW and PCI.  The Honorable Ann D. Montgomery was assigned the Civil Fraud Case. On October 6, 2008, Judge Montgomery issued an Order for Entry of Preliminary Injunction, Order Appointing Receiver and Other Equitable Relief, [Dkt. No. 12], as subsequently amended on October 14, 2008 [Dkt. No. 43], October 22, 2008 [Dkt. No. 70] and December 8, 2008 [Dkt. No. 127] (collectively, the "Receivership Order"). Judge Montgomery appointed Douglas A. Kelley as Receiver (the "Receiver") for Petters, PCI and PGW, as well as entities owned and controlled 100% by such defendants. Pursuant to the Receivership Order, the Receiver is to "conserve, hold and manage all receivership assets … in order to prevent any irreparable loss, damage or injury to consumers or creditors of the Entities [under the receivership]." Receivership Order, p. 11, ¶ IV(B)(4).  Judge Montgomery, through the Receivership Order, specifically granted the Receiver authority to file "any bankruptcy petitions for any of the [Debtors] to protect and preserve the assets of any of the [Debtors]."   *See* Second Amended Order of Preliminary Injunction, Appointment of Receiver and Other Equitable Relief, Sect. IV, paragraph (B)(2)(c) [Dkt. No. 127].

16.     As a result of the investigation, subsequent arrests and litigation by numerous claimants, the Receiver sought relief for the Debtors under Chapter 11 of the Bankruptcy Code in order to preserve assets and potential claims held by these estates pursuant to the Bankruptcy Code and other applicable law.

6

II.    **Events Since the Bankruptcy Filing**

17.    On December 1, 2008, and through the Superseding Indictment entered June 3, 2009, Petters, PCI and PGW were indicted by a federal grand jury and charged on 15 counts of (i) mail fraud, (ii) wire fraud, (iii) conspiracy to commit mail fraud and wire fraud, and (iv) conspiracy to commit money laundering, in violation of 18 U.S.C. §§ 371, 1343, 1956 and 1957. *See* Indictment, Dkt. No. 75, and Superseding Indictment, Dkt. No. 196, *United States of America v. Petters et al.*, Case No. 08-cr-00364 (RHK-AJB) (D. Minn.) (the "Criminal Fraud Case"). Petters was also indicted on 5 counts of engaging in money laundering in violation of 18 U.S.C. § 1957. *Id.* The Honorable Richard H. Kyle was assigned the Criminal Fraud Case. The Indictment alleged that Petters and the Co-conspirators used PCI and PGW, as well as their subsidiary entities, to orchestrate a massive Ponzi scheme that spanned over a decade and defrauded investors out of more than $3.5 billion.

18.    At various times during the course of the Ponzi Scheme, Petters was assisted in the operation of the scheme by numerous individuals and conspirators, including Deanna Coleman ("Coleman"), Robert White ("White"), Larry Reynolds ("Reynolds"), Michael Catain ("Catain"), and James Wehmhoff ("Wehmhoff") (collectively referred to herein as "Co-conspirators"). Coleman has pleaded guilty to a single count of conspiracy to commit mail fraud. On September 2, 2010, Judge Richard H. Kyle sentenced Coleman to one year and a day in prison for her involvement in the fraud. White has pleaded guilty to a single count of mail fraud and has been sentenced to 5 years in prison for his crimes. Reynolds and Catain have each pleaded guilty to a single count of conspiracy to commit money laundering. Reynolds has been recently sentenced to nearly 11 years in prison for his role in the Ponzi scheme. Catain has been sentenced to 7.5 years. Wehmhoff has pleaded guilty to conspiracy to defraud the United States,

7

conspiracy to commit tax evasion and one count of aiding and assisting in the filing of a false tax return and has been sentenced.

19.      On December 2, 2009, a jury in the United Stated District Court of the District of Minnesota found Petters guilty of all 20 counts charged in the Superseding Indictment.  On April 8, 2010, Petters was sentenced to 50 years in prison for his crimes.  Pursuant to the Court's *Preliminary Order of Forfeiture*, Case No. 08-cr-00364, Doc. No. 395, certain property, including real property, proceeds from the sale of real property and accounts were forfeited to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c). *Id*. at ¶¶1 & 2.  A money judgment was also entered against Petters in the amount of $3,522,880,614.10 in favor of the United States.  *Id*. at ¶3.

20.      PCI and PGW have also entered guilty pleas to charges of mail fraud, conspiracy to commit mail fraud and wire fraud and conspiracy to commit money laundering and have been sentenced.

## III.    The Trustee Commences Adversary Proceedings to Recover Funds for Victims

21.      Between September 10, 2010 and October 11, 2010, the Trustee timely commenced over 200 adversary proceedings against approximately 382 defendants in this Court (the "Pending Adversary Proceedings") seeking, among other things, the avoidance and recovery of false profits, bonuses, commissions, gifts, preferences and other sums transferred by the Debtors prior to the bankruptcy filings.  The Trustee anticipates commencing additional adversary proceedings in the future against additional immediate or mediate transferees of initial transferees and other parties, including those that have entered into tolling agreements with the Trustee regarding the Trustee's claims (all such additional adversary proceedings, together with the Pending Adversary Proceedings, are collectively referred to herein as the "Adversary

Proceedings"). The Adversary Proceedings arise out of the Petters Ponzi Scheme and, for the most part, a common nucleus of operative facts.

22. It is widely recognized that Ponzi schemes necessarily give rise to extensive avoidance powers and presumptions in favor of the trustee. The premise underlying all avoidance litigation, namely advancing the Bankruptcy Code's goal of equality of distribution, has a particularly pronounced meaning in the context of a Ponzi scheme. While one can readily say that most creditors are victims in a Ponzi scheme, not all creditors are damaged. The economic loss attributable to a fraudulent scheme falls disproportionately on those that have not been repaid some or all of their principal investment while those who received the stolen funds in excess of their principal investment have received a substantial benefit. The Adversary Proceedings are based on the recognition that the defendants are the recipients of other people's money, stolen by Petters. The Bankruptcy Code's avoidance powers permit, among other things, a trustee to set aside and recover payments or other transfers made by the perpetrator of a Ponzi scheme to redress the inherently unfair distribution of stolen funds. In that way, the Bankruptcy Code rectifies the illicit method by which funds are laundered in a Ponzi scheme, and in its place, transplants a new method—one which represents the equitable determination by Congress that creditors must be treated equally in cases of insolvency or fraud.

## IV.    Trustee Settles Certain Claims

23. Upon the Trustee's careful evaluation and assessment of claims, the costs of litigation and defenses, and after negotiations by and between the Parties, the Parties have agreed to pay the Settlement Amounts to the bankruptcy Estates, described more fully below, in exchange for a release from the Trustee, releasing the defendants from all

9

claims or liabilities as asserted by the Trustee. Upon approval of the Settlement Agreements, the Trustee will file a Notice of Dismissal in the referenced adversary proceeding.

24. The Trustee has entered into settlement agreements (each a "Settlement Agreement" and collectively, the "Settlement Agreements") as follows:

a. The Trustee asserts claims against John Kubinski and United Performing Association, Inc. ("UPA") to avoid and recover transfers made by PCI, which resulted in the payment of asserted false profits to Kubinski in the amount of $15,500 and to UPA in the amount of $6,400 (Adv. Proc. 10-04387). Upon careful evaluation of the Trustee's claims, and possible defenses raised by Kubinski and UPA, the Trustee agreed to settle its claim against Kubinski for the amount for $12,500, which represents approximately 80% of the asserted false profits, and its claim against UPA for the amount of $3,200, which represents approximately 50% of the asserted false profits. The Trustee, Kubinski and UPA anticipate executing an agreement in the form attached hereto as Exhibit A prior to the hearing on this motion.

b. The Trustee asserts claims against Larry Hopfenspirger to avoid and recover transfers made by PCI, which resulted in the payment of asserted false profits to Hopfenspirger in the amount of $6,250 (Adv. Proc. 10-04270). Upon careful evaluation of the Trustee's claims, and possible defenses raised by Hopfenspirger, the Trustee agreed to settle its claim against Hopfenspirger for the amount for $3,125, which represents 50% of the asserted false profits. A copy of the Settlement Agreement between the Trustee and Larry Hopfenspirger is attached hereto as Exhibit B.

c. The Trustee asserts claims against Richard Rock to avoid and recover transfers made by PCI, which resulted in the payment of asserted false profits to Rock in

the amount of $3,258.90 (Adv. Proc. 10-04427).   Upon careful evaluation of the
Trustee's claims, and possible defenses raised by Rock, the Trustee agreed to settle its
claim against Rock for the amount for $3,258.90, which represents 100% of the asserted
false profits.  A copy of the Settlement Agreement between the Trustee and Richard Rock
is attached hereto as Exhibit C.

      d.    The Trustee asserts, and the Receiver may have, claims against the Lac
Courte Oreilles Band of Lake Superior Chippewa Indians of Wisconsin (the "LCO
Band").  Prior to the Petition Date, the LCO Band entered into at least 12 separate note
transactions with PCI and received transfers totaling at least $4,189,355.  The Trustee
commenced an adversary proceeding against the LCO Band on behalf of PCI seeking to
avoid and recover transfers in the aggregate amount of $1,678,355.00, including
$87,555.00 that the Trustee asserts are False Profits and the LCO Band asserts is interest
(Adv. Proc. 10-04388).   After commencing the Adversary Proceeding, the Trustee
discovered additional transfers from PCI to the LCO Band in the amount of
$2,502,000.00, including $502,000.00 that the Trustee asserts are False Profits and the
LCO Band asserts is interest.  The Receiver has not yet filed a complaint against the LCO
Band.  Upon careful evaluation of the Trustee's and Receiver's claims, and possible
defenses raised by the LCO Band, including the LCO Band's ability to pay a judgment
and the risks of collecting a judgment as a result of tribal sovereignty issues, the Trustee
and Receiver have agreed to settle their claims for the total amount of $100,000, which
amount shall be paid to the PCI Bankruptcy Estate.  A copy of the Settlement Agreement
between the Trustee, Receiver and the LCO Band is attached hereto as Exhibit D.

DOCS-#3448520-v2

e.      The Trustee asserts claims against the Rudman Partnership to avoid and recover transfers made by PCI to Lancelot Investors Rund, L.P.  Lancelot and affiliated entities filed petitions for relief under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Illinois, jointly administered as *In re Lancelot Investors Fund, L.P., et al*., Case No. 08-B-28228 for which Ronald R. Peterson is the duly appointed trustee (the "Lancelot Trustee").  The Trustee asserts claims against Lancelot in the Lancelot Bankruptcy Case seeking to recover fraudulent and preferential transfers made by PCI to Lancelot.  Rudman Partnership was an investor in Lancelot and received certain transfers from Lancelot that the Lancelot Trustee seeks to avoid and recover.  Rudman Partnership has agreed to the terms of a settlement with the Lancelot Trustee pursuant to which Rudman Partnership will return certain funds to the Lancelot estate.  The Trustee has potential claims against Rudman Partnership as the immediate or mediate transferee of transfers PCI made to Lancelot.  Upon careful evaluation of the Trustee's claims, and possible defenses raised by the Rudman Partnership, the Trustee agreed to settle its claim against the Rudman Partnership for the amount for $35,000.  A copy of the Settlement Agreement between the Trustee and Rudman Partnership is attached hereto as Exhibit E.

f.      The Trustee filed a Complaint on behalf of PCI against Minnesota Public Radio ("MPR") to avoid and recover a transfer in the amount of $3,500.00.  Upon careful evaluation of the Trustee's claims, and possible defenses raised by MPR, the Trustee agreed to settle this claim against MPR for $2,500.00.  A copy of the Settlement Agreement that MPR signed and that the Trustee agrees to sign is attached hereto as Exhibit F.

DOCS-#3448520-v2

g.      The Trustee filed a Complaint on behalf of PGW against Urban Ventures to avoid and recover two transfers in the aggregate amount of $11,000.00.  Upon careful evaluation of the Trustee's claims, and possible defenses raised by Urban Ventures, the Trustee agreed to settle these claims against Urban Ventures for $5,500.00.  A copy of the Settlement Agreement that Urban Ventures and the Trustee agree to sign is attached hereto as Exhibit G.

25.     The Trustee respectfully seeks an Order from this Court approving the terms and conditions of the Settlement Agreements, further details of which are contained in each Settlement Agreement between the Trustee and the respective Transferee.

## RELIEF REQUESTED

26.     Trustee and Receiver believe that by entering into the Settlement Agreements, they will maximize the recovery of assets and distributions to creditors and victims while minimizing the risks, costs, and delay of administering both the Bankruptcy Cases and the Receivership.  The Trustee has evaluated and assessed his claims, the costs of litigation and defenses and believes the Settlement Agreements are in the best interests of the PCI Bankruptcy Estate and its creditors.

27.     The Settlement Agreements resolve and settle claims and litigation and minimize the expense of administering the Debtors' estates, the Receivership and related proceedings and have been negotiated by the Parties.  In light of the costs, expenses and risks associated with litigation of the Disputes, in addition to an evaluation of each Transferee's ability to pay, further litigation to decide these issues would be wasteful and unnecessary.

28.     Notice is hereby given pursuant to Local Rule 9013-2(c) that, if necessary, Douglas A. Kelley, as the Trustee, whose business address is 431 South Seventh Street, Suite

13

2530, Minneapolis, Minnesota 55415, will testify at the hearing on this Motion in support of the

Settlement Agreement.

WHEREFORE, the Trustee respectfully requests the Court enter an order authorizing the

Trustee's entry into, and performing according to the terms of, the Settlement Agreements and

granting such further and other relief as the Court deems just and equitable.

14

DATED: May 31, 2011

**LINDQUIST & VENNUM p.l.l.p.**

By:   /e/ James A. Lodoen
James A. Lodoen (0173605)
Daryle L. Uphoff (0111831)

4200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402-2274
(612) 371-3211
(612) 371-3207 (facsimile)
www.lindquist.com

**ATTORNEYS FOR
DOUGLAS A. KELLEY,
CHAPTER 11 TRUSTEE**


**KELLEY, WOLTER & SCOTT, P.A.**

DATED: May 31, 2011

By:    /e/ Stacy L. Kabele
Steven E. Wolter (170707)
swelter@kelleywolter.com
Daniel M. Scott (98395)
dscott@kelleywolter.com
Stacy L. Kabele (273673)
skabele@kelleywolter.com
431 S. Seventh Street, Suite 2530
Minneapolis, MN  55414
(612) 371-9090 (telephone)
(612) 371-0574 (facsimile)

**ATTORNEYS FOR
DOUGLAS A. KELLEY,
CHAPTER 11 TRUSTEE OF
PETTERS COMPANY, INC. AND
PETTERS GROUP WORLDWIDE, LLC**

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | **Jointly Administered under** |
| | **Case No. 08-45257** |
| Petters Company, Inc., et al., | |
| | Court File No. 08-45257 |
| Debtors. | |
| | |
| (includes: | Court Files No.'s: |
| Petters Group Worldwide, LLC; | 08-45258 (GFK) |
| PC Funding, LLC; | 08-45326 (GFK) |
| Thousand Lakes, LLC; | 08-45327 (GFK) |
| SPF Funding, LLC; | 08-45328 (GFK) |
| PL Ltd., Inc.; | 08-45329 (GFK) |
| Edge One LLC; | 08-45330 (GFK) |
| MGC Finance, Inc.; | 08-45331 (GFK) |
| PAC Funding, LLC; | 08-45371 (GFK) |
| Palm Beach Finance Holdings, Inc.) | 08-45392 (GFK) |
| | |
| | Chapter 11 Cases |
| | Judge Gregory F. Kishel |

## MEMORANDUM OF LAW IN SUPPORT OF THE TRUSTEE'S
## SECOND OMNIBUS MOTION TO APPROVE SETTLEMENT AGREEMENTS

Douglas A. Kelley ("Trustee"), the Chapter 11 trustee of the above-captioned debtors, by and through his legal counsel, respectfully submits this Memorandum in support of his verified Motion to approve the Settlement Agreements by and among the Chapter 11 Trustee and the following parties: John Kubinski and United Performing Association, Inc.; Larry Hopfenspirger; Richard Rock; Lac Courte Oreilles Band of Lake Superior Chippewa Indians of Wisconsin; Rudman Partnership; Minnesota Public Radio ("MPR"); and Urban Ventures Leadership Foundation ("Urban Ventures") (each a "Transferee," and collectively, the "Transferees"). Capitalized terms not otherwise defined herein shall have the meanings given to such terms in the motion filed in connection herewith (the "Motion"), unless the context requires otherwise.

