# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:

PETTERS COMPANY, INC., ET AL.,

**Jointly Administered under
Case No. 08-45257**

Debtors.

(includes:
Petters Group Worldwide, LLC;                          Case No. 08-45257
PC Funding, LLC;
Thousand Lakes, LLC;                                      Court File Nos.:
SPF Funding, LLC;                                        08-45258 (GFK)
PL Ltd., Inc.;                                          08-45326 (GFK)
Edge One LLC;                                           08-45327 (GFK)
MGC Finance, Inc.;                                      08-45328 (GFK)
PAC Funding, LLC;                                       08-45329 (GFK)
Palm Beach Finance Holdings, Inc.)                     08-45330 (GFK)
                                                        08-45331 (GFK)
                                                        08-45371 (GFK)
                                                        08-45392 (GFK)

                                                         Chapter 11 Cases
                                                       Judge Gregory F. Kishel

In re:

                                                       Case No. 09-43847
         PETTERS CAPITAL, LLC,

         Debtor.                                         Chapter 7 Case
                                                       Judge Gregory F. Kishel

## CHAPTER 11 PLAN OF LIQUIDATION

Dated: January 15, 2016

## **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................1

**ARTICLE I. DEFINITIONS AND CONSTRUCTION OF TERMS** ...........................2
    1.1    Definitions. ...............................................................................2
    1.2    Interpretation, Application of Definitions and Rules of
           Construction....................................................................18
    1.3    Exhibits. ...................................................................................18
    1.4    Computation of Time.................................................................18

**ARTICLE II. CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS**
    ....................................................................................................19
    2.1    Introduction..............................................................................19
    2.2    Unclassified Claims (not entitled to vote on the Plan). ............19
    2.3    Unimpaired Classes of Claims (deemed to have accepted the Plan
           and, thus, not entitled to vote). ...................................19
    2.4    Impaired Classes of Claims (Class 3 is entitled to vote on the Plan;
           Classes 4, 5 and 6 are deemed to have rejected the Plan and, thus,
           not entitled to vote)......................................................19

**ARTICLE III. TREATMENT OF ADMINISTRATIVE CLAIMS,
    PRIORITY TAX CLAIMS, AND PROFESSIONAL FEES CLAIMS** .........19
    3.1    Administrative and Priority Tax Claims in General. ................20
    3.2    Treatment of Administrative Claims. .......................................20
    3.3    Treatment of Priority Tax Claims. ...........................................20
    3.4    Bar Date for Administrative Claims. ........................................20
    3.5    Bar Date for Trustee Fee Claims and Professional Fee Claims.................21

**ARTICLE IV. TREATMENT OF CLAIMS AND EQUITY INTERESTS** .............22
    4.1    Class 1—Other Priority Claims. ..............................................22
    4.2    Class 2—Secured Claims. .......................................................22
    4.3    Class 3—General Unsecured Claims........................................23
    4.4    Class 4—Intercompany Claims. ..............................................24
    4.5    Class 5—Subordinated Claims. ...............................................24
    4.6    Class 6—Equity Securities. .....................................................24

**ARTICLE V. COMPROMISES AND SETTLEMENTS** ...............................................24
    5.1    Compromises and Settlements..................................................24
    5.2    Palm Beach and Lancelot Claims Settlement. ..........................25
    5.3    Interlachen Settlement. .............................................................26

**ARTICLE VI. SUBSTANTIVE CONSOLIDATION** ...................................................27
    6.1    Consolidation for Certain Purposes. .........................................27
    6.2    Order Granting Substantive Consolidation................................28

i

**ARTICLE VII. UNEXPIRED LEASES AND EXECUTORY CONTRACTS** ..........28
   7.1    Rejection of Prepetition Unexpired Leases and Executory
        Contracts. ..................................................................................28
   7.2    Bar Date for Rejection Damage Claims. ...................................28
   7.3    Insurance. ..................................................................................29

**ARTICLE VIII. IMPLEMENTATION OF THE PLAN** ...........................29
   8.1    PCI Liquidating Trust Agreement. ............................................29
   8.2    PCI Liquidating Trust. ..............................................................29
   8.3    Retained Assets and Dissolution. .............................................29
   8.4    PCI Liquidating Trustee. ..........................................................30
   8.5    PCI Liquidating Trust Committee. ...........................................30
   8.6    PCI Liquidating Trust Committee Chair. ..................................31
   8.7    Counsel to the PCI Liquidating Trust and PCI Liquidating Trust
        Committee. ................................................................................31
   8.8    Trust Assets. .............................................................................31
   8.9    Powers of the PCI Liquidating Trustee. ...................................32
   8.10   Powers of the PCI Liquidating Trust Committee. ....................34
   8.11   Debtors' Books and Records. ....................................................35
   8.12   Resignation of PCI Liquidating Trustee. ..................................36
   8.13   Removal of PCI Liquidating Trustee. .......................................36
   8.14   Termination of the PCI Liquidating Trust. ...............................36
   8.15   Indemnification. ........................................................................36
   8.16   Fees and Expenses of the PCI Liquidating Trust. .....................36
   8.17   Compensation of the PCI Liquidating Trustee and PCI Liquidating
        Trust Professionals. ..................................................................37
   8.18   Tax Treatment. ..........................................................................37
   8.19   BMO Litigation Trust Agreement. ...........................................38
   8.20   BMO Litigation Trust. ..............................................................38
   8.21   BMO Litigation Trustee. ..........................................................38
   8.22   BMO Litigation Trust Committee. ...........................................38
   8.23   Counsel to the BMO Litigation Trust and BMO Litigation Trust
        Committee. ................................................................................39
   8.24   BMO Litigation Trust Assets. ...................................................39
   8.25   Powers of the BMO Litigation Trustee. ...................................40
   8.26   Powers of the BMO Litigation Trust Committee. ....................42
   8.27   Debtors' Books and Records. ....................................................42
   8.28   Resignation of BMO Litigation Trustee. ..................................43
   8.29   Removal of BMO Litigation Trustee. .......................................43
   8.30   Termination of the BMO Litigation Trust. ...............................43
   8.31   Indemnification. ........................................................................44
   8.32   Fees and Expenses of the BMO Litigation Trust. .....................44
   8.33   The Tax Treatment of BMO Litigation Trust. ..........................44
   8.34   Third Party Litigation Support. .................................................45

**ARTICLE IX. PROVISIONS REGARDING VOTING  AND DISTRIBUTIONS UNDER THE PLAN** ........................................46

9.1    Nonconsensual Confirmation. ..............................................46
9.2    Disallowance of Claims. .......................................................46
9.3    Deadline to Object to Claims. ..............................................46
9.4    Litigation of Claims. .............................................................47
9.5    Distributions for Claims Allowed as of the Effective Date. ......47
9.6    Distribution of Disputed Claims. .........................................47
9.7    Disputed Claims Reserve. .....................................................47
9.8    Distribution Record Date .....................................................48
9.9    Means of Cash Payments ......................................................48
9.10   Reserve for Professional Fee Claims. ...................................48
9.11   Estimation of Claims. ...........................................................49
9.12   Delivery of Distributions. .....................................................49
9.13   Unclaimed Distributions. .....................................................49
9.14   Withholding Taxes. ...............................................................50
9.15   Fractional Cents. ...................................................................51
9.16   De Minimis Distributions. ....................................................51
9.17   Setoffs. ..................................................................................51

**ARTICLE X. CONFIRMATION, EFFECTIVENESS, AND EFFECT OF THE PLAN** ..............................................................................51

10.1   Confirmation of the Plan. .....................................................51
10.2   Conditions to Confirmation. .................................................51
10.3   Conditions to the Effective Date. ..........................................52
10.4   Waiver of Conditions. ...........................................................52
10.5   Effect of Failure of Conditions. ............................................52
10.6   Limitation of Rights; Injunction. ..........................................53
10.7   Binding Effect. ......................................................................53
10.8   Substantial Consummation. ..................................................53
10.9   Notice of Effective Date. ......................................................53
10.10  Request for Waiver of Stay of Confirmation Order. ...............54

**ARTICLE XI. RETENTION OF JURISDICTION** ..............................54

11.1   Retention of Jurisdiction. ......................................................54

**ARTICLE XII. MISCELLANEOUS PROVISIONS** .............................56

12.1   Dissolution of Creditors' Committee. ....................................56
12.2   Termination of Trustees' Service. .........................................56
12.3   Fee Claims of the Chapter 11 Trustee, the Chapter 7 Trustee, and Professionals Retained by Either of Them. ..................57
12.4   Pre-Confirmation Modification. ............................................57
12.5   Post-Confirmation Immaterial Modification. .........................57
12.6   Post-Confirmation Material Modification. .............................57
12.7   Modifications Generally. .......................................................58

12.8     Withdrawal or Revocation of the Plan........................................................................58
12.9     Payment of Statutory Fees. .....................................................................................58
12.10    Successors and Assigns. .........................................................................................58
12.11    Term of Injunctions or Stays. .................................................................................59
12.12    Termination of Cases. .............................................................................................59
12.13    Exculpation. ............................................................................................................59
12.14    Releases by the Estates ...........................................................................................60
12.15    Preservation of Rights.............................................................................................60
12.16    Extinguishment of Liens. ........................................................................................60
12.17    Substantial Contribution. ........................................................................................60
12.18    Consent to Transfer.................................................................................................61
12.19    Governing Law. .......................................................................................................61
12.20    Notices. ...................................................................................................................61
12.21    Saturday, Sunday or Legal Holiday. .......................................................................63
12.22    Section 1146 Exemption. ........................................................................................63
12.23    Severability. ............................................................................................................63
12.24    Service of Certain Exhibits. ....................................................................................63

# **TABLE OF EXHIBITS**

Exhibit A:      Nonexclusive Schedule of Preserved Causes of Action

Exhibit B:      PCI Liquidating Trust Agreement

Exhibit C:      BMO Litigation Trust Agreement

Exhibit D:      Retained Assets

## INTRODUCTION

DOUGLAS A. KELLEY, solely in his capacity as Chapter 11 Trustee, GREENPOND SOUTH, LLC, and, subject to the approval of their respective bankruptcy courts, RANDALL L. SEAVER, solely in his capacity as Chapter 7 Trustee of Petters Capital, LLC, RONALD R. PETERSON, solely in his capacity as the Chapter 7 Trustee of Lancelot (as defined herein), and BARRY E. MUKAMAL, solely in his capacity as the Liquidating Trustee of the Palm Beach Finance Partners Liquidating Trust and the Palm Beach Finance II Liquidating Trust, hereby jointly propose this Chapter 11 Plan of Liquidation  (as such plan may be amended or modified from time to time, together with all addenda, exhibits, schedules, supplements, or attachments, if any, the "Plan"). Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to them in Article I of the Plan.

The Plan contains a series of settlements and compromises of disputes which otherwise would result in protracted and expensive litigation to the detriment of the Estates and all Creditors. Pursuant to Section 1123 of the Bankruptcy Code, the cornerstone features of this Plan include: (I) resolution of the Claims asserted by the Estates' largest Creditors, the Lancelot Trustee and the Palm Beach Trustee, pursuant to which such Creditors shall receive Allowed Claims and will provide certain valuable consideration; and (II) the substantive consolidation of (A) the previously substantively consolidated estates of Petters Company, Inc. ("PCI") and special purpose entities PC Funding, LLC, Thousand Lakes, LLC, SPF Funding, LLC, PL Ltd., Inc., Edge One LLC, MGC Finance, Inc., PAC Funding, LLC, Palm Beach Finance Holdings, Inc. (collectively, the "PCI SPEs"), with (B) Petters Capital, LLC ("Petters Capital"), and (C) Petters Group Worldwide, LLC ("PGW," and collectively with PCI, the PCI SPEs, and Petters Capital, the "Consolidated Debtors"); and (III) the creation of Liquidating Trusts to administer all of the Estates' assets, providing for the continued prosecution of Claims and Causes of Action for the benefit of Creditors.

Reference is made to the Disclosure Statement accompanying the Plan for a discussion of the Debtors' history, a description of key events in the Bankruptcy Cases, and a summary and description of the Plan. All Claim Holders entitled to vote on the Plan are encouraged to consult the Disclosure Statement and to read the Plan carefully before voting to accept or reject the Plan.

NO SOLICITATION MATERIALS, OTHER THAN THE DISCLOSURE STATEMENT AND RELATED MATERIALS TRANSMITTED THEREWITH AND APPROVED BY THE COURT HAVE BEEN AUTHORIZED BY THE COURT FOR USE IN SOLICITING ACCEPTANCES OR REJECTIONS OF THE PLAN.

# ARTICLE I.

## DEFINITIONS AND CONSTRUCTION OF TERMS

### 1.1   Definitions.

Unless otherwise defined herein, or the context otherwise requires, the following terms shall have the respective meanings set forth below:

**"Administrative Claim"**   shall mean any right to payment constituting a cost or expense of administration of a Bankruptcy Case that is allowed under Section 503(b) of the Bankruptcy Code or that is entitled to priority under Section 507(a)(2) or 507(b) of the Bankruptcy Code, including (i) any actual and necessary costs and expenses of preserving the Estate, (ii) any and all fees and expenses to the extent allowed by the Court under Sections 330, 331, or 503 of the Bankruptcy Code, and (iii) any fees or charges assessed under 28 U.S.C. § 1930, in each case incurred from and after the Petition Dates through and including the Effective Date.

**"Administrative Claims Bar Date"**   shall have the meaning set forth in Section 3.4 of the Plan.

**"Administrative Compensation Order"**   shall mean the Final Order of the Bankruptcy Court establishing the Administrative Claims Bar Date.

**"Allowed"**   shall mean, with reference to a Claim, (i) a Claim against any of the Debtors in the Chapter 11 Cases that has been listed on the Schedules as liquidated in amount greater than zero dollars ($0) and other than disputed, unliquidated or contingent and for which no proof of claim has been Filed by the applicable Bar Date, unless it is a Disputed Claim or a Disallowed Claim;

(ii) a Claim against any of the Debtors for which a proof of claim has been timely Filed by the Bar Date, or otherwise has been deemed timely Filed under applicable law, for which no objection or request for estimation has been Filed by the Claims Objection Deadline or for which any such objection to its allowance or request for estimation has been settled or withdrawn, or has been denied by a Final Order;

(iii) a Claim against any of the Debtors that is Allowed (x) by a Final Order, (y) by a settlement agreement or stipulation, or (z) pursuant to the terms of the Plan; or

(iv) with respect to an Administrative Claim, an

2

Administrative Claim that has not been paid in the ordinary course of business for which a Holder thereof timely Filed and served a request for payment of such Administrative Claim by the Administrative Claims Bar Date, for which no objection has been Filed by the Claims Objection Deadline or that has been allowed, or adjudicated in favor of the Holder by estimation or liquidation, by a Final Order; provided, however, that the term "Allowed Claim" shall not, for purpose of computing distributions under the Plan, include interest on such Claim from and after the Petition Date, unless otherwise expressly set forth in the Plan.

**"Asset Contribution"** shall mean the contribution by the consolidated Estates on the Effective Date to the PCI Liquidating Trust of all assets of the Consolidated Estates, including, for the avoidance of doubt, all Claims and Causes of Action other than BMO Litigation Trust Assets, provided that the Asset Contribution shall not include the Retained Assets.

**"Avoidance Actions"** shall mean Causes of Action or defenses arising under Chapter 5 of the Bankruptcy Code, including Causes of Action arising under Sections 502(d), 510, 542, 544, 547, 548, 549, 550, and 553 of the Bankruptcy Code or under similar or related state or federal statutes and common law, including, without limitation, all preference, fraudulent conveyance, fraudulent transfer, voidable transfer, and/or other similar avoidance claims, rights and Causes of Action, including as may have been asserted in proofs of claim, whether or not an adversary proceeding or other litigation has been commenced as of the Effective Date to prosecute any such Avoidance Actions.

**"Ballot"** shall mean the form or forms approved by the Bankruptcy Court for voting purposes and distributed along with the Disclosure Statement to each Holder of an Impaired Claim entitled to vote on the Plan.

**"Bankruptcy Cases"** shall mean each of the above-captioned bankruptcy cases.

**"Bankruptcy Code"** shall mean title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, as in effect on the Petition Date or as otherwise applicable to the Bankruptcy Cases.

**"Bankruptcy Court"** shall mean the United States Bankruptcy Court for the District Minnesota or such other court as may have jurisdiction over the Bankruptcy Cases.

3

| | |
|---|---|
| **"Bankruptcy Rules"** | shall mean the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under Section 2075 of title 28 of the United States Code, and local rules of the Bankruptcy Court, as the context may require, as in effect on the Petition Dates or as otherwise applicable to the Bankruptcy Cases. |
| **"Bar Date"** | shall mean the General Bar Date, the Petters Capital Bar Date, the Administrative Claims Bar Date, or the Professional Fee Bar Date, as the context requires. |
| **"BMO Adversary Proceeding"** | shall mean that certain adversary proceeding pending before the Bankruptcy Court, captioned *Kelley v. BMO Harris Bank N.A., as successor to M&I Marshall*, Adv. Proc. No. 12-04288. |
| **"BMO Litigation Trust Agreement"** | shall mean that certain agreement (or agreements) in the form and substance acceptable to the Plan Proponents and Interlachen which is to govern the BMO Litigation Trust, substantially in the form attached hereto as Exhibit C. |
| **"BMO Litigation Trust Assets"** | shall mean (i) all Claims, Causes of Action, rights, and any related litigation held by any Estate against BMO Harris and/or M&I Bank and/or their Affiliates, whether or not asserted by the Chapter 11 Trustee, including in the BMO Adversary Proceeding, and (ii) any and all proceeds of the foregoing and interest accruing with respect thereto. |
| **"BMO Litigation Trust Committee"** | shall mean the committee that is created pursuant to Section 8.22 of the Plan. |
| **"BMO Litigation Trust Expenses"** | shall mean all actual and necessary costs and expenses incurred after the Effective Date in connection with the administration of the BMO Litigation Trust, except for BMO Litigation Trust Litigation Fees and Expenses. |
| **"BMO Litigation Trust Litigation Fees and Expenses"** | shall mean all actual and necessary costs and expenses incurred after the Effective Date in connection with the prosecution or resolution of the BMO Adversary Proceeding or any other BMO Litigation Trust Assets. |
| **"BMO Litigation Trust Proceeds"** | shall mean the net proceeds (if any) from the BMO Litigation Trust Assets available for distribution to Holders of Allowed Class 3 General Unsecured Claims, including such proceeds in excess of the BMO Litigation Trust Expenses and BMO Litigation Trust Litigation Fees and Expenses. |

4

**"BMO Litigation Trust"**    shall mean the trust that is created pursuant to the Plan and administered by the BMO Litigation Trustee as more specifically set forth in Article VIII of the Plan and the BMO Liquidating Trust Agreement.

**"BMO Litigation Trustee"**    shall mean the Person designated to serve as the trustee of the BMO Litigation Trust as contemplated by the Liquidating Trust Agreement, who shall, among other things administer the BMO Litigation Trust, it being provided for hereunder that the Chapter 11 Trustee is to be appointed the BMO Litigation Trustee on the Effective Date.

**"Business Day"**    shall mean any day not designated as a legal holiday by Bankruptcy Rule 9006(a) and any day on which commercial banks are open for business, and not authorized, by law or executive order, to close, in the City St Paul, Minnesota.

**"Cash"**    shall mean cash and cash equivalents denominated in legal tender of the United States of America.

**"Causes of Action"**    shall mean any claims, interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, inchoate or not inchoate, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise. Causes of Action also include: (i) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law; (ii) the right to object to or otherwise contest Claims or Equity Securities; (iii) claims or defenses pursuant to Sections 362, 502, 503, 510, 542, 543, 544 through 550, and 553 of the Bankruptcy Code; and (iv) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in Section 558 of the Bankruptcy Code.

**"Chapter 11 Cases"**    shall mean each of the Bankruptcy Cases other than the Petters Capital Chapter 7 Case.

**"Chapter 11 Trustee"**    shall mean Douglas A. Kelley, in his capacity as Chapter 11 trustee over the Chapter 11 Cases, duly appointed under

Section 1104 of the Bankruptcy Code.

**"Claim"**
shall mean a claim, whether or not asserted, as defined in Section 101(5) of the Bankruptcy Code, or any portion thereof.

**"Claims Objection Deadline"**
shall mean, except with respect to Professional Fee Claims, the last day for Filing objections to, or otherwise commencing proceedings challenging the allowance of Claims, which day shall be one hundred-eighty (180) days after the Effective Date, or such later date as the Court may order as set forth in Section 9.3 of the Plan.

**"Class"**
shall mean a category of Holders of Claims or Equity Securities, as classified or designated in Article II of the Plan.

**"Collateral"**
shall mean any Property subject to a Lien to secure the payment or performance of a Claim, which Lien has not been avoided, is not subject to avoidance under the Bankruptcy Code, and is otherwise valid under the Bankruptcy Code or applicable non-bankruptcy law.

**"Confirmation Date"**
shall mean the date of entry of the Confirmation Order.

**"Confirmation Hearing"**
shall mean the hearing to consider confirmation of the Plan pursuant to Section 1128 of the Bankruptcy Code, as it may be adjourned or continued from time to time.

**"Confirmation Order"**
shall mean the order entered by the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

**"Confirmation"**
shall mean "confirmation" as used in Section 1129 of the Bankruptcy Code.

**"Consolidated Debtors"**
shall have the meaning set forth in the Introduction of the Plan.

**"Consolidated Estates"**
shall mean the Estates of all of the Consolidated Debtors.

**"Contributed Assets"**
shall mean all assets of the Consolidated Debtors other than the BMO Litigation Trust Assets and the Retained Assets, including, for the avoidance of doubt, all Claims and Causes of Action and Trust Claims, which shall be contributed on the Effective Date to the PCI Liquidating Trust pursuant to the Asset Contribution.

6

**"Covered Parties"**     shall mean, collectively and individually, the Chapter 11 Trustee, the Receiver, the Creditors' Committee and its members, the Creditor Proponents, the Petters Capital Chapter 7 Trustee, each in their capacities as such, and each of their respective current and former attorneys, accountants, financial advisors, and investment managers of each of the foregoing solely in their capacities as such, and shall not include the Debtors or any Person who at any time before September 24, 2008 was a shareholder, member, director, officer, employee, agent, or professional of any of the Debtors.

