**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| In re | Jointly Administered Under<br>Case No. 08-45257 |
| Petters Company, Inc., et al., | |
| | Court File No. 08-45257 |
| Debtors. | |
| | Court File Nos.: |
| (includes: | |
| Petters Group Worldwide, LLC; | 08-45258 |
| PC Funding, LLC; | 08-45326 |
| Thousand Lakes, LLC; | 08-45327 |
| SPF Funding, LLC; | 08-45328 |
| PL Ltd., Inc.; | 08-45329 |
| Edge One LLC; | 08-45330 |
| MGC Finance, Inc.; | 08-45331 |
| PAC Funding, LLC; | 08-45371 |
| Palm Beach Finance Holdings, Inc.) | 08-45392 |
| | Chapter 11 Cases<br>Judge Kathleen H. Sanberg |

**NOTICE OF HEARING AND MOTION OF PCI LIQUIDATING TRUSTEE AND BMO
LITIGATION TRUSTEE FOR APPROVAL OF SETTLEMENT PURSUANT TO
BANKRUPTCY RULE 9019**

1.      Douglas A. Kelley, in his capacity as the Liquidating Trustee (the "***PCI
Liquidating Trustee***") of the Liquidating Trust created pursuant to the Amended Liquidating
Trust Agreement dated April 22, 2016 (the "***PCI Liquidating Trust***") and in his capacity as the
BMO Litigation Trustee (the "***BMO Litigation Trustee***," and together with the PCI Liquidating
Trustee, the "***Trustees***") of the BMO Litigation Trust created pursuant to the BMO Litigation
Trust Agreement dated April 22, 2016 (the "***BMO Litigation Trust***" and, together with the PCI
Liquidating Trustee, the PCI Liquidating Trust, and the BMO Litigation Trustee, the "***Trust***

***Parties***") request that the Court approve the Settlement Agreement between the Trustees, on the one hand, and PB Offshore Holdings LTD ("***PB Offshore***"), Stonehill Master Fund Ltd. ("***Stonehill***"), Greenpond South, LLC ("***Greenpond***"), Michael Lenard Stern ("***Stern***"), and Geoffrey Varga ("***Varga***," and together with PB Offshore, Stonehill, Greenpond, and Stern, "***Defendants***"), on the other hand (the "***Agreement***"), pursuant to sections 105 and 363 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "***Bankruptcy Code***"), and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***").  A copy of the Agreement is attached hereto as <u>Exhibit A</u>.  In further support of this Motion, the Trustees represent as follows:

2.      The Court will hold a hearing on this motion at **10:00 a.m. on Thursday, November 15, 2018,** before the Honorable H. Kathleen Sanberg, in Courtroom No. 8 West, United States Courthouse, 300 South Fourth Street, Minneapolis Minnesota, 55415.

3.      Any response to this motion must be filed and served by **12:00 p.m. on Saturday, November 10, 2018,** which is five (5) days before the time set for the hearing (including intermediate Saturdays, Sundays, and holidays).    **UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.**

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334. This matter concerns administration of the PCI Bankruptcy Estates; accordingly, this is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (C), and (O).

5.      The legal predicates for the relief sought herein are 11 U.S.C. §§ 105 and 363 and Bankruptcy Rule 9019.

6.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## **FACTUAL BACKGROUND**

7.      Petitions commencing the chapter 11 cases of Petters Company, Inc. and Petters Group Worldwide, LLC were filed on October 11, 2008; petitions commencing the chapter 11 cases of PC Funding, LLC, Thousand Lakes, LLC, SPF Funding, LLC, PL Ltd., Inc., Edge One, LLC and MGC Finance, Inc. were filed on October 15, 2008; the petition commencing the chapter 11 case of PAC Funding, LLC was filed on October 17, 2008; the petition commencing the chapter 11 case of Palm Beach Finance Holdings, Inc. was filed on October 19, 2008 (collectively, the "***Chapter 11 Cases***").

8.      The Chapter 11 Cases of the above debtors (the "***Debtors***") are being jointly administered under Case No. 08-45257 (the "***PCI Bankruptcy Estates***").

9.      On April 15, 2016, the Court entered an order confirming the *Second Amended Chapter 11 Plan of Liquidation* [Dkt. No. 3263] (the "***PCI Plan***") proposed by the PCI Trustee and certain creditor proponents.

10.      Insolvency proceedings of Palm Beach Offshore, Ltd. and Palm Beach Offshore II, Ltd. (collectively, the "***Offshore Funds***") were initiated on November 8, 2008 in the Grand Court of the Cayman Islands, FSD 0038/2009-AJEF, over which Geoff Varga ("***Varga***") was appointed Joint Official Liquidator.

11.      Petitions commencing the chapter 11 cases of Palm Beach Finance Partners, L.P. ("***PBF***") and Palm Beach Finance II, L.P. (*"**PBF II**"*) were filed on November 30, 2009 (collectively, the "***PBF Bankruptcy Cases***") and the estates of the debtors in the PBF Bankruptcy Cases are being jointly administered under the case captioned as *In re Palm Beach*

*Finance Partners, L.P. et al.* (Case No. 09-36379) in the U.S. Bankruptcy Court for the Southern District of Florida.

12.     Varga filed claim nos. 64 and 103 against the PCI Bankruptcy Estates (collectively, the "***Varga Claim***") on behalf of the Offshore Funds.  Varga sold a participation interest in and to the Varga Claim to Stonehill.

13.     The PCI Trustee filed an objection to the Varga Claim on March 11, 2016 and an amended objection to the Varga Claim on December 17, 2016 ("***Varga Claim Objection***").  On February 28, 2017, Offshore filed its Response in Opposition to the Varga Claim Objection.  The PCI Trustee's pending objection of the Varga Claim shall be referred to as the "***Contested Claims Dispute***."

14.     In early 2017, Varga transferred his full interest in the Varga Claim to PB Offshore Holdings LTD ("***Offshore***").

15.     Greenpond purchased the allowed claim of Asset Based Resource Group, LLC against PAC Funding, LLC [Claim No. 11] which is an allowed claim in the PCI Bankruptcy Cases against certain of the Debtors, the PCI Liquidating Trust and the BMO Litigation Trust.  A portion of that claim was assigned to Interlachen Harriet Investments Limited on the effective date of the PCI Plan (such unassigned portion retained by Greenpond, the "***Acorn Claim***").