## FACTS

The factual basis for this Memorandum is set forth in the Motion and is incorporated as though fully set forth herein.

## LEGAL ARGUMENT

Settlements and compromises are "a normal part of the process of reorganization." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968) (quoting *Case v. Los Angeles Lumber Prods. Co.,* 308 U.S. 106, 130 (1939)); *ReGen Capital III, Inc. v. Official Committee of Unsecured Creditors (In re Trism, Inc.),* 282 B.R. 662, 668 (8th Cir. B.A.P. 2002). Bankruptcy Rules provide that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019. Settlement agreements are generally encouraged and favored by the courts and "[i]n the absence of mistake or fraud, a settlement agreement will not be lightly set aside." *Justine Realty Co. v. American Nat'l Can Co.*, 976 F.2d 385, 391 (8th Cir. 1992).

"The general principle that the law favors settlement agreements has been recognized for over 100 years." *Liddell by Liddell v. Bd. of Educ. of City of St. Louis*, 126 F.3d 1049, 1056 n. 9 (8th Cir. 1997) (citing *Williams v. First Nat'l Bank,* 216 U.S. 582, 595, 30 S.Ct. 441, 445, 54 L.Ed. 625 (1910) (compromises of disputed claims are favored by the courts) (citing *Hennessy v. Bacon,* 137 U.S. 78, 11 S.Ct. 17, 34 L.Ed. 605 (1890)). "The law strongly favors settlements. Courts should hospitably receive them … [a]s a practical matter, a remedy that everyone agrees to is a lot more likely to succeed than one to which the defendants must be dragged kicking and screaming." *Liddell by Liddell v. Bd. of Educ. of City of St. Louis*, 126 F.3d 1049, 1056 (8th Cir. 1997).

2

The standard by which courts evaluate a proposed compromise and settlement is well-established. In granting a motion pursuant to Rule 9019(a), a court must find that the proposed settlement is fair and equitable and is in the best interests of the estate. *See Anderson,* 390 U.S. at 424 (1968). The decision to approve a particular settlement lies within the sound discretion of the Bankruptcy Court. *In re Trism, Inc.,* 282 B.R. at 665 (citing *Lambert v. Flight Transp. Corp. (In re Flight Transp. Corp. Sec. Litig.*, 730 F.2d 1128, 1135-36 (8th Cir. 1984)). Under the well-established standard for consideration of the merits of a settlement, a settlement should be approved unless it "falls below the lowest point in the range of reasonableness." *In re Apex Oil Co.*, 92 B.R. 847, 867 (Bankr. E.D. Mo. 1988) (citing *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983).

In determining whether a settlement is within the "range of reasonableness," the Court should consider the following factors: (a) the probability of success in the litigation; (b) the likely difficulties, if any, to be encountered in collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors; and (e) whether the agreement promotes the integrity of the judicial system. *In re Hancock-Nelson Mercantile Co., Inc.*, 95 B.R. 982, 990 (Bankr. D. Minn. 1989) (citing *Drexel v. Loomis,* 35 F.2d 800, 806 (8th Cir. 1929)); *Anderson,* 390 U.S. at 424*; In re Trism, Inc.*, 282 B.R. at 667*; In re Farmland Industries, Inc.,* 289 B.R. 122, 127 (8th Cir. B.A.P. 2003). A court does not substitute its judgment for that of the trustee or require that the proposed settlement be the best possible settlement obtainable; instead, a court must determine whether the proposed settlement "falls below the lowest point in the realm of reasonableness." *In re Hanson Indus., Ind.*, 88 B.R. 942, 945 (Bankr. D. Minn. 1988) (quoting *In re Bell & Beckwith*, 77 B.R. 606, 612 (Bankr. N.D. Ill. 1987)). These factors seek to balance the probable benefit and

3

potential cost of pursuing a claim or defense against the costs of the proposed settlement. Finally, in making the determination of whether the proposed settlement is fair and equitable, the bankruptcy court may consider the opinions of the trustee or the debtor-in-possession and their counsel. *Nellis v. Shugrue*, 165 B.R. 115, 122 (S.D.N.Y. 1994) (citing *In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993)).

Here, these factors lie in favor of approving the Settlement Agreements as described in the Motion.  Trustee and Receiver believe that by entering into the afore-detailed Settlement Agreements, they will maximize the recovery of assets and distributions to creditors and victims while minimizing the risks, costs, and delay of administering both the Bankruptcy Cases and the Receivership.  The Trustee has evaluated and assessed his claims, the costs of litigation and defenses, believes the Settlement Agreements are in the best interests of the PCI Bankruptcy Estate and its creditors.

The Settlement Agreements resolve and settle claims and litigation by the Debtors and minimizes the expense of administering the Debtors' estates.  The Parties negotiated the terms of the Settlement Agreements that resolve claims and avoid protracted litigation in these Bankruptcy Cases, the Receivership and related proceedings.  In light of the costs, expenses and risks associated with litigation of the Disputes, in addition to an evaluation of each Transferee's ability to pay, further litigation to decide these issues would be wasteful and unnecessary. *See Smith v. Mark Twain National Bank*, 805 F.2d 278, 288 (8th Cir. 1986).

These settlements also further the Trustee's goal to resolve each of these Adversary Proceedings as efficiently as possible and provide for a just and speedy resolution and a maximum return to creditors holding allowed claims against the bankruptcy estates.  The settlements demonstrate the Trustee's commitment to moving these proceedings promptly

4

forward to conclusion in a manner that minimizes, to the extent practicable under the circumstances, the burdens on the Bankruptcy Estates, the Court, and the parties posed by duplicative and inefficient litigation practices.

For the foregoing reasons, pursuant to Bankruptcy Rule 9019, the Trustee respectfully requests the Court enter an order authorizing the Trustee's entry into, and performing according to the terms of, the Settlement Agreements and granting such further and other relief as the Court deems just and equitable.

5

DATED: May 31, 2011

**LINDQUIST & VENNUM P.L.L.P.**

By:   /e/ James A. Lodoen
James A. Lodoen (0173605)
Daryle L. Uphoff (0111831)

4200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402-2274
(612) 371-3211
(612) 371-3207 (facsimile)
www.lindquist.com

**ATTORNEYS FOR
DOUGLAS A. KELLEY,
CHAPTER 11 TRUSTEE**


**KELLEY, WOLTER & SCOTT, P.A.**

DATED: May 31, 2011

By:   /e/ Stacy L. Kabele
Steven E. Wolter (170707)
swelter@kelleywolter.com
Daniel M. Scott (98395)
dscott@kelleywolter.com
Stacy L. Kabele (273673)
skabele@kelleywolter.com
431 S. Seventh Street, Suite 2530
Minneapolis, MN  55414
(612) 371-9090 (telephone)
(612) 371-0574 (facsimile)

**ATTORNEYS FOR
DOUGLAS A. KELLEY,
CHAPTER 11 TRUSTEE OF
PETTERS COMPANY, INC. AND
PETTERS GROUP WORLDWIDE, LLC**

6

# EXHIBIT A

### Settlement Agreement and Mutual Release

This Settlement Agreement and Mutual Release (the "Agreement") is made and entered effective as of the date indicated below, by and among Douglas A. Kelley, in his capacity as Trustee for Petters Company, Inc, defined below, and John Kubinski ("Kubinski") and United Performing Association, Inc. ("UPA") (collectively, the "Transferees") (each of the Trustee and Transferees, a "Party" or "Parties").

### Recitals

WHEREAS, pursuant to an Order entered on October 6, 2008 and as amended on December 8, 2008, the Honorable Ann Montgomery, United States District Judge for the District of Minnesota (the "District Court") appointed Douglas A. Kelley as receiver (the "Receiver") for, among others, Thomas J. Petters ("Petters"), Petters Company, Inc., Petters Group Worldwide, LLC and any affiliates, subsidiaries, divisions, successors, or assigns owned 100% or controlled by the foregoing. *United States v. Petters, et al.*, United States District Court, District of Minnesota, Case No. 0:08-cv-05348 Doc # 12, 127 (the "Receivership Order"); and

WHEREAS, pursuant to the authority granted to him under the Receivership Order, the Receiver filed petitions in the United States Bankruptcy Court for the District of Minnesota (the "Bankruptcy Court") commencing the Chapter 11 case of Petters Company, Inc. ("PCI" or the "PCI Estate") and Petters Group Worldwide, LLC ("PGW" or the "PGW Estate") on October 11, 2008 (the "Petition Date"). The Receiver also commenced the Chapter 11 cases of PC Funding, LLC, Thousand Lakes, LLC, SPF Funding, LLC, PL Ltd., Inc., Edge One, LLC, MGC Finance, LLC, PAC Funding, LLC, and Palm Beach Finance Holdings, Inc. Each of the Chapter 11 cases are referred to as a "Bankruptcy Estate" and are referred to collectively as the "Bankruptcy Estates". The Bankruptcy Estates are jointly administered under *In re Petters Company, Inc., et al.*, United States Bankruptcy Court, District of Minnesota, Case No. 08-45257 (Kishel, Judge).

WHEREAS, on February 26, 2009, the Bankruptcy Court approved the appointment of Douglas A. Kelley, Esq. (the "Trustee"), as the Chapter 11 trustee for the Bankruptcy Estates; and

WHEREAS, on September 14, 2010, the Bankruptcy Court entered an Order approving a Coordination Agreement among the United States of America, the Receiver, the Trustee, and the Chapter 7 Trustee of Polaroid Corporation, et al. n/k/a PBE Corporation, et al. Pursuant to the Coordination Agreement, claims against professionals, current or former employees, and actions for the return of false profits or other avoidance claims, including principal from a purported loan to, or investment in any entity contained in the Bankruptcy Estates will be commenced by the Trustee and submitted in the Bankruptcy Court administering the Bankruptcy Estates.

WHEREAS, prior to the Petition Date, PCI made certain transfers to the Transferees that may be subject to an action or proceeding under sections 544, 547, 548 and 550 of title 11 of the United States Code (the "Bankruptcy Code") or under other relevant state or federal law, which may be avoidable by the Trustee, including without limitation transfers of $135,500.00 on April 13, 1998 and $86,400.00 on March 29, 1998, which resulted in the payment of asserted false profits to Kubinski in the amount of $15,500.00 and to UPA in the amount of $6,400.00; and

WHEREAS, the Trustee has commenced an adversary proceeding against the Transferees entitled *Douglas A. Kelley, in his capacity as the Chapter 11 Trustee of Debtor Petters Company, Inc. v. John Kubinski and United Performing Association, Inc.*, United States Bankruptcy Court, District of Minnesota, Case No. 10-04387 (Kishel, Judge) and is referred to herein as the "Avoidance Action"; and

WHEREAS, the Transferees, without admitting liability, wish to settle all disputes with the Trustee by paying $12,400.00 or 80% of the $15,500 in transfers to Kubinski and $3,200.00 or 50% of the $6,400.00 in transfers to UPA for a total of $15,600; and

WHEREAS, resolution of the Avoidance Action by this Agreement is subject to the approval by the Bankruptcy Court; and

WHEREAS, the Parties wish to settle the Avoidance Action, without the expense, delay and uncertainty of litigation;

NOW, THEREFORE, in consideration of the foregoing, of the mutual covenants, promises and undertakings set forth herein, and for good and valuable consideration, the mutual receipt and sufficiency of which are hereby acknowledged, and subject to the approval the Bankruptcy Court, the Parties agree as follows:

## Agreement

The Recitals set forth above are incorporated herein by reference and agreed to as if fully set forth herein.

1.   Payment. Kubinski shall pay by wire transfer or check and deliver to the Trustee payment in the amount of Fifteen Thousand Six Hundred Dollars and No Cents ($15,600.00) (the "Settlement Payment") in full and final settlement of all claims relating to the Avoidance Action. The Settlement Payment must be received by the Trustee on the date on which the Parties execute this Agreement. The Settlement Payment will be held in trust by the Trustee until the date on which this Agreement becomes effective and binding on the Parties under paragraph 4.

2.   Release by the Trustee.   In consideration for the covenants and agreements in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, upon receipt of the indefeasible payment of the Settlement Payment, the Trustee will be deemed to have released, remised and forever discharged the Transferees from any and all past, present or future claims or causes of action (including any suit, petition, demand or other claims in law, equity or arbitration) of whatever kind, nature or description, direct or indirect, in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary duty or otherwise (including attorney's fees, costs or disbursements), known or unknown, that are, have been, could have been or might in the future be asserted by the Trustee, on behalf of the Bankruptcy Estates, against the Transferees, and that are based on or arise out of the Transfers as defined in the Avoidance Action, excepting, however, any claims arising out of this Agreement.

3.    Release by the Transferees. In consideration for the covenants and agreements in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Transferees hereby release, remise and forever discharge the Trustee, the Bankruptcy Estates and their agents, attorneys, advisors, consultants, and employees from any and all past, present or future claims or causes of action, (including any suit, petition, demand or other claims in law, equity or arbitration) of whatever kind, nature or description, direct or indirect, in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary duty or otherwise (including attorney's fees, costs or disbursements), known or unknown, that are, have been, could have been or might in the future be asserted by the Transferees, excepting, however, any claims arising out of this Agreement. The Transferees shall have no claim against the Bankruptcy Estates, and waive any claim under Section 502(h) of the Bankruptcy Code.

4.    Court Approval; Effective Date; Termination. This Agreement is subject to, and shall become effective and binding on the Parties upon, and only upon, the date on which the Bankruptcy Court enters a final and non-appealable Order approving the Agreement. The Parties shall use their best efforts to obtain such approval as promptly as practicable after the date of this Agreement. If this Agreement does not become effective, (a) the Agreement shall terminate and be null and void for all purposes, (b) all of the statements, admissions, consents and agreements contained in the Agreement shall be null and void, and (c) neither the Trustee, nor the Transferees may use or rely on any such statement, admission, consent or agreement in any public statement or litigation involving the Bankruptcy Estates, any case or proceeding relating to the Bankruptcy Estates.

5.    Authority. The Transferees represent and warrant that as of the date hereof each has the full power, authority and legal right to execute and deliver, and to perform its respective obligations under this Agreement and has taken all necessary action to authorize the execution and delivery of, and the performance of its respective obligations under, this Agreement.

6.    Dismissal. Promptly upon this Agreement becoming effective, the Trustee will prepare and file appropriate pleadings providing for the dismissal of the Avoidance Action, with prejudice with respect to all claims.

7.    Non-Disparagement. The Parties agree to not make any false and disparaging statements regarding any Party to this Agreement concerning this Agreement.