**"Covered Claim"**     shall mean any right of action, Claim, Cause of Action, liability or obligation for any act taken or omitted to be taken after the commencement of Receivership in connection with, related to, or arising out of (i) the Receivership or the Bankruptcy Cases, (ii) any of the Debtors or the Estates, (iii) the formulation, negotiation, preparation, filing, dissemination, solicitation, implementation, Confirmation, consummation or administration of the Plan or the Disclosure Statement, (iv) the property to be distributed under, or any distributions made under or in connection with, the Plan, or (v) any contract, instrument, release or other agreement or document created or entered into in connection therewith or in connection with any other obligations arising under the Plan or the obligations assumed under the Plan and shall not include Claims or Causes of Action against the Debtors or any Person who at any time before September 24, 2008 was a former shareholders, members, directors, officers, employees, agents, and professionals of any of the Debtors or for any acts or conduct prior to September 24, 2008.

**"Creditor Proponents"**     shall mean Greenpond, and, subject to their respective bankruptcy court's approval, the Lancelot Trustee and the Palm Beach Trustee.

**"Creditor"**     shall mean "creditor" as defined in Section 101(10) of the Bankruptcy Code, including, but not limited to, any Person or Entity having a Claim against any of the Debtors or their Property, including, without limitation, a Claim of any of the Debtors that arose or is deemed to arise on or prior to the Petition Dates, as applicable, or a Claim against the Estates of any kind specified in Sections 502(g), 502(h), or 502(i) of the Bankruptcy Code.

**"Creditors' Committee"** shall mean the statutory committee of unsecured creditors appointed in the Chapter 11 Cases pursuant to Section 1102 of the Bankruptcy Code.

**"Creditor Direct Claims"** All direct claims held by some or all Creditors, whether sounding in theories of contract or tort.

**"Debtors"** shall mean the debtors in the Bankruptcy Cases.

**"Disallowed Claim" or "Disallowed Equity Security"** shall mean any Claim against or Equity Security in any of the Debtors, or any portion thereof that (i) has been disallowed by Final Order or (ii) is Scheduled as zero or contingent, disputed or unliquidated, and to which no proof of claim has been timely filed pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law.

**"Disclosure Statement"** shall mean the Disclosure Statement accompanying the Plan and all schedules and exhibits attached thereto, as approved by the Bankruptcy Court, pursuant to Section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017, as such Disclosure Statement may have been amended, modified or supplemented from time to time.

**"Disputed Claims Reserve"** shall have the meaning set forth in Section 9.7 of the Plan.

**"Disputed Liens"** shall mean purported Liens on certain assets of any of the Debtors that have been asserted on or prior to the General Bar Date which are disputed.

**"Disputed"** shall mean, with reference to any Claim against or Equity Security in the Debtor, a Claim or Equity Security, or any portion thereof, that is not an Allowed Claim, an Allowed Equity Security, a Disallowed Claim, or a Disallowed Equity Interest, including, but not limited to, Claims or Equity Securities (i) (x) that have not been Scheduled, or have been Scheduled at zero dollars ($0) or as contingent, unliquidated, or disputed, (y) that are the subject of a proof of claim or interest that differs in nature, amount or priority from the Schedules, and (z) as to which an objection has been interposed as of the Claims Objection Deadline, and (ii) the allowance or disallowance of which is not the subject of a Final Order. For the avoidance of doubt, any Claim asserted by a Creditor with a negative Net Invested Capital shall be Disputed, even if a Claim Objection has not been

|  | Filed with respect to such Claim. For the avoidance of doubt, no Creditor holding a Disputed Claim shall be entitled to any distributions until and unless such Creditor's Claim is Allowed. |
|---|---|
| **"Effective Date"** | shall mean the first Business Day on which all of the conditions specified in Section 10.3 of the Plan have been satisfied or waived in accordance with Section 10.4 of the Plan; provided, however, that if a stay of the Confirmation Order is in effect on such date, the Effective Date will be the first Business Day after such stay is no longer in effect, provided that if no such stay is in effect, the occurrence of the Effective Date is in no way dependent upon the Confirmation Order becoming a Final Order. |
| **"Entity"** | shall have the meaning set forth in Section 101(15) of the Bankruptcy Code. |
| **"Equity Security"** | shall have the meaning set forth in Section 101(16) of the Bankruptcy Code and shall include any Claim subject to recharacterization as an equity interest. |
| **"Estates"** | shall mean the Debtors' bankruptcy estates created pursuant to Section 541 of the Bankruptcy Code. |
| **"Executory Contract"** | means any contract to which a Debtor is a party that is subject to assumption or rejection under Sections 365 or 1123 of the Bankruptcy Code. |
| **"File," "Filed," or "Filing"** | shall mean file, filed, or filing with the Bankruptcy Court, as the context requires. |
| **"Final Order"** | shall mean an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket of such court, which is final for purposes of 28 U.S.C. §§ 158 or 1291 and the operation or effect of which has not been stayed, reversed, vacated, modified or amended, and as to which order or judgment (or any revision, modification, or amendment thereof) the time to appeal, petition for certiorari, or seek review or rehearing has expired and as to which no appeal, petition for certiorari, or petition for review or rehearing was filed or, if filed, remains pending; provided, however, that the possibility that a motion may be Filed pursuant to Bankruptcy Rule 9024 or Rule 60(b) of the Federal Rules of Civil Procedure shall not mean that an order or judgment is not a Final Order. |

9

**"General Bar Date"**    shall mean December 29, 2009, except for Governmental Units for whom such date shall mean January 28, 2010.

**"General Unsecured Claim"**    shall mean any Claim against any Debtor (including any unsecured portion of a Secured Claim) that is not an Administrative Expense Claim, Priority Tax Claim, Other Priority Claim, Intercompany Claim or Secured Claim.

**"Greenpond"**    shall mean Greenpond South, LLC.

**"Holder"**    shall mean an Entity holding a Claim or Equity Security, as the case may be.

**"Impaired"**    shall have the meaning, when used with reference to a Claim or Equity Security, contained in Section 1124 of the Bankruptcy Code.

**"Initial Distribution Date"**    shall mean the Effective Date or as soon thereafter as is practicable.

**"Intercompany Claim"**    shall mean a Claim of a Debtor against another Debtor.

**"Interlachen Claim"**    shall mean the Claims and Causes of Action asserted against the Estates by Interlachen, including in connection with the proofs of claim filed in the Chapter 11 Cases.

**"Interlachen Settlement"**    shall mean the settlement described in Section 5.3 of the Plan.

**"Interlachen"**    shall mean Interlachen Harriet Investments Limited.

**"Lancelot"**    shall mean SWC Services, LLC; Lien Acquisition, LLC; AGM, LLC; AGM II, LLC; KD1, LLC; KD2, LLC; KD3, LLC; KD4, LLC; KD5, LLC; KD6, LLC; KD7, LLC; KD8, LLC; RWB Services, LLC; Surge Capital II, LLC; Colossus Capital Fund, L.P.; Colossus Capital Fund, Ltd.; Lancelot Investors Fund, L.P.; Lancelot Investors Fund II, L.P.; and Lancelot Investors Fund, Ltd., and their respective bankruptcy estates currently being administered in the United States Bankruptcy Court for the Northern District of Illinois as Case No. 08-28225 (Jointly Administered).

**"Lancelot Avoidance Action"**    shall mean all Claims and Causes of Action, if any, including Avoidance Actions asserted or that could have been asserted, by the Chapter 11 Trustee or the Petters Capital Chapter 7 Trustee against Lancelot, including in connection with any proof of claim filed in the Lancelot

10

bankruptcy cases.

| | |
|---|---|
| **"Lancelot Claim"** | shall mean the Claims and Causes of Action asserted against the Estates by Lancelot, including in connection with the proofs of claim filed in the Bankruptcy Cases. |
| **"Lancelot Payment"** | shall mean the payment described in Section 5.2 of the Plan. |
| **"Lancelot Settlement"** | shall mean the settlement described in Section 5.2 of the Plan. |
| **"Lancelot Trustee"** | shall mean Ronald R. Peterson, or his duly appointed successor, solely in his capacity as the Chapter 7 Trustee of Lancelot Investors Fund, L.P. and RWB Services, LLC, *et al.*, whose bankruptcy cases are currently pending in the United States Bankruptcy Court for the Northern District of Illinois as Case No. 08-28225 (Jointly Administered). |
| **"Lien"** | shall have the meaning set forth in Section 101(37) of the Bankruptcy Code. |
| **"Liquidating Trust Agreements"** | shall mean the PCI Liquidating Trust Agreement and the BMO Litigation Trust Agreement. |
| **"Liquidating Trust Committees"** | shall mean the PCI Liquidating Trust Committee and the BMO Litigation Trust Committee. |
| **"Liquidating Trust Expenses"** | shall mean the PCI Liquidating Trust Expenses and the BMO Litigation Trust Expenses. |
| **"Liquidating Trusts"** | shall mean the PCI Liquidating Trust and the BMO Litigation Trust. |
| **"LT Trustee"** | shall mean the PCI Liquidating Trustee or the BMO Litigation Trustee, as the context may require. |
| **"Net Invested Capital"** | shall mean (i) the total aggregate amount of Cash lent by a Promissory Note Lender to the Debtors before the applicable PCI/PGW Petition Date <u>minus</u> (ii) the total aggregate amount of Cash received by the Promissory Note Lender from the Debtors before the applicable PCI/PGW Petition Date, as set forth in the Net Investment Capital Records, which calculation inherently does not include interest. |
| **"Net Investment Capital Records"** | shall mean the PwC Report, the Debtors' books and records, and documents obtained by the Chapter 11 Trustee through formal or informal discovery or otherwise after the |

11

PCI/PGW Petition Date .

| | |
|---|---|
| **"Other Priority Claim"** | shall mean any unsecured Claim entitled to priority over General Unsecured Claims under the Bankruptcy Code other than Priority Tax Claims. |
| **"Palm Beach Avoidance Action"** | shall mean all Claims and Causes of Action, if any, including Avoidance Actions asserted or that could have been asserted, by the Chapter 11 Trustee or the Petters Capital Chapter 7 Trustee against PBF or PBF II, including in connection with any proof of claim filed in the PBF or PBF II bankruptcy cases. |
| **"Palm Beach Trustee"** | shall mean Barry E. Mukamal, or his duly appointed successor, solely in his capacity as the Liquidating Trustee of both the Palm Beach Finance Partners Liquidating Trust and the Palm Beach Finance II Liquidating Trust. |
| **"Palm Beach"** | shall mean PBF and PBF II. |
| **"PBF Claim"** | shall mean the Claims and Causes of Action asserted against the Estates by Palm Beach Finance Partners, L.P., including in connection with the proofs of claim filed in the Bankruptcy Cases. |
| **"PBF II Claim"** | shall mean the Claims and Causes of Action asserted against the Estates by  Palm Beach Finance II, L.P., including in connection with the proofs of claim filed  in the Bankruptcy Cases. |
| **"PBF II Payment"** | shall mean the payment described in Section 5.2 of the Plan. |
| **"PBF II Settlement"** | shall mean the settlement described in Section 5.2 of the Plan. |
| **"PBF II Trustee"** | shall mean Barry E. Mukamal, or his duly appointed successor, solely in his capacity as the Liquidating Trustee of the Palm Beach Finance II Liquidating Trust. |
| **"PBF II"** | shall mean Palm Beach Finance II Liquidating Trust. |
| **"PBF Payment"** | shall mean the payment described in Section 4.2 of the Plan. |
| **"PBF Settlement"** | shall mean the settlement described in Section 4.2 of the Plan. |
| **"PBF Trustee"** | shall mean Barry E. Mukamal, or his duly appointed successor, solely in his capacity as the Liquidating Trustee |

of the Palm Beach Finance Partners Liquidating Trust.

| | |
|---|---|
| **"PBF"** | shall mean Palm Beach Finance Partners Liquidating Trust. |
| **"PCI Liquidating Trust Agreement"** | shall mean that certain agreement (or agreements) in the form and substance acceptable to the Plan Proponents which is to govern the PCI Liquidating Trust, substantially in the form attached hereto as Exhibit B. |
| **"PCI Liquidating Trust Committee"** | shall mean the committee that is created pursuant to Section 8.5 of the Plan. |
| **"PCI Liquidating Trust Expenses"** | shall mean all actual and necessary costs and expenses incurred after the Effective Date in connection with the administration of the Plan, including, but not limited to, the PCI Liquidating Trustee's and the PCI Liquidating Trust Committee's reasonable costs, expenses and legal fees incurred, and its member's costs and expenses (but not including any such member's legal fees), related to (i) Filing and prosecuting Trust Claims and objections to Claims, including the costs incurred through trial and any appeals or subsequent proceedings, (ii) the wind up of the Debtors, (iii) the administration of the PCI Liquidating Trust, (iv) all fees payable pursuant to Section 1930 of Title 28 of the United States Code, and (v) up to $10,000 per annum of actual and necessary costs and expenses incurred after the Effective Date in connection with the administration of the BMO Litigation Trust, but excluding BMO Litigation Trust Litigation Fees and Expenses. |
| **"PCI Liquidating Trust"** | shall mean the trust that is created pursuant to the Plan and administered by the PCI Liquidating Trustee with the advice and direction of the PCI Liquidating Trust Committee, all as more specifically set forth in Article VIII of the Plan and the PCI Liquidating Trust Agreement. |
| **"PCI Liquidating Trustee General Counsel"** | shall mean Lindquist & Vennum LLP and Kelley, Wolter & Scott, P.A. |

13

| | |
|---|---|
| **"PCI Liquidating Trustee"** | shall mean the Person designated to serve as the trustee of the PCI Liquidating Trust as contemplated by the PCI Liquidating Trust Agreement, who shall, among other things administer the PCI Liquidating Trust, it being provided for hereunder that the Chapter 11 Trustee is to be appointed the PCI Liquidating Trustee on the Effective Date. |
| **"PCI SPEs"** | shall have the meaning set forth in the Introduction of the Plan. |
| **"PCI/PGW Petition Date"** | shall mean the applicable date upon which the Chapter 11 Cases were commenced with the Filing of voluntary petitions for relief under the Bankruptcy Code, which shall mean October 11, 2008 for PCI and PGW, and October 15, 2008 for the other Debtors in the Chapter 11 Cases, other than Palm Beach Finance Holdings, Inc., for which October 19, 2008 shall be the relevant date. |
| **"Pending Payments"** | shall mean identified amounts of Cash and other Trust Assets (excluding undeliverable Cash) held by the PCI Liquidating Trust for distribution or collection and distribution to holders of Allowed Claims in specific amounts as of the date the PCI Liquidating Trust receives the applicable Trust Assets |
| **"Person"** | shall mean a person as defined in Section 101(41) of the Bankruptcy Code and shall also include any limited liability company, Massachusetts Business Trust or any other entity authorized to conduct business other than a governmental entity. |
| **"Petition Dates"** | shall mean the PCI/PGW Petition Date and the Petters Capital Petition Date. |
| **"Petters Capital"** | shall have the meaning set forth in the Introduction of the Plan. |
| **"Petters Capital Bar Date"** | shall mean October 13, 2009, except for Governmental Units, for whom such date shall mean December 9, 2009. |
| **"Petters Capital Chapter 7 Case"** | shall mean the Bankruptcy Case of Petters Capital. |
| **"Petters Capital Chapter 7 Trustee"** | shall mean the trustee appointed under Chapter 7 of the Bankruptcy Code in the Bankruptcy Case of Petters Capital. |
| **"Petters Capital Petition** | shall mean June 12, 2009, the date upon which the Petters |

14

| | |
|---|---|
| Date" | Capital filed for protection under Chapter 7 of the Bankruptcy Code. |
| **"PGW"** | shall have the meaning set forth in the Introduction of the Plan. |
| **"Plan Proponents"** | shall mean the Chapter 11 Trustee, the Petters Capital Chapter 7 Trustee and the Creditor Proponents. |
| **"Plan"** | shall have the meaning set forth in the Introduction of the Plan. |
| **P/L Resolution Parties** | shall have the meaning set forth in Section 5.2 of the Plan. |
| **"Priority Tax Claim"** | shall mean any unsecured Claim held by a governmental unit entitled to a priority in right of payment under Section 502(i) or 507(a)(8) of the Bankruptcy Code. |
| **"Pro Rata"** | shall mean, with respect to any Allowed Claim in any Class, at any time, the proportion that such Allowed Claim bears to the aggregate amount of all Claims in such Class, including Disputed Claims, but excluding Disallowed Claims, unless in each case, the Plan provides otherwise. |
| **"Procedures Order"** | shall mean the order of the Bankruptcy Court approving, among other things, voting and solicitation procedures, the Ballots, the solicitation period, and the vote tabulation procedures for the Plan. |
| **"Professional"** | shall mean (i) any professional employed in the Bankruptcy Cases pursuant to Section 327, 328, or 1103 of the Bankruptcy Code or otherwise, (ii) any professional or other Entity seeking compensation or reimbursement of expenses in connection with the Bankruptcy Cases pursuant to Section 503(b)(4) of the Bankruptcy Code, and (iii) any professional to be retained to represent the PCI Liquidating Trust, the PCI Liquidating Trustee, or the PCI Liquidating Trustee Committee. |
| **"Professional Fee Claim"** | shall mean (i) a Claim under Sections 328, 330(a), 331, 503, or 1103 of the Bankruptcy Code for the compensation of a Professional for services rendered or expenses incurred in the Bankruptcy Cases or (ii) a Claim under Section 326, 330(a), 331, or 503 of the Bankruptcy Code for the compensation of the Chapter 11 Trustee or of the Petters Capital Chapter 7 Trustee for services rendered or expenses incurred in the Bankruptcy Cases. |

15

| | |
|---|---|
| **"Professional Fee Claims Bar Date"** | shall have the meaning set forth in Section 3.5 of the Plan. |
| **"Professional Fee Reserve"** | shall have the meaning set forth in Section 9.10 of the Plan. |
| **"Promissory Note Lender Claim"** | shall mean a Claim asserted by a Promissory Note Lender on account of its dealings with the Debtor pursuant to a promissory note. |
| **"Promissory Note Lender"** | shall mean a Person who advanced Cash to a Consolidated Debtor pursuant to a promissory note. |
| **"Property"** | shall mean all property and interests in property of an Estate or the Estates of any nature whatsoever, real or personal, tangible or intangible, previously or now owned by a Debtor or the Debtors, or acquired by the Estate or Estates, as defined in Section 541 of the Bankruptcy Code. |
| **"PwC Report"** | shall mean that certain PwC Interim Report dated December 15, 2010 and related exhibits, concerning the Chapter 11 Cases, prepared by PricewaterhouseCoopers LLP. |
| **"Receiver"** | shall mean Douglas Kelley appointed and acting as receiver in the Receivership. |
| **"Receivership"** | shall mean the proceeding commenced pursuant to the order entered by the Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota on October 6, 2008, as amended on December 8, 2008, *United States v. Petters, et al.*, Case No. 0:08 cv-05348 Dkt. Nos. 12, 127. |
| **"Retained Assets"** | shall mean those certain assets of the Debtors set forth on Exhibit D to the Plan, which assets shall not be Contributed Assets and shall not be included in the Asset Contribution, but shall be retained by the Debtors on the Effective Date and subsequently contributed to the PCI Liquidating Trust following their administration and monetization by the PCI Liquidating Trustee in his capacity as the Debtors' chief executive officer. |
| **"Scheduled"** | shall mean, with respect to any Claim against or Equity Security in any of the Debtors, the status and amount, if any, of such Claim or Equity Security as set forth in the Schedules. |

| | |
|---|---|
| **"Schedules"** | shall mean the schedules of assets and liabilities, statements of financial affairs, and lists of Holders of Claims and Equity Securities that were Filed by the Debtors, including any amendments, modifications or supplements thereto. |
| **"Secured Claim"** | shall mean a Claim that is secured by a Lien on Property (which Property, for the avoidance of doubt, is actually existing as of the Effective Date and either Retained Assets or Contributed Assets), to the extent of the value (as of the Effective Date or such other date as may be established by the Bankruptcy Court) of such interest or Lien determined by a Final Order of the Bankruptcy Court pursuant to Section 506 of the Bankruptcy Code or as otherwise agreed upon in writing by the Chapter 11 Trustee or the PCI Liquidating Trustee, as the case may be, with the consent of the Creditors' Committee or PCI Liquidating Trust Committee, also as the case may be, and the Holder of such Claim. |
| **"Security"** | shall have the meaning set forth in Section 101(49) of the Bankruptcy Code. |
| **"Subordinated Claims"** | shall mean Claims subject to subordination under Sections 510(a), 510(b), or 510(c) of the Bankruptcy Code, or as otherwise ordered by the Bankruptcy Court. |
| **"Terminated Cases"** | shall have the meaning set forth in Section 12.12 of the Plan. |
| **"Trust Assets"** | shall mean those assets owned by the PCI Liquidating Trust, including (i) the Contributed Assets, (ii) Trust Claims, (iii) proceeds of the Retained Assets upon contribution to the PCI Liquidating Trust, and (iv) any and all proceeds of the foregoing and interest accruing with respect thereto, but excluding the BMO Litigation Trust Assets, and excluding, for the avoidance of doubt, all Creditor Direct Claims. |
| **"Trust Claims"** | shall mean all Claims and Causes of Action asserted, or which may be asserted, by or on behalf of the Chapter 11 Trustee, the Petters Capital Chapter 7 Trustee, the Debtors or the Estates, in respect of matters arising prior to the Effective Date, including any pending or potential Avoidance Actions, but excluding the BMO Litigation Trust Assets. |
| **"Unexpired Lease"** | shall mean a lease of nonresidential real or personal property to which a Debtor is a party that is subject to assumption or rejection under Section 365 of the |

17

<table>
<tr><td></td><td>Bankruptcy Code.</td></tr>
</table>

| | |
|---|---|
| **"Unimpaired"** | shall mean with respect to any Claim or Equity Security, a Claim or Equity Security that is not Impaired. |
| **"Voting Deadline"** | shall mean the deadline established in the Procedures Order for receipt of Ballots cast to accept or reject the Plan. |
| **"Voting Record Date"** | shall mean the date fixed by the Procedures Order as the record date for determining the Holders of Claims entitled to vote to accept or reject the Plan. |

### 1.2    Interpretation, Application of Definitions and Rules of Construction.

Except as otherwise provided in the Plan, the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply to the Plan. Wherever the context requires, each term stated in either the singular or the plural shall include both the singular and plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and neuter. Terms used but not defined in the Plan shall have the meanings ascribed to such terms by the Bankruptcy Code or the Bankruptcy Rules, as the case may be. The words "herein," "hereof," and "hereunder" and other words of similar import refer to the Plan as a whole and not to any particular Article, Section, or subsection in the Plan unless expressly provided otherwise. The words "includes" and "including" are *not limiting* and mean that the things specifically identified are set forth for purposes of illustration, clarity or specificity and do not in any respect qualify, characterize, limit, or expand the generality of the class within which such things are included. Any references to an Entity as a Holder of a Claim or Equity Security includes that Entity's successors and assigns. Captions and headings to articles, Sections and exhibits are inserted for convenience of reference only, are not a part of the Plan, and shall not be used to interpret the Plan.