16.     On May 9, 2018, the PCI Trustee initiated an adversary proceeding, captioned *Kelley v. Greenpond South, LLC, et al.*, Case No. 18-04064 (the "***Adversary Proceeding***") by filing a complaint against Offshore, Stonehill, Greenpond, Stern, and Varga asserting, among other things, equitable subordination of both the Varga Claim and the Acorn Claim, breaches of fiduciary duties owed to the PCI Bankruptcy Estates and aiding and abetting such breaches (the "***Complaint***").

17.     On June 1, 2018, Defendants filed an Answer to the Complaint.

18.     On July 27, 2018, the Court entered an order requiring that any further distributions from the PCI Bankruptcy Estates on account of the Acorn Claim be withheld and reserved until the PCI Trustee's claim in the Adversary Proceeding are resolved [Dkt. No. 4080] (the "***Acorn Reserve***").

19.     The Parties wish to avoid the expense and uncertainty associated with litigating the issues raised in the Contested Claims Dispute and the Adversary Proceeding (the "***Disputed Matters***") and have negotiated in good faith to resolve the Disputed Matters.  Pursuant to those negotiations, the Parties have agreed to settle the Disputed Matters upon the terms and conditions set forth in the attached Agreement.

## MEMORANDUM, TESTIMONY AND COURT APPROVAL

20.     The Trustees have filed, contemporaneously herewith, a *Memorandum of Law in Support of Motion of PCI Liquidating Trustee and BMO Litigation Trustee for Approval of Settlement Pursuant to Bankruptcy Rule 9019* (the "***Memorandum***").  The Memorandum is incorporated herein by reference.

21.     Notice is hereby given pursuant to Local Rule 9013-2(c) that, if necessary, the Trustees may testify at the hearing on this motion in support of their motion to approve the Agreement.

22.     Pursuant to Local Rule 9011-4(f), the counsel below authorize the filing of this motion with their electronic signatures.

## REQUEST FOR RELIEF

23.     The Parties respectfully request that the Court enter an order, substantially in the form attached hereto as <u>Exhibit B</u> (with such modifications as may be agreed by the Parties and

the Court, the "***Approval Order***"), approving the Agreement pursuant to sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rule 9019, dismissing the Adversary Proceeding, authorizing the dissolution of the Acorn Reserve, and granting such further relief as this Court deems appropriate.[1]

Dated: October 25, 2018                    By: /s/ Joanne Lee

Mark L. Prager, *Admitted Pro Hac Vice*
William J. McKenna*, Admitted Pro Hac Vice*
Joanne   Lee,    *Admitted   Pro   Hac   Vice*
Foley & Lardner LLP
321 North Clark Street, Suite 2800
Chicago, IL 60654-5313
Telephone: (312) 832-4500
Facsimile: (312) 832-4700

*-and-*

David E. Runck
Lorie A. Klein
FAFINSKI MARK & JOHNSON, P.A.
400 Flagship Corporate Center
775 Prairie Center Drive
Eden Prairie, Minnesota 55344

*Counsel for Douglas A. Kelley in his capacity as Trustee of the PCI Liquidating Trust and the BMO Litigation Trust*

---

[1] Although the PCI Plan expressly grants the Trustees authority to settlement disputes without the Court's approval, the Trustees seek the Approval Order in an abundance of caution, given the complexity and significance of the Disputed Matters.

## <u>VERIFICATION</u>

I, Douglas A. Kelley, declare under penalty of perjury that the facts set forth in the foregoing *Motion of PCI Liquidating Trustee and BMO Liquidating Trustee for Approval of Settlement Agreement Pursuant to Bankruptcy Rule 9019* are true and correct according to the best of my knowledge, information, and belief.

Dated: October 25, 2018

/s/ Douglas A. Kelley

Douglas A. Kelley, as PCI Liquidating Trustee and on behalf of the PCI Liquidating Trust

I, Douglas A. Kelley, declare under penalty of perjury that the facts set forth in the foregoing *Motion of PCI Liquidating Trustee and BMO Liquidating Trustee for Approval of Settlement Agreement Pursuant to Bankruptcy Rule 9019* are true and correct according to the best of my knowledge, information, and belief.

Dated: October 25, 2018

/s/ Douglas A. Kelley

Douglas A. Kelley, as BMO Litigation Trustee and on behalf of the BMO Litigation Trust

**Exhibit A – Settlement Agreement**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| In re | Jointly Administered Under Case No. 08-45257 |
| Petters Company, Inc., et al., | |
| | Court File No. 08-45257 |
| Debtors. | |
| | Court File Nos.: |
| (includes: | 08-45258 |
| Petters Group Worldwide, LLC; | 08-45326 |
| PC Funding, LLC; | 08-45327 |
| Thousand Lakes, LLC; | 08-45328 |
| SPF Funding, LLC; | 08-45329 |
| PL Ltd., Inc.; | 08-45330 |
| Edge One LLC; | 08-45331 |
| MGC Finance, Inc.; | 08-45371 |
| PAC Funding, LLC; | 08-45392 |
| Palm Beach Finance Holdings, Inc.) | |
| | Chapter 11 Cases |
| | Judge Kathleen H. Sanberg |

**THIS SETTLEMENT AGREEMENT AND RELEASE** (the "*Agreement*") is entered into by (a) Douglas A. Kelley, in his capacity as the Liquidating Trustee (the "*PCI Liquidating Trustee*") of the Liquidating Trust (the "*PCI Liquidating Trust*") created pursuant to the Amended Liquidating Trust Agreement dated April 22, 2016 (the "*PCI Liquidating Trust Agreement*") *and* in his capacity as the BMO Litigation Trustee (the "*BMO Litigation Trustee*," and together with the PCI Liquidating Trustee, the "*Trustees*") of the BMO Litigation Trust (the "*BMO Litigation Trust*" and, together with the PCI Liquidating Trust and Trustees, the "*Trust Parties*") created pursuant to the BMO Litigation Trust Agreement dated April 22, 2016 (the "*BMO Litigation Trust Agreement*"); and (b) PB Offshore Holdings LTD ("*PB Offshore*"), Stonehill Master Fund Ltd. ("*Stonehill*"), Greenpond South, LLC ("*Greenpond*"), Michael Lenard Stern ("*Stern*"), and Geoffrey Varga ("*Varga*," and together with PB Offshore, Stonehill, Greenpond, and Stern, "*Defendants*"). The Trust Parties and Defendants are collectively referred to, when applicable, as the "Parties."