8.    Further Assurances. The Parties shall execute and deliver any document or instrument reasonably requested by any of them after the date of the Agreement to effectuate the intent of the Agreement.

9.    Entire Agreement. This Agreement between the Parties constitutes the entire agreement and understanding between and among the Parties and supersedes all prior agreements, representations and understandings concerning the subject matter thereof.

10.    Amendments, Waiver.  This Agreement may not be terminated, amended or modified in any way except in a writing signed by all the Parties.  No waiver of any provision of this Agreement shall be deemed to constitute a waiver of any other provision hereof, whether or not similar, nor shall such waiver constitute a continuing waiver.

11.    Assignability. No Party hereto may assign its rights under this Agreement without the prior written consent of each of the other Parties hereto.

12.    Successors Bound.  This Agreement shall be binding upon and inure to the benefit of each of the Parties and their successors and permitted assigns.

13.    No Third Party Beneficiary.  The Parties do not intend to confer any benefit by or under this Agreement upon any person or entity other than the Parties hereto and their respective successors and permitted assigns.

14.    No Admission of Liability or Wrongdoing.  By entering into this Agreement, the Transferees do not admit and they expressly deny that they owe any liability to the Trustee, or to any other person, or that they engaged in any wrongdoing.

15.    Governing Law.  The terms, conditions and provisions of this Agreement shall be governed by, and construed in accordance with, the United States Bankruptcy Code and to the extent applicable, the internal laws of the State of Minnesota, without giving consideration to any other state's conflict of law provisions.

16.    Jurisdiction.  Following Bankruptcy Court approval of this Agreement, the Bankruptcy Court will retain the jurisdiction and authority to enforce this Agreement, and to resolve any disputes arising among the Parties hereto in connection with its interpretation and implementation.

17.    Attorneys' Fees. In the event that any action or proceeding is or shall be necessary to enforce the provisions of this Agreement due to a breach thereof, the prevailing Party shall be entitled to recover, in addition to the outstanding amounts, reasonable attorneys' fees and costs incurred in connection with such enforcement from the breaching Party.

18.    Captions and Rules of Construction.  The captions in this Agreement are inserted only as a matter of convenience and for reference and do not define, limit or describe the scope of this Agreement or the scope or content of any of its provisions. Any reference in this Agreement to a paragraph is to a paragraph of this Agreement. "Includes" and "including" are not limiting.

19.    Notices. Any notices under this Agreement shall be in writing, shall be effective when received and may be delivered only by hand, by overnight delivery service, by fax, or by electronic transmission to:

| If to the Trustee, c/o: | If to Transferee(s), c/o: |
|---|---|
| James A. Lodoen<br>Lindquist & Vennum P.L.L.P.<br>4200 IDS Center<br>80 South Eighth Street<br>Minneapolis, MN 55402-2274<br>T: (612) 371-3234<br>F: (612) 371-3207<br>E: jlodoen@lindquist.com | Matthew P. Kostolnik<br>Moss & Barnett, P.A.<br>4800 Wells Fargo Center<br>90 South Seventh Street<br>Minneapolis, MN 55402-4129<br>T: (612) 877-5334<br>F: (612) 877-5999<br>E: kostolnikm@moss-barnett.com |

20.    Counterparts; Electronic Copy of Signatures. This Agreement and attachments may be executed and delivered in any number of counterparts, each of which so executed and delivered shall be deemed to be an original and all of which shall constitute one and the same document. The Parties may evidence their execution of this Agreement by delivery to the other Parties of scanned or faxed copies of their signatures, with the same effect as the delivery of an original signature.

----- *Remainder of page left intentionally blank* ----

IN WITNESS HEREOF, the Parties hereto have caused this Agreement to be executed as of the date first written below.


Date:                         By: _____

                                    Douglas A. Kelley, as
                                    **COURT-APPOINTED CHAPTER 11**
                                    **TRUSTEE FOR PETTERS COMPANY, INC.**



Date:                         By: _____

                                    John Kubinski
                                    **TRANSFEREE**



Date:                         **United Performing Association, Inc.**

                              By: _____
                              Its: _____
                                    **TRANSFEREE**

# EXHIBIT B

## Settlement Agreement and Mutual Release

This Settlement Agreement and Mutual Release (the "Agreement") is made and entered effective as of the date indicated below, by and among Douglas A. Kelley, in his capacity as Trustee for Petters Company, Inc, defined below, and Larry Hopfenspirger (the "Transferee") (each of the Trustee and Transferee, a "Party" or "Parties").

## Recitals

WHEREAS, pursuant to an Order entered on October 6, 2008 and as amended on December 8, 2008, the Honorable Ann Montgomery, United States District Judge for the District of Minnesota (the "District Court") appointed Douglas A. Kelley as receiver (the "Receiver") for, among others, Thomas J. Petters ("Petters"), Petters Company, Inc., Petters Group Worldwide, LLC and any affiliates, subsidiaries, divisions, successors, or assigns owned 100% or controlled by the foregoing. *United States v. Petters, et al.*, United States District Court, District of Minnesota, Case No. 0:08-cv-05348 Doc # 12, 127 (the "Receivership Order"); and

WHEREAS, pursuant to the authority granted to him under the Receivership Order, the Receiver filed petitions in the United States Bankruptcy Court for the District of Minnesota (the "Bankruptcy Court") commencing the Chapter 11 case of Petters Company, Inc. ("PCI" or the "PCI Estate") and Petters Group Worldwide, LLC ("PGW" or the "PGW Estate") on October 11, 2008 (the "Petition Date"). The Receiver also commenced the Chapter 11 cases of PC Funding, LLC, Thousand Lakes, LLC, SPF Funding, LLC, PL Ltd., Inc., Edge One, LLC, MGC Finance, LLC, PAC Funding, LLC, and Palm Beach Finance Holdings, Inc. Each of the Chapter 11 cases are referred to as a "Bankruptcy Estate" and are referred to collectively as the "Bankruptcy Estates". The Bankruptcy Estates are jointly administered under *In re Petters Company, Inc., et al.*, United States Bankruptcy Court, District of Minnesota, Case No. 08-45257 (Kishel, Judge).

WHEREAS, on February 26, 2009, the Bankruptcy Court approved the appointment of Douglas A. Kelley, Esq. (the "Trustee"), as the Chapter 11 trustee for the Bankruptcy Estates; and

WHEREAS, on September 14, 2010, the Bankruptcy Court entered an Order approving a Coordination Agreement among the United States of America, the Receiver, the Trustee, and the Chapter 7 Trustee of Polaroid Corporation, et al. n/k/a PBE Corporation, et al. Pursuant to the Coordination Agreement, claims against professionals, current or former employees, and actions for the return of false profits or other avoidance claims, including principal from a purported loan to, or investment in any entity contained in the Bankruptcy Estates will be commenced by the Trustee and submitted in the Bankruptcy Court administering the Bankruptcy Estates.

WHEREAS, prior to the Petition Date, PCI made certain transfers to the Transferee that may be subject to an action or proceeding under sections 544, 547, 548 and 550 of title 11 of the United States Code (the "Bankruptcy Code") or under other relevant state or federal law, which may be avoidable by the Trustee, including without limitation transfers of $52,500.00, $1875.00 and $1875.00 on June 11, 1998, April 12, 1998 and February 26, 1998, respectively, which resulted in the payment of asserted false profits to the Transferee in the amount of $6,250.00; and

WHEREAS, the Trustee has commenced an adversary proceeding against the Transferee entitled *Douglas A. Kelley, in his capacity as the Chapter 11 Trustee of Debtor Petters Company, Inc. v. Larry Hopfenspriger*, United States Bankruptcy Court, District of Minnesota, Case No. 10-04270 (Kishel, Judge) and is referred to herein as the "Avoidance Action"; and

WHEREAS, the Transferee, without admitting liability, wishes to settle all disputes with the Trustee by paying $3,125.00 or 50% of the $6,250.00 in alleged false profits transferred to the Transferee; and

WHEREAS, resolution of the Avoidance Action by this Agreement is subject to the approval by the Bankruptcy Court; and

WHEREAS, the Parties wish to settle the Avoidance Action, without the expense, delay and uncertainty of litigation;

NOW, THEREFORE, in consideration of the foregoing, of the mutual covenants, promises and undertakings set forth herein, and for good and valuable consideration, the mutual receipt and sufficiency of which are hereby acknowledged, and subject to the approval the Bankruptcy Court, the Parties agree as follows:

### Agreement

The Recitals set forth above are incorporated herein by reference and agreed to as if fully set forth herein.

1.    Payment. The Transferee shall pay by wire transfer or check and deliver to the Trustee payment in the amount of Three Thousand One Hundred Twenty-Five Dollars and No Cents ($3,125.00) (the "Settlement Payment") in full and final settlement of all claims relating to the Avoidance Action. The Settlement Payment must be received by the Trustee on the date on which the Parties execute this Agreement. The Settlement Payment will be held in trust by the Trustee until the date on which this Agreement becomes effective and binding on the Parties under paragraph 4.

2.    Release by the Trustee. In consideration for the covenants and agreements in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, upon receipt of the indefeasible payment of the Settlement Payment, the Trustee will be deemed to have released, remised and forever discharged the Transferee from any and all past, present or future claims or causes of action (including any suit, petition, demand or other claims in law, equity or arbitration) of whatever kind, nature or description, direct or indirect, in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary duty or otherwise (including attorney's fees, costs or disbursements), known or unknown, that are, have been, could have been or might in the future be asserted by the Trustee, on behalf of the Bankruptcy Estates, against the Transferee, and that are based on or arise out of the Transfers as defined in the Avoidance Action, excepting, however, any claims arising out of this Agreement.

3.    Release by the Transferee. In consideration for the covenants and agreements in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Transferee hereby releases, remises and forever discharges the Trustee, the Bankruptcy Estates and their agents, attorneys, advisors, consultants, and employees from any and all past, present or future claims or causes of action, (including any suit, petition, demand or other claims in law, equity or arbitration) of whatever kind, nature or description, direct or indirect, in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary duty or otherwise (including attorney's fees, costs or disbursements), known or unknown, that are, have been, could have been or might in the future be asserted by the Transferee, excepting, however, any claims arising out of this Agreement. The Transferee shall have no claim against the Bankruptcy Estates, and waives any claim under Section 502(h) of the Bankruptcy Code.

4.    Court Approval; Effective Date; Termination. This Agreement is subject to, and shall become effective and binding on the Parties upon, and only upon, the date on which the Bankruptcy Court enters a final and non-appealable Order approving the Agreement. The Parties shall use their best efforts to obtain such approval as promptly as practicable after the date of this Agreement. If this Agreement does not become effective, (a) the Agreement shall terminate and be null and void for all purposes, (b) all of the statements, admissions, consents and agreements contained in the Agreement shall be null and void, (c) neither the Trustee, nor the Transferee may use or rely on any such statement, admission, consent or agreement in any public statement or litigation involving the Bankruptcy Estates, any case or proceeding relating to the Bankruptcy Estates, and (d) the Trustee shall return the Settlement Payment to the Transferee.

5.    Authority. The Transferee represents and warrants that as of the date hereof he has the full power, authority and legal right to execute and deliver, and to perform his respective obligations under this Agreement and has taken all necessary action to authorize the execution and delivery of, and the performance of its respective obligations under, this Agreement.

6.    Dismissal. Promptly upon this Agreement becoming effective, the Trustee will prepare and file appropriate pleadings providing for the dismissal of the Avoidance Action, with prejudice with respect to all claims.

7.    Non-Disparagement. The Parties agree to not make any false and disparaging statements regarding any Party to this Agreement concerning this Agreement.

8.    Further Assurances. The Parties shall execute and deliver any document or instrument reasonably requested by any of them after the date of the Agreement to effectuate the intent of the Agreement.

9.    Entire Agreement. This Agreement between the Parties constitutes the entire agreement and understanding between and among the Parties and supersedes all prior agreements, representations and understandings concerning the subject matter thereof.

DOCS-#3442461-v1

3

10.    <u>Amendments, Waiver</u>. This Agreement may not be terminated, amended or modified in any way except in a writing signed by all the Parties. No waiver of any provision of this Agreement shall be deemed to constitute a waiver of any other provision hereof, whether or not similar, nor shall such waiver constitute a continuing waiver.

11.    <u>Assignability</u>. No Party hereto may assign its rights under this Agreement without the prior written consent of each of the other Parties hereto.

12.    <u>Successors Bound</u>. This Agreement shall be binding upon and inure to the benefit of each of the Parties and their successors and permitted assigns.

13.    <u>No Third Party Beneficiary</u>. The Parties do not intend to confer any benefit by or under this Agreement upon any person or entity other than the Parties hereto and their respective successors and permitted assigns.

14.    <u>No Admission of Liability or Wrongdoing</u>. By entering into this Agreement, the Transferee do not admit and they expressly deny that they owe any liability to the Trustee, or to any other person, or that they engaged in any wrongdoing.

15.    <u>Governing Law</u>. The terms, conditions and provisions of this Agreement shall be governed by, and construed in accordance with, the United States Bankruptcy Code and to the extent applicable, the internal laws of the State of Minnesota, without giving consideration to any other state's conflict of law provisions.

16.    <u>Jurisdiction</u>. Following Bankruptcy Court approval of this Agreement, the Bankruptcy Court will retain the jurisdiction and authority to enforce this Agreement, and to resolve any disputes arising among the Parties hereto in connection with its interpretation and implementation.

17.    <u>Attorneys' Fees</u>. In the event that any action or proceeding is or shall be necessary to enforce the provisions of this Agreement due to a breach thereof, the prevailing Party shall be entitled to recover, in addition to the outstanding amounts, reasonable attorneys' fees and costs incurred in connection with such enforcement from the breaching Party.

18.    <u>Captions and Rules of Construction</u>. The captions in this Agreement are inserted only as a matter of convenience and for reference and do not define, limit or describe the scope of this Agreement or the scope or content of any of its provisions. Any reference in this Agreement to a paragraph is to a paragraph of this Agreement. "Includes" and "including" are not limiting.

19.    <u>Notices</u>.  Any notices under this Agreement shall be in writing, shall be effective when received and may be delivered only by hand, by overnight delivery service, by fax, or by electronic transmission to:

| If to the Trustee, c/o: | If to Transferee, c/o: |
| --- | --- |
| Terrence J. Fleming<br>Lindquist & Vennum P.L.L.P.<br>4200 IDS Center<br>80 South Eighth Street<br>Minneapolis, MN 55402-2274<br>T: (612) 371-3248<br>F: (612) 371-3207<br>E: tfleming@lindquist.com | John F. Bonner, III<br>Bonner & Borhart LLP<br>Suite 1950<br>220 South Sixth Street<br>Minneapolis, MN 55402<br>T: (612) 313-0711<br>F: (612) 455-2055<br>E: jfb@bdbllp.com |

20.    <u>Counterparts; Electronic Copy of Signatures</u>.  This Agreement and attachments may be executed and delivered in any number of counterparts, each of which so executed and delivered shall be deemed to be an original and all of which shall constitute one and the same document. The Parties may evidence their execution of this Agreement by delivery to the other Parties of scanned or faxed copies of their signatures, with the same effect as the delivery of an original signature.

IN WITNESS HEREOF, the Parties hereto have caused this Agreement to be executed as of the date first written below.