### 1.3    Exhibits.

All exhibits are incorporated into and are part of the Plan as if set forth in full herein.

### 1.4    Computation of Time.

In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided herein, the provisions of Bankruptcy Rule 9006(a) shall apply.

# ARTICLE II.

## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

**2.1**    **Introduction.**

All Claims and Equity Securities, except for Administrative Claims, Priority Tax Claims and Professional Fee Claims, are placed in the Classes set forth below. In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified.

A Claim or Equity Security is placed in a particular Class only to the extent that the Claim or Equity Security falls within the description of that Class, and is classified in other Classes to the extent that any portion of the Claim or Equity Security falls within the description of such other Classes. A Claim is also placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise settled prior to the Effective Date.

**2.2**    **Unclassified Claims (not entitled to vote on the Plan).**

(a)    Administrative Claims.

(b)    Priority Tax Claims.

**2.3**    **Unimpaired Classes of Claims (deemed to have accepted the Plan and, thus, not entitled to vote).**

(a)    Class 1: Other Priority Claims.

(b)    Class 2: Secured Claims.

**2.4**    **Impaired Classes of Claims (Class 3 is entitled to vote on the Plan; Classes 4, 5 and 6 are deemed to have rejected the Plan and, thus, not entitled to vote).**

(a)    Class 3: General Unsecured Claims.

(b)    Class 4: Intercompany Claims.

(c)    Class 5: Subordinated Claims.

(d)    Class 6: Equity Securities.

# ARTICLE III.

## TREATMENT OF ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS, AND PROFESSIONAL FEES CLAIMS

19

### 3.1     Administrative and Priority Tax Claims in General.

Administrative Claims and Priority Tax Claims are not classified in the Plan. The treatment of and consideration to be received by Holders of Allowed Administrative Claims or Allowed Priority Tax Claims pursuant to this Article III of the Plan shall be in full and complete satisfaction, settlement, release and discharge of such Claims. The Debtors' obligations in respect of such Allowed Administrative and Priority Tax Claims shall be satisfied in accordance with the terms of the Plan.

### 3.2     Treatment of Administrative Claims.

Except to the extent the Holder of an Allowed Administrative Claim agrees otherwise, each Holder of an Allowed Administrative Claim shall be paid in respect of such Allowed Claim (a) the full amount thereof in Cash, as soon as practicable after the later of (i) the Effective Date and (ii) the date on which such Claim becomes an Allowed Claim, or upon other agreed terms, or (b) such lesser amount as the Holder of an Allowed Administrative Claim and the Chapter 11 Trustee or the PCI Liquidating Trustee, as applicable, with the prior consent of the Creditors' Committee or the PCI Liquidating Trust Committee, as applicable, might otherwise agree; provided, however, that any Allowed Administrative Claim representing obligations incurred in the ordinary course during the pendency of the Chapter 11 Cases, if any, shall be paid in accordance with the terms and conditions of the particular transactions and agreements related thereto.

### 3.3     Treatment of Priority Tax Claims.

Each Holder of an Allowed Priority Tax Claim, if any, shall be paid in respect of such Allowed Claim either (a) the full amount thereof, without post-petition interest or penalty, in Cash, as soon as practicable after the later of (i) the Effective Date and (ii) the date on which such Claim becomes an Allowed Claim, or upon other agreed terms, or (b) such lesser amount as the Holder of an Allowed Priority Tax Claim and the Chapter 11 Trustee or the PCI Liquidating Trustee, as applicable, with the consent of the Creditors' Committee or the PCI Liquidating Trust Committee, as applicable, might otherwise agree.

### 3.4     Bar Date for Administrative Claims.

Unless otherwise ordered by the Bankruptcy Court, requests for payment of unpaid Administrative Claims (except for Professional Fee Claims), must be Filed and served on the Chapter 11 Trustee or the PCI Liquidating Trustee, as applicable, and its counsel, the Creditors' Committee or the PCI Liquidating Trust Committee, as applicable, and its counsel and the other notice parties set forth in the Administrative Compensation Order, no later than (i) ten (10) days prior to the Voting Deadline for Administrative Claims accrued through the date of the Procedures Order and (ii) thirty (30) days after the Effective Date for all other Administrative Claims (the "Administrative Claims Bar Date"). ***Any Person that is required to File and serve a request for payment of an Administrative Claim as a condition to allowance of the Administrative Claim who fails to timely File and serve such request shall be forever barred, estopped, and enjoined from asserting such Claim against the Debtors, the Estates, the Liquidating Trusts or their respective roperty and***

*from participating in distributions under the Plan on account thereof, and any such Claim shall be deemed discharged as of the Effective Date.* Objections to requests for payment of Administrative Claims (except for Professional Fee Claims) must be Filed and served on the Chapter 11 Trustee or the PCI Liquidating Trustee, as applicable, and its counsel, the Creditors' Committee or the PCI Liquidating Trust Committee, as applicable, and its counsel, and the other notice parties set forth in the Administrative Compensation Order and the requesting party within thirty (30) days after the applicable Administrative Claims Bar Date or within such additional time as the Bankruptcy Court orders, after notice to the parties before expiration of the time to file an objection.

### 3.5   Bar Date for Trustee Fee Claims and Professional Fee Claims.

All requests for compensation or reimbursement of Professional Fee Claims for services rendered on or after the Petition Date and prior to the Effective Date shall be Filed and served on the Chapter 11 Trustee or the PCI Liquidating Trustee, as applicable, and its counsel, the Creditors' Committee or the PCI Liquidating Trust Committee, as applicable, and its counsel, and such other Entities who are designated by the Bankruptcy Rules, the Confirmation Order or any other order(s) of the Bankruptcy Court, no later than sixty (60) days after the Effective Date ("Professional Fee Claims Bar Date"). *Any Holder of a Professional Fee Claim that is required to File and serve an application for final allowance of its Professional Fee Claims as a condition to allowance of such Professional Fee Claim and who fails to timely File and serve such application by the required deadline shall be forever barred from asserting such Professional Fee Claim against the Debtors, the Estates, the Liquidating Trusts or their respective property and from participating in distributions under the Plan on account thereof, and any such Professional Fee Claims shall be deemed discharged as of the Effective Date*. Objections to any Professional Fee Claims must be Filed and served on the requesting Professional, the Chapter 11 Trustee or the PCI Liquidating Trustee, as applicable, and its counsel, the Creditors' Committee or the Trust Committee, as applicable, and its counsel, and the other notice parties set forth in the Administrative Compensation Order no later than thirty (30) days after the Professional Fee Claims Bar Date or within such additional time as the Bankruptcy Court orders, after notice to the parties before expiration of the time to file an objection; provided, however, that the Creditor Proponents and Interlachen will not object to or contest, or join or encourage any other Entity to object to or contest, any final fee applications of Professionals to the extent any such application includes applications or requests for the allowance of Professional Fee Claims that have been previously approved by the Bankruptcy Court as a final compensation or reimbursement of expenses.

Except to the extent that a Holder of a Professional Fee Claim fails to File and serve an appropriate fee application in a timely manner or the Bankruptcy Court disallows a Professional Fee Claim, Holders of Professional Fee Claims shall receive Cash in an amount equal to the Allowed amount of their respective Bankruptcy Court approved Professional Fee Claims.

# ARTICLE IV.

## TREATMENT OF CLAIMS AND EQUITY INTERESTS

### 4.1     Class 1—Other Priority Claims.

Class 1 consists of Other Priority Claims.

    (a)     *Distributions.* Except to the extent that the Chapter 11 Trustee or the PCI Liquidating Trustee, as applicable (following consultation with the Creditors' Committee or the PCI Liquidating Trust Committee, as applicable), and a Holder of an Allowed Other Priority Claim agree to a different treatment, each Holder of an Allowed Other Priority Claim shall receive, in full and final satisfaction, settlement and release of such Claim, payment in full in Cash in an amount equal to such Allowed Other Priority Claim on the later of (i) the Initial Distribution Date or (ii) the date when such Other Priority Claim becomes an Allowed Other Priority Claim, or as soon thereafter as is practicable. All Allowed Other Priority Claims that are not due and payable on or before the Effective Date shall be paid by the PCI Liquidating Trustee in the ordinary course of business in accordance with the terms thereof.

    (b)     *Impairment and Voting.* Class 1 is Unimpaired under the Plan and shall be deemed to accept the Plan. Holders of Allowed Other Priority Claims are not entitled to vote to accept or reject the Plan.

### 4.2     Class 2—Secured Claims.

Class 2 consists of Secured Claims, if any.

    (a)     *Distributions.* Except to the extent that the Chapter 11 Trustee or the PCI Liquidating Trustee, as applicable (following consultation with the Creditors' Committee or the PCI Liquidating Trust Committee, as applicable), and a Holder of an Allowed Secured Claim agree to a different treatment, in full and final satisfaction, settlement and release of such Claim, in the Chapter 11 Trustee's or the PCI Liquidating Trustee's discretion, as applicable (following consultation with the Creditors' Committee or the PCI Liquidating Trust Committee, as applicable), (i) each Holder of an Allowed Secured Claim shall receive Cash in an amount equal to such Allowed Secured Claim in full and complete satisfaction, settlement and release of such Allowed Secured Claim on the later of the Initial Distribution Date or the date such Secured Claim becomes an Allowed Secured Claim, or as soon thereafter as is practicable, or (ii) each Holder of an Allowed Secured Claim shall receive the Collateral securing its Allowed Secured Claim or the proceeds of such Collateral in full and complete satisfaction, settlement and release of such Allowed Secured Claim on the later of the Initial Distribution Date and the date such Secured Claim becomes an Allowed Secured Claim, or as soon thereafter as is practicable.

    With respect to any asserted Secured Claim, if and to the extent that the Holder of such asserted Secured Claim is determined, by a Final Order, to hold an Allowed Secured Claim not subject to subordination, then such Allowed Secured Claim shall receive distributions as an Allowed Secured Claim in accordance with this subsection (a) of

Section 4.2 of the Plan. To the extent that it is determined that all or any portion of such asserted Secured Claim is unsecured or is to be subordinated, then the portion that is unsecured or subordinated, to the extent Allowed, shall receive the treatment accorded to Claims in Class 3 (General Unsecured Claims), or Class 5 (Subordinated Claims), as applicable.

(b)     _Impairment and Voting._ Holders of Class 2 Secured Claims, if any, shall be Unimpaired and shall be deemed to have accepted the Plan. Out of an abundance of caution, provisional Ballots shall be distributed to Holders of Class 2 Secured Claims. In the event that the Bankruptcy Court finds that a Holder of a Class 2 Secured Claim has had its legal rights altered sufficiently to impair its Claim, then such Holder shall be entitled to vote to accept or reject the Plan.

(c)     _Negative Net Invested Capital._ Any Claim of any Holder with negative Net Invested Capital shall be disallowed and any Lien purportedly securing such Claim shall be terminated and void.

### 4.3     __Class 3—General Unsecured Claims.__

Class 3 consists of all General Unsecured Claims against any Consolidated Debtor.

(a)     _Distributions._ A Holder of an Allowed Class 3 General Unsecured Claim shall be entitled to (i) a Pro Rata distribution on the Initial Distribution Date of Cash from Trust Assets net after payment or reserve for all Administrative Expenses, Priority Tax Claim, and Class 1 and Class 2 Claims; (ii) subsequent Pro Rata distributions of Trust Assets net after payment or appropriate reserve for all PCI Liquidating Trust Expenses and Disputed Claims; _provided, that_ distributions made to the Lancelot Trustee and the Palm Beach Trustee shall be subject to the Lancelot Settlement and the PBF Settlement and PBF II Settlement, respectively; and (iii) Pro Rata distributions of BMO Litigation Trust Proceeds net after payment or reserve for all BMO Litigation Trust Expenses and Disputed Claims.

(b)     _Impairment and Voting._ Holders of Class 3 General Unsecured Claims shall be Impaired and shall be entitled to vote to accept or reject the Plan.

(c)     _Convenience._ In lieu of the treatment described above, a Holder of an Allowed Class 3 General Unsecured Claim may elect to receive a distribution on the Initial Distribution Date Cash in an amount equivalent to 20% of its Allowed Claim up to a distribution limit of $20,000, waiving any entitlement to any further distribution under the Plan.

(d)     _Negative Net Invested Capital._ Any Claim with negative Net Invested Capital shall be a Disallowed Claim upon entry of the Confirmation Order, and the Holder of such Claim shall not be eligible to vote to accept or reject the Plan or receive any distributions under the Plan .

**4.4**      **Class 4—Intercompany Claims.**

Class 4 consists of Intercompany Claims, which, solely for the purpose of administering the Consolidated Estates and making distributions under this Plan, shall each be collapsed and disregarded such that no distributions shall be made on account of such Claims. Intercompany Claims may be cancelled, reinstated, or capitalized at the discretion of the PCI Liquidating Trustee in his capacity as the Debtors' chief executive officer in accordance with Section 8.3.

**4.5**      **Class 5—Subordinated Claims.**

Class 5 consists of all Subordinated Claims.

(a)      **Distributions.** Holders of Subordinated Claims shall receive no distributions on account of such Claims.

(b)      **Impairment and Voting.** The Holders of Class 5 Subordinated Claims are Impaired and shall be deemed to have rejected the Plan.

**4.6**      **Class 6—Equity Securities.**

Class 6 consists of all Equity Securities in the Debtors. Common shares shall be cancelled if and when the Debtors are dissolved in accordance with Section 8.3, provided, however, that any options or warrants to purchase any Equity Securities, or obligating the Debtors to issue, transfer or sell Equity Securities or any other capital stock of the Debtors, shall be canceled or extinguished. Holders of Class 6 Equity Securities are Impaired and shall be deemed to have rejected the Plan.

**ARTICLE V.**

**COMPROMISES AND SETTLEMENTS**

**5.1**      **Compromises and Settlements.**

Pursuant to Section 1123(b)(3)(A) of the Bankruptcy Code and Rule 9019 of the Bankruptcy Rules, and in consideration for the distributions and other benefits provided under the Plan, the provisions of the Plan will constitute a good faith compromise and settlement of all claims or controversies relating to the rights that a Holder of a Claim against or Equity Security in any of the Debtors may have with respect to any Allowed Claim or Allowed Equity Security or any distribution to be made pursuant to the Plan on account of any Allowed Claim or Allowed Equity Security.

The Confirmation Order, subject to the occurrence of the Effective Date, shall constitute an order of the Bankruptcy Court finding and determining that the settlements provided for in the Plan are (a) in the best interests of Creditors and the Estates, (b) fair, equitable, and reasonable, (c) made in good faith, and (d) approved by the Bankruptcy Court.

**5.2**     **Palm Beach and Lancelot Claims Settlement.**

The PBF Settlement, PBF II Settlement, and the Lancelot Settlement provide for the settlement of the PBF Claim, PBF II Claim, the Lancelot Claim, the Palm Beach Avoidance Action and the Lancelot Avoidance Action with such settlements effective as of the Effective Date. Pursuant to the PBF Settlement, PBF II Settlement, and the Lancelot Settlement:

(a)     Settlement Payments. The Lancelot Trustee and the Palm Beach Trustee shall each make the payments set forth herein in resolution of the Lancelot Avoidance Action and the Palm Beach Avoidance Action, respectively, and for the consideration described herein and other covenants contained below which payments (the "Lancelot Payment", the "PBF Payment" and the "PBF II Payment", respectively) shall be made, at such Creditor's option, either by (x) Cash payment from such Creditor to the Estates on the Effective Date or (y) withholding of such amount from the first distributions to be made from the PCI Liquidating Trust. The Lancelot Payment is $10,495,000.00. The PBF Payment is $8,100.00 and the PBF II Payment is $5,095,000.00.

(b)     Allowed Lancelot Claim. The Lancelot Claim shall be Allowed in full on a Net Invested Capital basis as a Class 3 General Unsecured Claim in the amount of $764,620,000.00 plus the amount specified in Section 5.2(a) on account of the Lancelot Payment, and the Lancelot Claim shall be entitled to treatment under the Plan identical to other Class 3 General Unsecured Claims; provided, further, however, that notwithstanding the substantive consolidation of Petters Capital with the other Debtors, the Lancelot Trustee may assert an additional Claim on account of Lancelot's Claims against Petters Capital, including pursuant to Section 510(a) of the Bankruptcy Code, which Claim, if Allowed, shall be entitled to treatment from the Liquidating Trusts consistent with the treatment such Claim would have received hereunder absent substantive consolidation.

(c)     Allowed PBF Claim. The PBF Claim shall be Allowed in full on a Net Invested Capital basis as a Class 3 General Unsecured Claim in the amount of $85,987,311.00 plus the amount specified in Section 5.2(a) on account of the PBF Payment, and the PBF Claim shall be entitled to treatment identical to other Class 3 General Unsecured Claims.

(d)     Allowed PBF II Claim. The PBF II Claim shall be Allowed on a Net Invested Capital basis as a Class 3 General Unsecured Claim in the amount of $565,755,364.00 plus the amount specified in Section 5.2(a) on account of the PBF II Payment, and the PBF II Claim shall be entitled to treatment identical to other Class 3 General Unsecured Claims.

(e)     Withdrawal of Avoidance Actions. Upon becoming a Final Order, the Confirmation Order shall be deemed an order dismissing, withdrawing, and expunging the Palm Beach Avoidance Action and the Lancelot Avoidance Action, including any and all proofs of claim which may have been filed by the Chapter 11 Trustee in the Palm Beach and Lancelot bankruptcy cases, with prejudice, and the PCI Liquidating Trustee shall make such filings as are necessary to evidence the foregoing.

25

(f)     <u>Final Resolution of Claims.</u> Effective upon the Effective Date, each of the Lancelot Trustee, on behalf of Lancelot, and the Palm Beach Trustee, on behalf of Palm Beach forever knowingly and voluntarily, irrevocably, fully, and unconditionally covenants and agrees not to file or assert any claim or proof of claim (other than as otherwise allowed in this Section 5.2) against the Estates or the Covered Parties or their predecessors (other than the Debtors), successors, or assigns, and each of the Lancelot Trustee, on behalf of Lancelot, and the Palm Beach Trustee, on behalf of Palm Beach waives any entitlement to any distribution under the Plan other than as provided under this Section 5.2, and the Chapter 11 Trustee and the Petters Capital Chapter 7 Trustee, as representatives of their respective Estates, on the other hand, forever knowingly and voluntarily, irrevocably, fully, and unconditionally covenants and agrees not to file or assert any claim or proof of claim against the Lancelot estate, the Palm Beach estates, the Lancelot Trustee or the Palm Beach Trustee or their predecessors, successors, or assigns and waives any entitlement to any distribution from such estates other than as provided under this Section 5.2 (the covenanting parties, collectively, the "<u>P/L Resolution Parties</u>"). Regardless of the adequacy or inadequacy of the consideration paid, the covenant and agreement included herein are intended to settle or avoid litigation or settle the Claims and Causes of Action to which they apply and to be final and complete; <u>provided</u>, <u>however</u>, that nothing contained in this covenant and agreement shall constitute, or be deemed to constitute, a release, discharge or impairment of the right to enforce this Plan or any Claims or Causes of Action provided for in this Plan, all of which are expressly preserved; <u>provided</u>, <u>further</u>, that, for the avoidance of doubt, this covenant and agreement does not apply to the Allowed Class 3 General Unsecured Claims provided for under this Plan or with respect to any Claim arising out of or in connection with any obligation under this Plan, which Claims are expressly preserved; <u>provided</u>, <u>further</u>, that this covenant and agreement does not apply to or impair any claims that any P/L Resolution Parties may have against the Debtor or against third parties other than the Covered Parties, which Claims are expressly preserved. Further, nothing contained in this covenant and agreement shall constitute, or be deemed to constitute, a release, discharge or impairment of the right of a P/L Resolution Party to pursue any and all third parties for any and all claims or causes of action they may have against such third parties.

### 5.3     <u>Interlachen Settlement.</u>

The Interlachen Settlement provides for the resolution and allowance of the Interlachen Claim.  Pursuant to the Interlachen Settlement:

(a)     <u>Allowance of Interlachen Claim.</u> The Interlachen Claim shall be Allowed as a Class 3 Claim in the amount of $60 million and shall be entitled to treatment identical to other Allowed Class 3 General Unsecured Claims.