**RECITALS**

**I.    THE PCI BANKRUPTCY CASES.**

WHEREAS, petitions under title 11 of the United States Code (the "*Bankruptcy Code*") commencing the chapter 11 cases of Petters Company, Inc. and Petters Group Worldwide,

LLC were filed on October 11, 2008; petitions commencing the chapter 11 cases of PC Funding, LLC, Thousand Lakes, LLC, SPF Funding, LLC, PL Ltd., Inc., Edge One, LLC and MGC Finance, Inc. were filed on October 15, 2008; the petition commencing the chapter 11 case of PAC Funding, LLC was filed on October 17, 2008; and the petition commencing the chapter 11 case of Palm Beach Finance Holdings, Inc. was filed on October 19, 2008 (collectively, the "*PCI Bankruptcy Cases*");

WHEREAS, the chapter 11 cases of the above-described debtors (the "*PCI Debtors*") are being jointly administered under Case No. 08-45257 (the "*PCI Bankruptcy Estates*") in the United States Bankruptcy Court for the District of Minnesota (the "*PCI Bankruptcy Court*");

WHEREAS, on April 15, 2016, the Court entered an order confirming the *Second Amended Chapter 11 Plan of Liquidation* [Dkt. No. 3263] (the "*PCI Plan*") proposed by the PCI Trustee and certain creditor proponents;

## II.     THE PBF BANKRUPTCY CASES AND OFFSHORE INSOLVENCY PROCEEDINGS.

WHEREAS, insolvency proceedings of Palm Beach Offshore, Ltd. and Palm Beach Offshore II, Ltd. (collectively, the "*Offshore Funds*") were initiated on November 8, 2008 in the Grand Court of the Cayman Islands, FSD 0038/2009-AJEF, over which Varga was appointed Joint Official Liquidator (the "*Offshore Insolvency Proceedings*");

WHEREAS, petitions commencing the chapter 11 cases of Palm Beach Finance Partners, L.P. ("*PBF*") and Palm Beach Finance II, L.P. ("*PBF II*") were filed on November 30, 2009 (collectively, the "*PBF Bankruptcy Cases*") and the estates of the debtors in the PBF Bankruptcy Cases are being jointly administered under the case captioned as *In re Palm Beach Finance Partners, L.P. et al.* (Case No. 09-36379) (the "*PBF Bankruptcy Estates*") in the U.S. Bankruptcy Court for the Southern District of Florida (the "*PBF Bankruptcy Court*");

WHEREAS, Barry Mukamal was appointed as the chapter 11 trustee and liquidating trustee of the PBF Bankruptcy Estates (the "*PBF Trustee*");

WHERAS, PBF II and the PBF II Liquidating Trust established in the PBF Bankruptcy Cases have an allowed claim against the PCI Bankruptcy Estates and the PCI Liquidating Trust (the "*PBF II Claim*");

## III.    THE VARGA CLAIM AND THE ACORN CLAIM.

WHEREAS, Varga filed Claim Nos. 64 and 103 against the PCI Bankruptcy Estates on behalf of the Offshore Funds (collectively, the "*Varga Claim*");

WHEREAS, Varga sold a participation interest in and to the Varga Claim to Stonehill;

WHEREAS, Varga transferred any and all interest he retained after the sale of the participation interest in the Varga Claim to PB Offshore;

WHEREAS, the PCI Trustee filed an objection to the Varga Claim on March 11, 2016 and an amended objection to the Varga Claim on December 17, 2016 (collectively, the "*Objection*");

WHEREAS, on February 28, 2017, PB Offshore filed its Response in Opposition to the Objection (the "*Varga Response*," and together with the Objection, the "*Contested Claims Dispute*");

WHEREAS, Greenpond purchased the allowed claim of Asset Based Resource Group, LLC against PAC Funding, LLC [Claim No. 11], which is an allowed claim in the PCI Bankruptcy Cases, against certain of the PCI Debtors, the PCI Liquidating Trust, and the BMO Litigation Trust, a portion of which claim Greenpond assigned to Interlachen Harriet Investments Limited on the effective date of the PCI Plan pursuant to a Settlement Agreement dated on or about January 15, 2016 (such unassigned portion retained by Greenpond, the "*Acorn Claim*");

## IV.    THE ADVERSARY PROCEEDING.

WHEREAS, on May 9, 2018, the PCI Liquidating Trustee filed a complaint against Defendants (the "*Complaint*") in the adversary proceeding captioned *Kelley v. Greenpond South, LLC, et al.*, 18-04064, in which the PCI Liquidating Trustee sought equitable subordination of both the Varga Claim and the Acorn Claim, disallowance of the Varga Claim and the Acorn Claim, and other relief against Defendants due to Greenpond's and Stern's alleged breach of fiduciary duty and Defendants' aiding and abetting of the same (the "*Adversary Proceeding*," and together with the Contested Claims Dispute, the "*Disputed Matters*");

WHEREAS, on July 27, 2018, the PCI Bankruptcy Court entered an order requiring that any further distributions from the PCI Bankruptcy Estates on account of the Acorn Claim be withheld and reserved until the PCI Liquidating Trustee's claims in the Adversary Proceeding are resolved [Dkt. No. 4080] (the "*Acorn Reserve Order*");

WHEREAS, pursuant to the Acorn Reserve Order, the Trustees have withheld distributions to Greenpond on account of the Acorn Claim in an escrow account (the "*Acorn Escrow*");

## V.    THE SETTLEMENT.

WHEREAS, pursuant to the PCI Plan and the PCI Liquidating Trust Agreement, the PCI Liquidating Trust Committee was established and includes as its members Ronald Peterson (as chapter 7 trustee of the chapter 7 estates of Lancelot Investors Fund LTD and its affiliated debtors), Lance Breiland (on behalf of Interlachen Harriet Investments Limited), Barry Mukamal (as the liquidating trustee of the PBF Bankruptcy Estates), Michael Stern (on behalf of Greenpond), and Charles Cremens (the "*PCI Trust Committee*");

WHEREAS, Section 8.9(b)(v) of the PCI Plan provides that the PCI Liquidating Trustee, subject to prior approval of the PCI Trust Committee, has authority to settle objections to claims; and

WHEREAS, the Parties wish to fully and finally settle their disputes on the terms and conditions set forth in this Agreement.

NOW, THEREFORE, in consideration of the mutual covenants herein expressed, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows.