Date: _____        By: _____
                             Douglas A. Kelley, as
                             **COURT-APPOINTED CHAPTER 11
                             TRUSTEE FOR PETTERS COMPANY, INC.**

Date: _____        By: _____
                             Larry Hopfenspirger
                             **TRANSFEREE**

19.   Notices.  Any notices under this Agreement shall be in writing, shall be effective when received and may be delivered only by hand, by overnight delivery service, by fax, or by electronic transmission to:

| If to the Trustee, c/o: | If to Transferee, c/o: |
|---|---|
| Terrence J. Fleming<br>Lindquist & Vennum P.L.L.P.<br>4200 IDS Center<br>80 South Eighth Street<br>Minneapolis, MN 55402-2274<br>T: (612) 371-3248<br>F: (612) 371-3207<br>E: tfleming@lindquist.com | John F. Bonner, III<br>Bonner & Borhart LLP<br>Suite 1950<br>220 South Sixth Street<br>Minneapolis, MN 55402<br>T: (612) 313-0711<br>F: (612) 455-2055<br>E: jfb@bdbllp.com |

20.   Counterparts; Electronic Copy of Signatures.  This Agreement and attachments may be executed and delivered in any number of counterparts, each of which so executed and delivered shall be deemed to be an original and all of which shall constitute one and the same document. The Parties may evidence their execution of this Agreement by delivery to the other Parties of scanned or faxed copies of their signatures, with the same effect as the delivery of an original signature.

IN WITNESS HEREOF, the Parties hereto have caused this Agreement to be executed as of the date first written below.

Date:                    By:  _Douglas A. Kelley_

Douglas A. Kelley, as
**COURT-APPOINTED CHAPTER 11
TRUSTEE FOR PETTERS COMPANY, INC.**

Date:                    By:  _____

Larry Hopfenspirger
**TRANSFEREE**

# EXHIBIT C

## Settlement Agreement and Mutual Release

This Settlement Agreement and Mutual Release (the "Agreement") is made and entered effective as of the date indicated below, by and among Douglas A. Kelley, in his capacity as Trustee for Petters Company, Inc, defined below, and Richard Rock (the "Transferee") (each of the Trustee and Transferee, a "Party" or "Parties").

## Recitals

WHEREAS, pursuant to an Order entered on October 6, 2008 and as amended on December 8, 2008, the Honorable Ann Montgomery, United States District Judge for the District of Minnesota (the "District Court") appointed Douglas A. Kelley as receiver (the "Receiver") for, among others, Thomas J. Petters ("Petters"), Petters Company, Inc., Petters Group Worldwide, LLC and any affiliates, subsidiaries, divisions, successors, or assigns owned 100% or controlled by the foregoing. *United States v. Petters, et al.*, United States District Court, District of Minnesota, Case No. 0:08-cv-05348 Doc # 12, 127 (the "Receivership Order"); and

WHEREAS, pursuant to the authority granted to him under the Receivership Order, the Receiver filed petitions in the United States Bankruptcy Court for the District of Minnesota (the "Bankruptcy Court") commencing the Chapter 11 case of Petters Company, Inc. ("PCI" or the "PCI Estate") and Petters Group Worldwide, LLC ("PGW" or the "PGW Estate") on October 11, 2008 (the "Petition Date"). The Receiver also commenced the Chapter 11 cases of PC Funding, LLC, Thousand Lakes, LLC, SPF Funding, LLC, PL Ltd., Inc., Edge One, LLC, MGC Finance, LLC, PAC Funding, LLC, and Palm Beach Finance Holdings, Inc. Each of the Chapter 11 cases are referred to as a "Bankruptcy Estate" and are referred to collectively as the "Bankruptcy Estates". The Bankruptcy Estates are jointly administered under *In re Petters Company, Inc., et al.*, United States Bankruptcy Court, District of Minnesota, Case No. 08-45257 (Kishel, Judge).

WHEREAS, on February 26, 2009, the Bankruptcy Court approved the appointment of Douglas A. Kelley, Esq. (the "Trustee"), as the Chapter 11 trustee for the Bankruptcy Estates; and

WHEREAS, on September 14, 2010, the Bankruptcy Court entered an Order approving a Coordination Agreement among the United States of America, the Receiver, the Trustee, and the Chapter 7 Trustee of Polaroid Corporation, et al. n/k/a PBE Corporation, et al. Pursuant to the Coordination Agreement, claims against professionals, current or former employees, and actions for the return of false profits or other avoidance claims, including principal from a purported loan to, or investment in any entity contained in the Bankruptcy Estates will be commenced by the Trustee and submitted in the Bankruptcy Court administering the Bankruptcy Estates.

WHEREAS, prior to the Petition Date, PCI made a certain transfer to the Transferee that may be subject to an action or proceeding under sections 544, 547, 548 and 550 of title 11 of the United States Code (the "Bankruptcy Code") or under other relevant state or federal law, which may be avoidable by the Trustee, including without limitation the transfer of $103,258.90.00, on March 29, 2002, which resulted in the payment of asserted false profits to the Transferee in the amount of $3,258.90; and

WHEREAS, the Trustee has commenced an adversary proceeding against the Transferee and others entitled *Douglas A. Kelley, in his capacity as the Chapter 11 Trustee of Debtor Petters Company, Inc. v. Lancer Financial Services, LLC, et al.*, United States Bankruptcy Court, District of Minnesota, Case No. 10-04427 (Kishel, Judge) and is referred to herein as the "Avoidance Action"; and

WHEREAS, the Transferee, without admitting liability, wishes to settle all disputes with the Trustee by paying $3,258.90 or 100% of the $3,258.90 in false profits transferred to the Transferee; and

WHEREAS, resolution of the Avoidance Action by this Agreement is subject to the approval by the Bankruptcy Court; and

WHEREAS, the Parties wish to settle the Avoidance Action, without the expense, delay and uncertainty of litigation;

NOW, THEREFORE, in consideration of the foregoing, of the mutual covenants, promises and undertakings set forth herein, and for good and valuable consideration, the mutual receipt and sufficiency of which are hereby acknowledged, and subject to the approval the Bankruptcy Court, the Parties agree as follows:

## Agreement

The Recitals set forth above are incorporated herein by reference and agreed to as if fully set forth herein.

1.     Payment. The Transferee shall pay by wire transfer or check and deliver to the Trustee payment in the amount of Three Thousand Two Hundred Fifty-Eight Dollars and Ninety Cents ($3,258.90) (the "Settlement Payment") in full and final settlement of the Trustee's claims against the Transferee in the Avoidance Action. The Settlement Payment must be received by the Trustee on the date on which the Parties execute this Agreement. The Settlement Payment will be held in trust by the Trustee until the date on which this Agreement becomes effective and binding on the Parties under paragraph 4.

2.     Release by the Trustee. In consideration for the covenants and agreements in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, upon receipt of the indefeasible payment of the Settlement Payment, the Trustee will be deemed to have released, remised and forever discharged the Transferee from any and all past, present or future claims or causes of action (including any suit, petition, demand or other claims in law, equity or arbitration) of whatever kind, nature or description, direct or indirect, in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary duty or otherwise (including attorney's fees, costs or disbursements), known or unknown, that are, have been, could have been or might in the future be asserted by the Trustee, on behalf of the Bankruptcy Estates, against the Transferee, and that are based on or arise out of the Transfers as defined in the Avoidance Action, excepting, however, any claims arising out of this Agreement.

3.     <u>Release by the Transferee</u>. In consideration for the covenants and agreements in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Transferee hereby releases, remises and forever discharges the Trustee, the Bankruptcy Estates and their agents, attorneys, advisors, consultants, and employees from any and all past, present or future claims or causes of action, (including any suit, petition, demand or other claims in law, equity or arbitration) of whatever kind, nature or description, direct or indirect, in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary duty or otherwise (including attorney's fees, costs or disbursements), known or unknown, that are, have been, could have been or might in the future be asserted by the Transferee, excepting, however, any claims arising out of this Agreement. The Transferee shall have no claim against the Bankruptcy Estates, and waives any claim under Section 502(h) of the Bankruptcy Code.

4.     <u>Court Approval; Effective Date; Termination</u>.  This Agreement is subject to, and shall become effective and binding on the Parties upon, and only upon, the date on which the Bankruptcy Court enters a final and non-appealable Order approving the Agreement. The Parties shall use their best efforts to obtain such approval as promptly as practicable after the date of this Agreement. If this Agreement does not become effective, (a) the Agreement shall terminate and be null and void for all purposes, (b) all of the statements, admissions, consents and agreements contained in the Agreement shall be null and void, and (c) neither the Trustee, nor the Transferee may use or rely on any such statement, admission, consent or agreement in any public statement or litigation involving the Bankruptcy Estates, any case or proceeding relating to the Bankruptcy Estates.

5.     <u>Authority</u>.  The Transferee represents and warrants that as of the date hereof he has the full power, authority and legal right to execute and deliver, and to perform his respective obligations under this Agreement and has taken all necessary action to authorize the execution and delivery of, and the performance of its respective obligations under, this Agreement.

6.     <u>Dismissal</u>.  Promptly upon this Agreement becoming effective, the Trustee will prepare and file appropriate pleadings providing for the dismissal of his claims in the Avoidance Action against the Transferee with prejudice.

7.     <u>Non-Disparagement</u>.  The Parties agree to not make any false and disparaging statements regarding any Party to this Agreement concerning this Agreement.

8.     <u>Further Assurances</u>.  The Parties shall execute and deliver any document or instrument reasonably requested by any of them after the date of the Agreement to effectuate the intent of the Agreement.

9.     <u>Entire Agreement</u>.  This Agreement between the Parties constitutes the entire agreement and understanding between and among the Parties and supersedes all prior agreements, representations and understandings concerning the subject matter thereof.

10.     <u>Amendments, Waiver</u>.  This Agreement may not be terminated, amended or modified in any way except in a writing signed by all the Parties.  No waiver of any provision of this Agreement shall be deemed to constitute a waiver of any other provision hereof, whether or not similar, nor shall such waiver constitute a continuing waiver.

11.     <u>Assignability</u>.  No Party hereto may assign its rights under this Agreement without the prior written consent of each of the other Parties hereto.

12.     <u>Successors Bound</u>.  This Agreement shall be binding upon and inure to the benefit of each of the Parties and their successors and permitted assigns.

13.     <u>No Third Party Beneficiary</u>.  The Parties do not intend to confer any benefit by or under this Agreement upon any person or entity other than the Parties hereto and their respective successors and permitted assigns.

14.     <u>No Admission of Liability or Wrongdoing</u>.  By entering into this Agreement, the Transferee do not admit and they expressly deny that they owe any liability to the Trustee, or to any other person, or that they engaged in any wrongdoing.

15.     <u>Governing Law</u>.  The terms, conditions and provisions of this Agreement shall be governed by, and construed in accordance with, the United States Bankruptcy Code and to the extent applicable, the internal laws of the State of Minnesota, without giving consideration to any other state's conflict of law provisions.

16.     <u>Jurisdiction</u>.  Following Bankruptcy Court approval of this Agreement, the Bankruptcy Court will retain the jurisdiction and authority to enforce this Agreement, and to resolve any disputes arising among the Parties hereto in connection with its interpretation and implementation.

17.     <u>Attorneys' Fees</u>.  In the event that any action or proceeding is or shall be necessary to enforce the provisions of this Agreement due to a breach thereof, the prevailing Party shall be entitled to recover, in addition to the outstanding amounts, reasonable attorneys' fees and costs incurred in connection with such enforcement from the breaching Party.

18.     <u>Captions and Rules of Construction</u>.  The captions in this Agreement are inserted only as a matter of convenience and for reference and do not define, limit or describe the scope of this Agreement or the scope or content of any of its provisions. Any reference in this Agreement to a paragraph is to a paragraph of this Agreement. "Includes" and "including" are not limiting.

19.   Notices.  Any notices under this Agreement shall be in writing, shall be effective when received and may be delivered only by hand, by overnight delivery service, by fax, or by electronic transmission to:

| If to the Trustee, c/o: | If to Transferee, c/o: |
|---|---|
| Terrence J. Fleming<br>Lindquist & Vennum P.L.L.P.<br>4200 IDS Center<br>80 South Eighth Street<br>Minneapolis, MN 55402-2274<br>T: (612) 371-3248<br>F: (612) 371-3207<br>E: tfleming@lindquist.com | J. Richard Rock<br>1154 Nevada Avenue<br>San Jose, CA 95125-3327<br>T: (408) 626-8613<br>F: (408) 608-1902<br>E: Richard@thecaprockgroup.com |

20.   Counterparts; Electronic Copy of Signatures.  This Agreement and attachments may be executed and delivered in any number of counterparts, each of which so executed and delivered shall be deemed to be an original and all of which shall constitute one and the same document. The Parties may evidence their execution of this Agreement by delivery to the other Parties of scanned or faxed copies of their signatures, with the same effect as the delivery of an original signature.

IN  WITNESS  HEREOF,  the  Parties  hereto  have  caused  this  Agreement  to  be executed as of the date first written below.

Date: _____   By: _____

　　　　　　　　　　　　Douglas A. Kelley, as
　　　　　　　　　　　　**COURT-APPOINTED CHAPTER 11**
　　　　　　　　　　　　**TRUSTEE FOR PETTERS COMPANY, INC.**

Date: _____   By: _____

　　　　　　　　　　　　Richard Rock
　　　　　　　　　　　　**TRANSFEREE**

19.   Notices.  Any notices under this Agreement shall be in writing, shall be effective when received and may be delivered only by hand, by overnight delivery service, by fax, or by electronic transmission to:

| If to the Trustee, c/o: | If to Transferee, c/o: |
|---|---|
| Terrence J. Fleming<br>Lindquist & Vennum P.L.L.P.<br>4200 IDS Center<br>80 South Eighth Street<br>Minneapolis, MN 55402-2274<br>T: (612) 371-3248<br>F: (612) 371-3207<br>E: tfleming@lindquist.com | J. Richard Rock<br>1154 Nevada Avenue<br>San Jose, CA 95125-3327<br>T: (408) 626-8613<br>F: (408) 608-1902<br>E: Richard@thecaprockgroup.com |

20.   Counterparts; Electronic Copy of Signatures.  This Agreement and attachments may be executed and delivered in any number of counterparts, each of which so executed and delivered shall be deemed to be an original and all of which shall constitute one and the same document. The Parties may evidence their execution of this Agreement by delivery to the other Parties of scanned or faxed copies of their signatures, with the same effect as the delivery of an original signature.

IN WITNESS HEREOF, the Parties hereto have caused this Agreement to be executed as of the date first written below.

Date: **5/3/11**       By: _Douglas A. Kelley_

Douglas A. Kelley, as
**COURT-APPOINTED CHAPTER 11
TRUSTEE FOR PETTERS COMPANY, INC.**

Date: _____       By: _____

Richard Rock
**TRANSFEREE**

# EXHIBIT D

### Settlement Agreement and Mutual Release

This Settlement Agreement and Mutual Release (the "Agreement") is made and entered effective as of the date indicated below, by and among Douglas A. Kelley, in his capacity as a Receiver and a Trustee, defined below, and Lac Courte Oreilles Band of Lake Superior Chippewa Indians of Wisconsin (the "Transferee") (each of the Trustee, Receiver, and Transferee, a "Party" or "Parties").