(b)     <u>Final Resolution of Claims.</u> Effective upon the Effective Date, Interlachen forever knowingly and voluntarily, irrevocably, fully, and unconditionally covenants and agrees not to file or assert any claim or proof of claim (other than as otherwise allowed in this Section 5.3) against the Estates or the Covered Parties or their predecessors (other than the Debtors), successors, or assigns, and Interlachen waives any entitlement to any distribution under the Plan other than as provided under this Section 5.3,

26

and the Chapter 11 Trustee and the Petters Capital Chapter 7 Trustee, as representatives of their respective Estates, on the other hand, forever knowingly and voluntarily, irrevocably, fully, and unconditionally covenants and agrees not to file or assert any claim against Interlachen or its predecessors, successors, or assigns. Regardless of the adequacy or inadequacy of the consideration paid, the covenant and agreement included herein are intended to settle or avoid litigation or settle the Claims and Causes of Action to which they apply and to be final and complete; provided, however, that nothing contained in this covenant and agreement shall constitute, or be deemed to constitute, a release, discharge or impairment of the right to enforce this Plan or any Claims or Causes of Action provided for in this Plan, all of which are expressly preserved; provided, further, that, for the avoidance of doubt, this covenant and agreement does not apply to the Allowed Class 3 General Unsecured Claims provided for under this Plan or with respect to any Claim arising out of or in connection with any obligation under this Plan, which Claims are expressly preserved; provided, further, that this covenant and agreement does not apply to or impair any claims that Interlachen may have against the Debtor or against third parties other than the Covered Parties, which Claims are expressly preserved. Further, nothing contained in this covenant and agreement shall constitute, or be deemed to constitute, a release, discharge or impairment of the right of Interlachen to pursue any and all third parties for any and all claims or causes of action they may have against such third parties.

## ARTICLE VI.

## SUBSTANTIVE CONSOLIDATION

### 6.1    Consolidation for Certain Purposes.

On and subject to the occurrence of the Effective Date, this Plan shall substantively consolidate the Petters Capital Estate and the PGW Estate with the previously substantively consolidated PCI Estate and the PCI SPEs Estates. Resultantly, solely for purposes of administering the Consolidated Estates and making distributions under this Plan, (a) all assets and liabilities of the Debtors shall be pooled, and (b) any and all Intercompany Claims shall be collapsed and disregarded. Accordingly, duplicative Claims Filed against the Debtors, including guaranty claims, claims sounding in tort that purport to recover the same, or substantially the same, damages as other Claims, and Claims that purport to establish joint and several liability, shall be expunged and disallowed upon the Effective Date, and the Holder of any Claims shall receive a single recovery on account of any such joint or duplicative obligations. The treatment of the Estates as if they were substantively consolidated solely for the purpose of administering the Consolidated Estates and making distributions under this Plan shall not, and shall not be deemed to, affect or constitute a waiver of the mutuality requirement for setoff under Section 553 of the Bankruptcy Code, except to the extent otherwise expressly waived by the Chapter 11 Trustee or the PCI Liquidating Trustee in writing. All Claims, Causes of Action or rights of the Chapter 11 Trustee or the Petters Capital Chapter 7 Trustee under applicable law to avoid transfers of the property of any of the Debtors are and shall be preserved under the Plan.

27

**6.2     Order Granting Substantive Consolidation.**

This Plan shall serve as, and shall be deemed to be, a motion for entry of an order substantively consolidating the Debtors as described in Section 6.1 above. Any objection to this request for substantive consolidation shall be Filed with the Bankruptcy Court and served in accordance with the Bankruptcy Rules or as otherwise ordered by the Bankruptcy Court. In the event any such objections are timely Filed, a hearing with respect thereto shall occur at the Confirmation Hearing. Entry of the Confirmation Order shall constitute approval by the Bankruptcy Court, effective as of the Effective Date, of the substantive consolidation of the Debtors for Plan purposes. The Confirmation Order shall constitute approval of the Bankruptcy Court of the substantive consolidation of the Debtors, and the relief accorded under Section 6.1 shall be effective retroactively as of October 11, 2008.

## ARTICLE VII.

## UNEXPIRED LEASES AND EXECUTORY CONTRACTS

**7.1     Rejection of Prepetition Unexpired Leases and Executory Contracts.**

Any and all pre-petition Unexpired Leases or Executory Contracts not previously rejected by the Chapter 11 Trustee or the Debtors, unless specifically assumed pursuant to orders of the Bankruptcy Court prior to the Confirmation Date or the subject of a motion to assume or assume and assign pending on the Confirmation Date, shall be deemed rejected pursuant to Section 365 of the Bankruptcy Code by the Debtors on the Confirmation Date. Each such contract and lease will be rejected only to the extent that any such contract or lease constitutes an Executory Contract or Unexpired Lease. To the extent that any loan agreement to which any Debtor is lender or security agreement to which any Debtor is a beneficiary is deemed to be an Executory Contract, rejection of such agreement, shall not, by itself, eliminate the borrower's obligations thereunder or cause any of the Debtors' Liens or ownership rights or benefits to be released, terminated, discharged, impaired or otherwise rendered unenforceable. The Confirmation Order will constitute an order of the Bankruptcy Court approving such rejections, pursuant to Section 365 of the Bankruptcy Code, as of the Confirmation Date.

**7.2     Bar Date for Rejection Damage Claims.**

Any and all proofs of claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases shall, unless another order of the Bankruptcy Court provides for an earlier date, be Filed within thirty (30) days after the Filing of notice of entry of the Confirmation Order. Any proof of Claim arising from the rejection of an Executory Contract or Unexpired Lease that is not timely Filed shall be disallowed automatically and forever barred, estopped and enjoined from assertion and shall not be enforceable against the Debtors, the Estates or the Liquidating Trusts or their respective Property, without the need for any objection or any further notice to or action, order or approval of the Bankruptcy Court, and any Claim arising out the rejection of the Unexpired Lease or Executory Contract or shall be deemed fully satisfied and released notwithstanding anything in the Schedules or a proof of claim to the contrary. All Allowed

28

Claims arising from the rejection of an Unexpired Lease or Executory Contract shall be treated as Class 3 General Unsecured Claims for purposes of a distribution pursuant to the Plan.

**7.3**   **Insurance.**

For the avoidance of doubt, the Debtors' rights with respect to all insurance policies under which any of the Debtors may be a beneficiary (including all insurance policies that may have expired prior to the Petition Date, all insurance policies entered into by any of the Debtors or Estates after the Petition Date, and all insurance policies under which any of the Debtors or Estates hold rights to make, amend, prosecute or benefit from claims), are retained and will be transferred and assigned to the PCI Liquidating Trust pursuant to the Plan. The provisions of the Plan shall not diminish or impair in any manner the enforceability of coverage of any insurance policy.

## ARTICLE VIII.

## IMPLEMENTATION OF THE PLAN

**8.1**   **PCI Liquidating Trust Agreement.**

Without any further action of any Entity, the PCI Liquidating Trust Agreement shall become effective on the Effective Date. The PCI Liquidating Trust Agreement shall govern the PCI Liquidating Trust.

**8.2**   **PCI Liquidating Trust.**

The PCI Liquidating Trust shall be established on the Effective Date and shall be administered pursuant to the PCI Liquidating Trust Agreement for the purpose of administering the Trust Assets, including prosecuting and monetizing the Trust Claims, resolving all Disputed Claims, and making distributions to Holders of Allowed Claims in accordance with the terms of the Plan and otherwise implementing this Plan.

**8.3**   **Retained Assets and Dissolution.**

Upon the Effective Date, the PCI Liquidating Trustee shall be appointed as the Debtors' chief executive officer and charged with administering and monetizing the Retained Assets and transferring the proceeds of the Retained Assets to the PCI Liquidating Trust, subject to the approval or at the direction of the PCI Liquidating Trust Committee. Except as otherwise provided in the Plan or as determined otherwise by the PCI Liquidating Trustee, the existence of the Debtors may, but is not required to, be terminated by merger, consolidation or dissolution or as otherwise permitted by applicable law, all at such time and on such terms as the PCI Liquidating Trustee determines to be necessary or appropriate to implement this Plan and all without further order of the Bankruptcy Court. In order to effectuate such terminations in accordance with applicable law, the PCI Liquidating Trustee may, without further order of the Bankruptcy Court, execute and file with the applicable governmental authorities such certificates of merger, consolidation or dissolution or similar instruments as the PCI Liquidating Trustee

determines to be necessary or appropriate. The PCI Liquidating Trustee shall be authorized to file the Debtors' tax returns as necessary and appropriate in accordance with applicable law.

### 8.4    PCI Liquidating Trustee.

On the Effective Date, the Chapter 11 Trustee, not in his individual capacity but solely as trustee, shall be appointed the PCI Liquidating Trustee as representative of the Consolidated Estates in accordance with Section 1123(b)(3) of the Bankruptcy Code and 26 U.S.C. § 6012(b)(3), subject to oversight by the PCI Liquidating Trust Committee as provided for herein and in the PCI Liquidating Trust Agreement.

### 8.5    PCI Liquidating Trust Committee.

(a)    Membership. The PCI Liquidating Trust Committee shall be formed and constituted on the Effective Date and consist of five (5) members. Each of the Lancelot Trustee, the Palm Beach Trustee, and Greenpond, in their capacities as Creditor Proponents, shall be entitled to appoint one member of the PCI Liquidating Trust Committee, and shall have the continuing right to replace such member for any reason in such Person's respective sole discretion. The PCI Liquidating Trust Committee shall consist of the following five (5) initial members: the Lancelot Trustee, the Palm Beach Trustee, Michael Stern, Lance Breiland, and an individual who has no financial connections with or other interests that would make the individual not independent from the Creditor Proponents or Interlachen to be selected by the Creditor Proponents prior to the Confirmation Hearing (the "Independent Member"). Each member shall be entitled to a single vote of equivalent power and weight. In the event a member appointed by a Creditor Proponent (i.e., the Lancelot Trustee, the Palm Beach Trustee, or Michael Stern) ceases to be a member of the PCI Liquidating Trust Committee for any reason and the applicable Creditor Proponent fails to name a replacement within twenty (20) Business Days after such Person ceased to be a member of the PCI Liquidating Trust Committee, or if Lance Breiland or the Independent Member ceases to be a member of the PCI Liquidating Trust Committee, the other members of the PCI Liquidating Trust Committee shall agree on a replacement member. If no agreement is reached by the remaining members within twenty (20) Business Days thereafter, the PCI Liquidating Trustee shall select promptly the replacement member from the nominees of the four (4) continuing members (even if only one nominee is identified), and if no nominees have been identified by the continuing members within twenty (20) Business Days after the PCI Liquidating Trustee has requested the continuing members to each identify the name of a nominee, the PCI Liquidating Trustee shall select promptly a replacement member of the PCI Liquidating Trustee's choosing.

(b)    Common Interest Privilege. Communications among and between the PCI Liquidating Trustee and the PCI Liquidating Trust Committee, or their respective advisors, relating to any Trust Claims shall be deemed privileged and confidential and without waiver of any privileges, including without limitation the attorney-client privilege, work-product privilege or other privilege or immunity attaching to any such documents or information (whether written or oral).

**8.6    PCI Liquidating Trust Committee Chair.**

The Lancelot Trustee shall serve as the initial chair of the PCI Liquidating Trust Committee. Replacement of the PCI Liquidating Trust Committee chair shall be in accordance with the PCI Liquidating Trust Agreement.

**8.7    Counsel to the PCI Liquidating Trust and PCI Liquidating Trust Committee.**

In addition to PCI Liquidating Trustee General Counsel, the PCI Liquidating Trustee shall retain any such other firms as may be matter-appropriate at the direction of the PCI Liquidating Trust Committee, in accordance with the terms of the Plan and the PCI Liquidating Trust Agreement. Counsel to the PCI Liquidating Trust Committee shall be any firms as may be appropriate as determined by the PCI Liquidating Trust Committee in its sole discretion.

**8.8    Trust Assets.**

(a)    Effective Date Asset Contributions and Transfers. The Asset Contribution to the PCI Liquidating Trust shall occur on the Effective Date. The Trust Claims shall be deemed to be transferred and assigned to the PCI Liquidating Trust on the Effective Date. The Chapter 11 Trustee, the Petters Capital Chapter 7 Trustee, and the Debtors are authorized to take such steps as may be necessary or desirable to confirm such contribution, transfer and assignment. Standing to prosecute all Trust Claims pending on the Effective Date shall transfer to the PCI Liquidating Trustee automatically on the Effective Date in accord with Section 1123(b)(3)(B) of the Bankruptcy Code. Standing to commence and prosecute all Trust Claims which are not pending on the Effective Date shall transfer automatically on the Effective Date to the PCI Liquidating Trustee in accord with Section 1123(b)(3)(B) of the Bankruptcy Code, for commencement upon the approval of the PCI Liquidating Trust Committee as provided for herein or by the PCI Liquidating Trust Agreement. A nonexclusive schedule of Claims and Causes of Action brought or that may be brought by the Chapter 11 Trustee is attached as Exhibit A. In accordance with and subject to any applicable law, the inclusion or failure to include any Claim or Cause of Action on Exhibit A shall not be deemed an admission, denial or waiver of any Claim or Cause of Action that any Debtor or Estate may hold against any Entity.

For the avoidance of doubt, unless a Claim or Cause of Action against any Entity is expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order (including the Confirmation Order), the Chapter 11 Trustee or the Petters Capital Chapter 7 Trustee, as applicable, expressly reserves such Causes of Action to be transferred to the PCI Liquidating Trust pursuant to the Plan for prosecution by the PCI Liquidating Trustee and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppels (judicial, equitable or otherwise) or laches shall apply to such Causes of Action upon or after the entry of the Confirmation Order or Effective Date based on the Plan or the Confirmation Order, except where such Causes of Action have been expressly released in the Plan or any Final Order (including the Confirmation).

31

(b)      Creditor Direct Claims Not Included. The PCI Liquidating Trustee does not have standing to pursue the Creditor Direct Claims, and nothing in this Plan shall impair the standing of individual creditors to prosecute or continue to prosecute such Claims for their own benefit.

(c)      Disputed Liens. Until the validity of asserted Disputed Liens on certain assets held by the Debtors has been determined by Final Order, any Cash or other proceeds from such assets shall be segregated by the PCI Liquidating Trustee to reserve for the Claims underlying such Disputed Liens.

(d)      Liquidation of Assets. The net proceeds of the liquidation of the Trust Assets shall be distributed by the PCI Liquidating Trustee to Holders of Allowed Claims in accordance with the Plan.

(e)      Semi-annual distributions. Distributions to Holders of Allowed Claims shall be made at least every six (6) months following the Effective Date when Trust Assets available for distribution exceed $2 million, subject to reserves for PCI Liquidating Trust Expenses and Disputed Claims and subject to the PCI Liquidating Trust Committee determining otherwise.

### 8.9     Powers of the PCI Liquidating Trustee.

Subject to the terms hereof and of the PCI Liquidating Trust Agreement, the PCI Liquidating Trustee shall have authority to take all steps necessary to administer the Trust Assets, including the duty and obligation to make distributions to Creditors holding Allowed Claims, to review and maintain objections to Claims, and to pursue Trust Claims. The PCI Liquidating Trustee shall have and perform all of the duties, responsibilities, rights, authority and obligations set forth in the Plan and the PCI Liquidating Trust Agreement.

The PCI Liquidating Trustee shall chair regular status meetings with the PCI Liquidating Trust Committee, in person or by telephone as determined by the PCI Liquidating Trust Committee to be held with such frequency and at such place as the PCI Trust Committee may reasonably determine, but in no event shall such meetings be held less frequently than one time during each calendar quarter. Written status reports shall be provided by the PCI Liquidating Trustee to the PCI Liquidating Trust Committee at least 3 Business Days prior to any such meeting, which status reports shall identify the Professionals assigned to each matter as well as each of their assigned tasks and immediate and longer term deliverables.

(a)      Powers. Without the necessity of further Bankruptcy Court approval (except as otherwise specified herein), and in every case subject to consultation with the PCI Liquidating Trust Committee and the restrictions imposed herein, the PCI Liquidating Trustee shall have the power and authority to take all actions necessary and appropriate to effectuate the Plan and the PCI Liquidating Trust Agreement (and for all purposes will act in the capacity as the PCI Liquidating Trustee and not in his individual capacity), including:

32

(i)        Receive, hold legal title, investigate and administer the Trust Assets, all in accordance with the Plan and the PCI Liquidating Trust Agreement.

(ii)       Prosecute any Trust Claims and raise defenses to any counterclaims adverse to the PCI Liquidating Trust.

(iii)      Execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan and the PCI Liquidating Trust Agreement and certify or attest to any of the foregoing actions.

(iv)      File and prosecute objections to Claims (that are not Allowed Claims).

(v)       With respect to Claims to be Allowed in an amount equal to or less than $1 million, compromise and/or resolve Claims in accordance with, but subject to the limitations set forth in, the Plan.

(vi)      Make distributions, pay taxes, and pay other obligations owed by the Debtors, the Estates, or the Trust.

(vii)     Open and maintain bank accounts on behalf of and in the name of the PCI Liquidating Trust.

(viii)    Establish funds, reserves, accounts, and sub-accounts within the PCI Liquidating Trust, as deemed by the PCI Liquidating Trustee, in its reasonable discretion and in consultation with the PCI Trust Committee, as may be necessary, appropriate, or desirable in carrying out the purposes of the PCI Liquidating Trust.

(ix)      Determine the manner of ascertainment of income and principal of the Trust Assets, and the apportionment of income and principal among such assets.

(x)       File, if required, any and all tax information returns with respect to the PCI Liquidating Trust and pay taxes payable by the PCI Liquidating Trust, if any.

(b)       Powers of the PCI Liquidating Trustee Subject to Approval or at the Direction of the PCI Liquidating Trust Committee. Without the necessity of further Bankruptcy Court approval (except as otherwise specified herein), and in every case subject to the restrictions imposed herein, the following power and authority of the PCI Liquidating Trustee are subject to prior approval of the PCI Liquidating Trust Committee or shall only be taken at the direction of the PCI Liquidating Trust Committee (and for all purposes hereunder the PCI Liquidating Trustee shall act in the capacity as PCI Liquidating Trustee and not in his individual capacity):

(i)        Sell, convey, transfer, assign, liquidate, or abandon Trust Assets, or any part thereof or any interest therein.

33

(ii)     Protect and enforce the rights to the Trust Claims and other Trust Assets by any method deemed appropriate including, without limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium or similar law and general principles of equity.

(iii)     Settle, compromise, withdraw, or abandon any Trust Claims.

(iv)     Commence and prosecute any Trust Claims that are not pending on the Effective Date, and raise defenses to any counterclaims adverse to the PCI Liquidating Trust.

(v)     With respect to Claims to be Allowed in an amount greater than $1 million, compromise and/or resolve Claims in accordance with, but subject to the limitations set forth in, the Plan (including the Filing of any objections to such Claims).

(vi)     Endorse the payment of notes or other obligations of any Person or to make contracts with respect thereto.

(vii)     Borrow sums of money, at any time and from time to time, for purposes as may be deemed advisable.

(viii)     Other than PCI Liquidating Trustee General Counsel, retain Professionals, including law firms, independent accounting firms, and financial advisors as determined necessary to perform the functions of the PCI Liquidating Trust.

(ix)     Administer and monetize the Retained Assets and transfer the proceeds of the Retained Assets to the PCI Liquidating Trust.

### 8.10     Powers of the PCI Liquidating Trust Committee.

Without the necessity of further Bankruptcy Court approval (except as otherwise specified herein), the PCI Liquidating Trust Committee shall have the following exclusive powers under the Plan and the PCI Liquidating Trust Agreement (each by majority vote):

(a)     To confer and consult with counsel to the PCI Liquidating Trustee with respect to Trust Claims and all material litigation strategies and decisions.

(b)     To determine the basis on which any Trust Claims will be settled, compromised, abandoned, or withdrawn.

(c)     Prosecute any Trust Claims, and prosecute any objections to Claims (that are not Allowed), in each case that are not pending on the Effective Date that the PCI Liquidating Trustee unreasonably refuses to assert and raise defenses to any counterclaims adverse to the PCI Liquidating Trust.

(d)     To make all strategic and business determinations with respect to the PCI Liquidating Trust's interest in Polaroid Corporation, and bankruptcy case numbers

34

08-46617,    08-46621(GFK),    08-46620(GFK),    08-46623(GFK),    08-46624(GFK),
08-46625(GFK), 08-46626(GFK), 08-46627(GFK), 08-46628(GFK), 08-46629(GFK).

(e)    To approve the retention and fee arrangements of all Professionals representing the PCI Liquidating Trustee, other than the retention of PCI Liquidating Trustee General Counsel, including the retention of special counsel and such other consulting Professionals related to any Trust Claims asserted against or related to Opportunity Finance, LLC; Opportunity Finance Securitization, LLC; Opportunity Finance Securitization II, LLC; Opportunity Finance Securitization III, LLC; International Investment Opportunities, LLC; Sabes Family Foundation; Sabes Minnesota Limited Partnership; Robert W. Sabes; Janet F. Sabes; Jon R. Sabes; or Steven Sabes.

(f)    Other than as specifically provided for herein, to determine the roles of any and all Professionals, including terminating any and all Professionals.

(g)    To have exclusive oversight over the payment of any and all Professionals' fees.

(h)    To determine the amounts and timing of supplemental distributions, if any, other than the regular semiannual distributions provided for herein and to establish appropriate reserves for all distributions.

**8.11    Debtors' Books and Records.**

Upon the occurrence of the Effective Date, the Chapter 11 Trustee shall be deemed to have transferred to the PCI Liquidating Trustee all possession, custody, and control of all books and records of the Debtors pertaining to the Trust Assets, including, all books and records necessary to the making of distributions, prosecution of objections to Claims, prosecution of Causes of Action, and the analysis, recovery and disposition of the Trust Assets. All such books and records shall be preserved for so long as may be necessary for the prosecution or defense of any Trust Claims, or any Claim objection Filed by the PCI Liquidating Trustee, after which the PCI Liquidating Trustee, upon any legally required notice, shall be authorized and empowered to abandon or destroy such books and records without further order of the Bankruptcy Court, in the PCI Liquidating Trustee's discretion upon consent of the PCI Liquidating Trust Committee.

The transfer of any and all Trust Assets to the PCI Liquidating Trust, including documents and other information gathered, and relevant work product developed, in connection with pending Claims and Causes of Action shall be without waiver of any evidentiary privileges, including without limitation the attorney-client privilege, work-product privilege, or any other privilege or immunity attaching to any such documents or information (whether written or oral). Any and all attorney-client privilege, work-product privilege, or other privilege or immunity attaching to any documents or communications (whether written or oral) pertaining to the Claims and Causes of Action shall be transferred to the PCI Liquidating Trust and shall vest in the PCI Liquidating Trustee and his representatives, and such transfer shall be without waiver in recognition of

35

the joint and/or successorship interest in prosecuting claims on behalf of the Debtors' Estates.