**AGREEMENT**

1.    **Defined Terms.**  In addition to the terms defined above, the terms listed below shall have the following meanings for purposes of this Agreement:

a.    "Claims": All charges, complaints, claims (as defined in section 101(5) of the Bankruptcy Code), demands, rights, suits, debts, liens, agreements, contracts, rights of indemnification, rights of reimbursement, rights of subrogation, rights of contribution, rights of and rights to restitution, covenants, obligations, liabilities, judgments, losses, costs, attorneys' fees, expenses, actions and causes of action, of any kind or description whatsoever, whether direct or derivative, inchoate or not inchoate, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, known or unknown, foreseen or unforeseen, suspected or unsuspected, in law, equity or otherwise.

b.    "Defendant Releasing Parties": (i) Defendants; (ii) any other person or entity that has asserted Claims or could assert Claims by or on behalf of Defendants; and (iii) any of the past, present, and future predecessors and successors in interest, subsidiaries, affiliates, parents, divisions, heirs, executors, administrators, assigns, and their respective past and present directors, officers, employees, principals, agents, and attorneys of each of the foregoing.

c.    "Effective Date": The date on which all conditions set forth in Section 7 of this Agreement are satisfied.

d.    "Entity Defendant Released Parties": Greenpond, the Stonehill Parties, and PB Offshore, as well as their respective predecessors and successors in interest, and their direct and indirect parents, subsidiaries, affiliates, divisions, and assigns, and their respective past and present directors, officers, employees, principals, agents, and attorneys of each of the foregoing.

e.    "Individual Defendant Released Parties": Stern and Varga, and their respective spouses and other immediate family members, their heirs, executors, personal or legal representatives, agents, insurers, estates, beneficiaries, predecessors, successors, assigns, any company or entity they own or control, and agents and attorneys of each of the foregoing.

f.    "Stonehill Parties": Stonehill Capital Management LLC, Stonehill Master Fund Limited, Stonehill Institutional Partners, L.P, as well as their respective predecessors and successors in interest, and their direct and indirect parents, subsidiaries, affiliates, divisions, and assigns, and their respective past and present

directors, officers, employees, principals, agents, and attorneys of each of the foregoing.

g.   "<u>Trust Released Parties</u>": The PCI Liquidating Trustee, the PCI Liquidating Trust, the BMO Litigation Trustee, the BMO Litigation Trust, the PCI Trust Committee, and its past and present members and representatives thereof solely in its or his capacity as a member of the PCI Trust Committee or the official committee of unsecured creditors in the PCI Bankruptcy Cases (the "***PCI Creditors Committee***") (but not including Greenpond, Stern, or any other past or present representative of Greenpond on the PCI Trust Committee), the trust committee established pursuant to the BMO Litigation Trust Agreement (the "***BMO Litigation Trust Committee***") and its past and present members and representatives thereof solely in its or his capacity as a member of the BMO Litigation Trust Committee or the PCI Creditors Committee, the PCI Debtors, the PCI Bankruptcy Estates, and their predecessors and successors in interest, and their respective direct and indirect parents, subsidiaries, affiliates, and divisions, and the past and present directors, officers, employees, principals, agents, and attorneys of each of the foregoing.

h.   "<u>Trust Releasing Parties</u>": (i) The PCI Liquidating Trustee, the BMO Litigation Trustee, the PCI Liquidating Trust, the BMO Litigation Trust, the PCI Debtors, the PCI Bankruptcy Estates; (ii) each member of the PCI Trust Committee, solely in its or his capacity as a member of the PCI Trust Committee or the PCI Creditors Committee; (iii) each member of the BMO Litigation Trust Committee, solely in its or his capacity as a member of the BMO Litigation Trust Committee or the PCI Creditors Committee; (iv) any other person or entity that has asserted Claims or could assert Claims by or on behalf of the PCI Liquidating Trust, the PCI Debtors, and the PCI Bankruptcy Estates; and (v) their predecessors and successors in interest, and their respective direct and indirect parents, subsidiaries, affiliates, and divisions, and the past and present directors, officers, employees, principals, agents, and attorneys of each of the foregoing.

i.   "<u>Trusts</u>": (i) the PCI Liquidating Trust; and (ii) the BMO Litigation Trust.

**2.   <u>Releases By The Trust Releasing Parties.</u>**  Upon the Effective Date, the Trust Releasing Parties hereby release, remise, waive, and forever discharge the Entity Defendant Released Parties and Individual Defendant Released Parties from any and all Claims that the Trust Releasing Parties ever had, now have, or hereafter can, shall or may have against any of the Entity Defendant Released Parties and Individual Defendant Released Parties from the beginning of time up to and including the Effective Date of this Agreement, based on, arising out of, or in any way relating to the PCI Debtors, the PCI Bankruptcy Cases, or the Trusts, including, without limitation, the Disputed Matters; <u>provided</u>, <u>however</u>, that nothing contained herein shall constitute or cause, or be deemed to constitute or cause, a release, discharge, or impairment of the rights and Claims (i) of the individual members of the PCI Trust Committee outside of their capacities as members of the PCI Trust Committee; or (ii) to enforce this Agreement, which are expressly reserved.

**3.    Releases By The Defendant Releasing Parties.**  Upon the Effective Date, the Defendant Releasing Parties hereby release, remise, waive, and forever discharge the Trust Released Parties from any and all Claims that the Defendant Releasing Parties ever had, now have, or hereafter can, shall, or may have against any of the Trust Released Parties from the beginning of time up to and including the Effective Date of this Agreement, based on, arising out of, or in any way relating to the PCI Debtors, the PCI Bankruptcy Cases, or the Trusts, including, without limitation, the Disputed Matters; provided, however, that nothing contained herein shall constitute or cause, or be deemed to constitute or cause, a release, discharge, or impairment of (a) the Acorn Claim and the Varga Claim (as modified herein) and the right of any holder of the Acorn Claim and the Varga Claim under the PCI Plan; (b) the PBF II Claim and the right of any holder of the PBF II Claim under the PCI Plan; (c) claims held by the Defendant Releasing Parties against PBF II; (d) any claims acquired with the consent of the PCI Trust Committee pursuant to Section 5 of this Agreement; (e) any claims in the Petters remissions or receivership proceedings; or (f) the right to enforce this Agreement, including, but not limited to, the right to receive distributions on the Varga Claim and the Acorn Claim, as modified by this Agreement.

**4.    Unknown Claims Released.**  The Parties expressly acknowledge and agree that the releases, discharges, and waivers included in Paragraphs 2 and 3 of this Agreement shall extend to Claims that the releasing parties do not know or suspect exist at the time of the releases, which, if known, might have affected the releasing parties' decisions to enter into the releases.  The Parties to this Agreement acknowledge that the foregoing waiver was separately bargained for and is a material term of this Agreement.