### Recitals

WHEREAS, pursuant to an Order entered on October 6, 2008 and as amended on December 8, 2008, the Honorable Ann Montgomery, United States District Judge for the District of Minnesota (the "District Court") appointed Douglas A. Kelley as receiver (the "Receiver") for, among others, Thomas J. Petters ("Petters"), Petters Company, Inc., Petters Group Worldwide, LLC and any affiliates, subsidiaries, divisions, successors, or assigns owned 100% or controlled by the foregoing. *United States v. Petters, et al.*, United States District Court, District of Minnesota, Case No. 0:08-cv-05348 Doc # 12, 127 (the "Receivership Order"); and

WHEREAS, pursuant to the authority granted to him under the Receivership Order, the Receiver filed petitions in the United States Bankruptcy Court for the District of Minnesota (the "Bankruptcy Court") commencing the Chapter 11 cases of Petters Company, Inc. ("PCI" or the "PCI Estate") and Petters Group Worldwide, LLC ("PGW" or the "PGW Estate") on October 11, 2008. Petitions commencing the Chapter 11 cases of PC Funding, LLC, Thousand Lakes, LLC, SPF Funding, LLC, PL Ltd., Inc., Edge One, LLC, and MGC Finance, Inc. were filed on October 15, 2008. The petition commencing the Chapter 11 case of PAL Funding, LLC was filed on October 17, 2008. The petition commencing the Chapter 11 case of Palm Beach Finance Holdings, Inc. was filed on October 19, 2008. Each of the Chapter 11 cases will be referred to as a "Bankruptcy Case" and collectively will be referred to as the "Bankruptcy Cases". The Bankruptcy Cases are being jointly administered under *In re Petters Company, Inc., et al.*, United States Bankruptcy Court, District of Minnesota, Case No. 08-45257 (Kishel, Judge). As used herein, the term "Petition Date" shall refer to the date of filing of the petitions for each Bankruptcy Case described above. The Bankruptcy Cases and the remaining entities managed and controlled by the Receiver are collectively referred to herein as the "Petters Estates"; and

WHEREAS, on February 26, 2009, the Bankruptcy Court approved the appointment of Douglas A. Kelley, Esq. (the "Trustee"), as the Chapter 11 trustee for all of the Bankruptcy Cases; and

WHEREAS, prior to the Petition Date, PCI made certain transfers to the Transferee that may be subject to an action or proceeding under sections 544, 547, 548 and 550 of title 11 of the United States Code (the "Bankruptcy Code") or under other relevant state or federal law, which may be avoidable by either the Trustee or the Receiver, as the case may be; and

WHEREAS, the Trustee has commenced an adversary proceeding against the Transferee. The action *Douglas A. Kelley, in his capacity as the Chapter 11 Trustee of Debtor Petters Company, Inc. v. Lac Courte Oreilles Band of Lake Superior Chippewa Indians of Wisconsin,*

United States Bankruptcy Court, District of Minnesota, Case No. 10-04388 (Kishel, Judge) and is referred to herein as the "Avoidance Action"; and

WHEREAS, in the Avoidance Action the Trustee sought to recover Transfers from PCI to the Transferee of $1,678,355.00, including $87,555.00 that the Trustee asserts are False Profits and the Transferee asserts is interest; and

WHEREAS, after commencing the Avoidance Action, the Trustee discovered additional Transfers from PCI to the Transferee in the amount of at least $2,502,000.00 including $502,000.00 that the Trustee asserts are False Profits and the Transferee asserts is interest; and

WHEREAS, the Transferee has asserted a number of defenses to the claims asserted in the Avoidance Action, including complete defenses of sovereign immunity and statute of limitations; and

WHEREAS, the Trustee, its counsel, the Transferee, and its counsel, have engaged in extensive settlement negotiations since December 2010, and the Transferee has provided financial information to the Trustee regarding its ability to pay a judgment; and

WHEREAS, the Transferee, without admitting liability, wishes to settle all disputes with the Trustee and the Receiver; and

WHEREAS, resolution of the Avoidance Action by this Agreement is subject to the approval by the Bankruptcy Court; and

WHEREAS, the Parties wish to settle the Avoidance Action, without the expense, delay and uncertainty of litigation;

NOW, THEREFORE, in consideration of the foregoing, of the mutual covenants, promises and undertakings set forth herein, and for good and valuable consideration, the mutual receipt and sufficiency of which are hereby acknowledged, and subject to the approval the District Court and the Bankruptcy Court, the Parties agree as follows:

## **Agreement**

The Recitals set forth above are incorporated herein by reference and agreed to as if fully set forth herein.

1.      Payment. The Transferee shall, by wire transfer or check, deliver to the Trustee payment in the amount of One Hundred Thousand Dollars ($100,000.00) (the "Settlement Payment") in full and final settlement of all claims relating to the Avoidance Action. The Settlement Payment must be received within 10 days of the date on which this Agreement becomes effective and binding on the Parties under paragraph 4. Upon receipt of the full Settlement Payment by the Trustee, the releases contained in paragraphs 2 and 3 shall become effective without further action by any of the Parties.

2.     Release by the Receiver and the Trustee.   In consideration for the covenants and agreements in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, upon receipt of the indefeasible payment of the Settlement Payment, the Receiver and the Trustee will be deemed to have released, remised and forever discharged the Transferee, any officers, directors, managers, members, agents, attorneys, advisors, consultants, or employees, from any and all past, present or future claims or causes of action (including any suit, petition, demand or other claims in law, equity or arbitration) of whatever kind, nature or description, direct or indirect, in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary duty or otherwise (including attorney's fees, costs or disbursements), known or unknown, that are, have been, could have been or might in the future be asserted by the Receiver or the Trustee, on behalf of the Petters Estates against the Transferee, including any that are or could have been asserted in the Avoidance Action, excepting, however, any claims arising out of this Agreement.

3.     Release by the Released Parties. In consideration for the covenants and agreements in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Transferee hereby releases, remises and forever discharges the Receiver, the Trustee, the Petters Estates and their agents, attorneys, advisors, consultants, and employees from any and all past, present or future claims or causes of action, (including any suit, petition, demand or other claims in law, equity or arbitration) of whatever kind, nature or description, direct or indirect, in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary duty or otherwise (including attorney's fees, costs or disbursements), known or unknown, that are, have been, could have been or might in the future be asserted by the Transferee, excepting, however, any claims arising out of this Agreement.

4.     Court Approval; Effective Date; Termination.   This Agreement is subject to, and shall become effective and binding on the Parties upon, and only upon, the approval of the District Court and the Bankruptcy Court of this Agreement.  The Parties shall use their best efforts to obtain such approval as promptly as practicable after the date of this Agreement.

  a.  In the event no objections are filed to any motion of the Receiver or the Trustee to approve the Agreement or such objections are consensually resolved at or before any hearing seeking approval of the Agreement, the Agreement will become effective and binding on the date which is the later of (1) the date on which the District Court enters an Order approving the Agreement, or (2) . the date on which the Bankruptcy Court enters an Order approving the Agreement.

  b.  In the event objections to any motion of the Receiver or the Trustee to approve the Agreement are filed, and either the District Court or the Bankruptcy Court, or both, overrules such objections, the Agreement will become effective and binding on the date which is the later of (1) the date on which the District Court enters a final and non-appealable Order approving the Agreement, or (2) the date on which the Bankruptcy Court enters a final and non-appealable Order approving the Agreement.

3

If this Agreement does not become effective, (a) the Agreement shall terminate and be null and void for all purposes, (b) all of the statements, admissions, consents and agreements contained in the Agreement shall be null and void, and (c) neither the Receiver, the Trustee, nor the Transferee may use or rely on any such statement, admission, consent or agreement in any public statement or litigation involving the Receivership or Bankruptcy Cases, any case or proceeding relating to the Receivership or Bankruptcy Cases, or any case or proceeding relating to Petters or the Petters Estates.

5.    Authority.  The Transferee represents and warrants that as of the date hereof that it has the full power, authority and legal right to execute and deliver, and to perform its respective obligations under this Agreement and has taken all necessary action to authorize the execution and delivery of, and the performance of its respective obligations under, this Agreement.

6.    Dismissal.  Promptly upon receipt of the Settlement Payment, the Trustee will prepare and file appropriate pleadings providing for the dismissal of the Avoidance Action, with prejudice with respect to all claims.

7.    Non-Disparagement.  The Parties agree to not make any false and disparaging statements regarding any Party to this Agreement concerning this Agreement.

8.    Further Assurances.  The Parties shall execute and deliver any document or instrument reasonably requested by any of them after the date of the Agreement to effectuate the intent of the Agreement.

9.    Entire Agreement.  This Agreement between the Parties constitutes the entire agreement and understanding between and among the Parties and supersedes all prior agreements, representations and understandings concerning the subject matter thereof.

10.    Amendments, Waiver.  This Agreement may not be terminated, amended or modified in any way except in a writing signed by all the Parties.  No waiver of any provision of this Agreement shall be deemed to constitute a waiver of any other provision hereof, whether or not similar, nor shall such waiver constitute a continuing waiver.

11.    Assignability.  No Party hereto may assign its rights under this Agreement without the prior written consent of each of the other Parties hereto.

12.    Successors Bound.  This Agreement shall be binding upon and inure to the benefit of each of the Parties and their successors and permitted assigns.

13.    No Third Party Beneficiary.  The Parties do not intend to confer any benefit by or under this Agreement upon any person or entity other than the Parties hereto and their respective successors and permitted assigns.

14.    No Admission of Liability or Wrongdoing.  By entering into this Agreement, the Transferee does not admit and it expressly denies that it owes any liability to the Receiver, the Trustee, or to any other person, or that it engaged in any wrongdoing.

15. <u>Governing Law; Venue</u>. This Agreement shall be construed under and governed by the laws of the State of Minnesota without regard to the conflicts of law principles of any jurisdiction. Any action brought to enforce any provision of this Agreement shall be brought in a court of competent jurisdiction sitting in Minneapolis, Minnesota, and the Parties hereto hereby consent to the jurisdiction of such courts.

16. <u>Attorneys' Fees</u>. In the event that any action or proceeding is or shall be necessary to enforce the provisions of this Agreement due to a breach thereof, the prevailing party shall be entitled to recover, in addition to the outstanding amounts, reasonable attorneys' fees and costs incurred in connection with such enforcement from the breaching party.

17. <u>Captions and Rules of Construction</u>. The captions in this Agreement are inserted only as a matter of convenience and for reference and do not define, limit or describe the scope of this Agreement or the scope or content of any of its provisions. Any reference in this Agreement to a paragraph is to a paragraph of this Agreement. "Includes" and "including" are not limiting.

18. <u>Counterparts; Electronic Copy of Signatures</u>. This Agreement and attachments may be executed and delivered in any number of counterparts, each of which so executed and delivered shall be deemed to be an original and all of which shall constitute one and the same document. The Parties may evidence their execution of this Agreement by delivery to the other Parties of scanned or faxed copies of their signatures, with the same effect as the delivery of an original signature.

19. <u>Notices</u>. Any notices under this Agreement shall be in writing, shall be effective when received and may be delivered only by hand, by overnight delivery service, by fax or by electronic transmission to:

| If to the Receiver, c/o: | If to the Trustee, c/o: | If to Transferee, c/o: |
|---|---|---|
| Daryle L. Uphoff<br>Lindquist & Vennum<br>4200 IDS Center<br>80 South Eighth Street<br>Minneapolis, MN 55402-2274<br>T: (612) 371-3230<br>F: (612) 371-3207<br>E: duphoff@lindquist.com<br><br>and | Daryle L. Uphoff<br>Lindquist & Vennum<br>4200 IDS Center<br>80 South Eighth Street<br>Minneapolis, MN 55402-2274<br>T: (612) 371-3230<br>F: (612) 371-3207<br>E: duphoff@lindquist.com | Thomas B. Heffelfinger<br>Best & Flanagan<br>225 South Sixth Street<br>Suite 4000<br>Minneapolis, MN 55402<br>T: (612) 349-5657<br>F: (612) 339-5897<br>E: theffelfinger@bestlaw.com |

| | | |
|---|---|---|
| Douglas A. Kelley<br>431 S. Seventh St.<br>Suite 2530<br>Minneapolis, MN 55415<br>T: (612) 371-9090<br>F: (612) 371-0574<br>E: dkelley@kelleywolter.com | | |

20.    <u>Severability</u>.  By execution of this Agreement, the Parties acknowledge that if any of the provisions of paragraphs 1 through 6 of this Agreement shall be found to be invalid or unenforceable for any reason, this Agreement shall be null and void.  Excepting the provisions of paragraphs 1 through 6, if any other provision of this Agreement is found invalid or unenforceable for any reason, such provision may be severed from the remainder of this Agreement and the remaining provisions enforced as written to effectuate the purposes of this Agreement.

*----- Remainder of page left intentionally blank ----*

IN WITNESS HEREOF, the Parties hereto have caused this Agreement to be executed as of the date first written below.


Date: _____    By: _____
                         Douglas A. Kelley
                         431 S. Seventh St.,
                         Suite 2530
                         Minneapolis, MN 55415
                         Telephone: (612) 371-9090
                         **COURT APPOINTED RECEIVER**


Date: _____    By: _____
                         Douglas A. Kelley
                         431 S. Seventh St.,
                         Suite 2530
                         Minneapolis, MN 55415
                         Telephone: (612) 371-9090
                         **CHAPTER 11 TRUSTEE**


Date: _____    By: _____
                         Louis Taylor, Chair
                         Lac Courte Oreilles Tribal Governing Board
                         13394 West Trepania Road
                         Hayward, WI 54843
                         T: (715) 634-8934
                         F: (715) 634-4797

IN WITNESS HEREOF, the Parties hereto have caused this Agreement to be executed as of the date first written below.

Date: **5|6|11**          By: _Douglas A. Kelley_

Douglas A. Kelley
431 S. Seventh St.,
Suite 2530
Minneapolis, MN 55415
Telephone: (612) 371-9090
**COURT APPOINTED RECEIVER**

Date: **5|6|11**          By: _Douglas A. Kelley_

Douglas A. Kelley
431 S. Seventh St.,
Suite 2530
Minneapolis, MN 55415
Telephone: (612) 371-9090
**CHAPTER 11 TRUSTEE**

Date: _____          By: _____

Louis Taylor, Chair
Lac Courte Oreilles Tribal Governing Board
13394 West Trepania Road
Hayward, WI 54843
T: (715) 634-8934
F: (715) 634-4797

DOCS-#3374321-v4

7

# EXHIBIT E

## Settlement Agreement and Mutual Release

This Settlement Agreement and Mutual Release (the "Agreement") is made and entered effective as of the date indicated below, by and among Douglas A. Kelley, in his capacity as Trustee for Petters Company, Inc, defined below, and Rudman Partnership, a general partnership (the "Transferee") (each of the Trustee and Transferee, a "Party" or "Parties").