### 8.12    Resignation of PCI Liquidating Trustee.

The PCI Liquidating Trustee may resign by giving not less than thirty (30) days' prior written notice thereof to the PCI Liquidating Trust Committee. The resignation will be effective on the latest of: (a) the date specified in the notice; (b) the date that is thirty (30) days after the date the notice is delivered; and (c) the date the successor PCI Liquidating Trustee accepts his or her appointment as such. If a successor trustee is not appointed or does not accept his or her appointment within thirty (30) days following delivery of such notice of resignation, the PCI Liquidating Trustee may file a motion with the Bankruptcy Court, upon notice and hearing, for the appointment of a successor trustee.

### 8.13    Removal of PCI Liquidating Trustee.

The PCI Liquidating Trustee may be removed (i) by unanimous vote of the PCI Liquidating Trust Committee for any reason or (ii) by the Bankruptcy Court, as determined by a Final Order after an opportunity for hearing, (a) for a material breach of the Plan or of the Liquidating Trust Agreement or (b) for cause, as that term is construed under Section 324(a) of the Bankruptcy Code.

Appointment of any subsequent PCI Liquidating Trustee, whether following resignation or removal or for any other reason, shall be determined by majority vote of the PCI Liquidating Trust Committee.

### 8.14    Termination of the PCI Liquidating Trust.

Upon final resolution and liquidation of all Trust Assets, reconciliation of all Claims, distribution of all Cash and proceeds of Trust Assets, and any other action necessary under the Plan to wind down, terminate or dissolve the PCI Liquidating Trust, as determined by the PCI Liquidating Trustee and the PCI Liquidating Trust Committee, the PCI Liquidating Trustee and the PCI Liquidating Trust Committee shall be relieved of further responsibility.

### 8.15    Indemnification.

The PCI Liquidating Trust Agreement shall provide for reasonable and customary indemnification of, and appropriate insurance for, the PCI Liquidating Trustee and the PCI Liquidating Trust Committee and its members.

### 8.16    Fees and Expenses of the PCI Liquidating Trust.

The PCI Liquidating Trust Expenses shall be paid from the Trust Assets in accordance with this Plan and the PCI Liquidating Trust Agreement.

**8.17    Compensation of the PCI Liquidating Trustee and PCI Liquidating Trust Professionals.**

The PCI Liquidating Trustee, and the Professionals representing the PCI Liquidating Trustee or the PCI Liquidating Trust Committee, shall be paid on a monthly basis at regular hourly rates, and may negotiate and agree upon contingency fee arrangements, in each case subject to the approval of the PCI Liquidating Trust Committee, without further order of the Bankruptcy Court. The PCI Liquidating Trustee, and the Professionals representing the PCI Liquidating Trustee or the PCI Liquidating Trust Committee, shall provide advance quarterly budgets, with monthly detail, to the PCI Liquidating Trust Committee for its review and approval. Detailed invoices shall be issued to the PCI Liquidating Trustee and PCI Liquidating Trust Committee on a monthly basis. Any variances greater than 10%, relative to the quarterly budgets shall be declared to the PCI Liquidating Trust Committee as soon as reasonably possible, and shall be subject to the objection of the PCI Liquidating Trust Committee. Any portion of monthly invoices not subject to an objection by the PCI Liquidating Trust Committee within 10 Business Days shall be paid promptly. Fee applications may be Filed with the Bankruptcy Court solely to address any unresolved objections of the PCI Liquidating Trust Committee to any portions of monthly invoices. Members of the PCI Liquidating Trust Committee, other than the Independent Member, shall receive no compensation, but shall be entitled to reimbursement for reasonable travel expenses and other reasonable out-of-pocket expenses. The Independent Member shall be entitled to compensation and reimbursement for reasonable travel expenses and other reasonable out-of-pocket expenses, subject to the same terms as and conditions set forth in this Section 8.17 that are applicable to the PCI Liquidating Trustee and Professionals representing the PCI Liquidating Trustee and the PCI Liquidating Trust Committee.

**8.18    Tax Treatment.**

The PCI Liquidating Trust generally is intended to be treated, for federal income tax purposes, in part as a liquidating trust within the meaning of Treasury Regulations section 301.7701-4(d), for the benefit of the Holders of Allowed Claims entitled to distributions of Pending Payments, and otherwise as one or more disputed ownership funds within the meaning of Treasury Regulations section 1.468B- 9(b)(1), as more specifically provided for under the PCI Liquidating Trust Agreement. Accordingly, for all federal income tax purposes the transfer of Trust Assets to the PCI Liquidating Trust will be treated as: (a) to the extent of Pending Payments, a transfer of the Pending Payments directly from the Debtors to the Holders of such Allowed Claims followed by the transfer of such Pending Payments by the Holders of Allowed Claims to the PCI Liquidating Trust in exchange for rights to Distributions from the PCI Liquidating Trust; and (b) to the extent of amounts that are not Pending Payments, as a transfer to one or more disputed ownership funds. The Holders of Allowed Claims entitled to Distributions of Pending Payments will be treated for federal income tax purposes as the grantors and deemed owners of their respective shares of the Trust Assets in the amounts of the Pending Payments and any earnings thereon. The PCI Liquidating Trustee will be required by the PCI Liquidating Trust Agreement to file federal tax returns for the PCI Liquidating Trust as a grantor trust with respect to any Pending Payments and as one or more disputed ownership funds with

respect to all other funds or other property held by the PCI Liquidating Trust pursuant to applicable Treasury Regulations, and any income of the PCI Liquidating Trust will be treated as subject to tax on a current basis. The PCI Liquidating Trust Agreement will provide that the PCI Liquidating Trustee will pay such taxes from the Trust Assets and the assets and properties of the liquidating Debtors. In addition, the PCI Liquidating Trust Agreement will require consistent valuation by the PCI Liquidating Trustee and the Beneficiaries (as defined in the PCI Liquidating Trust Agreement), for all federal income tax purposes, of any property held by the PCI Liquidating Trust. The PCI Liquidating Trust Agreement will provide that termination of the trust will occur no later than five (5) years after the Effective Date, unless before termination the Bankruptcy Court approves an extension based upon a finding that such an extension is necessary for the PCI Liquidating Trust to complete its Claims resolution and liquidating purpose. The PCI Liquidating Trust Agreement also will limit the investment powers of the PCI Liquidating Trustee in accordance with IRS Rev. Proc. 94-45 and will require the PCI Liquidating Trust to distribute at least annually to the Beneficiaries (as such may have been determined at such time) its net income (net of any payment of or provision for Taxes), except for amounts retained as reasonably necessary to maintain the value of the Trust Assets or to meet Claims and contingent liabilities (including Disputed Claims).

### 8.19   **BMO Litigation Trust Agreement.**

Without any further action of any Entity, the BMO Litigation Trust Agreement shall become effective on the Effective Date. The BMO Litigation Trust Agreement shall govern the BMO Litigation Trust.

### 8.20   **BMO Litigation Trust.**

The BMO Litigation Trust shall be established on the Effective Date and shall be administered pursuant to the BMO Litigation Trust Agreement for the purpose of administering the BMO Litigation Trust Assets, including prosecuting and monetizing the BMO Litigation Trust Assets, making distributions to Holders of Allowed Class 3 General Unsecured Claims in accordance with the terms of the Plan and otherwise implementing this Plan.

### 8.21   **BMO Litigation Trustee.**

On the Effective Date, the Chapter 11 Trustee, not in his individual capacity but solely as trustee, shall be appointed the BMO Litigation Trustee as representative of the Estates in accordance with Section 1123(b)(3) of the Bankruptcy Code and 26 U.S.C. § 6012(b)(3), subject to oversight by the BMO Litigation Trust Committee as provided for herein and in the BMO Litigation Trust Agreement.

### 8.22   **BMO Litigation Trust Committee.**

(a)   <u>Membership</u>. The BMO Litigation Trust Committee shall be formed and constituted on the Effective Date. The BMO Litigation Trust Committee shall consist of three (3) members. Two of the members of the BMO Litigation Trust Committee shall be selected by Holders of Allowed Class 3 General Unsecured Claims by a majority in

amount of those voting and the third member of the BMO Litigation Trust Committee shall be selected by the other two members of the BMO Litigation Trust Committee. Each member shall be entitled to a single vote of equivalent power and weight. In the event a member ceases to be a member of the BMO Litigation Trust Committee for any reason, the remaining members shall agree on a replacement member. If no agreement is reached by the remaining members within twenty (20) Business Days after a Person ceased to be a member of the BMO Litigation Trust Committee, the BMO Litigation Trustee shall select promptly the replacement member from the nominees of the two continuing members (even if only one nominee is identified), and if no nominees have been identified by the continuing members within twenty (20) Business Days after the BMO Litigation Trustee has requested the continuing members to each identify the name of a nominee, the BMO Litigation Trustee shall select promptly a replacement member of the BMO Litigation Trustee's choosing.

(b)    Common Interest Privilege. Communications among and between the BMO Litigation Trustee and the BMO Litigation Trust Committee, or their respective advisors, relating to any Trust Claims shall be deemed privileged and confidential and without waiver of any privileges, including without limitation the attorney-client privilege, work-product privilege or other privilege or immunity attaching to any such documents or information (whether written or oral).

### 8.23    Counsel to the BMO Litigation Trust and BMO Litigation Trust Committee.

The BMO Litigation Trustee shall retain such legal counsel as may be matter-appropriate at the direction of the BMO Litigation Trust Committee, in accordance with the terms of the Plan and the BMO Litigation Trust Agreement. Counsel to the BMO Litigation Trust Committee shall be any firms as may be appropriate as determined by the BMO Litigation Trust Committee in its sole discretion.

### 8.24    BMO Litigation Trust Assets.

(a)    Effective Date Asset Contributions and Transfers. The BMO Litigation Trust Assets shall be deemed to be transferred and assigned to the BMO Litigation Trust on the Effective Date. Standing to prosecute all BMO Litigation Trust Assets pending on the Effective Date and to commence and prosecute all Causes of Actions that are BMO Litigation Trust Assets and that are not pending on the Effective Date shall transfer to the BMO Litigation Trustee automatically on the Effective Date in accord with Section 1123(b)(3)(B) of the Bankruptcy Code. For the avoidance of doubt, the BMO Litigation Trust Assets include, but are not limited to, the BMO Adversary Proceeding, which is currently pending.

For the avoidance of doubt, unless a Claim or Cause of Action against any Entity that is a BMO Litigation Trust Asset is expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order (including the Confirmation Order), the Chapter 11 Trustee expressly reserves such Causes of Action to be transferred to the BMO Litigation Trust pursuant to the Plan for prosecution by the BMO Litigation Trustee,

and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppels (judicial, equitable or otherwise) or laches shall apply to such Causes of Action upon or after the entry of the Confirmation Order or Effective Date based on the Plan or the Confirmation Order, except where such Causes of Action have been expressly released in the Plan or any Final Order (including the Confirmation).

(b)      Liquidation of Assets. The net proceeds of the liquidation of the BMO Litigation Trust Assets shall be distributed by the BMO Litigation Trustee to Holders of Allowed Class 3 General Unsecured Claims in accordance with the Plan.

### 8.25    Powers of the BMO Litigation Trustee.

Subject to the terms hereof and of the BMO Litigation Trust Agreement, the BMO Litigation Trustee shall have authority to take all steps necessary to administer the BMO Litigation Trust Assets, including the duty and obligation to make distributions to Holders of Allowed Class 3 General Unsecured Claims in accordance with the Plan and the BMO Litigation Trust Agreement and to pursue Claims and Causes of Action that are BMO Litigation Trust Assets. The BMO Litigation Trustee shall have and perform all of the duties, responsibilities, rights and obligations set forth in the Plan and the BMO Litigation Trust Agreement.

The BMO Liquidating Trustee shall chair regular status meetings with the BMO Liquidating Trust Committee, in person or by telephone as determined by the BMO Liquidating Trust Committee to be held with such frequency and at such place as the BMO Trust Committee may reasonably determine, but in no event shall such meetings be held less frequently than one time during each calendar quarter. Written status reports shall be provided by the BMO Liquidating Trustee to the BMO Liquidating Trust Committee at least 3 Business Days prior to any such meeting, which status reports shall identify the Professionals assigned to each matter as well as each of their assigned tasks and immediate and longer term deliverables.

(a)      Powers. Without the necessity of further Bankruptcy Court approval (except as otherwise specified herein), and in every case subject to consultation with the BMO Litigation Trust Committee and the restrictions imposed herein, the BMO Litigation Trustee shall have the following power and authority to take all actions necessary and appropriate to effectuate the Plan and the BMO Litigation Trust Agreement (and for all purposes will act in the capacity as BMO Litigation Trustee and not in his individual capacity), including:

(i)      Receive, hold legal title to, investigate and administer the BMO Litigation Trust Assets, all in accordance with the Plan and the BMO Litigation Trust Agreement.

(ii)      Prosecute the BMO Litigation Trust Assets and raise defenses to any counterclaims adverse to the BMO Litigation Trust.

(iii)    Make distributions, pay taxes, and pay other obligations owed by the BMO Litigation Trust, including the payment of expenses of the BMO Litigation Trust, including the cost of pursuing the BMO Litigation Trust Assets.

(iv)    Open and maintain bank accounts on behalf of and in the name of the BMO Litigation Trust.

(v)    Establish funds, reserves, accounts, and sub-accounts within the BMO Litigation Trust, as deemed by the BMO Litigation Trustee, in its reasonable discretion and in consultation with the BMO Litigation Trust Committee, as may be necessary, appropriate, or desirable in carrying out the purposes of the BMO Litigation Trust.

(vi)    Determine the manner of ascertainment of income and principal of the BMO Litigation Trust Assets, and the apportionment of income and principal among such assets.

(vii)    File, if required by law, any and all tax information returns with respect to the BMO Litigation Trust and pay taxes payable by the BMO Litigation Trust, if any.

(b)    Powers of the BMO Litigation Trustee Subject to Approval or at the Direction of the BMO Litigation Trust Committee. Without the necessity of further Bankruptcy Court approval (except as otherwise specified herein), and in every case subject to the restrictions imposed herein, the following power and authority of the BMO Litigation Trustee are subject to prior approval of the BMO Litigation Trust Committee or shall only be taken at the direction of the BMO Litigation Trust Committee (and for all purposes hereunder, the BMO Litigation Trustee shall be acting in the capacity as the BMO Liquidating Trustee and not individually):

(i)    Sell, convey, transfer, assign, liquidate, or abandon BMO Litigation Trust Assets, or any part thereof or any interest therein.

(ii)    Protect and enforce the rights to the BMO Litigation Trust Assets by any method deemed appropriate including by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium or similar law and general principles of equity.

(iii)    Settle, compromise, withdraw, or abandon BMO Litigation Trust Assets.

(iv)    Borrow sums of money, at any time and from time to time, for purposes as may be deemed advisable.

(v)    Retain and approve the fees of Professionals, including law firms, independent accounting firms, and financial advisors as determined necessary to perform the functions of the BMO Litigation Trust, and to negotiate and approve any

41

alternative fee arrangements with such Professionals as may be beneficial to the BMO Litigation Trust.

(vi)      Prosecute any Causes of Action that are BMO Litigation Trust Assets and that are not pending on the Effective Date, and raise defenses to any counterclaims adverse to the BMO Litigation Trust.

(vii)     Endorse the payment of notes or other obligations of any Person or to make contracts with respect thereto.

### 8.26   Powers of the BMO Litigation Trust Committee.

Without the necessity of further Bankruptcy Court approval (except as otherwise specified herein), the BMO Litigation Trust Committee shall have the following exclusive powers under the Plan and the BMO Litigation Trust Agreement (each by majority vote):

(a)      To confer and consult with counsel to the BMO Litigation Trustee with respect to BMO Litigation Trust Assets and all material litigation strategies and decisions.

(b)      To determine the basis on which any BMO Litigation Trust Assets will be settled, compromised, abandoned, or withdrawn.

(c)      To approve the retention and fee arrangements of all Professionals representing the BMO Litigation Trustee.

(d)      To have exclusive oversight over the payment of any and all BMO Litigation Trust Expenses and BMO Litigation Trust Litigation Fees and Expenses.

(e)      To determine the amounts and timing of distributions and to establish appropriate reserves for all distributions from the BMO Litigation Trust.

(f)      Prosecute any Causes of Action that are BMO Litigation Trust Assets and that are not pending on the Effective Date, and raise defenses to any counterclaims adverse to the BMO Litigation Trust, and direct the BMO Litigation Trustee to do the same.

(g)      To determine the roles of any and all Professionals representing the BMO Litigation Trust, including terminating any and all such Professionals.

### 8.27   Debtors' Books and Records.

Upon the occurrence of the Effective Date, the Chapter 11 Trustee shall be deemed to have transferred to the BMO Litigation Trustee all possession, custody, and control of all books and records of the Debtors pertaining to the BMO Litigation Trust Assets of the Debtors. All such books and records shall be preserved for so long as may be necessary for the prosecution or defense of any BMO Litigation Trust Assets, after which the BMO Litigation Trustee, upon any legally required notice, shall be authorized and empowered to

42

abandon or destroy such books and records without further order of the Bankruptcy Court, in the BMO Litigation Trustee's discretion upon consent of the BMO Litigation Trust Committee.

The transfer of any and all BMO Litigation Trust Assets to the BMO Litigation Trust, including documents and other information gathered, and relevant work product developed, in connection with pending Claims and Causes of Action that are BMO Litigation Trust Assets shall be without waiver of any evidentiary privileges, including without limitation the attorney-client privilege, work-product privilege, or any other privilege or immunity attaching to any such documents or information (whether written or oral). Any and all attorney-client privilege, work-product privilege, or other privilege or immunity attaching to any documents or communications (whether written or oral) pertaining to the Claims and Causes of Action that are BMO Litigation Trust Assets shall be transferred to the BMO Litigation Trust and shall vest in the BMO Litigation Trustee, and the BMO Litigation Trust's receipt of transferred privileges shall be without waiver in recognition of the joint and/or successorship interest in prosecuting claims on behalf of the Debtors' Estates.

### 8.28    Resignation of BMO Litigation Trustee.

The BMO Litigation Trustee may resign by giving not less than thirty (30) days' prior written notice thereof to the BMO Litigation Trust Committee. The resignation will be effective on the latest of: (a) the date specified in the notice; (b) the date that is thirty (30) days after the date the notice is delivered; and (c) the date the successor BMO Liquidating Trustee accepts his or her appointment as such. If a successor trustee is not appointed or does not accept its appointment within thirty (30) days following delivery of such notice of resignation, the BMO Litigation Trustee may file a motion with the Bankruptcy Court, upon notice and hearing, for the appointment of a successor trustee.

### 8.29    Removal of BMO Litigation Trustee.

The BMO Litigation Trustee may be removed (i) by unanimous vote of the BMO Litigation Trust Committee for any reason, or (ii) by the Bankruptcy Court, as determined by a Final Order after an opportunity for hearing, (a) for a material breach of the Plan or of the BMO Liquidating Trust Agreement, or (b) for cause, as that term is construed under Section 324(a) of the Bankruptcy Code.

Appointment of any subsequent BMO Litigation Trustees, shall be determined by majority vote of the BMO Litigation Trust Committee.

### 8.30    Termination of the BMO Litigation Trust.

Upon final resolution and liquidation of all BMO Litigation Trust Assets, reconciliation of all Claims, distribution of all Cash and proceeds of BMO Litigation Trust Assets, and any other action necessary under the Plan to wind down, terminate or dissolve the BMO Litigation Trust, as determined by the BMO Litigation Trustee and the BMO Litigation Trust Committee, the BMO Litigation Trustee and the BMO Litigation Trust Committee shall be relieved of further responsibility.

**8.31    Indemnification.**

The BMO Litigation Trust Agreement shall provide for reasonable and customary indemnification of, and appropriate insurance for, the BMO Litigation Trustee and the BMO Litigation Trust Committee and their members.

**8.32    Fees and Expenses of the BMO Litigation Trust**

The BMO Litigation Trust Expenses and BMO Litigation Trust Litigation Fees and Expenses shall be paid from the BMO Litigation Trust Assets in accordance with the BMO Litigation Trust Agreement.

On the Effective Date, the Consolidated Debtors shall transfer to the BMO Litigation Trust $100,000 solely for payment of the BMO Litigation Trust Expenses. In the event that such $100,000 is exhausted, the PCI Liquidating Trust shall loan the BMO Litigation Trust, from time to time on an as needed basis, solely for the payment of BMO Litigation Trust Expenses, up to an aggregate of $150,000, at an interest rate of 7% per annum, to be repaid from the proceeds of BMO Litigation Trust Assets prior to any payment to Holders on account of their Allowed Class 3 General Unsecured Claims and on such other terms and conditions as mutually agreed to by the PCI Liquidating Trust and the BMO Litigation Trust. Members of the BMO Litigation Trust Committee shall receive no compensation, but shall be entitled to reimbursement for reasonable travel expenses and other reasonable out-of-pocket expenses.