**5.    Future Acquisition Of Claims.**  Other than the Varga Claim (as modified by this Agreement), the Acorn Claim, and the Defendant Releasing Parties' interests in PBF II, the Defendant Releasing Parties shall not, without advance written approval from the PCI Trust Committee, acquire any direct or indirect ownership or other interest (in whole or in part, whether direct or derivative, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, in law, equity, or otherwise) in any proof of claim or other Claims asserted against the PCI Debtors or the Trusts; provided, however, that nothing herein shall be deemed to be a bar against the Defendant Releasing Parties from selling, assigning, or otherwise transferring their claims to any affiliate.  In the event of a breach of this Section 5, (i) such assignment, transfer, or other agreement shall be void *ab initio*; (ii) the Trusts shall have no liability whatsoever to any person or entity in respect of such assignment, transfer, or other agreement; and (iii) the Trusts may withhold any distributions that would otherwise be payable on account of such purchased claim, to the extent a Defendant Releasing Party is related, directly or indirectly, to such assignment, transfer, or other agreement, and such withheld amounts shall accrue to the benefit of the Trusts' other beneficiaries.

**6.    Varga Claim.**  As of the Effective Date, the Varga Claim shall be deemed allowed pursuant to the PCI Plan in the amount of $45,000,000.00 against the PCI Liquidating Trust only.  The remaining portion of the Varga Claim shall be disallowed against the PCI Liquidating Trust.  As of the Effective Date, the Varga Claim shall, notwithstanding anything to the contrary in the PCI Plan, the BMO Litigation Trust

Agreement, or otherwise, be deemed disallowed in its entirety against the BMO Litigation Trust, and Defendants expressly waive entitlement to any BMO Litigation Trust Interests (as defined in the BMO Litigation Trust Agreement) on account of the Varga Claim and further expressly waive any ongoing participation in the BMO Litigation Trust as BMO Litigation Trust Beneficiaries (as defined in the BMO Litigation Trust Agreement) on account of the Varga Claim. To avoid doubt, other than the Acorn Claim, Defendants shall have no Claims against or other interest in the BMO Litigation Trust whatsoever, all of which Defendants hereby release and waive, notwithstanding anything to the contrary in the PCI Plan or otherwise.

**7.    Effective Date.**   This Agreement shall be effective as of its execution by all Parties.  The Trustees shall reserve the right to seek entry of a final order approving the settlement embodied herein by the PCI Bankruptcy Court ("***Bankruptcy Court Approval Order***") upon written application and after notice and a hearing.  A final order is an order that is final for purposes of 28 U.S.C. §§ 158 and 1291; is no longer subject to appeal or petition for *certiori*; and is not the subject of a pending appeal or petition for *certiorari*. The Parties may waive finality by written agreement.  For the sake of clarity, the Agreement shall <u>not</u> be conditioned upon the Bankruptcy Court Approval Order; <u>provided</u>, <u>however</u>, that this Agreement shall be void *ab initio* should the PCI Bankruptcy Court decline to enter the Bankruptcy Court Approval Order after considering on the merits a motion brought under Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "***9019 Motion***").  This Agreement shall remain in full force and effect should the PCI Bankruptcy Court decline to rule on the merits of the 9019 Motion on jurisdictional or procedural grounds.  Defendants agree to cooperate with the Trustees, and execute and cause to be filed such pleadings, stipulations, or other documents, as may be necessary to secure the Bankruptcy Court Approval Order, as well as the approval of any other court or judicial or administrative body, whether in the United States or otherwise, as the Trustees deem necessary.

**8.    Distributions.**   The Trust Parties shall seek the Bankruptcy Court Approval Order on the earliest available hearing date after the Effective Date (the "***Hearing Date***"). Within five (5) days after the Hearing Date, the Trust Parties shall cause to be made from the PCI Liquidating Trust any catchup distributions on the Acorn Claim and Varga Claim (as modified herein) such that, following such distribution, holders of the Varga Claim (as modified herein) and the Acorn Claim will have received the same cumulative distribution rate as other allowed claims of general unsecured creditors.  In the event this agreement shall be void *ab initio* pursuant to Section 7 of this Agreement, the Stonehill Parties shall be liable for any distributions holders of the Varga Claim (as modified herein) and the Acorn Claim received pursuant to this Section 8.

**9.    Agreement In PBF Bankruptcy Cases.**   This Agreement shall not, in any way, be contingent or conditioned upon the negotiation, execution, or approval of any agreement between the PBF Trustee and any of the Defendants in connection with any potential disputes pending before the PBF Bankruptcy Court.  The Trust Parties agree to take no action in the PBF Bankruptcy Cases with respect to distributions or payments on account of any claims held by Defendants or their affiliates in the PBF Bankruptcy Cases; <u>provided</u>, <u>however</u>, that nothing in this clause shall restrict or otherwise impede

the ability of the PBF Trustee to take any action in his capacity as the PBF Trustee for the PBF Bankruptcy Cases.

**10.**   **Covenants.**   Consistent with the releases and waivers contained in this Agreement, the Parties covenant and agree not to bring any action, litigation, or other proceeding or file or assert any Claim against the other Parties, directly or indirectly, seeking to recover on account of any Claims waived or released by this Agreement.  The Trust Parties agree not to (i) challenge, hinder, or delay any distributions on account of the Varga Claim (as modified herein) or the Acorn Claim for any reason, including, but not limited to, setoff or equitable or other subordination; (ii) cause the creation of a reserve to withhold or delay payment on the Varga Claim (as modified herein) or the Acorn Claim; or (iii) challenge, hinder, or delay any distribution on account of the PBF II Claim to the extent that the basis of such challenge, hindrance, or delay is related to the Disputed Matters; provided, however, that nothing herein shall be deemed a waiver of, and the Trusts expressly preserve their rights to assert, any claims affecting the PBF II Claim arising out of facts or conduct unrelated to the Disputed Matters.   Subject to Section 8 of this Agreement, the Trust Parties agree to cause distributions to be made on such claims by the PCI Liquidating Trust at the same time and payment rate as claims made on other general unsecured claims allowed under the PCI Plan.

**11.**   **Representations, Warranties, And Covenants By The Trust Parties.**   The Trust Parties, by signing this Agreement, represent, warrant, and agree that:

**a.**     Each Trust Party intends to be legally bound and has the full power, authority, and legal right to execute and deliver, and to perform such Trust Party's respective obligations under this Agreement and has taken all necessary action to authorize the execution and delivery of, and the performance of such Trust Party's obligations under this Agreement;

**b.**     Each Trust Party has the full power, authority, and legal right to release all Claims released by this Agreement;

**c.**     The execution and delivery of this Agreement and the performance by each Trust Party of its or his obligations hereunder, including the release of Claims contemplated hereby, will not: (i) result in the violation by such Trust Party of any statute, law, rule, regulation, or ordinance, or any judgment, decree, order, writ, permit, or license of any governmental or regulatory authority applicable to such Trust Party; or (ii) except as otherwise expressly set forth in this Agreement, require such Trust Party to obtain any consent, approval, or action of, make any filing with, or give any notice to, any person, which action has not already been undertaken and accomplished by such Trust Party; and

**d.**     Each Trust Party has read and understands this Agreement, including the releases contained herein, has obtained such counsel as such Trust Party deems appropriate before entering into this Agreement, and has independently determined to enter into this Agreement.