## Recitals

WHEREAS, pursuant to an Order entered on October 6, 2008 and as amended on December 8, 2008, the Honorable Ann Montgomery, United States District Judge for the District of Minnesota (the "District Court") appointed Douglas A. Kelley as receiver (the "Receiver") for, among others, Thomas J. Petters ("Petters"), Petters Company, Inc., Petters Group Worldwide, LLC and any affiliates, subsidiaries, divisions, successors, or assigns owned 100% or controlled by the foregoing. *United States v. Petters, et al.,* United States District Court, District of Minnesota, Case No. 0:08-cv-05348 Doc # 12, 127 (the "Receivership Order"); and

WHEREAS, pursuant to the authority granted to him under the Receivership Order, the Receiver filed petitions in the United States Bankruptcy Court for the District of Minnesota (the "Bankruptcy Court") commencing the Chapter 11 case of Petters Company, Inc. ("PCI" or the "PCI Estate") and Petters Group Worldwide, LLC ("PGW" or the "PGW Estate") on October 11, 2008 (the "Petition Date"). The Receiver also commenced the Chapter 11 cases of PC Funding, LLC, Thousand Lakes, LLC, SPF Funding, LLC, PL Ltd., Inc., Edge One, LLC, MGC Finance, LLC, PAC Funding, LLC, and Palm Beach Finance Holdings, Inc. Each of the Chapter 11 cases are referred to as a "Bankruptcy Estate" and are referred to collectively as the "Bankruptcy Estates". The Bankruptcy Estates are jointly administered under *In re Petters Company, Inc., et al.,* United States Bankruptcy Court, District of Minnesota, Case No. 08-45257 (Kishel, Judge); and

WHEREAS, on February 26, 2009, the Bankruptcy Court approved the appointment of Douglas A. Kelley, Esq. (the "Trustee"), as the Chapter 11 trustee for the Bankruptcy Estates; and

WHEREAS, on September 14, 2010, the Bankruptcy Court entered an Order approving a Coordination Agreement among the United States of America, the Receiver, the Trustee, and the Chapter 7 Trustee of Polaroid Corporation, et al. n/k/a PBE Corporation, et al. Pursuant to the Coordination Agreement, claims against professionals, current or former employees, and actions for the return of false profits or other avoidance claims, including principal from a purported loan to, or investment in any entity contained in the Bankruptcy Estates will be commenced by the Trustee and submitted in the Bankruptcy Court administering the Bankruptcy Estates; and

WHEREAS, prior to the Petition Date, PCI made certain transfers to Lancelot Investors Fund, L.P ("Lancelot") that, pursuant to sections 544, 547, 548 and 550 of title 11 of the United States Code (the "Bankruptcy Code") or under other relevant state or federal law, may be avoidable by the Trustee; and

WHEREAS, on October 20, 2008, Lancelot and affiliated entities filed petitions for relief under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Illinois, jointly administered as *In re Lancelot Investors Fund, L.P., et al,* Case No.

08-B-28228 (JPC) (the "Lancelot Bankruptcy Case") for which Ronald R. Peterson is the duly appointed Chapter 7 Trustee (the "Lancelot Trustee"); and

WHEREAS, the Trustee has asserted claims against Lancelot in the Lancelot Bankruptcy Case seeking to recover fraudulent and preferential transfers made by PCI to Lancelot pursuant to 11 U.S.C. §§ 544, 547, 548 and 550 and is referred to herein as the "PCI's Lancelot Claims"; and

WHEREAS, the Transferee was an investor in Lancelot and received certain transfers from Lancelot (the "Transfers") that the Lancelot Trustee seeks to avoid and recover pursuant to 11 U.S.C. §§ 544, 547, 548 and 550 and is referred to herein as the "Lancelot Avoidance Action"; and

WHEREAS, the Transferee has agreed to the terms of a settlement with the Lancelot Trustee to resolve all disputes with the Lancelot Trustee relating to the Lancelot Avoidance Action, pursuant to which the Transferee will return certain funds to the Lancelot estate and will receive a release of all claims by the Lancelot Trustee; and

WHEREAS, the Trustee has potential claims against the Transferee, as the immediate or mediate transferee of transfers made to Lancelot, to recover fraudulent and preferential transfers made by PCI to Lancelot pursuant to 11 U.S.C. §§ 544, 547, 548 and 550 and is referred to herein as the "Rudman Partnership Avoidance Claims"; and

WHEREAS, the Transferee, without admitting liability, wishes to settle all disputes with the Trustee; and

WHEREAS, resolution of the Rudman Partnership Avoidance Claims by this Agreement is subject to the approval by the Bankruptcy Court; and

WHEREAS, the Parties wish to settle the Rudman Partnership Avoidance Claims, without the expense, delay and uncertainty of litigation; and

NOW, THEREFORE, in consideration of the foregoing, of the mutual covenants, promises and undertakings set forth herein, and for good and valuable consideration, the mutual receipt and sufficiency of which are hereby acknowledged, and subject to the approval the Bankruptcy Court, the Parties agree as follows:

### Agreement

The Recitals set forth above are incorporated herein by reference and agreed to as if fully set forth herein.

1. _Payment._ The Transferee shall, by wire transfer or check, deliver to the Trustee payment in the amount of Thirty-Five Thousand Dollars ($35,000.00) (the "Settlement Payment") in full and final settlement of all claims relating to the Rudman Partnership Avoidance Claims. The Settlement Payment must be received by the Trustee on the date on which the Parties execute this Agreement. The Settlement Payment will be held in trust by the Trustee until the date on which this Agreement becomes effective and binding on the Parties under paragraph 4.

2.   <u>Release by the Trustee</u>.  In consideration for the covenants and agreements in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, upon receipt of the indefeasible payment of the Settlement Payment, the Trustee will be deemed to have released, remised and forever discharged the Transferee from any and all past, present or future claims or causes of action (including any suit, petition, demand or other claims in law, equity or arbitration) of whatever kind, nature or description, direct or indirect, in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary duty or otherwise (including attorney's fees, costs or disbursements), known or unknown, that are, have been, could have been or might in the future be asserted by the Trustee, on behalf of the Bankruptcy Estates, against the Transferee, and that are based on, arise out of or are related to the Rudman Partnership Avoidance Claims, excepting, however, any claims arising out of this Agreement.

3.   <u>Release by the Transferee</u>.  In consideration for the covenants and agreements in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Transferee hereby releases, remises and forever discharges the Trustee, the Bankruptcy Estates and their agents, attorneys, advisors, consultants, and employees from any and all past, present or future claims or causes of action, (including any suit, petition, demand or other claims in law, equity or arbitration) of whatever kind, nature or description, direct or indirect, in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary duty or otherwise (including attorney's fees, costs or disbursements), known or unknown, that are, have been, could have been or might in the future be asserted by the Transferee, excepting, however, any claims arising out of this Agreement.  The Transferee shall have no claim against the Bankruptcy Estates, and waives any claim under Section 502(h) of the Bankruptcy Code.

4.   <u>Court Approval; Effective Date; Termination</u>.  This Agreement is subject to, and shall become effective and binding on the Parties upon, and only upon, the date on which the Bankruptcy Court enters a final and non-appealable Order approving the Agreement. The Parties shall use their best efforts to obtain such approval as promptly as practicable after the date of this Agreement. If this Agreement does not become effective, (a) the Agreement shall terminate and be null and void for all purposes, (b) all of the statements, admissions, consents and agreements contained in the Agreement shall be null and void, and (c) neither the Trustee, nor the Transferee may use or rely on any such statement, admission, consent or agreement in any public statement or litigation involving the Bankruptcy Estates, any case or proceeding relating to the Bankruptcy Estates.

5.   <u>Authority</u>.  The Transferee represents and warrants that as of the date hereof that it has the full power, authority and legal right to execute and deliver, and to perform its respective obligations under this Agreement and has taken all necessary action to authorize the execution and delivery of, and the performance of its respective obligations under, this Agreement.

6.   <u>Non-Disparagement</u>.  The Parties agree to not make any false and disparaging statements regarding any Party to this Agreement concerning this Agreement.

7.     _Further Assurances_.  The Parties shall execute and deliver any document or instrument reasonably requested by any of them after the date of the Agreement to effectuate the intent of the Agreement.

8.     _Entire Agreement_.  This Agreement between the Parties constitutes the entire agreement and understanding between and among the Parties and supersedes all prior agreements, representations and understandings concerning the subject matter thereof.

9.     _Amendments, Waiver_.  This Agreement may not be terminated, amended or modified in any way except in a writing signed by all the Parties.  No waiver of any provision of this Agreement shall be deemed to constitute a waiver of any other provision hereof, whether or not similar, nor shall such waiver constitute a continuing waiver.

10.    _Assignability_.  No Party hereto may assign its rights under this Agreement without the prior written consent of each of the other Parties hereto.

11.    _Successors Bound_.  This Agreement shall be binding upon and inure to the benefit of each of the Parties and their successors and permitted assigns.

12.    _No Third Party Beneficiary_.  The Parties do not intend to confer any benefit by or under this Agreement upon any person or entity other than the Parties hereto and their respective successors and permitted assigns.

13.    _No Admission of Liability or Wrongdoing_.  By entering into this Agreement, the Transferee does not admit and it expressly denies that it owes any liability to the Trustee, or to any other person, or that it engaged in any wrongdoing.

14.    _Governing Law_.  The terms, conditions and provisions of this Agreement shall be governed by, and construed in accordance with, the United States Bankruptcy Code and to the extent applicable, the internal laws of the State of Minnesota, without giving consideration to any other state's conflict of law provisions.

15.    _Jurisdiction_.  Following Bankruptcy Court approval of this Agreement, the Bankruptcy Court will retain the jurisdiction and authority to enforce this Agreement, and to resolve any disputes arising among the Parties hereto in connection with its interpretation and implementation.

16.    _Attorneys' Fees_.  In the event that any action or proceeding is or shall be necessary to enforce the provisions of this Agreement due to a breach thereof, the prevailing Party shall be entitled to recover, in addition to the outstanding amounts, reasonable attorneys' fees and costs incurred in connection with such enforcement from the breaching Party.

17.    _Captions and Rules of Construction_.  The captions in this Agreement are inserted only as a matter of convenience and for reference and do not define, limit or describe the scope of this Agreement or the scope or content of any of its provisions. Any reference in this Agreement to a paragraph is to a paragraph of this Agreement. "Includes" and "including" are not limiting.

18.    Notices.  Any notices under this Agreement shall be in writing, shall be effective when received and may be delivered only by hand, by overnight delivery service, by fax, or by electronic transmission to:

| If to the Trustee, c/o: | If to Transferee, c/o: |
|---|---|
| Jeffrey D. Smith | Scott J. Bakal |
| Lindquist & Vennum | Thomas C. Wolford |
| 4200 IDS Center | Neal, Gerber & Eisenberg, LLP |
| 80 South Eighth Street | Two North LaSalle Street |
| Minneapolis, MN 55402-2274 | Suite 1700 |
| T: (612) 752-6982 | Chicago, IL 60602 |
| F: (612) 371-3207 | T: (312) 269-8000 |
| E: jsmith@lindquist.com | F: (312) 269-1747 |
| | E: sbakal@ngelaw.com |
| | twolford@ngelaw.com |

19.    Counterparts; Electronic Copy of Signatures.  This Agreement and attachments may be executed and delivered in any number of counterparts, each of which so executed and delivered shall be deemed to be an original and all of which shall constitute one and the same document. The Parties may evidence their execution of this Agreement by delivery to the other Parties of scanned or faxed copies of their signatures, with the same effect as the delivery of an original signature.

----- *Remainder of page left intentionally blank* ----

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as of the date first written below.

Date: _____   By:_____
                                    Douglas A. Kelley, as
                                    **COURT-APPOINTED CHAPTER 11
                                    TRUSTEE FOR PETTERS COMPANY,
                                    INC.**

Date: April 8, 2011               **RUDMAN PARTNERSHIP**

                                  By:_____
                                     Keith Rudman
                                     Its: Managing Partner

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as of the date first written below.

Date: _May 3, 2011_          By: _Douglas A. Kelley_
                             Douglas A. Kelley, as
                             **COURT-APPOINTED CHAPTER 11
                             TRUSTEE FOR PETTERS COMPANY,
                             INC.**


Date:                        **RUDMAN PARTNERSHIP**

                             By:_____
                                Keith Rudman
                                Its: Managing Partner

# EXHIBIT F

## Settlement Agreement and Mutual Release

This Settlement Agreement and Mutual Release (the "Agreement") is made and entered effective as of the date indicated below, by and among DOUGLAS A. KELLEY, in his capacity as Trustee, defined below, and MINNESOTA PUBLIC RADIO, including all of its affiliates, (the "Transferee" or "MPR") (each of the Trustee and Transferee, a "Party" or "Parties").

### Recitals

WHEREAS, in an Order entered on October 6, 2008 and as amended on December 8, 2008, the Honorable Ann Montgomery, United States District Judge for the District of Minnesota (the "District Court") appointed Douglas A. Kelley as receiver (the "Receiver") for, among others, Thomas J. Petters ("Petters"), Petters Company, Inc., Petters Group Worldwide, LLC and any affiliates, subsidiaries, divisions, successors, or assigns owned 100% or controlled by the foregoing including, but not limited to, the Thomas J. Petters Family Foundation (the "Foundation"). *United States v. Petters, et al.*, Case No. 0:08-cv-05348 Doc # 12, 127 (the "Receivership Order");

WHEREAS, pursuant to the authority granted to him under the Receivership Order, the Receiver filed petitions in the United States Bankruptcy Court for the District of Minnesota (the "Bankruptcy Court") commencing the Chapter 11 cases of Petters Company, Inc. ("PCI" or the "PCI Estate") and Petters Group Worldwide, LLC ("PGW" or the "PGW Estate") on October 11, 2008. Petitions commencing the Chapter 11 cases of PC Funding, Thousand Lakes, SPF Funding, PL Ltd., Edge One and MGC Finance were filed on October 15, 2008. The petition commencing the Chapter 11 case of PAC Funding was filed on October 17, 2008. The petition commencing the Chapter 11 case of Palm Beach Finance was filed on October 19, 2008 (collectively, the "Bankruptcy Cases"), with the Bankruptcy Cases being jointly administered under *In re Petters Company, Inc., et al.*, Case No. 08-45257. "Petition Date" shall refer to the date of filing of the petitions for each entity described above. The Bankruptcy Cases and the remaining entities managed and controlled by the Receiver are collectively referred to herein as the "Petters Estates";

WHEREAS, On February 26, 2009, the Bankruptcy Court approved the Office of the United States Trustee for the District of Minnesota's appointment of Douglas A. Kelley, Esq. (the "Trustee"), as the Chapter 11 trustee for all Chapter 11 debtors in the Bankruptcy Estate;

WHEREAS, prior to the Petition Date, PCI made a certain transfer to the Transferee that may be subject to an action or proceeding under either Sections 544, 545, 547, 548, 549 or 553 of Title 11 of the United States Code (the "Bankruptcy Code"), under the Minnesota Uniform Fraudulent Transfer Act, Minn. Stat. 513.41 *et seq.*, or under other relevant state or federal law which may be avoidable by the Trustee;

WHEREAS, on or about February 2, 2004, PCI made a transfer totaling $3,500.00 to Transferee (the "Avoidable Transfer");

WHEREAS, the Transferee, without admitting liability, wishes to settle all disputes with the Trustee;

1

WHEREAS, any resolution of the Avoidable Transfer by this Agreement is subject to the approval of the Bankruptcy Court;

WHEREAS, the Parties wish to settle their disputes about the matters described above without the expense, delay and uncertainty of litigation;

NOW, THEREFORE, in consideration of the foregoing, of the mutual covenants, promises and undertakings set forth herein, and for good and valuable consideration, the mutual receipt and sufficiency of which are hereby acknowledged, and subject to the approval of the Bankruptcy Court, the Trustee and Transferee agree as follows:

### Agreement

The Recitals set forth above are incorporated herein by reference and agreed to as if fully set forth herein.

1.    Payment. The Transferee shall, by wire transfer or check, deliver to the Trustee payment in the amount of $2,500.00 (the "Settlement Payment") in full and final settlement of all claims relating to the Avoidable Transfer.  The Settlement Payment must be received within 10 days after the date on which this Agreement becomes effective and binding on the Parties under paragraph 4.  Upon receipt of the full Settlement Payment by the Trustee, the releases contained in paragraphs 2 and 3 shall become effective without further action by any of the Parties.  The Trustee specifically reserves the right to reallocate such funds at a later date to the extent permitted by law, agreement, or by court order.