**8.33    The Tax Treatment of BMO Litigation Trust.**

The BMO Litigation Trust generally is intended to be treated, for federal income Tax purposes, in part as a liquidating trust within the meaning of Treasury Regulations section 301.7701-4(d), for the benefit of the Holders of Allowed Class 3 General Unsecured Claims entitled to distributions of Pending Payments under the Plan and the BMO Litigation Trust Agreement, and otherwise as one or more disputed ownership funds within the meaning of Treasury Regulations section 1.468B- 9(b)(1), as more specifically provided for under the BMO Litigation Trust Agreement. Accordingly, for all federal income tax purposes the transfer of Trust Assets to the BMO Litigation Trust will be treated as: (a) to the extent of Pending Payments, a transfer of the Pending Payments directly from the Debtors to the Holders of such Allowed Class 3 General Unsecured Claims followed by the transfer of such Pending Payments by the Holders of Allowed Class 3 General Unsecured Claims to the BMO Litigation Trust in exchange for rights to Distributions from the BMO Litigation Trust; and (b) to the extent of amounts that are not Pending Payments, as a transfer to one or more disputed ownership funds. The Holders of Allowed Class 3 General Unsecured Claims entitled to Distributions of Pending Payments will be treated for federal income tax purposes as the grantors and deemed owners of their respective shares of the Trust Assets in the amounts of the Pending Payments and any earnings thereon. The BMO Litigation Trustee will be required by the BMO Litigation Trust Agreement to file federal tax returns for the BMO Litigation Trust as a grantor trust with respect to any Pending Payments and as one or more disputed ownership funds with respect to all other funds or other property held by the BMO Litigation Trust pursuant to

applicable Treasury Regulations, and any income of the BMO Litigation Trust will be treated as subject to Tax on a current basis. The BMO Litigation Trust Agreement will provide that the BMO Litigation Trustee will pay such taxes from the BMO Litigation Trust Assets. In addition, the BMO Litigation Trust Agreement will require consistent valuation by the BMO Litigation Trustee and the Beneficiaries (as defined in the BMO Litigation Trust Agreement), for all federal income Tax purposes, of any property held by the BMO Litigation Trust. The BMO Litigation Trust Agreement will provide that termination of the trust will occur no later than five years after the Effective Date, unless before termination the Bankruptcy Court approves an extension based upon a finding that such an extension is necessary for the BMO Litigation Trust to complete its Claims resolution and liquidating purpose. The BMO Litigation Trust Agreement also will limit the investment powers of the BMO Litigation Trustee in accordance with IRS Rev. Proc. 94-45 and will require the BMO Litigation Trust to distribute at least annually to the Beneficiaries (as such may have been determined at such time) its net income (net of any payment of or provision for Taxes), except for amounts retained as reasonably necessary to maintain the value of the BMO Litigation Trust Assets or to meet Claims and contingent liabilities (including Disputed Claims).

### 8.34        Third Party Litigation Support.

(a)        <u>Authority to Assist Creditors</u>. The PCI Liquidating Trustee and PCI Liquidating Trust Committee and their advisors may, or at the direction of the PCI Liquidating Trust Committee shall, make reasonable efforts to assist a Creditor holding an Allowed Claim and prosecuting a Creditor Direct Claim. Such assistance shall be afforded solely upon the request of the Creditor and at such Creditor's sole expense. The PCI Liquidating Trustee shall respond to any such request for access to documents or advisors within five (5) business days.

(b)        <u>Nature of Cooperation</u>. The assistance authorized under Section 8.34(a) shall include, but not be limited to (i) being available by telephone to answer questions either a Creditor holding an Allowed Claim and prosecuting a Creditor Direct Claim or their counsel may have and/or meeting on reasonable notice; (ii) promptly turning over to each other or their counsel any nonprivileged, nonconfidential documents or other materials that may related to any matter in which they are engaged; (iii) appearing for depositions, hearings or trials.

(c)        <u>Limitations on Assistance</u>. The PCI Liquidating Trustee or the PCI Liquidating Trust Committee may reject any such request for assistance if in its judgment it would (i) impair or create a conflict with respect to Trust Claims currently being or to be brought for the benefit of the PCI Liquidating Trust or (ii) result in a waiver or breach of any applicable privileges or confidentiality obligation with any third party, (iii) require the PCI Liquidating Trustee to take a position in connection with a matter that is inconsistent with a position taken by the Chapter 11 Trustee in other proceedings, or (iv) prevent the PCI Liquidating Trustee, the PCI Liquidating Trust beneficiaries or the PCI Liquidating Trust Committee from complying with applicable law. Pursuit of litigation by a Creditor against a non-Debtor also being pursued for the benefit of the PCI Liquidating Trust shall not itself be considered a *per se* conflict unless such target is believed to have insufficient

resources to satisfy both claims, in which case the PCI Liquidating Trust Committee may, in its sole discretion, require a proceeds sharing or cooperation agreement with such Creditor prior to provision of information, or reject the request for cooperation.

(d)    Common Interest. Creditors provided assistance pursuant to the Plan, the LT Trustees, and the Liquidating Trust Committees have a common interest in such litigation, and communications among and between them and among and between their respective advisers relating to such litigation against non-Debtors shall be deemed privileged and confidential and without waiver of any evidentiary privileges, including without limitation the attorney-client privilege, work-product privilege or other privilege or immunity attaching to any such documents or information (whether written or oral).

## ARTICLE IX.

## PROVISIONS REGARDING VOTING
## AND DISTRIBUTIONS UNDER THE PLAN

### 9.1    Nonconsensual Confirmation.

If any Impaired Class of Claims entitled to vote shall not accept the Plan by the requisite statutory majorities provided in Section 1126(c) of the Bankruptcy Code, then the Plan Proponents reserve the right to amend the Plan or to undertake to have the Bankruptcy Court confirm the Plan under Section 1129(b) of the Bankruptcy Code, or both.

### 9.2    Disallowance of Claims.

EXCEPT AS OTHERWISE AGREED, ANY AND ALL PROOFS OF CLAIM FILED AFTER THE APPLICABLE DEADLINE FOR FILING SUCH PROOFS OF CLAIM SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT ANY FURTHER NOTICE TO, OR ACTION, ORDER OR APPROVAL OF THE BANKRUPTCY COURT, AND HOLDERS OF SUCH CLAIMS MAY NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS, UNLESS SUCH LATE PROOF OF CLAIM IS DEEMED TIMELY FILED BY A FINAL ORDER OF THE BANKRUPTCY COURT. Nothing herein shall in any way alter, impair or abridge the legal effect of the Bar Date or the rights of the Debtors or the PCI Liquidating Trustee to object to Claims (except to the extent such claims are Allowed Claims) on the grounds that they are time barred or otherwise subject to disallowance, subordination or modification.

### 9.3    Deadline to Object to Claims.

From and after the Effective Date, the PCI Liquidating Trustee shall have the exclusive right, subject to conferring with the PCI Liquidating Trust Committee and to Section 8.10(c), to object to any Claims that are not Allowed Claims. Objections to Claims shall be Filed and served upon each affected Creditor no later than one hundred-eighty (180) days after the Effective Date; provided, however, that this deadline may be extended by the Bankruptcy Court upon motion of the PCI Liquidating Trustee Filed with the

Bankruptcy Court before such date, with notice to the United States Trustee, the PCI Liquidating Trust Committee and each affected Creditor.

### 9.4     Litigation of Claims.

Subject to the terms of the Plan, objections to Claims may be litigated to judgment, settled, or withdrawn.

### 9.5     Distributions for Claims Allowed as of the Effective Date.

Except as otherwise provided in the Plan, distributions to be made on the Initial Distribution Date to Holders of Allowed Claims as of the Effective Date shall be deemed made on the Effective Date if made on the Effective Date or as promptly thereafter as practicable, but in any event no later than sixty (60) days after the Effective Date. Creditors holding Disputed Claims as of the Effective Date shall be entitled to no distributions on the Initial Distribution Date.

### 9.6     Distribution of Disputed Claims.

Distributions with respect to and on account of Disputed Claims will be made from the PCI Liquidating Trust, and from the BMO Litigation Trust subject to monetization of BMO Litigation Trust Assets, as soon as practicable after an order, judgment, decree or settlement agreement with respect to such Claim becomes a Final Order and such Claim becomes an Allowed Claim, and the applicable Creditor shall not receive interest on its Allowed Claim. Any Claim that is disallowed by order of the Bankruptcy Court prior to the Effective Date shall be deemed expunged (to the extent not already expunged) as of the Effective Date without the necessity for further Bankruptcy Court approval and the Holder of any such Claim shall not be entitled to any distribution under the Plan.

### 9.7     Disputed Claims Reserve.

The LT Trustees shall reserve amounts (the "Disputed Claims Reserve"), to be determined by the PCI Liquidating Trust Committee, from the Cash on hand on the Effective Date equal to the aggregate amounts that would have been distributed to the Holders of Disputed Claims, had their Disputed Claims been deemed Allowed Claims on the Effective Date or on the Administrative Claims Bar Date, as applicable, or such other amount as may be approved by the Bankruptcy Court upon motion of the Chapter 11 Trustee or PCI Liquidating Trustee. For effectuating the provisions of this Section, the Chapter 11 Trustee, the PCI Liquidating Trustee, the Creditors' Committee, or the PCI Liquidating Trust Committee, as applicable, may at any time request that the Bankruptcy Court estimate, set, fix, or liquidate the amount of the Disputed Claims pursuant to Section 502(c) of the Bankruptcy Code, in which event the amounts so estimated, fixed, or liquidated shall be deemed the amounts of the Disputed Claims for purposes of the amount of the Disputed Claims Reserve.

With respect to any Disputed Class 3 General Unsecured Claims, the BMO Litigation Trustee shall maintain a Disputed Claims Reserve consistent with the Disputed

47

Claims Reserve maintained by the PCI Liquidating Trustee for such Disputed Class 3 General Unsecured Claims.

With respect to such Disputed Claims, if, when, and to the extent any such Disputed Claim becomes an Allowed Claim by Final Order, the relevant portion of the Cash reserved for the Disputed Claims Reserve shall be distributed by the PCI Liquidating Trustee to the Claim Holder in accordance with the Plan, and, if such Claim is a Class 3 General Unsecured Claim, from the BMO Litigation Trust subject to monetization of BMO Litigation Trust Assets, and the Disputed Claims Reserve for such Claim shall be released.

### 9.8     Distribution Record Date

The Effective Date shall serve as the record date for distributions from the PCI Liquidating Trust. The interests of Holders of Allowed Claims in the Liquidating Trusts shall not be transferrable except as and to the extent permitted in the PCI Liquidating Trust Agreement. The LT Trustees shall have no obligation to recognize any transfer of any Claim or Equity Security occurring after the Effective Date and not permitted under the PCI Liquidating Trust Agreement but shall make reasonable efforts to recognize any such transfer that is permitted under the PCI Liquidating Trust Agreement. The LT Trustees shall be entitled to recognize and deal for all purposes under the Plan and the PCI Liquidating Trust Agreement only with those record Holdersstated on the ledgers or other applicable books and records of the Debtors and the PCI Liquidation Trust.

### 9.9     Means of Cash Payments

Except as otherwise specified herein, cash payments made pursuant to the Plan to holders of Claims shall be in U.S. currency by checks drawn on a domestic bank selected by the respective LT Trustee, or, at the option of the respective LT Trustee, by wire transfer from a domestic bank.

### 9.10    Reserve for Professional Fee Claims.

On the Effective Date, the PCI Liquidating Trustee, in consultation with the PCI Liquidating Trust Committee, shall establish and maintain reserves for payment of estimated unpaid Professional Fee Claims ("Professional Fee Reserve"). For purposes of establishing the Professional Fee Reserve, Cash will be set aside from the Cash on hand on the Effective Date in an amount equal to the amount that the Chapter 11 Trustee and Creditors' Committee anticipate will be incurred for fees and expenses by Professionals retained in the Bankruptcy Cases up to and including the Effective Date. If, when, and to the extent any such Professional Fee Claims become Allowed Claims by Final Order, the relevant portion of the Cash held in reserve therefor shall be distributed by the PCI Liquidating Trustee to the Professional or as set forth in such Final Order approving the Professional Fee Claim. To the extent that the Professional Fee Reserve is not sufficient to satisfy the Allowed Professional Fee Claims, such Claims will be satisfied from Trust Assets. No payments or distributions shall be made with respect to a Professional Fee Claim until such Professional Fee Claim is Allowed by Final Order.

### 9.11 Estimation of Claims.

The PCI Liquidating Trustee may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to Section 502(c) of the Bankruptcy Code regardless of whether an objection has been Filed with respect to such Claim. If the Bankruptcy Court estimates any contingent or unliquidated Claim, the estimated amount will constitute either the Allowed Claim for such Claim or a maximum limitation on such Claim, at the option of the PCI Liquidating Trustee, after consultation with the PCI Liquidating Trust Committee. If the estimated amount constitutes a maximum limitation on such Claim, the PCI Liquidating Trustee may elect to pursue any supplemental proceedings to object to the allowance and ultimate distribution on such Claim. Unless otherwise ordered by the Bankruptcy Court, resolution or compromise of estimated Claims shall be done pursuant to the Plan. All Claims objection, estimation and resolution procedures are cumulative and not exclusive of one another.

### 9.12 Delivery of Distributions.

Subject to Bankruptcy Rule 9010, all distributions to any Holder of an Allowed Claim shall be made at the address of such Holder as set forth in the Schedules, on the books and records of the Debtors or their agents, or in a letter of transmittal, unless the Debtors or the respective LT Trustee, as the case may be, have been notified in writing by the applicable Holder of a change of address, including by the Filing of a proof of claim by such Holder different from the address reflected on the Schedules for such Holder.

### 9.13 Unclaimed Distributions.

(a) Undeliverable Distributions. In the event that any distribution to any Holder of an Allowed Claim is returned as undeliverable, no further distributions shall be made to such Holder unless and until the respective LT Trustee is notified of such Holder's then-current address. If any Holder of an Allowed Claim does not assert a claim pursuant to this Plan for an undeliverable or unclaimed distribution for a period of ninety (90) days after it has been delivered (or attempted to be delivered) in accordance with the Plan to the Holder of an Allowed Claim entitled thereto, such unclaimed property shall be deemed to be forfeited by such Holder, whereupon all right, title and interest in and to the unclaimed property shall be held by the respective LT Trustee for the benefit of its respective trust beneficiaries, and any Holder thereof shall be forever barred, estopped and enjoined from asserting any such Claim against the Debtors, the Estates, the Property, the Liquidation Trusts or the respective LT Trustee. In such cases, any Cash or other property otherwise reserved for undeliverable or unclaimed distributions shall become Property of the respective Liquidating Trust free and clear of any restrictions thereon and notwithstanding any federal or state escheatment laws to the contrary and shall be distributed in accordance with the terms of the respective Liquidating Trust Agreement and this Plan to the other Holders of Allowed Class 3 General Unsecured Claims on a Pro Rata basis (subject to the terms and conditions of this Plan and the respective Liquidating Trust Agreement with respect to minimum distributions or otherwise). Nothing contained in the Plan or otherwise shall require any of the Debtors, the Chapter 11 Trustee or an LT Trustee to attempt to locate any Holder of an Allowed Claim.

49

(b)    <u>Time Bar to Cash Payments.</u> In the event that any distribution to any Holder of an Allowed Claim made by check is not cashed within sixty (60) days after issuance thereof, a stop payment order shall be given with respect to such check rendering the check null and void. Requests for reissuance of any check subject to a stop payment order shall be made in writing to the respective LT Trustee by the Holder of such Allowed Claim to whom such check originally was issued. Any claim in respect of such voided check shall be made on or before thirty (30) days after the sixty (60) day period following the date of issuance of such check. If any Holder of an Allowed Claim does not assert a claim pursuant to this Plan for reissuance of a voided check within such period, the amount represented by such voided check shall be deemed to be forfeited by such Holder, whereupon all right, title and interest in and to such amount shall be held by the respective LT Trustee, and any Holder thereof shall be forever barred, estopped and enjoined from asserting any such Claim against the Debtors, the Estates, the Property, the Liquidation Trusts or the respective LT Trustee. In such cases, any Cash or other Property otherwise reserved for such distributions shall become Property of the Liquidating Trust free and clear of any restrictions thereon and notwithstanding any federal or state escheatment laws to the contrary and shall be distributed in accordance with the terms of the Liquidating Trust Agreement and this Plan to the other Holders of Allowed Class 3 General Unsecured Claims on a Pro Rata basis (subject to the terms and conditions of this Plan and the respective Liquidating Trust Agreement with respect to minimum distributions or otherwise).

### 9.14    <u>Withholding Taxes.</u>

(a)    Any federal, state, or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from distributions hereunder. All Holders of Allowed Claims or Allowed Equity Securities shall be required to provide any information necessary to effect the withholding of such taxes. To the extent that any Claim Holder or Equity Security Holder fails to submit appropriate certifications required by an LT Trustee or to comply with any other mechanism established by the respective LT Trustee to comply with Tax withholding requirements, such Claim Holder's or Equity Security Holder's distribution may, in the exercise of the respective LT Trustee's reasonable discretion, be deemed undeliverable.

(b)    Notwithstanding any other provision of the Plan, each Entity receiving a distribution pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any Tax obligations imposed on it by any governmental unit on account of such distribution, including income, withholding and other Tax obligations.

(c)    In connection with the Plan, an LT Trustee may allocate and make distributions in compliance with applicable wage garnishment, alimony, child support and similar domestic relations orders.

### 9.15    Fractional Cents.

Any other provision of the Plan to the contrary notwithstanding, no payment of fractions of cents will be made. Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding down of such fraction to the nearest whole cent.

### 9.16    De Minimis Distributions.

The LT Trustees shall not be required to make any payment of less than twenty-five dollars ($25.00) with respect to any Allowed Claim. To the extent that any interim distribution is not paid to an Allowed General Unsecured Creditor on the grounds that it amounts to less than twenty-five dollars ($25.00), the amount of such withheld distribution shall be reserved for addition to any future distribution or as the final distribution to such Creditor, and may be made at that time if the total distribution is at least twenty-five dollars ($25.00).

### 9.17    Setoffs.

Nothing in this Plan shall expand or enhance a Creditor's right of setoff, which shall be determined as of the applicable Petition Date. Nothing in this Plan is intended to, or shall be interpreted to, approve any Creditor's effectuation of a post-petition setoff without the consent of the Debtors unless prior Bankruptcy Court approval has been obtained. Except as otherwise provided for herein with respect to Causes of Action released by or on behalf of the Estates pursuant to the Plan and the Confirmation Order, an LT Trustee may, but shall not be required to, set off, pursuant to Section 553 of the Bankruptcy Code or applicable nonbankruptcy law, against any Claim and the payments to be made pursuant to the Plan in respect of such Claim, Causes of Action of any nature whatsoever that the Estates may have against the Holder of such Claim, but neither the failure to do so nor the allowance of a Claim shall constitute a waiver or release by the Debtors or their Estates of any Claim it may have against the Creditor.

## ARTICLE X.

## CONFIRMATION, EFFECTIVENESS, AND EFFECT OF THE PLAN

### 10.1    Confirmation of the Plan.

The Plan can be confirmed under Section 1129(a) of the Bankruptcy Code, or in a non-consensual manner under Section 1129(b) of the Bankruptcy Code.

### 10.2    Conditions to Confirmation.

The following shall be conditions to Confirmation unless such conditions shall have been duly waived pursuant to Section 10.4:

51

(a)     The Bankruptcy Court shall have entered the Confirmation Order in form and substance satisfactory to the Plan Proponents and, with respect to matters affecting its treatment hereunder, Interlachen.

(b)     All exhibits to the Plan are in the form and substance reasonably satisfactory to the Plan Proponents and, with respect to matters affecting its treatment hereunder, Interlachen.

### 10.3    Conditions to the Effective Date.

The following shall be conditions precedent to the Effective Date unless such conditions shall have been duly waived pursuant to Section 10.4:

(a)     The Liquidating Trust Agreements shall have been executed.

(b)     All documents to be executed, delivered, or Filed pursuant to the Plan, shall have been executed, delivered, or Filed, as the case may be.

(c)     All actions, authorizations, filings, consents and regulatory approvals required (if any) shall have been obtained, effected or executed in a manner acceptable to the Plan Proponents and, with respect to matters affecting its treatment hereunder, Interlachen, and shall remain in full force and effect.

### 10.4    Waiver of Conditions.

The Plan Proponents, acting unanimously and in writing, may at any time, without notice or authorization of the Bankruptcy Court, waive one or more of the conditions set forth in Sections 10.2 and 10.3 of the Plan.

### 10.5    Effect of Failure of Conditions.

In the event that the conditions specified in Section 10.3 of the Plan have not occurred or been waived in accordance with Section 10.4 on or before thirty (30) days after the Confirmation Date, upon written notification submitted by a majority of the Plan Proponents to the Bankruptcy Court in their sole discretion: (i) the Confirmation Order shall be vacated; (ii) no distributions under the Plan shall be made; (iii) the Debtors and all Holders of Claims and Equity Securities shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred; (iv) the Estates' obligations with respect to the Claims and Equity Securities shall remain unchanged; and (v) nothing contained in the Plan shall constitute or be deemed to be an admission with respect to any matter set forth herein or a waiver or release of any Claims or Equity Securities by or against the Debtors, or any other Person, to prejudice in any manner the rights of the Debtors, the Estates or any Entity in any further proceedings involving the Debtors.

**10.6    Limitation of Rights; Injunction.**

Pursuant to Sections 1123(b)(3) and 1141(d)(3) of the Bankruptcy Code, confirmation will not discharge Claims against the Debtors; provided, however, that no Holder of a Claim against or Equity Security in the Debtors may, on account of such Claim or Equity Security, seek or receive any payment or other distribution from, or seek recourse against the Released Parties, the Retained Assets, or the Trust Assets, except for distributions under the Plan. ***Accordingly, except as otherwise specifically provided in the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims, rights or Causes of Action against or Equity Securities in the Debtors,*** <u>***other than***</u> <u>***governmental entities and agencies exercising their police or regulatory powers,***</u> ***are precluded and permanently enjoined from taking any of the following actions against the Covered Parties, the Estates, the Retained Assets, the Liquidating Trusts, or any Trust Assets on account of any such Claims or Equity Securities, whether or not such Person is the Holder of a Claim that is Impaired or Allowed and whether or not such Person has affirmatively voted to accept the Plan: (A) commencing or continuing, in any manner or in any place, any claim, action or other proceeding of any kind (whether directly, indirectly, derivatively or otherwise); (B) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order; (C) creating, perfecting, or enforcing any Lien or encumbrance of any kind; (D) the assertion of any Claims released in or by the Plan; and (E) commencing or continuing in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan***; provided, however, that (x) nothing contained herein shall preclude such Persons from exercising their rights pursuant to and consistent with the terms of the Plan, and (y) any rights of setoff or recoupment, to the extent valid, are preserved, and (z) except as otherwise provided in the Plan, no Holder of any Claim or Equity Security shall be deemed to have released the Debtors in any way for accepting the terms of the Plan or accepting distributions pursuant to the Plan.