**12.**   **Representations, Warranties, And Covenants By Defendants.**  Defendants, by signing this Agreement, represent, warrant, and agree that:

**a.**   The Varga Claim (as modified herein), the Acorn Claim, and the Stonehill Parties' direct and indirect interest in the PBF Bankruptcy Cases and the Offshore Insolvency Proceedings represent all proofs of claim filed in the PCI Bankruptcy Cases and other Claims or interests in the Trusts in which any Defendant Releasing Party currently has any ownership or other interest (in whole or in part, whether direct, indirect or derivative, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, in law, equity, or otherwise);

**b.**   Each Defendant has not sold, assigned, transferred, or otherwise disposed of, and will not sell, assign, transfer, or otherwise dispose of, any Claim purported to be released by such Defendant Releasing Party, or, to avoid doubt, any Claim that, if not for any such sale, assignment, transfer, or other disposition, would constitute a released Claim;

**c.**   Each Defendant intends to be legally bound and has the full power, authority, and legal right to execute and deliver, and to perform such Defendant's respective obligations under this Agreement and has taken all necessary action to authorize the execution and delivery of, and the performance of, such Defendant's obligations under this Agreement;

**d.**   Each Defendant has the full power, authority, and legal right to release all Claims released by this Agreement;

**e.**   The execution and delivery of this Agreement and the performance by each Defendant of its or his obligations hereunder, including the release of Claims contemplated hereby, will not: (i) result in the violation by such Defendant of any statute, law, rule, regulation, or ordinance or any judgment, decree, order, writ, permit, or license of any governmental or regulatory authority applicable to such Defendant; or (ii) except as otherwise expressly set forth in this Agreement, require such Defendant to obtain any consent, approval or action of, make any filing with, or give any notice to, any person, which action has not already been undertaken and accomplished by such Defendant; and

**f.**   Each Defendant has read and understands this Agreement, including the releases contained herein, has obtained such counsel as such Defendant deems appropriate before entering into this Agreement, and has independently determined to enter into this Agreement.

**13.**   **Dismissal Of Adversary Proceeding.**  Within five (5) days after the Hearing Date, (a) the Trustees will file a stipulation of dismissal of the Adversary Proceeding in a form reasonably acceptable to Defendants, which will seek dismissal with prejudice (subject to the terms of this Agreement) and without costs, attorneys' fees or paralegal fees, and expenses to any of the Parties; and (b) any amounts held in the Acorn Escrow

shall be released and distributed to Greenpond in accordance with Section 8 of this Agreement. Each of the Parties agrees to execute and to cause to be filed such pleadings, stipulations, or other documents as may be necessary to carry out the obligations set forth in this Section 13, each Party to bear its own expenses and attorneys' fees or paralegal fees.

14.     **Inapplicability To Lancelot Investors Fund, Ltd.** For avoidance of doubt, no provision of this Agreement is intended to apply in any way to Lancelot Investors Fund, Ltd., Varga's role as Liquidator of Lancelot Investors Fund, Ltd., or the ability to assert claims and other rights pursuant to the Cross-Border Insolvency Protocol Agreement Regarding Lancelot Investors Fund, Ltd.; nor is this Agreement intended to modify or limit any right of the estate of Lancelot Investors Fund, Ltd. to, directly or indirectly, assert or share in the proceeds of any claim against the PCI Bankruptcy Estates, the PCI Liquidating Trust, or the BMO Litigation Trust.

15.     **Assignability.** Except as set forth in Section 5 of this Agreement, no Party hereto may assign its rights under this Agreement without the prior written consent of each of the other Parties hereto.

16.     **Successors Bound; Third-Party Beneficiaries.** This Agreement shall be binding upon and inure to the benefit of each of the Parties and their successors and permitted assigns. The Parties acknowledge and agree that the Trust Released Parties, the Entity Defendant Released Parties, and the Individual Defendant Released Parties are intended beneficiaries of the releases and waivers set forth in this Agreement; provided, however, that the Parties do not otherwise intend to confer any benefit by or under this Agreement upon any other person or entity or to impact, diminish, impair, or alter in any manner any Claims whatsoever that the Trust Parties may have against any parties other than the Entity Defendant Released Parties and Individual Defendant Released Parties.

17.     **No Admission Of Liability Or Wrongdoing.** The Parties acknowledge that neither the execution nor the performance of any of the terms of this Agreement will constitute or be construed as an admission by any Party of any liability, as an admission of the validity or enforceability of any Claims being released, waived, and discharged by this Agreement, or as an admission of the validity of any of the defenses asserted in response to any of the Claims.

18.     **Governing Laws; Venue.** This Agreement shall be governed, construed, interpreted, and enforced according to the internal laws of the State of Minnesota without regard to the conflicts of law principles of any jurisdiction except to the extent that the laws of such State are superseded by the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, or other applicable federal law. The parties agree that the District of Minnesota or the Hennepin County District (only to the extent a federal court lacks subject matter jurisdiction) shall be the exclusive venues for any disputes relating to this Agreement.

**19.**    **Headings And Rules Of Construction.**   The headings in this Agreement are inserted only as a matter of convenience and for reference and do not define, limit, or describe the scope of this Agreement or the scope or content of any of its provisions.

**20.**    **Counterparts; Electronic Copy Of Signatures.**   This Agreement and any attachments thereto may be executed and delivered in any number of counterparts, each of which so executed and delivered shall be deemed to be an original and all of which shall constitute one and the same document.  The Parties may evidence their execution of this Agreement by delivery to the other Parties of scanned (.pdf) or faxed copies of their signatures, with the same effect as the delivery of an original signature.

**21.**    **No Waiver Of Right To Enforce Terms Of Agreement.**   By signing this Agreement, the Parties do not waive any right or claim to enforce the terms of this Agreement, but rather the Parties specifically reserve their rights to bring an action in a court of competent jurisdiction to enforce the terms of this Agreement.