2.    Release by the Trustee.  In consideration for the covenants and agreements in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, upon receipt of the indefeasible payment of the Settlement Payment, the Trustee will be deemed to have released, remised and forever discharged the Transferee, its officers, directors, employees, volunteers, and agents from any and all past, present or future claims or causes of action (including any suit, petition, demand or other claims in law, equity or arbitration) of whatever kind, nature or description, direct or indirect, in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary duty or otherwise (including attorney's fees, costs or disbursements), known or unknown, that are, have been, could have been or might in the future be asserted by the Trustee, on behalf of PCI against the Transferee and that are based on or arise out of the Avoidable Transfer, except claims arising out of this Agreement.

3.    Release by the Transferee. In consideration for the covenants and agreements in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Transferee hereby releases, remises and forever discharges the Trustee and the Petters Estates from any and all past, present or future claims or causes of action, including, without limitation, the claims compromised in this Agreement, (including any suit, petition, demand or other claims in law, equity or arbitration) of whatever kind, nature or description, direct or indirect, in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability or otherwise, based on strict liability, negligence, gross negligence,

2

fraud, breach of fiduciary duty or otherwise (including attorney's fees, costs or disbursements), known or unknown, that are, have been, could have been or might in the future be asserted by the Transferee and that are based on or arise out of the Avoidable Transfer, except claims arising out of this Agreement.

4.      Court Approval; Effective Date; Termination.  This Agreement is subject to, and shall become effective and binding on the Parties upon and only upon, the approval of the Bankruptcy Court of this Agreement.  The Trustee shall use his best efforts to obtain such approval as promptly as practicable after the date of this Agreement.

     a.    In the event no objections are filed to any motion of the Trustee to approve the Agreement or such objections are consensually resolved at or before any hearing seeking approval of the Agreement, the Agreement will become effective and binding on the date which is the later of the date on which the Bankruptcy Court enters an Order approving the Agreement.

     b.    In the event objections to any motion of the Trustee to approve the Agreement are filed and either the District Court or the Bankruptcy Court, or both, overrule such objections, the Agreement will become effective and binding on the date on which the Bankruptcy Court enters a final and non-appealable Order approving the Agreement.

If this Agreement does not become effective, (a) the Agreement (other than this paragraph and paragraphs 6, 13, 14 and 15) shall terminate and be null and void  for all purposes, (b) all of the statements, admissions, consents and agreements contained in the Agreement (other than this paragraph and paragraphs 6, 13, 14 and 15) shall be null and void, and (c) neither the Trustee nor the Transferee may use or rely on any such statement, admission, consent or agreement in any public statement or litigation involving the Bankruptcy Cases, any case or proceeding relating to the Bankruptcy Cases or any case or proceeding relating to Petters or the Petters Estates.

5.      Authority.  The Transferee represents and warrants that as of the date hereof that it has the full power, authority and legal right to execute and deliver, and to perform its respective obligations under this Agreement and has taken all necessary action to authorize the execution and delivery of, and the performance of its respective obligations under this Agreement.

6.      Statutes of Limitation and Repose.  The Parties agree that all statutes of limitations and statutes of repose that are applicable to any and all of the Avoidable Transfer shall be tolled and suspended until the Settlement Payment has been received by the Trustee and has cleared the banking system, or if this Agreement is not approved by a final and non-appealable order, until the later of (a) any applicable statutes of limitation or repose limitations, or (b) 120 days following a final and non-appealable  order denying approval of the Agreement.

7.      No Claims.  Consistent with the releases contained within paragraphs 2 and 3 of this Agreement, the Parties covenant and agree not to bring any action, claim, litigation or other proceeding against the other, directly or indirectly regarding or relating to the Avoidable Transfer, and the Transferee further covenants and agrees that this Agreement is a bar to any such action, claim, litigation or other proceeding, including, but not limited to, the assertion of

any claim in the Bankruptcy Cases or in the District Court.

8.      Dismissal.  Promptly upon receipt of the Settlement Payment, the Trustee will prepare and file appropriate pleadings providing for the dismissal of the Complaint, if any, with prejudice.

9.      Further Assurances.  The Parties shall execute and deliver any document or instrument reasonably requested by any of them after the date of the Agreement to effectuate the intent of the Agreement.

10.     Entire Agreement.  This Agreement between the Parties constitutes the entire agreement and understanding between and among the Parties and supersedes all prior agreements, representations and understandings concerning the subject matter thereof.

11.     Amendments, Waiver.  This Agreement may not be terminated, amended or modified in any way except in a writing signed by all the Parties.  No waiver of any provision of this Agreement shall be deemed to constitute a waiver of any other provision hereof, whether or not similar, nor shall such waiver constitute a continuing waiver.

12.     Assignability.  No Party hereto may assign its rights under this Agreement without the prior written consent of each of the other Parties hereto.

13.     Successors Bound.  This Agreement shall be binding upon and inure to the benefit of each of the Parties and their successors and permitted assigns.

14.     No Third Party Beneficiary.  The Parties do not intend to confer any benefit by or under this Agreement upon any person or entity other than the Parties hereto and their respective successors and permitted assigns.

15.     No Admission of Liability or Wrongdoing.  By entering into this Agreement, the Transferee does not admit and it expressly denies that it owes any liability to the Trustee, or to any other person or that it engaged in any wrongdoing.

16.     Governing Law; Venue.  This Agreement shall be construed under and governed by the laws of the State of Minnesota without regard to the conflicts of law principles of any jurisdiction.  Any action brought to enforce any provision of this Agreement shall be brought in a court of competent jurisdiction sitting in Minneapolis, Minnesota, and the Parties hereto hereby consent to the jurisdiction of such courts.

17.     Attorneys' Fees.  In the event that any action or proceeding is or shall be necessary to enforce the provisions of this Agreement due to a breach thereof, the prevailing party shall be entitled to recover, in addition to the outstanding amounts, reasonable attorneys' fees and costs incurred in connection with such enforcement from the breaching party.

18.     Captions and Rules of Construction.  The captions in this Agreement are inserted only as a matter of convenience and for reference and do not define, limit or describe the scope of this

Agreement or the scope or content of any of its provisions. Any reference in this Agreement to a paragraph is to a paragraph of this Agreement. "Includes" and "including" are not limiting.

19.     Counterparts; Electronic Copy of Signatures.  This Agreement and attachments may be executed and delivered in any number of counterparts, each of which so executed and delivered shall be deemed to be an original and all of which shall constitute one and the same document. The Parties may evidence their execution of this Agreement by delivery to the other Parties of scanned or faxed copies of their signatures, with the same effect as the delivery of an original signature.

20.     Notices.  Any notices under this Agreement shall be in writing, shall be effective when received and may be delivered only by hand, by overnight delivery service, by fax or by electronic transmission to:

**If to the Trustee, c/o:**

Steven E. Wolter
Kelley, Wolter & Scott
431 South Seventh Street, Ste 2530
Minneapolis, MN 55415
Telephone: 612-371-9090
Email: swolter@kelleywolter.com

**If to Transferee, c/o:**

Ms. Mitzi T Gramling
Associate General Counsel
Minnesota Public Radio
480 Cedar Street
St. Paul, MN 55101
E-mail: mgramling@americanpublicmedia.org

21.     Severability.  By execution of this Agreement, the Parties acknowledge that if any of the provisions of paragraphs 1 through 6 of this Agreement shall be found to be invalid or unenforceable for any reason, this Agreement shall be null and void. Excepting the provisions of paragraphs 1 through 6, if any other provision of this Agreement is found invalid or unenforceable for any reason, such provision may be severed from the remainder of this Agreement and the remaining provisions enforced as written to effectuate the purposes of this Agreement.

IN WITNESS HEREOF, the Parties hereto have caused this Agreement to be executed as of the date first written below.

Date:                   By:    _____
                               Douglas A. Kelley
                               **CHAPTER 11 TRUSTEE**

Date:                   By:    _____
                               Signature
                               Print Name:   THOMAS J KIGIN
                               Print Title:   EVP.
                               **MINNESOTA PUBLIC RADIO**

6

# EXHIBIT G

## Settlement Agreement and Mutual Release

This Settlement Agreement and Mutual Release (the "Agreement") is made and entered effective as of the date indicated below, by and among DOUGLAS A. KELLEY, in his capacity as a Receiver and a Trustee, defined below, and URBAN VENTURES LEADERSHIP FOUNDATION, including all of its Chapters and affiliates, (the "Transferee") (each of the Trustee, Receiver, and Transferee, a "Party" or "Parties").

## Recitals

WHEREAS, in an Order entered on October 6, 2008 and as amended on December 8, 2008, the Honorable Ann Montgomery, United States District Judge for the District of Minnesota (the "District Court") appointed Douglas A. Kelley as receiver (the "Receiver") for, among others, Thomas J. Petters ("Petters"), Petters Company, Inc., Petters Group Worldwide, LLC and any affiliates, subsidiaries, divisions, successors, or assigns owned 100% or controlled by the foregoing including, but not limited to, the Thomas J. Petters Family Foundation (the "Foundation").  *United States v. Petters, et al.*, Case No. 0:08-cv-05348 Doc # 12, 127 (the "Receivership Order");

WHEREAS, pursuant to the authority granted to him under the Receivership Order, the Receiver filed petitions in the United States Bankruptcy Court for the District of Minnesota (the "Bankruptcy Court") commencing the Chapter 11 cases of Petters Company, Inc. ("PCI" or the "PCI Estate") and Petters Group Worldwide, LLC ("PGW" or the "PGW Estate") on October 11, 2008.  Petitions commencing the Chapter 11 cases of PC Funding, Thousand Lakes, SPF Funding, PL Ltd., Edge One and MGC Finance were filed on October 15, 2008.  The petition commencing the Chapter 11 case of PAC Funding was filed on October 17, 2008.  The petition commencing the Chapter 11 case of Palm Beach Finance was filed on October 19, 2008 (collectively, the "Bankruptcy Cases"), with the Bankruptcy Cases being jointly administered under *In re Petters Company, Inc., et al.*, Case No. 08-45257.  "Petition Date" shall refer to the date of filing of the petitions for each entity described above.  The Bankruptcy Cases and the remaining entities managed and controlled by the Receiver are collectively referred to herein as the "Petters Estates";

WHEREAS, On February 26, 2009, the Bankruptcy Court approved the Office of the United States Trustee for the District of Minnesota's appointment of Douglas A. Kelley, Esq. (the "Trustee"), as the Chapter 11 trustee for all Chapter 11 debtors in the Bankruptcy Estate;

WHEREAS, prior to the Petition Date, Thomas J. Petters, Thomas J. Petters Family Foundation, and PGW,  made certain transfers to the Transferee that may be subject to an action or proceeding under either sections 544, 545, 547, 548, 549 or 553 of title 11 of the United States Code (the "Bankruptcy Code"), under the Minnesota Uniform Fraudulent Transfer Act, Minn. Stat.  513.41  *et  seq.*, or under other relevant state or federal law which may be avoidable by either the Trustee or the Receiver, as the case may be;

1

WHEREAS, during the period beginning on or about August 26, 2003 and ending on or about January 7, 2005, Thomas J. Petters, Thomas J. Petters Family Foundation, PCI, and PGW made transfers totaling $12,325.00 to the Transferee as set forth on Exhibit A (the "Avoidable Transfers");

WHEREAS, the Transferee, without admitting liability, wishes to settle all disputes with the Trustee and the Receiver;

WHEREAS, any resolution of the Avoidable Transfers by this Agreement is subject to the approval by the Bankruptcy Court;

WHEREAS, the Parties wish to settle their disputes about the matters described above without the expense, delay and uncertainty of litigation;

NOW, THEREFORE, in consideration of the foregoing, of the mutual covenants, promises and undertakings set forth herein, and for good and valuable consideration, the mutual receipt and sufficiency of which are hereby acknowledged, and subject to the approval of both the District Court and the Bankruptcy Court, the Trustee, and Transferee agree as follows:

## **Agreement**

The Recitals set forth above are incorporated herein by reference and agreed to as if fully set forth herein.

1. Payment. The Transferee shall, by wire transfer or check, deliver to the Trustee payment in the amount of $5,500.00 and shall deliver to the Receiver payment in the amount of $1,325.00 (the "Settlement Payment") in full and final settlement of all claims relating to the Avoidable Transfers as set forth on Exhibit A. Each Settlement Payment must be received within 10 days after the date on which this Agreement becomes effective and binding on the Parties under paragraph 4. Upon receipt of each Settlement Payment by the Receiver and the Trustee, the releases contained in paragraphs 2 and 3 shall become effective without further action by any of the Parties.

2. Release by the Receiver and the Trustee. In consideration for the covenants and agreements in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, upon receipt of the indefeasible payment of the Settlement Payment, the Receiver and the Trustee will be deemed to have released, remised and forever discharged the Transferee, its officers, directors, employees, volunteers, and agents from any and all past, present or future claims or causes of action (including any suit, petition, demand or other claims in law, equity or arbitration) of whatever kind, nature or description, direct or indirect, in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary duty or otherwise (including attorney's fees, costs or disbursements), known or unknown, that are, have been, could have been or might in the future be asserted by the Receiver or the Trustee, on behalf of Thomas J. Petters, Thomas J. Petters Family Foundation, and PGW, against the Transferee and that are based on or arise out of the Avoidable Transfers, except claims arising out of this Agreement.

2

3.      Release by the Transferee. In consideration for the covenants and agreements in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Transferee hereby releases, remises and forever discharges the Receiver, the Trustee and the Petters Estates from any and all past, present or future claims or causes of action, including, without limitation, the claims compromised in this Agreement, (including any suit, petition, demand or other claims in law, equity or arbitration) of whatever kind, nature or description, direct or indirect, in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary duty or otherwise (including attorney's fees, costs or disbursements), known or unknown, that are, have been, could have been or might in the future be asserted by the Transferee and that are based on or arise out of the Avoidable Transfers, except claims arising out of this Agreement.

4.      Court Approval; Effective Date; Termination.  This Agreement is subject to, and shall become effective and binding on the Parties upon and only upon, the approval of the Bankruptcy Court of this Agreement[1].  The Trustee shall use his best efforts to obtain such approval as promptly as practicable after the date of this Agreement.

   a.      In the event no objections are filed to any motion of either the Trustee to approve the Agreement or such objections are consensually resolved at or before any hearing seeking approval of the Agreement, the Agreement will become effective and binding on the date on which the Bankruptcy Court enters an Order approving the Agreement.

   b.      In the event objections to any motion of the Trustee to approve the Agreement are filed and the Bankruptcy Court overrules such objections, the Agreement will become effective and binding on the date the Bankruptcy Court enters a final and non-appealable Order approving the Agreement.

If this Agreement does not become effective, (a) the Agreement (other than this paragraph and paragraphs 6, 13, 14 and 15) shall terminate and be null and void for all purposes, (b) all of the statements, admissions, consents and agreements contained in the Agreement (other than this paragraph and paragraphs 6, 13, 14 and 15) shall be null and void, and (c) neither the Reciever, the Trustee, nor the Transferee may use or rely on any such statement, admission, consent or agreement in any public statement or litigation involving the Bankruptcy Cases, any case or proceeding relating to the Bankruptcy Cases or any case or proceeding relating to Petters or the Petters Estates.

5.      Authority.  The Transferee represents and warrants that as of the date hereof that it has the full power, authority and legal right to execute and deliver, and to perform its respective obligations under this Agreement and has taken all necessary action to authorize the execution and delivery of, and the performance of its respective obligations under, this Agreement.

---

[1] Separate approval by the District Court is unnecessary because the Receiver's claim is satisfied in full.