**10.7    Binding Effect.**

On and after the Effective Date, the provisions of the Plan shall bind any current or former Holder of a Claim against, or Equity Security in, any of the Debtors and their respective heirs, successors and assigns, whether or not the Claim or Equity Security of such Holder is Impaired or Allowed and whether or not such Holder has affirmatively voted to accept the Plan.

**10.8    Substantial Consummation.**

On the Effective Date and upon the transfer of the Contributed Assets to the Liquidating Trusts, the Plan shall be deemed to be substantially consummated under Section 1101 and Section 1127(b) of the Bankruptcy Code.

**10.9    Notice of Effective Date.**

On the Effective Date, or as soon thereafter as is reasonably practicable, the PCI Liquidating Trustee shall File with the Bankruptcy Court a "Notice of Effective Date" in a

form reasonably acceptable to the Plan Proponents, which notice shall constitute appropriate and adequate notice that the Plan has become effective. Failure to timely file the notice shall not in any way affect the effectiveness of the Plan.

**10.10    Request for Waiver of Stay of Confirmation Order.**

The Plan shall serve as a motion seeking a waiver of the stay of the Confirmation Order imposed by Bankruptcy Rule 3020(e). Any objection to this request for waiver shall be Filed with the Bankruptcy Court and served in accordance with the Bankruptcy Rules or as otherwise ordered by the Bankruptcy Court. In the event any such objections are timely Filed, a hearing with respect thereto shall occur at the Confirmation Hearing.

**ARTICLE XI.**

**RETENTION OF JURISDICTION**

**11.1    Retention of Jurisdiction.**

Following the Confirmation Date and until such time as all payments and distributions required to be made and all other obligations required to be performed under the Plan have been made and performed by the LT Trustees or the Liquidating Trust Committees or the Plan Proponents, the Bankruptcy Cases will remain open pending final order of the Bankruptcy Court closing the case and the Bankruptcy Court shall retain jurisdiction to the fullest extent as is legally permissible, including jurisdiction for the following purposes:

(a)    Claims and Equity Securities. To hear and determine the allowance, classification, priority, estimation or subordination of Claims or Equity Securities, including the resolution of any and all objections by the Chapter 11 Trustee or the PCI Liquidating Trustee or any other party in interest;

(b)    Causes of Action. To hear, determine and adjudicate on *a non-exclusive basis*, any and all Trust Claims and BMO Litigation Trust Assets;

(c)    Injunction. To issue injunctions or take such other actions or make such other orders as may be necessary or appropriate to restrain interference with the Plan or its execution or implementation by any Person, to construe and to take any other action to enforce and execute the Plan, the Confirmation Order, or any other order of the Bankruptcy Court, to issue such orders as may be necessary for the implementation, execution, performance and consummation of the Plan and all matters referred to herein, and to determine all matters that may be pending before the Bankruptcy Court in the Bankruptcy Cases on or before the Effective Date with respect to any Entity;

(d)    Professional Fees. To hear and determine any and all applications for allowance of compensation and expense reimbursement of Professionals for periods before the entry of the Confirmation Order, and to resolve disputes concerning Liquidating Trust Expenses, as provided for in the Plan;

(e)     <u>Certain Priority Claims.</u> To hear and determine the allowance and classification of any Priority Tax Claims, Administrative Claims or any request for payment of an Administrative Claim;

(f)     <u>Dispute Resolution.</u> To hear and resolve any dispute arising under or related to the implementation, execution, consummation, interpretation or enforcement of the Plan, Confirmation Order, or Liquidating Trust Agreements and the making of distributions hereunder and thereunder or any agreement, instrument or other document governing or relating to any of the foregoing;

(g)     <u>Executory Contracts and Unexpired Leases.</u> To hear and determine any and all motions for the rejection, assumption, or assignment of Executory Contracts or Unexpired Leases, and to determine the allowance of any Claims resulting from the rejection of Executory Contracts and Unexpired Leases;

(h)     <u>Actions.</u> To hear and determine all applications, motions, adversary proceedings (including the Adversary Proceedings), contested matters, actions, and any other litigated matters instituted in the Bankruptcy Cases on behalf of the Debtors, including, but not limited to, the Causes of Action commenced by the Chapter 11 Trustee or an LT Trustee, and any remands;

(i)     <u>General Matters.</u> To hear and determine such other matters, and for such other purposes, as may be provided in the Confirmation Order or as may be authorized under provisions of the Bankruptcy Code;

(j)     <u>Plan Modification.</u> To modify the Plan under Section 1127 of the Bankruptcy Code, remedy any defect, cure any omission, or reconcile any inconsistency in the Plan or the Confirmation Order so as to carry out its intent and purposes;

(k)     <u>Aid Consummation.</u> To issue such orders in aid of consummation of the Plan and the Confirmation Order notwithstanding any otherwise applicable non-bankruptcy law, with respect to any Entity, to the full extent authorized by the Bankruptcy Code;

(l)     <u>Settlements</u>. To hear and determine any matters concerning the enforcement of the provisions of Article V of the Plan and any other releases, exculpations, limitations of liability or injunctions set forth in and contemplated by the Plan or settlements entered into by the Chapter 11 Trustee and any Person in the Bankruptcy Cases;

(m)     <u>Protect Property.</u> To protect the Property of the Estates and Property transferred to the PCI Liquidating Trust pursuant to the Plan from adverse Claims or interference inconsistent with the Plan, including to hear actions to quiet or otherwise clear title to such property based upon the terms and provisions of the Plan or to determine a purchaser's exclusive ownership of Claims and Causes of actions retained and preserved under the Plan;

(n)    Abandonment of Property. To hear and determine matters pertaining to abandonment of Property of the Estates or the PCI Liquidating Trust;

(o)    Taxes. To hear and determine matters concerning state, local and federal taxes in accordance with Sections 346, 505 and 1146 of the Bankruptcy Code, including any Disputed Claims for taxes and matters with respect to any taxes payable by the Liquidating Trusts or any other trust or reserve as may be established in furtherance of the Plan or the Liquidating Trust Agreements;

(p)    Implementation of Confirmation Order. To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(q)    Liquidating Trustee's Exercise of Power. To enter and implement such orders as may be appropriate to enforce the terms of the Plan or the Liquidating Trust Agreements in order to resolve any disagreement between an LT Trustee and the relevant Liquidating Trust Committee over any exercise of powers;

(r)    Other Matters. To determine any other matters contemplated by the Plan to the Bankruptcy Court after the Effective Date; and

(s)    Close the Bankruptcy Cases. To enter any Final Order closing the Bankruptcy Cases.

## ARTICLE XII.

## MISCELLANEOUS PROVISIONS

### 12.1    Dissolution of Creditors' Committee.

On the Effective Date, the Creditors' Committee, except as set forth below, will dissolve and the voting and non-voting members thereof will be released and discharged from all duties and obligations arising from or related to the Bankruptcy Cases. Notwithstanding the foregoing, other than with respect to the incurrence of PCI Liquidating Trust Expenses, (a) the Professionals retained by the Creditors' Committee will not be entitled to assert Professional Fee Claims for services rendered or expenses incurred after the Effective Date, except for fees for time spent and expenses incurred (i) in connection with any application for allowance of compensation and reimbursement of expenses pending on the Effective Date or Filed and served after the Effective Date pursuant to Section 3.5, and (ii) in connection with any appeal of the Confirmation Order or any other appeal pending as of the Effective Date; and (b) all obligations arising under confidentiality agreements, joint or common interest agreements and protective orders entered during the Chapter 11 Cases shall remain in full force and effect according to their terms.

### 12.2    Termination of Trustees' Service.

On the Effective Date, the service of the Chapter 11 Trustee in each of the Chapter

56

11 Cases and for each of the PCI and PGW Estates, solely in his capacity as such, and the service of Randall L. Seaver, solely in his capacity as Chapter 7 Trustee for the Petters Capital Estate, shall terminate.

### 12.3    Fee Claims of the Chapter 11 Trustee, the Chapter 7 Trustee, and Professionals Retained by Either of Them.

(a)    Pre-Effective Date Fees; Deemed Distribution. The Cash contribution from the Estates to the PCI Liquidating Trust pursuant to this Plan shall be deemed to be a distribution to Creditors for purposes of Section 326 of the Bankruptcy Code. The Chapter 11 Trustee shall submit a final fee application for review by the Creditor Proponents prior to submission to the Court. If the Chapter 11 Trustee and the Creditor Proponents are unable to agree on the final fee application, the Chapter 11 Trustee may seek Court approval, disclosing the objection of the Creditor Proponents in the application.

(b)    Post-Effective Date Fees. Other than with respect to the incurrence of PCI Liquidating Trust Expenses, the Chapter 11 Trustee, solely in his capacity as such, the Chapter 7 Trustee, solely in his capacity as such, and Professionals retained by the Chapter 11 Trustee or by the Chapter 7 Trustee will not be entitled to assert any Professional Fee Claims for any services rendered or expenses incurred after the Effective Date, except for fees for time spent and expenses incurred (a) in connection with preparing and filing any application for allowance of compensation and reimbursement of expenses pending on the Effective Date or Filed and served after the Effective Date pursuant to Section 3.5, (b) in connection with any appeal of the Confirmation Order or any other appeal pending as of the Effective Date and (c) at the request of the Liquidating Trust Committees.

### 12.4    Pre-Confirmation Modification.

On notice to and with an opportunity to be heard by the United States Trustee, the Plan may be altered, amended or modified by the Plan Proponents before the Confirmation Date as provided in Section 1127 of the Bankruptcy Code; provided, however, that any alteration, amendment or modification shall be subject to the unanimous written consent of each of the Plan Proponents.

### 12.5    Post-Confirmation Immaterial Modification.

With the approval of the Bankruptcy Court and on notice to and an opportunity to be heard by the United States Trustee or the PCI Liquidating Trust Committee and without notice to all Holders of Claims and Equity Securities, the Plan Proponents or the PCI Liquidating Trustee or PCI Liquidating Trust Committee may, insofar as it does not materially and adversely affect the interest of Holders of Claims, correct any defect, omission or inconsistency in the Plan in such manner and to such extent as may be necessary to expedite consummation of the Plan.

### 12.6    Post-Confirmation Material Modification.

On notice to and with an opportunity to be heard by the United States Trustee and the PCI Liquidating Trust Committee, the Plan may be altered or amended after the Confirmation Date by the Plan Proponents, the PCI Liquidating Trustee, or PCI Liquidating Trust Committee in a manner which, in the opinion of the Bankruptcy Court, materially and adversely affects Holders of Claims; provided, however, that such alteration or modification is made after a hearing and otherwise meets the requirements of Section 1127 of the Bankruptcy Code; provided, further, however, that any alteration, alteration or amendment by the Plan Proponents or the PC Liquidating Trustee shall be subject to the unanimous written consent of each of the Plan Proponents and the PCI Liquidating Trustee.

### 12.7    Modifications Generally.

Any references to any change, option, consent, waiver, right, reservation or action that may be required or may be taken with respect to the Plan by the Plan Proponents (including those contained in Sections 10.2, 10.3, 12.4, 12.5, 12.6, 12.7, and 12.23 of the Plan) shall require the unanimous written consent of each Entity that is a Plan Proponent. Any immaterial effectuating provision of the Plan may be interpreted by the applicable LT Trustee in a manner that is consistent with the overall purpose and intent of the Plan without further order of the Bankruptcy Court.

### 12.8    Withdrawal or Revocation of the Plan.

The Plan Proponents, acting together and unanimously, reserve the right to revoke or withdraw the Plan prior to the Confirmation Date. If the Plan Proponents revoke or withdraw the Plan, or if the Plan is not Confirmed, then the Plan shall be deemed null and void and shall be deemed an offer of settlement inadmissible as evidence on any issue proposed to be compromised in the Plan, and nothing contained in the Plan will: (1) constitute a waiver or release of any Claims by or against, or any Equity Securities in, the Debtors or constitute or be deemed an admission with respect to any claim or defense or any matter set forth herein; or (2) prejudice in any manner the rights of any party.

### 12.9    Payment of Statutory Fees.

All fees payable pursuant to Section 1930 of Title 28 of the United States Code shall be paid by the Chapter 11 Trustee on the Effective Date (if due) or when otherwise due out of the reserve set aside on the Effective Date by the PCI Liquidating Trustee to fund PCI Liquidating Trust Expenses.

### 12.10    Successors and Assigns.

The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors and/or assigns of such Entities.

**12.11    Term of Injunctions or Stays.**

Unless otherwise provided in the Plan, all injunctions or stays arising under or entered during the Bankruptcy Cases under Sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Bankruptcy Cases are closed; provided; however, that, with respect to Claims of the Promissory Note Lenders sounding in fraudulent transfer under state law, for so long as such stay is extended and applicable to such Claims, the applicable statute of limitations for such Claims shall continue to be tolled to the fullest extent permitted pursuant to applicable state law; provided, further, however, that, if any Avoidance Actions pursued by the PCI Liquidating Trustee are dismissed pursuant to a Final Order or withdrawn, all injunctions or stays arising under or entered during the Bankruptcy Cases under Sections 105 or 362 of the Bankruptcy Code, or otherwise, including under this Plan, shall be deemed to have been lifted with respect thereto and such claims may be pursued by Promissory Note Lenders directly without further order of the Bankruptcy Court.

**12.12    Termination of Cases.**

In connection with the substantive consolidation provided for herein, the Petters Capital Chapter 7 Case shall be terminated on the Effective Date. The Petters Capital Chapter 7 Trustee shall have an Allowed Administrative Expense Claim in an amount agreed upon with the Plan Proponents or the PCI Liquidating Trust Committee, which amount shall be based on the Petters Capital Chapter 7 Trustee's contribution to the Estates and shall be reflected in a request for payment before the Professional Fee Claim Bar Date under Section 3.5.

Solely for administrative convenience, and in view of the substantive consolidation provided for hereunder, upon the Effective Date, pursuant to Sections 105(a) and 350(a) of the Bankruptcy Code, all of the Chapter 11 Cases other than PCI's and PGW's Chapter 11 Cases (the "Terminated Cases") shall be closed without any substantive or procedural effect; provided, however, that, any filings that would otherwise be made in the Terminated Cases shall be made in PCI's Chapter 11 Case as if the Terminated Cases remained open. The foregoing shall not restrict an LT Trustee's ability to terminate PCI's and PGW's Chapter 11 Case when the Bankruptcy Cases are fully administered, with the consent of the PCI Liquidating Trust Committee.

**12.13    Exculpation.**

**As of the Effective Date, the Covered Parties shall neither have nor incur any liability for any Covered Claims to any Entity, including any Holder of a Claim or Equity Security, the Debtors, or their former shareholders, members, directors, officers, employees, agents, and professionals, the Liquidating Trusts, an LT Trustee, the Liquidating Trust Committees or any other party in interest; provided, however, that the foregoing provisions of this Section 12.13 shall have no effect on the liability of any Covered Party that would otherwise result from (a) the failure to perform or pay any obligation or liability under the Plan or any contract, instrument, release or other agreement or document to be entered into or delivered in connection with the**

59

**Plan; or (b) any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted willful misconduct.**

### 12.14   Releases by the Estates

**Without limiting any other applicable provisions of, or releases contained in, the Plan, as of the Effective Date the Debtors, on behalf of themselves and their affiliates, the Estates and their respective successors and assigns and any and all Entities who may purport to claim through them, shall forever release, waive and discharge all Covered Claims whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise that the Debtors or the Estates, would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of any Holder of any Claim or other Entity, that they have, had or may have against any Covered Party; provided, however, that the foregoing provisions of Section 12.14 shall have no effect on the liability of any Covered Party that would otherwise result from (a) the failure to perform or pay any obligation or liability under the Plan or any contract, instrument, release or other agreement or document to be entered into or delivered in connection with the Plan; or (b) any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted willful misconduct.**

### 12.15   Preservation of Rights.

Notwithstanding anything in this Plan, nothing in this Plan releases or is intended to release any of the Debtors, or any Person who at any time before September 24, 2008 was a shareholder, member, director, officer, employee, agent, or professional of any of the Debtors or any joint or consecutive tortfeasors, and no provision of this Plan shall be deemed or implied to release any of such persons or entities from any Claims, Causes of Action, or obligations of any kind or nature whatsoever, including any Creditor Direct Claims. This Plan specifically contemplates that any Creditor may prosecute or continue to prosecute without limitation all Claims, Causes of Action, or obligations of any kind or nature whatsoever, including Creditor Direct Claims, against any parties other than the Covered Parties to the extent provided in Section 12.13 or 12.14.

### 12.16   Extinguishment of Liens.

On the Effective Date, all Liens against any property of the Debtors, except to the extent provided in the Plan or the Confirmation Order, shall be deemed forever extinguished, released and discharged.

### 12.17   Substantial Contribution.

In light of the time, effort, and expense the Lancelot Trustee, Palm Beach Trustee, Interlachen, and Greenpond have expended in drafting and prosecuting the Plan and related documents for the benefit of the Estates, each shall be afforded an Allowed Administrative Expense Claim, not to exceed $300,000 each, for the amount of its reasonable costs and expenses incurred in connection solely with the foregoing activities, as a substantial contribution pursuant to section 503(b)(3)(D) and 503(b)(4) of the Bankruptcy Code.

**12.18   Consent to Transfer.**

For the avoidance of doubt, the prior transfer of the Claims of Asset Based Resource Group, LLC, Acorn Capital Group, LLC *et al.*, Allowed by the Bankruptcy Court's order dated February 9, 2011, to Greenpond is deemed consented to by the Chapter 11 Trustee.

**12.19   Governing Law.**

Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under the Plan shall be governed by and construed and enforced in accordance with the laws of the State of Minnesota, without reference to Minnesota's conflict of laws rules that would result in the application of law of another jurisdiction.

**12.20   Notices.**

Any notice required or permitted to be provided under the Plan shall be in writing and served by either (a) first class mail, (b) hand delivery, or (c) reputable overnight delivery or courier service, freight prepaid, to be addressed as follows:

**If to the Chapter 11 Trustee, the PCI Liquidating Trustee, the BMO Litigation Trustee, or the Estates:**

Douglas A. Kelley
431 South Seventh Street
Suite 2530
Minneapolis, MN 55414

with a copy to:

James A. Lodoen
George H. Singer
Lindquist & Vennum LLP
4200 IDS Center
80 S 8th Street
Minneapolis, MN 55402

**If to the Petters Capital Chapter 7 Trustee:**

Randall L. Seaver
12400 Portland Avenue South
Suite 132
Burnsville, MN 55337

with a copy to:

61

Jennifer Lurken
Gislason & Hunter LLP
Landkamer Building, Suite 200
124 East Walnut Street
P.O. Box 4157
Mankato, MN 56002-4157

**If to the Creditors' Committee, the PCI Liquidating Trust
Committee, or the Lancelot Trustee:**

Ronald R. Peterson
Jenner & Block LLP
353 N. Clark Street
Chicago, IL 60654-3456

with a copy to:

Richard Levin
Jenner and Block LLP
919 Third Avenue
New York, NY 10022-3908

**If to the Palm Beach Trustee:**

Barry E. Mukamal
One SE 3rd Avenue, Suite 2150
Miami, FL 33131

with a copy to:

Michael S. Budwick
Solomon B. Genet
Peter D. Russin
Meland Russin & Budwick, P.A.
3200 Southeast Financial Center
200 South Biscayne Blvd
Miami, FL 33131

**If to Greenpond:**

Michael Stern
Stonehill Capital Management LLC
885 Third Avenue
30th Floor
New York, NY 10022-4834

with a copy to:

Benjamin I. Finestone
Quinn Emanuel Urquhart & Sullivan LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010

### 12.21   Saturday, Sunday or Legal Holiday.

If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

### 12.22   Section 1146 Exemption.

Pursuant to Section 1146(a) of the Bankruptcy Code, the transfer of any Property under the Plan or the making or delivery of any instrument of transfer pursuant to, in implementation of, or as contemplated by, the Plan or the revesting, transfer or sale of any real or personal property of the Debtors pursuant to, in implementation of, or as contemplated by, the Plan shall not be taxed under any state or local law imposing a stamp tax, transfer tax or similar tax or fee.

### 12.23   Severability.

If any term or provision of the Plan is held by the Bankruptcy Court prior to or at the time of Confirmation to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as so altered or interpreted. In the event of any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan may, at the Plan Proponents' joint and unanimous option remain in full force and effect and not be deemed affected. However, the Plan shall not to proceed to Confirmation or consummation if any such ruling occurs unless each of the Plan Proponents consents. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its term.

### 12.24   Service of Certain Exhibits.

Certain exhibits are not being Filed or served with copies of the Plan. The Plan Proponents shall File such exhibits no later than seven (7) days before the deadline to object to Confirmation.

Dated : January 15, 2016

Respectfully submitted,
Douglas A Kelley, Chapter 11 Trustee

Douglas A Kelley

RANDALL L. SEAVER, as Chapter 7 Trustee for
Petters Capital, LLC

_____

Randall L. Seaver

RONALD R PETERSON, as Chapter 7 Trustee for
RWB Services, LLC and as Chapter 7 Trustee for
Lancelot Investors Fund, Ltd. and for their affiliated
debtors.

_____

Ronald R. Peterson

BARRY E. MUKAMAL, as Liquidating Trustee for
Palm Beach Finance Partners, Liquidating Trust and
Palm Beach Finance II, Liquidating Trust

_____

Barry E. Mukamal

MICHAEL STERN, on behalf of Greenpond South,
LLC

By:      _____

Michael Stern

Dated : January 15, 2016

Respectfully submitted,
Douglas A Kelley, Chapter 11 Trustee


_____

Douglas A Kelley

RANDALL L. SEAVER, as Chapter 7 Trustee for
Petters Capital, LLC


_____

Randall L. Seaver

RONALD R PETERSON, as Chapter 7 Trustee for
RWB Services, LLC and as Chapter 7 Trustee for
Lancelot Investors Fund, Ltd. and for their affiliated
debtors.