**22.**    **Further Assurances.**   The Parties shall execute and deliver any document or instrument reasonably requested by any of them after the Effective Date that may be necessary or desirable to obtain the approvals required hereby and consummate the Agreement.

**23.**    **Entire Agreement.**   No promise or agreement other than those recited above has been made as consideration for the releases and discharges effected by this Agreement, and the Parties enter into this Agreement for the sole consideration recited herein.  This Agreement constitutes the entire agreement and understanding of the Parties and supersedes all prior proposals, negotiations, understandings, representations, and agreements relating to such subject matter.

**24.**    **Authority To Execute**.  Each natural person signing this Agreement on behalf of a Party hereby expressly warrants and represents that such person is expressly authorized in law and in fact to do so on behalf of such Party.

**25.**    **All Amendments Must Be In Writing.**   The terms of this Agreement may not be changed, modified, waived, discharged, or terminated in any manner, except by written instrument signed by all of the Parties.

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be duly executed and delivered on the date first written above.

11

Date: October 25, 2018

**PCI LIQUIDATING TRUSTEE**

Douglas A. Kelley, as PCI Liquidating Trustee and
on behalf of the PCI Liquidating Trust, the PCI
Debtors, and the PCI Bankruptcy Estates

Date: October 25, 2018

**BMO LITIGATION TRUSTEE**

Douglas A. Kelley, as BMO Litigation Trustee and
on behalf of the BMO Litigation Trust

Dated: October 25, 2018        **GREENPOND**

_____

Michael Stern, on behalf of Greenpond South, LLC

Dated: October 25, 2018        **STONEHILL**

_____

Michael Stern, on behalf of Stonehill Master Fund, Ltd.

Dated: October 25, 2018        **PB OFFSHORE**

_____

Michael Stern, on behalf of PB Offshore Holdings LTD

Dated: October 25, 2018        **MICHAEL STERN**

_____

Michael Stern

Dated: October 25, 2018        **GEOFFREY VARGA**

_____

Geoffrey Varga

Dated: October ___, 2018                    **GREENPOND**

_____

Michael Stern, on behalf of Greenpond South, LLC

Dated: October ___, 2018                    **STONEHILL**

_____

Michael Stern, on behalf of Stonehill Master Fund,
Ltd.

Dated: October ___, 2018                    **PB OFFSHORE**

_____

Michael Stern, on behalf of PB Offshore Holdings
LTD

Dated: October ___, 2018                    **MICHAEL STERN**

_____

Michael Stern

Dated: October 25, 2018                    **GEOFFREY VARGA**

_____

Geoffrey Varga

## **Exhibit B – Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| In re | Jointly Administered Under |
| | Case No. 08-45257 |
| Petters Company, Inc., et al., | |
| | Court File No. 08-45257 |
| Debtors. | |
| | Court File Nos.: |
| (includes: | |
| Petters Group Worldwide, LLC; | 08-45258 |
| PC Funding, LLC; | 08-45326 |
| Thousand Lakes, LLC; | 08-45327 |
| SPF Funding, LLC; | 08-45328 |
| PL Ltd., Inc.; | 08-45329 |
| Edge One LLC; | 08-45330 |
| MGC Finance, Inc.; | 08-45331 |
| PAC Funding, LLC; | 08-45371 |
| Palm Beach Finance Holdings, Inc.) | 08-45392 |
| | |
| | Chapter 11 Cases |
| | Judge Kathleen H. Sanberg |

**ORDER GRANTING MOTION OF PCI LIQUIDATING TRUSTEE
AND BMO LITIGATION TRUSTEE FOR APPROVAL OF SETTLEMENT PURSUANT
TO BANKRUPTCY RULE 9019**

Upon consideration of the *Motion of PCI Liquidating Trustee and BMO Litigation Trustee for Approval of Settlement Pursuant to Bankruptcy Rule 9019* (the "***Motion***")[1] filed in the above-captioned Chapter 11 Case, and the Court having jurisdiction to consider the issues and the relief requested pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the issues and the requested relief being a core proceeding that the Bankruptcy Court can determine

---

[1] Capitalized terms used but not defined herein shall have the meaning set forth in the Motion.

pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C.

§§ 1408 and 1409; and due and proper notice having been provided; and it appearing that no

other or further notice need be provided; and based on the motion papers, the arguments of

counsel, and the record made at the hearing, **IT IS HEREBY ORDERED THAT:**

    1.   The Motion is GRANTED.

    2.   The Trustees are authorized to enter into the Agreement.

    3.   The Agreement, as described in the Motion is approved in its entirety, and the

parties thereto are authorized to perform their respective duties and obligations thereunder.

    4.   The Adversary Proceeding is dismissed with prejudice.

    5.   The Trust Parties are authorized to dissolve the Acorn Reserve.

    6.   This Court retains jurisdiction with respect to all matters arising from, based upon

or related to the implementation of this Order.

Dated:

                                        _____
                                        Kathleen H. Sanberg
                                        Chief United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| In re | Jointly Administered Under |
| | Case No. 08-45257 |
| Petters Company, Inc., et al., | |
| | Court File No. 08-45257 |
| Debtors. | |
| | Court File Nos.: |
| (includes: | |
| Petters Group Worldwide, LLC; | 08-45258 |
| PC Funding, LLC; | 08-45326 |
| Thousand Lakes, LLC; | 08-45327 |
| SPF Funding, LLC; | 08-45328 |
| PL Ltd., Inc.; | 08-45329 |
| Edge One LLC; | 08-45330 |
| MGC Finance, Inc.; | 08-45331 |
| PAC Funding, LLC; | 08-45371 |
| Palm Beach Finance Holdings, Inc.) | 08-45392 |
| | |
| | Chapter 11 Cases |
| | Judge Kathleen H. Sanberg |

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION OF PCI LIQUIDATING TRUSTEE AND BMO LITIGATION TRUSTEE FOR**
**APPROVAL OF SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019**

Douglas A. Kelley, in his capacity as the Liquidating Trustee (the "*PCI Liquidating Trustee*") of the Liquidating Trust created pursuant to the Amended Liquidating Trust Agreement dated April 22, 2016 (the "*PCI Liquidating Trust*") and in his capacity as the BMO Litigation Trustee (the "*BMO Litigation Trustee*," and together with the PCI Liquidating Trustee, the "*Trustees*") of the BMO Litigation Trust created pursuant to the BMO Litigation Trust Agreement dated April 22, 2016 (the "*BMO Litigation Trust*" and, together with the PCI Liquidating Trustee, the PCI Liquidating Trust, and the BMO Litigation Trustee, the "*Trust*

*Parties*") submit this memorandum of law in support of the *Motion of PCI Liquidating Trustee and BMO Litigation Trustee for Approval of Settlement Pursuant to Bankruptcy Rule 9019* (the "***Motion***").