6.      <u>Statutes of Limitation and Repose</u>.  The Parties agree that all statutes of limitations and statutes of repose that are applicable to any and all of the Avoidable Transfers shall be tolled and suspended until the Settlement Payment has been received by the Receiver and the Trustee and has cleared the banking system, or if this Agreement is not approved by a final and non-appealable order, until the later of (a) any applicable statutes of limitation or repose limitations, or (b) 120 days following a final and non-appealable  order denying approval of the Agreement.

7.      <u>No Claims</u>.  Consistent with the releases contained within paragraphs 2 and 3 of this Agreement, the Parties covenant and agree not to bring any action, claim, litigation or other proceeding against the other, directly or indirectly regarding or relating to the Avoidable Transfers, and the Transferee further covenants and agrees that this Agreement is a bar to any such action, claim, litigation or other proceeding, including, but not limited to, the assertion of any claim in the Bankruptcy Cases or in the District Court.

8.      <u>Dismissal</u>.  Promptly upon receipt of the Settlement Payment, the Trustee will prepare and file appropriate pleadings providing for the dismissal of the Complaint, if any, with prejudice.

9.      <u>Further Assurances</u>.  The Parties shall execute and deliver any document or instrument reasonably requested by any of them after the date of the Agreement to effectuate the intent of the Agreement.

10.      <u>Entire Agreement</u>.  This Agreement between the Parties constitute the entire agreement and understanding between and among the Parties and supersede all prior agreements, representations and understandings concerning the subject matter thereof.

11.      <u>Amendments, Waiver</u>.  This Agreement may not be terminated, amended or modified in any way except in a writing signed by all the Parties.  No waiver of any provision of this Agreement shall be deemed to constitute a waiver of any other provision hereof, whether or not similar, nor shall such waiver constitute a continuing waiver.

12.      <u>Assignability</u>. No Party hereto may assign its rights under this Agreement without the prior written consent of each of the other Parties hereto.

13.      <u>Successors Bound</u>.  This Agreement shall be binding upon and inure to the benefit of each of the Parties and their successors and permitted assigns.

14.      <u>No Third Party Beneficiary</u>.  The Parties do not intend to confer any benefit by or under this Agreement upon any person or entity other than the Parties hereto and their respective successors and permitted assigns.

15.      <u>No Admission of Liability or Wrongdoing</u>.  By entering into this Agreement, the Transferee does not admit and it expressly denies that it owes any liability to the Receiver or the Trustee, or to any other person or that it engaged in any wrongdoing.

4

16.     Governing Law; Venue.  This Agreement shall be construed under and governed by the laws of the State of Minnesota without regard to the conflicts of law principles of any jurisdiction.  Any action brought to enforce any provision of this Agreement shall be brought in a court of competent jurisdiction sitting in Minneapolis, Minnesota, and the Parties hereto hereby consent to the jurisdiction of such courts.

17.     Attorneys' Fees. In the event that any action or proceeding is or shall be necessary to enforce the provisions of this Agreement due to a breach thereof, the prevailing party shall be entitled to recover, in addition to the outstanding amounts, reasonable attorneys' fees and costs incurred in connection with such enforcement from the breaching party.

18.     Captions and Rules of Construction.  The captions in this Agreement are inserted only as a matter of convenience and for reference and do not define, limit or describe the scope of this Agreement or the scope or content of any of its provisions. Any reference in this Agreement  to a paragraph  is  to  a paragraph of this  Agreement.  "Includes"  and  "including" are not limiting.

19.     Counterparts; Electronic Copy of Signatures.  This Agreement and attachments may be executed and delivered in any number of counterparts, each of which so executed and delivered shall be deemed to be an original and all of which shall constitute one and the same document. The Parties may evidence their execution of this Agreement by delivery to the other Parties of scanned or faxed copies of their signatures, with the same effect as  the delivery of an original signature.

20.     Notices.  Any notices under this Agreement shall be in writing, shall be effective when received and may be delivered only by hand, by overnight delivery service, by fax or by electronic transmission to:

**If to the Receiver, c/o:**

Daniel M. Scott
Kelley, Wolter & Scott
431 S. Seventh Street, Suite 2530
Minneapolis, MN 55415
Telephone: 612.371.9090
Email: dscott@kelleywolter.com

**If to the Trustee, c/o:**

Daniel M. Scott
Kelley, Wolter & Scott
431 S. Seventh Street, Suite 2530
Minneapolis, MN 55415
Telephone: 612.371.9090
Email: dscott@kelleywolter.com

**If to Transferee, c/o:**

Leslie Witterschein
**MONROE MOXNESS BERG PA**
8000 Normandale Center Drive, Suite 1000
Minneapolis, MN  55437-1178
Telephone: (952) 885-5999
www.MMBLawFirm.com

21.   <u>Severability</u>.  By execution of this Agreement, the Parties acknowledge that if any of the provisions of paragraphs 1 through 6 of this Agreement shall be found to be invalid or unenforceable  for any reason, this Agreement shall be null and void.  Excepting the provisions of paragraphs 1 through 6, if any other provision of this Agreement is found invalid or unenforceable for any reason, such provision may be severed from the remainder of this Agreement and the remaining provisions enforced as written to effectuate the purposes of this Agreement.

IN WITNESS HEREOF, the Parties hereto have caused this Agreement to be executed as of the date first written below.

Date:                          By: _____
                                   Douglas A. Kelley

                                   431 S. Seventh St.,
                                   Suite 2530
                                   Minneapolis, MN 55415
                                   Telephone:  (612) 371-9090
                                   **COURT APPOINTED RECEIVER**

Date:                          By: _____
                                   Douglas A. Kelley

                                   431 S. Seventh St.,
                                   Suite 2530
                                   Minneapolis, MN 55415
                                   Telephone:  (612) 371-9090
                                   **CHAPTER 11 TRUSTEE**

6

Date: _____ By: _____

Its: _____

Leslie Witterschein
**MONROE MOXNESS BERG PA**
8000 Normandale Center Drive, Suite 1000
Minneapolis, MN  55437-1178
Telephone: (952) 885-5999
www.MMBLawFirm.com
URBAN VENTURES LEADERSHIP FOUNDATION

EXIBIT "A"

| 8/26/2003 | PGW | $10,000 |
|---|---|---|
| 6/21/2004 | Thomas J. Petters Family Foundation | $325 |
| 7/8/2004 | PGW | $1,000 |
| 1/7/2005 | Thomas J. Petters Family Foundation | $1,000 |
|  |  |  |

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | **Jointly Administered under**<br>**Case No. 08-45257** |
| Petters Company, Inc., et al., | Court File No. 08-45257 |
| Debtors. | Court Files No.'s: |
| (includes:<br>Petters Group Worldwide, LLC;<br>PC Funding, LLC;<br>Thousand Lakes, LLC;<br>SPF Funding, LLC;<br>PL Ltd., Inc.;<br>Edge One LLC;<br>MGC Finance, Inc.;<br>PAC Funding, LLC;<br>Palm Beach Finance Holdings, Inc.) | 08-45258 (GFK)<br>08-45326 (GFK)<br>08-45327 (GFK)<br>08-45328 (GFK)<br>08-45329 (GFK)<br>08-45330 (GFK)<br>08-45331 (GFK)<br>08-45371 (GFK)<br>08-45392 (GFK) |
| | Chapter 11 Cases<br>Judge Gregory F. Kishel |

## CERTIFICATE OF SERVICE

Gretchen Luessenheide, of the City of New Hope, County of Hennepin, State of Minnesota, states that on May 31, 2011 she served the following documents:

1. The Trustee's Second Omnibus Notice of Settlement of Avoidance Claims;
2. Memorandum of Law in Support of The Trustee's Second Omnibus Notice of Settlement of Avoidance Claims; and
3. Proposed Order.

upon

| | |
|---|---|
| Arrowhead Capital Management LLC<br>c/o James N. Fry<br>601 Carlson Parkway, Suite 1250<br>Minnetonka, MN 55305 | Rhone Holdings II, Ltd.<br>c/o Thomas K. Cauley, Bryan Krakauer,<br>Brian McAleenan<br>Sidley Austin LLP<br>1 South Dearborn<br>Chicago, IL 60603 |
| Elite Landings, LLC, Petters Aviation LLC<br>PO Box 16352<br>St. Paul, MN 55116-0352 | Matthew A. Feldman, Jessica S. Etra<br>Wilkie Farr & Gallagher, LLP<br>787 7th Avenue<br>New York, NY 10019 |

DOCS-#3464826-v1

| | |
|---|---|
| Huron Consulting Group, Inc.<br>4795 Paysphere Circle<br>Chicago, IL 60674-4795 | Greenwich Insurance Company<br>c/o David M. Gische and Marcus B. Holladay<br>Troutman Sanders LLP<br>401 9th Street NW<br>Washington, DC 20004-1234 |
| Douglas A. Kelley<br>Kelley & Wolter PA<br>Centre Village Offices<br>431 South 7th Street, Suite 2530<br>Minneapolis, MN 55415 | Freestone Low Volatility Partners LP<br>c/o Mark R. Jacobs<br>Pryor Cashman LLP<br>7 Times Square<br>New York, NY 10036-6569 |
| Neal Gerber & Eisenberg LLP<br>C/O Thomas C. Wolford<br>Two North LaSalle Street Suite 1700<br>Chicago, IL 60602 | Steven W. Thomas<br>Thomas Alexander & Forrester LLP<br>14 27th Avenue<br>Venice, CA 90291 |
| Taunton Ventures LP<br>c/o Paul Taunton<br>9980 Deerbrook Drive<br>Chanhassen, MN 55317 | Timothy F Brown<br>Arent Fox LLP<br>1050 Connecticut Ave NW<br>Washington, DC 20036-5339 |
| Kevin J Short<br>150 S. 5th St. Ste 3260<br>Minneapolis, MN 55402 | Matthew J. Flynn<br>Jonathan Hackbarth<br>Quarles & Brady<br>411 E. Wisconsin Ave.<br>Milwaukee, WI 53202 |
| Edward J. Estrada<br>Reed Smith LLP<br>599 Lexington Ave., 22nd Floor<br>New York, NY 10022 | Solomon B. Genet, Edward W. Ostroff,<br>Michael S. Budwick, Jonathan Feldman<br>Meland Russin & Budwick PA<br>200 S. Biscayne Blvd, Ste. 300<br>Miami, FL 33131 |
| Estate of Kenneth R. Cunningham III<br>c/o Mr. Kenneth R. Cunningham, Jr.<br>11 Pinon Woods Drive<br>Sedona, AZ 86351-7918 | Kelly Collins-Cunningham<br>11 Pinon Woods Drive<br>Sedona, AZ 86351-7918 |
| Hugh Hill, Robin E. Keller<br>Hogan Lovellus US LLP<br>875 3rd Avenue<br>New York, NY 10022 | Gary Underdahl<br>ASK Financial<br>2600 Eagan Woods Drive, Suite 400<br>St. Paul, MN 55121 |
| Michael S. McElwee<br>Varnum LLP<br>Bridgewater Place<br>PO Box 352<br>Grand Rapids, MI 49501 | R Brian Shields, James Krause, Michael<br>Gaubert, Lawrence Friedman<br>Friedman & Feiger LLP<br>5301 Spring Valley Rd Suite 200<br>Dallas, TX 75254-2488 |
| Sherri L Toub, Robert J. Lemons<br>Weil Gotshal & Manges LLP<br>767 5th Ave<br>New York, NY 10153 | Deborah M Perry on behalf of Creditor Ark<br>Royal Capital LLC<br>3800 Lincoln Plaza<br>500 North Akard<br>Dallas, TX 75201-3429 |

DOCS-#3464826-v1

| | |
|---|---|
| Trent Tucker Non-Profit Organization<br>4350 Baker Road<br>Suite 400<br>Minneapolis, MN 55343 | Harris L Kay, Jeffry Henderson<br>Henderson & Lyman<br>175 West Jackson Blvd Suite 240<br>Chicago, IL 60604 |
| Martin J Mullen on behalf of Creditor Michael Smith<br>Rowe Allen Mullen LLP<br>4275 Executive Square 11th Floor<br>La Jolla, CA 92037 | Larry Hopfenspriger<br>2025 Nicollet Avenue Sourth<br>Suite 203<br>Minneapolis, MN 55404 |
| J. Richard Rock<br>1154 Nevada Avenue<br>San Jose, CA  95125-3327 | |

via U.S. Mail to the addresses listed above and electronically by Notice of Electronic Filing upon all parties who have requested service in these cases by filing the same via ECF with the Bankruptcy Court in the District of Minnesota.

　　　　　/e/ Gretchen Luessenheide
　　　　Gretchen Luessenheide

3

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:

Petters Company, Inc., et al.,

               Debtors.

(includes:
Petters Group Worldwide, LLC;
PC Funding, LLC;
Thousand Lakes, LLC;
SPF Funding, LLC;
PL Ltd., Inc.;
Edge One LLC;
MGC Finance, Inc.;
PAC Funding, LLC;
Palm Beach Finance Holdings, Inc.)

**Jointly Administered under
Case No. 08-45257**

Court File No. 08-45257

Court Files No.'s:
08-45258 (GFK)
08-45326 (GFK)
08-45327 (GFK)
08-45328 (GFK)
08-45329 (GFK)
08-45330 (GFK)
08-45331 (GFK)
08-45371 (GFK)
08-45392 (GFK)

Chapter 11 Cases
Judge Gregory F. Kishel

## ORDER APPROVING SETTLEMENT AGREEMENTS

This matter came before the court on June 21, 2011, on the motion of Douglas A. Kelley (the "Trustee"), as the Chapter 11 Trustee of the above-captioned bankruptcy estates, to approve Settlement Agreements by and among Douglas A. Kelley, as the Chapter 11 Trustee for Petters Company, Inc., and the following parties: John Kubinski and United Performing Association, Inc.; Larry Hopfenspirger; Richard Rock; Lac Courte Oreilles Band of Lake Superior Chippewa Indians of Wisconsin; Rudman Partnership; Minnesota Public Radio; and Urban Ventures Leadership Foundation.

DOCS-#3448520-v2

Based on the arguments of counsel, moving documents, the record made at the hearing, the Court's findings of fact and conclusions of law, if any, having been recorded in open court following the close of evidence and the court having reviewed the Settlement Agreements and being fully advised in the premises,

IT IS HEREBY ORDERED THAT:

1.      The Settlement Agreement by and between the Trustee, John Kubinski and United Performing Association, Inc. in the amount of $15,600.00 is approved;

2.      The Settlement Agreement by and between the Trustee and Larry Hopfenspirger in the amount of $3,125.00 is approved;

3.      The Settlement Agreement by and between the Trustee and Richard Rock in the amount of $3,258.90 is approved;

4.      The Settlement Agreement by and between the Trustee, Receiver and Lac Courte Oreilles Band of Lake Superior Chippewa Indians of Wisconsin in the amount of $100,000.00 is approved and is contingent upon the District Court's approval of the Receiver's settlement with the Lac Courte Oreilles Band of Lake Superior Chippewa Indians of Wisconsin;

5.      The Settlement Agreement by and between the Trustee and Rudman Partnership in the amount of $35,000.00 is approved;

6.      The Settlement Agreement by and between the Trustee and Minnesota Public Radio in the amount of $2,500.00 is approved;

7.      The Settlement Agreement by and between the Trustee and Urban Ventures Leadership Foundation in the amount of $5,500.00 is approved;

8.      The Trustee is authorized to perform the terms thereof as it pertains to each settlement agreement; and

DOCS-#3448520-v2

9.      This Court shall retain jurisdiction to enforce the terms of the Settlement

Agreements.


Dated: _____          _____

Gregory F. Kishel
United States Bankruptcy Judge

DOCS-#3448520-v2