*Ronald R Peterson (rl)*

Ronald R. Peterson

BARRY E. MUKAMAL, as Liquidating Trustee for
Palm Beach Finance Partners, Liquidating Trust and
Palm Beach Finance II,  Liquidating Trust


_____

Barry E. Mukamal

MICHAEL STERN, on behalf of Greenpond South,
LLC


By:        _____
            Michael Stern

64

Dated : January 15, 2016

Respectfully submitted,
Douglas A Kelley, Chapter 11 Trustee

_____

Douglas A Kelley

RANDALL L. SEAVER, as Chapter 7 Trustee for
Petters Capital, LLC

_____

Randall L. Seaver

RONALD R PETERSON, as Chapter 7 Trustee for
RWB Services, LLC and as Chapter 7 Trustee for
Lancelot Investors Fund, Ltd. and for their affiliated
debtors.

_____

Ronald R. Peterson

BARRY E. MUKAMAL, as Liquidating Trustee for
Palm Beach Finance Partners, Liquidating Trust and
Palm Beach Finance II,  Liquidating Trust

_____

Barry E. Mukamal

MICHAEL STERN, on behalf of Greenpond South,
LLC

By: _____

Michael Stern

64

Dated : January 15, 2016          Respectfully submitted,
Douglas A Kelley, Chapter 11 Trustee

_____

Douglas A Kelley

RANDALL L. SEAVER, as Chapter 7 Trustee for
Petters Capital, LLC

_____

Randall L. Seaver

RONALD R PETERSON, as Chapter 7 Trustee for
RWB Services, LLC and as Chapter 7 Trustee for
Lancelot Investors Fund, Ltd. and for their affiliated
debtors.

_____

Ronald R. Peterson

BARRY E. MUKAMAL, as Liquidating Trustee for
Palm Beach Finance Partners, Liquidating Trust and
Palm Beach Finance II,  Liquidating Trust

_____

Barry E. Mukamal

MICHAEL STERN, on behalf of Greenpond South,
LLC

By: _____

Michael Stern

# Exhibit A

**Exhibit A**

**Nonexclusive Schedule of Preserved Claims and Causes of Action**

The following is a non-exclusive list of defendants and potential defendants in Causes of Action that the Chapter 11 Trustee, Petters Capital Chapter 7 Trustee and/or the PCI Liquidating Trustee has asserted, could assert, or may potentially assert with respect to the Debtors. The Plan Proponents reserve their right to modify this list to amend such Causes of Action or otherwise update this list, but disclaim any obligation to do so. For the avoidance of doubt, the list of potential defendants below does not include defendants for any Causes of Action that are released pursuant to the Plan, the Confirmation Order or any other order of the Bankruptcy Court.

1.      Currently pending Causes of Action

| Adv. No. | Case Name |
|---|---|
| 10-04201 | Kelley, Trustee v. Vlahos et al |
| 10-04202 | Kelley, Trustee v. Redstone Limited Partnership (closed) |
| 10-04203 | Kelley, Trustee v. Redstone American Grill, Inc. (closed) |
| 10-04204 | Kelley, Trustee v. Edgebrook, Inc. |
| 10-04205 | Kelley, Trustee v. Aron (closed) |
| 10-04206 | Kelley, Trustee v. Kanios et al |
| 10-04207 | Kelley, Trustee v. Hagan et al |
| 10-04208 | Kelley, Trustee v. Dennis et al |
| 10-04209 | Kelley, Trustee v. Isaac et al |
| 10-04210 | Kelley, Trustee v. Isaac et al |
| 10-04211 | Kelley, Trustee v. Papadimos |
| 10-04212 | Kelley, Trustee v. Svigos |
| 10-04213 | Kelley, Trustee v. Carlstrom et al |
| 10-04214 | Kelley, Trustee v. Taunton et al |
| 10-04215 | Kelley, Trustee v. Taunton et al (closed) |
| 10-04221 | Kelley, Trustee v. Hofer et al |
| 10-04222 | Kelley, Trustee v. Business Associates Leasing, Inc. et al |
| 10-04223 | Kelley, Trustee v. Dovolis |
| 10-04224 | Kelley, Trustee v. Musich et al |
| 10-04225 | Kelley, Trustee v. Kenney |
| 10-04226 | Kelley, Trustee v. McGough |
| 10-04227 | Kelley, Trustee v. Romano |
| 10-04228 | Kelley, Trustee v. Evans Charap |
| 10-04229 | Kelley, Trustee v. Charap |
| 10-04245 | Kelley, Trustee v. Boosalis |
| 10-04246 | Kelley, Trustee v. Boosalis |
| 10-04247 | Kelley, Trustee v. Boosalis |
| 10-04248 | Kelley, Trustee v. Boosalis |
| 10-04249 | Kelley, Trustee v. Diment |
| 10-04250 | Kelley, Trustee v. High Plains Investment LLC |

| Adv. No. | Case Name |
|----------|-----------|
| 10-04252 | Kelley, Trustee v. Lewicki (closed) |
| 10-04253 | Kelley, Trustee v. Hillesland et al (closed) |
| 10-04254 | Kelley, Trustee v. Hauser |
| 10-04255 | Kelley, Trustee v. Fleming et al |
| 10-04256 | Kelley, Trustee v. Miller et al (closed) |
| 10-04257 | Kelley, Trustee v. Fleming et al |
| 10-04258 | Kelley, Trustee v. Chin et al |
| 10-04259 | Kelley, Trustee v. Aronovsky |
| 10-04260 | Kelley, Trustee v. Anding |
| 10-04261 | Kelley, Trustee v. Gelb et al |
| 10-04262 | Kelley, Trustee v. McCarthy et al |
| 10-04263 | Kelley, Trustee v. Allanson (closed) |
| 10-04264 | Kelley, Trustee v. Brennan |
| 10-04265 | Kelley, Trustee v. Timmer et al |
| 10-04266 | Kelley, Trustee v. Colvin et al |
| 10-04267 | Kelley, Trustee v. Electric Motor Supply Co. (closed) |
| 10-04268 | Kelley, Trustee v. Feneis |
| 10-04269 | Kelley, Trustee v. Hayes |
| 10-04270 | Kelley, Trustee v. Hopfenspriger (closed) |
| 10-04271 | Kelley, Trustee v. Johnson et al |
| 10-04272 | Kelley, Trustee v. Joseph |
| 10-04273 | Kelley, Trustee v. Kabe |
| 10-04274 | Kelley, Trustee v. Caruso |
| 10-04275 | Kelley, Trustee v. Feneis et al |
| 10-04276 | Kelley, Trustee v. Kastor |
| 10-04277 | Kelley, Trustee v. Kuperus (closed) |
| 10-04278 | Kelley, Trustee v. Kyriakides (closed) |
| 10-04279 | Kelley, Trustee v. Ruggieri et al |
| 10-04280 | Kelley, Trustee v. Slobodyanuk |
| 10-04281 | Kelley, Trustee v. Slobodyanuk |
| 10-04282 | Kelley, Trustee v. Miller Companies, Inc. |
| 10-04283 | Kelley, Trustee v. Larsen Agribusiness, Inc. |
| 10-04284 | Kelley, Trustee v. Kerbel et al |
| 10-04286 | Kelley, Trustee v. Fidelis Foundation (closed) |
| 10-04287 | Kelley, Trustee v. Faraone et al |
| 10-04288 | Kelley, Trustee v. Christenson et al |
| 10-04289 | Kelley, Trustee v. SXD, INC. et al (closed) |
| 10-04290 | Kelley, Trustee v. Challenge Printing, Inc. |
| 10-04291 | Kelley, Trustee v. Hoag et al (closed) |
| 10-04292 | Kelley, Trustee v. Overstock.com |
| 10-04293 | Kelley, Trustee v. Alper (closed) |
| 10-04294 | Kelley, Trustee v. Mignin et al (closed) |
| 10-04295 | Kelley, Trustee v. Scherber et al |
| 10-04296 | Kelley, Trustee v. Mansour et al |

2

| Adv. No. | Case Name |
|---|---|
| 10-04297 | Kelley, Trustee v. Olson et al |
| 10-04301 | Kelley, Trustee v. Opportunity Finance, LLC et al |
| 10-04310 | Kelley, Trustee v. Colvin et al |
| 10-04311 | Kelley, Trustee v. Colvin et al |
| 10-04312 | Kelley, Trustee v. St. Jude Children's Research Hospital (closed) |
| 10-04313 | Kelley, Trustee v. Minneapolis Jewish Foundation (closed) |
| 10-04314 | Kelley, Trustee v. Minnesota Public Radio (closed) |
| 10-04315 | Kelley, Trustee v. The Breast Cancer Research Foundation (closed) |
| 10-04316 | Kelley, Trustee v. St. Cloud American Legion Post 76 (closed) |
| 10-04317 | Kelley, Trustee v. Crohn's & Colitis Foundation of America (closed) |
| 10-04318 | Kelley, Trustee v. Wishes and More (closed) |
| 10-04319 | Kelley, Trustee v. Children's Heartlink (closed) |
| 10-04320 | Kelley, Trustee v. Make-a-Wish Foundation of Minnesota (closed) |
| 10-04321 | Kelley, Trustee v. Volunteers of America in Minnesota (closed) |
| 10-04322 | Kelley, Trustee v. Trent Tucker Non-Profit Organization (closed) |
| 10-04323 | Kelley, Trustee v. Big Brothers Big Sisters of the Greater Twin Citie (closed) |
| 10-04324 | Kelley, Trustee v. Urban Ventures Leadership Foundation |
| 10-04325 | Kelley, Trustee v. Ark Royal Capital, LLC |
| 10-04326 | Kelley, Trustee v. B'nai B'rith International |
| 10-04328 | Kelley, Trustee v. Metro I, LLC et al |
| 10-04335 | Kelley, Trustee v. Deikel (closed) |
| 10-04336 | Kelley, Trustee v. Menczynski |
| 10-04337 | Kelley, Trustee v. Carter (closed) |
| 10-04338 | Kelley, Trustee v. Engels (closed) |
| 10-04339 | Kelley, Trustee v. Danko |
| 10-04340 | Kelley, Trustee v. McGaunn (closed) |
| 10-04341 | Kelley, Trustee v. Salmen (closed) |
| 10-04342 | Kelley, Trustee v. Phelps |
| 10-04343 | Kelley, Trustee v. Miller (closed) |
| 10-04344 | Kelley, Trustee v. Anderson (closed) |
| 10-04345 | Kelley, Trustee v. Ting |
| 10-04346 | Kelley, Trustee v. Riedl (closed) |
| 10-04347 | Kelley, Trustee v. Mau (closed) |
| 10-04348 | Kelley, Trustee v. Margolis (closed) |
| 10-04351 | Kelley, Trustee v. Deikel et al (closed) |
| 10-04352 | Kelley, Trustee v. Metro Gem, Inc. et al |
| 10-04354 | Kelley, Trustee v. Thomas Shimoji and Company, Ltd et al (closed) |
| 10-04355 | Kelley, Trustee v. Circle F Ventures, LLC et al |
| 10-04356 | Kelley, Trustee v. Dallman |
| 10-04357 | Kelley, Trustee v. The Retreat (closed) |
| 10-04358 | Kelley, Trustee v. Joe (closed) |
| 10-04359 | Kelley, Trustee v. Tesar (closed) |
| 10-04360 | Kelley, Trustee v. Dorsey (closed) |
| 10-04361 | Kelley, Trustee v. O'Brien (closed) |

DOCS-#5015570-v1

| Adv. No. | Case Name |
|---|---|
| 10-04362 | Kelley, Trustee v. Honig (closed) |
| 10-04363 | Kelley, Trustee v. Sarenpa (closed) |
| 10-04364 | Kelley, Trustee v. Salmen (closed) |
| 10-04365 | Kelley, Trustee v. McKinney |
| 10-04366 | Kelley, Trustee v. Pernula (closed) |
| 10-04367 | Kelley, Trustee v. Schmit (closed) |
| 10-04368 | Kelley, Trustee v. Lindstrom (closed) |
| 10-04369 | Kelley, Trustee v. Klassen (closed) |
| 10-04370 | Kelley, Trustee v. Baer |
| 10-04371 | Kelley, Trustee v. Kruse (closed) |
| 10-04372 | Kelley, Trustee v. Harmer |
| 10-04373 | Kelley, Trustee v. Hamm (closed) |
| 10-04374 | Kelley, Trustee v. Laumann (closed) |
| 10-04375 | Kelley, Trustee v. Opportunity Finance, LLC |
| 10-04376 | Kelley, Trustee v. Jordan (closed) |
| 10-04377 | Kelley, Trustee v. Farrar |
| 10-04378 | Kelley, Trustee v. Toshi Investments, Ltd. (closed) |
| 10-04379 | Kelley, Trustee v. Cholakis |
| 10-04380 | Kelley, Trustee v. Idlewild Properties, LLC |
| 10-04381 | Kelley, Trustee v. Johnson |
| 10-04382 | Kelley, Trustee v. Knoblach et al |
| 10-04383 | Kelley, Trustee v. Millennium Development, LLC et al |
| 10-04384 | Kelley, Trustee v. Nelson |
| 10-04385 | Kelley, Trustee v. Wright (closed) |
| 10-04386 | Kelley, Trustee v. Seminole Tribe of Florida, Inc. (closed) |
| 10-04387 | Kelley, Trustee v. Kubinski et al (closed) |
| 10-04388 | Kelley, Trustee v. Lac Courte Oreilles Band of Lake Superior Chippewa (closed) |
| 10-04389 | Kelley, Trustee v. North Central Food Systems, Inc. |
| 10-04390 | Kelley, Trustee v. Boosalis Family Limited Partnership |
| 10-04391 | Kelley, Trustee v. Schopper |
| 10-04392 | Kelley, Trustee v. Holzem (closed) |
| 10-04393 | Kelley, Trustee v. Palma (closed) |
| 10-04394 | Kelley, Trustee v. Bushey (closed) |
| 10-04395 | Kelley, Trustee v. Monighan (closed) |
| 10-04396 | Kelley, Trustee v. Westford Special Situations Master Fund, L.P. et al |
| 10-04397 | Kelley, Trustee v. M&I Marshall and Ilsley Bank (closed) |
| 10-04398 | Kelley, Trustee v. Chee-Awai (closed) |
| 10-04399 | Kelley, Trustee v. Hay (closed) |
| 10-04400 | Kelley, Trustee v. Jeffries (closed) |
| 10-04401 | Kelley, Trustee v. O'Shaughnessy |
| 10-04402 | Kelley, Trustee v. Zhang (closed) |
| 10-04403 | Kelley, Trustee v. Lagermeier (closed) |
| 10-04404 | Kelley, Trustee v. Traub (closed) |

| **Adv. No.** | **Case Name** |
|---|---|
| 10-04405 | Kelley, Trustee v. Clayton (closed) |
| 10-04406 | Kelley, Trustee v. Jerry (closed) |
| 10-04407 | Kelley, Trustee v. Waara (closed) |
| 10-04408 | Kelley, Trustee v. Hardy (closed) |
| 10-04409 | Kelley, Trustee v. Ratliff (closed) |
| 10-04410 | Kelley, Trustee v. Dunlap (closed) |
| 10-04411 | Kelley, Trustee v. Insight Partners LP |
| 10-04412 | Kelley, Trustee v. Garden State Securities, Inc. |
| 10-04413 | Kelley, Trustee v. Apriven Partners, LP |
| 10-04414 | Kelley, Trustee v. Cercle Sportif Fola Esch (closed) |
| 10-04415 | Kelley, Trustee v. Morgan (closed) |
| 10-04416 | Kelley, Trustee v. Vlahos et al |
| 10-04417 | Kelley, Trustee v. Meyer |
| 10-04418 | Kelley, Trustee v. General Electric Capital Corporation (closed) |
| 10-04419 | Kelley, Trustee v. Romenesko (closed) |
| 10-04420 | Kelley, Trustee v. Baratz et al |
| 10-04421 | Kelley, Trustee v. Signature Bank |
| 10-04422 | Kelley, Trustee v. Associated Bank |
| 10-04423 | Kelley, Trustee v. Johnson |
| 10-04424 | Kelley, Trustee v. Southwest Aviation, Inc. et al |
| 10-04425 | Kelley, Trustee v. Hodge et al |
| 10-04426 | Kelley, Trustee v. Calibrax Capital Partners, LLC et al |
| 10-04427 | Kelley, Trustee v. Lancer Financial Services, LLC et al |
| 10-04428 | Kelley, Trustee v. Margolin (closed) |
| 10-04429 | Kelley, Trustee v. Crown Bank |
| 10-04430 | Kelley, Trustee v. Brax Capital Group, LLC |
| 10-04431 | Kelley, Trustee v. Cohen Partnership et al (closed) |
| 10-04432 | Kelley, Trustee v. Actionwear International, S.L. et al |
| 10-04433 | Kelley, Trustee v. After the Second Millennium, Inc. et al |
| 10-04434 | Kelley, Trustee v. After the Second Millennium, Inc. et al |
| 10-04435 | Kelley, Trustee v. American Express Bank, FSB et al (closed) |
| 10-04436 | Kelley, Trustee v. Boland et al (closed) |
| 10-04437 | Kelley, Trustee v. Potts et al (closed) |
| 10-04438 | Kelley, Trustee v. Chuck and Harold's, LLC et al (closed) |
| 10-04439 | Kelley, Trustee v. HOME FEDERAL SAVINGS BANK |
| 10-04440 | Kelley, Trustee v. Ritchie Capital Management, L.L.C., et al |
| 10-04441 | Kelley, Trustee v. Acorn Capital Group, LLC (closed) |
| 10-04442 | Kelley, Trustee v. Cunningham, Jr. et al |
| 10-04443 | Kelley, Trustee et al v. JPMORGAN CHASE & CO. et al |
| 10-04446 | Kelley, Trustee v. JPMorgan Chase & Co. et al |
| 10-04447 | Kelley, Trustee v. Beresford Bancorporation, Inc. |
| 12-04008 | Kelley v. Eide Bailly (closed) |
| 12-04087 | Kelley, Trustee v. Minnesota Teen Challenge, Inc. (closed) |
| 12-04288 | Kelley v. BMO Harris Bank N.A., as successor to M&I Marshall & Ilsley Bank |

DOCS-#5015570-v1

| Adv. No. | Case Name |
|---|---|
| 13-04299 | Kelley, Trustee v. Ritchie Capital Management, L.L.C., et al |
| 15-04128 | Ritchie Capital Management, LLC et al v. JPMorgan Chase & Co. et al |
| 10-04231 | Seaver, Trustee v. Ritchie Capital Management, LLC, et al. |
| 10-04445 | Kelley, Trustee, et al v. JPMorgan Chase & Co., et al. |
| 10-04449 | Seaver, Trustee v. Best Buy Purchasing, LLC et al. (closed) |
| 10-04467 | Seaver, Trustee v. Ozark Electronics Repair, Inc., et al (closed) |
| 11-04162 | Seaver, Trustee v. Merri Ville Holdings, LLC et al (closed) |
| 11-04181 | Seaver, Trustee v. Peterson |
| 11-04182 | Seaver, Trustee v. Chee-Awai et al (closed) |
| 11-04183 | Seaver, Trustee v. Raymond (closed) |
| 11-04216 | Seaver, Trustee v. ADIR International, LLC d/b/a LaCuracao (closed) |
| 11-04224 | Seaver, Trustee v. Jeel Corp. (closed) |
| 11-04230 | Seaver, Trustee v. Kohl's Corporation et al (closed) |
| 11-04231 | Seaver, Trustee v. Sam's West, Inc. et al (closed) |
| 11-04232 | Seaver, Trustee v. TriStar Distributing L.P. n/l/a TriStar Distributi (closed) |
| 12-04011 | Seaver v. Colletti & Sons, Inc. (closed) |
| 12-04059 | Seaver v. Honig's appliance Center, LLC (closed) |
|  | Admitted claim against Barrington Capital Group, Ltd. f/k/a Capital Strategies Fund Ltd. in liquidation proceedings in the British Virgin Islands |
|  | And any other Cause of Action commenced by the Chapter 11 Trustee and Petters Capital Chapter 7 Trustee |

2.      Other Potential Causes of Action

(a)      Claims to recover avoidable transfers from subsequent transferees of initial transferees under section 550(b) of the Bankruptcy Code.

(b)      Causes of Action also include, without limitation, those which are:

- property of the Bankruptcy Estates under and pursuant to section 541 of the Bankruptcy Code;

- for subrogation or contribution;

- for turnover;

- for avoidable transfers and preferences pursuant to sections 542 through 550 and 553 of the Bankruptcy Code or any applicable state law;

- to determine the extent, validity and priority of liens and encumbrances;

- for surcharge under section 506(c) of the Bankruptcy Code;

- for subordination under section 510 of the Bankruptcy Code;

6

- related to federal or state securities laws;

- direct or derivative claims or causes of action of any type or kind of the Debtors;

- against any and all current and/or former officers and directors of the Debtors;

- for breach of fiduciary duty or aiding and abetting breach of fiduciary duty;

- under and pursuant any policies for insurance, including for bad faith, maintained by the Debtors, including without limitation, any liability policy;

- for theft of corporate opportunity;

- for collection of accounts receivable, loans, notes receivable and other rights to payments;

- the right to seek a determination by the Bankruptcy Court of any tax, fine or penalty relating to a tax, or any addition to a tax, under section 505 of the Bankruptcy Code;

- which arise under or as a result of any section of the Bankruptcy Code;

- for common law torts or aiding and abetting common law torts;

- contract or quasi contract;

- statutory claims;

- any refunds or rebates, including from any governmental entity;

- any deposits, including those of the Debtors' utility companies that remain unapplied and unreturned; or

- arise out of or are related in any way to Causes of Action or Claims pending as of the Effective Date.

The causes of action, potential causes of action, defendants and potential defendants listed on this Exhibit A are not exhaustive. To the extent not specifically released under the Plan, the PCI Liquidating Trustee and the PCI Liquidating Trust reserve all rights to bring any causes of action against any defendant, in each case not specifically referenced above.

7

# Exhibit B

# Exhibit C

# Exhibit D