## FACTUAL BACKGROUND

The underlying facts are set forth in the motion and incorporated herein. Capitalized terms used herein and not otherwise defined are defined in the Motion.

## BASIS FOR RELIEF

Settlements and compromises are "a normal part of the process of reorganization." *Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968) (quoting *Case v. Los Angeles Lumber Prods., Co.*, 308 U.S. 106, 130 (1939)); *ReGent Capital III, Inc. v. Official Committee of Unsecured Creditors (In re Trism, Inc.)*, 282 B.R. 662, 668 (B.A.P. 8th Cir. 2002). Settlement agreements are encouraged and favored by courts in "the absence of mistake or fraud" and "will not be lightly set aside." *Justine Realty Co. v. Am. Nat'l Can Co.*, 976 F.2d 385, 391 (8th Cir. 1992).

The decision to approve a particular settlement lies within the sound discretion of the Bankruptcy Court. *In re Trism, Inc.*, 282 B.R. at 665 (citing *Lambert v. Flight Transp. Corp. (In re Flight Transp. Corp.*), 730 F.2d 1128, 1135-36 (8th Cir. 1984)). Bankruptcy Rule 9019 provides that this Court has broad discretion to approve a compromise or settlement such as the proposed Agreement. In applying the foregoing provisions to a request for approval of a settlement, Bankruptcy Rule 9019 provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). Further, section 363 of the Bankruptcy Code provides that a trustee may, after notice and a hearing, enter into a transaction "other than in the ordinary course of business" involving

property of the estate.   See 11 U.S.C. § 363(b)(1).   Section 105 of the Bankruptcy Code compliments such provision by providing, in pertinent part, that "[t]he court may issue any order… that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." *Id*. § 105(a).

In the Eighth Circuit, "the standard for evaluation of a settlement 'is whether the settlement is fair and equitable and in the best interests of the estate.'" *In re Wigley*, 557 B.R. 678, 685 (8th Cir. B.A.P. 2016) (quoting *Tri-State Fin., LLC v. Lovald*, 525 F.3d 649, 654 (8th Cir. 2008)).   A settlement need not be perfect or offer the "best result possible." Instead, the bankruptcy court must "determine that the settlement does not fall below the lowest point in the range of reasonableness."   *In re Petters Co., Inc.*, 455 B.R. 166, 168 (B.A.P. 8th Cir. 2011) (quoting *Tri-State*, 525 F.3d at 654).

To determine the reasonableness of a settlement, courts will look to the following factors: "(a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises."   *Id.* (quoting *Drexel Burnham Lambert Corp. v. Flight Transp. Corp. (In re Flight Transp. Sec. Litig.)*, 730 F.2d 1128, 1135 (8th Cir. 1984)).    These factors seek to balance the probably benefit and potential cost of pursuing a claim or defense against the costs of the proposed settlement.   In considering a settlement agreement, the Court may consider the opinions of the trustees and the any member of the creditors' committee. *Petters*, 455 B.R. at 176-77.

### THE AGREEMENT SATISFIES ALL NECESSARY *DREXEL* FACTORS

The foregoing *Drexel* factors support approving the Agreement.

3

*First,* while the Trustees believe there is a reasonable probability that they will be successful with respect to the Disputed Matters, there are attendant uncertainties given the complexity of the claims, the defenses raised by Defendants, and the amount of evidentiary support necessary for two trials.  In the Varga Claim Objection, the PCI Trustee asserted, among other things, that the Varga Claim was duplicative of the PBF II Claim and Varga, Stonehill, and Offshore were equitably estopped from pursuing the Varga Claim.  In the Offshore Response, Offshore contended that the Varga Claim was not duplicative of and was distinct from the PBF II Claim. Offshore also asserted that the PCI Trustee's equitable estoppel claims were insufficient as a matter of law.  In the Adversary Proceeding, the PCI Trustee alleged that Defendants' conduct constituted a breach of fiduciary duty and merited equitable subordination of both the Varga Claim and the Acorn Claim.  Defendants contested those allegations, claiming there was no evidence of wrongful conduct. There is no certainty the Trust Parties will ultimately prevail after the expenditure of additional estate funds and the delay of time associated with further litigation.

*Second*, because the objectives of both Disputed Matters are primarily the disallowance or subordination of the Varga Claim and the Acorn Claim, the collectability factor outlined by *Drexel* is not applicable.

*Third*, the issues raised by the Disputed Matters are complex and difficult and would require several days of witness testimony and evidence.  Not only would the Bankruptcy Court need to hold an evidentiary hearing on the Contested Claims Dispute, the Court would also need to schedule a trial on the merits for the Adversary Proceeding.  The Parties have already expended significant resources litigating the Disputed Matters and will most certainly incur additional litigation expenses should the matters proceed to trial and likely appeal.  In lieu of

expending additional resources litigating the Disputed Matters, the Agreement provides for finality and will make funds immediately available to Petters' victims.

*Fourth,* this Agreement is in the best interests of the creditors of these Chapter 11 Cases. The Trusts will not incur additional litigation expenses and pursuant to this Agreement, tens of millions of dollars will be freed from the litigation reserve and distributed to creditors of these Chapter 11 Cases.  Accordingly, the Agreement is in the best interest of the creditors of these estates and satisfies this *Drexel* factor.

## CONCLUSION

For the foregoing reasons, the Trustees respectfully request that the Court enter an order (i) granting the Motion approving the Agreement, (ii) dismissing the Adversary Proceeding with prejudice, (iii) authorizing the dissolution of the Acorn Reserve to facilitate distributions therefrom, and (iv) granting such further and related relief as the Court deems just and proper.

Dated: October 25, 2018

By: /s/ Joanne Lee _____
Mark L. Prager, *Admitted Pro Hac Vice*
William J. McKenna*, Admitted Pro Hac Vice*
Joanne Lee, *Admitted Pro Hac Vice*
Foley & Lardner LLP
321 North Clark Street, Suite 2800
Chicago, IL 60654-5313
Telephone: (312) 832-4500
Facsimile: (312) 832-4700

*-and-*

David E. Runck
Lorie A. Klein
FAFINSKI MARK & JOHNSON, P.A.
400 Flagship Corporate Center
775 Prairie Center Drive
Eden Prairie, Minnesota 55344

*Counsel for Douglas A. Kelley in his capacity as Trustee of the PCI Liquidating Trust and the BMO Litigation Trust*

5